**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DISTRICT**

**UNITED STATES OF AMERICA**                                            **PLAINTIFF**

**VS.**                         **CIVIL ACTION NO. 3:16-CV-00489-WHB-JCG**

**HINDS COUNTY, ET AL.**                                           **DEFENDANTS**

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF
HINDS COUNTY'S RESPONSE TO
MOTION FOR AN ORDER TO SHOW CAUSE
WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT**

**COMES NOW** Hinds County, Mississippi, by and through counsel of record, and pursuant to L.U.Civ.R. 7(b)(3) and other applicable authority, files its Memorandum of Authorities in Support of its Response to the Motion for an Order to Show Cause Why Defendants Should Not Be Held in Contempt [DOC.] 30 and supporting Memorandum [DOC.] 31, and would state unto this Honorable Court the following:

**INTRODUCTION**

Hinds County[1] (Board and Sheriff) has made good faith efforts to meet constitutional compliance in the county detention facilities. Hinds County concedes its efforts have fallen short of constitutional requirements. No one is at fault; yet, everyone shares some responsibility. The poorly designed and poorly constructed, remotely located, poorly staffed, always-in-need-of-emergency-repair, main detention facility in Raymond ("Raymond Detention Center" or "RDC") is the root of most non-compliance.

---

[1] The terms "Hinds County" or "County" are inclusive of the elected Board of Supervisors and elected Sheriff along with staff and administration. The terms "Board" or "Sheriff" are used where a specific reference is appropriate.

RDC's inherent deficiencies are magnified by other factors such as a glacial criminal justice system that somehow results in 70% of County detainees classified as unindicted, and extended stays. *Declaration of Kenneth Lewis,* Response Ex. "C". Jails are by definition short term/one year facilities: Hinds County has a post-one year detainee population of 25% or more. *Id.* Length of stay still remains well above national averages, with 37% of the detainees unindicted for more than 90 days. *Id; Declaration of Synarus Green,* Response Ex. "A". Viewed another way, only 15% of the County detainees are indicted and awaiting trial.

Hinds County promptly responded to the 2014 United States Department of Justice (the "Department") inquiry letter and cooperated with the Department's investigation. As opposed to contesting the Department's 2015 purported findings, the County negotiated in good faith to reach a settlement agreement [DOC.] 8, entered in July 2016. Eight reports later, all involved can confirm the results are mixed and the monitoring is simply another cost[2] that promotes even more confusion among an under skilled, under trained, underpaid, and undereducated staff. Factor in cultural differences, and the disconnect becomes more distant. These challenges are not unique to Hinds County; jurisdictions around the country are experiencing similar problems.[3] But the solutions should be unique: Hinds County does not have the wealth of Hillsborough County, Florida nor the culture of New Mexico, let alone Washington, D.C.

Hinds County is exasperated, and agrees that something different needs to occur. Hinds County needs help; Hinds County ***wants*** help. The County respectfully requests the Court use its broad enforcement powers to narrowly tailor relief based on the facts of

---

[2] Hinds County has spent over $550,000 in adult monitoring ***costs***.
[3] In "The Jail Health-Care Crises", Steve Coll discusses how jurisdictions ranging from Pueblo, Colorado to New Mexico to Boston struggle with ***just*** the issue of healthcare. The New Yorker, February 25, 2019.

this community, not arbitrary recommendations of non-comparable jurisdictions across the country. Only then will the parties find themselves with a solid, sustainable foundation necessary for complete constitutional compliance.

### APPLICABLE LAW

In order for the Court to hold Hinds County in contempt, the United States bears the burden of establishing by clear and convincing evidence: (1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order." *Petroleos Mexicanos v. Crawford Enterprises, Inc.,* 826 F.2d 392, 401 (5thCir.1987); *see also Travelhost, Inc. v. Blandford,* 68 F.3d 958, 961 (5th Cir.1995) ("In a civil contempt proceeding, the movant bears the burden of establishing the elements of contempt by clear and convincing evidence."). Once a violation of the order is demonstrated, the burden shifts to the violating party to "show either mitigating circumstances that might cause a district court to withhold the exercise of its contempt power, or a substantial compliance with the consent order." *Whitfield v. Pennington,* 832 F.2d 809, 914 (5th Cir. 1987) (citing *Louisiana Educ. Ass'n v. Richland Parish School Bd.,* 421 F.Supp. 873, 977 (W.D.La.1976), aff'd 585 F.2d 518 (5th Cir.1977)). Here, the Department fails in both aspects of the aforementioned standard: they cannot establish a violation by "clear and convincing evidence," and, more importantly, Hinds County can demonstrate mitigating circumstances through its good faith efforts towards compliance.

Nevertheless, Hinds County respectfully requests that this Court order certain relief to speed compliance. "[D]istrict courts have wide discretion to enforce decrees and to implement remedies for decree violations." *United States v. Alcoa,* 533 F.3d 278, 288 (5th Cir. 2008). That is, "while a district court generally lacks authority to rewrite the

terms of a consent decree, it has broad discretion to fashion equitable remedies to enforce a consent decree in response to a party's noncompliance." *Chisolm ex rel. CC v. Greenstein*, 876 F. Supp. 2d 709, 720 (E.D. La. 2012) (citing *EEOC v. Local 580, Int'l Assoc. of Bridge, Structural & Ornamental Ironworkers*, 925 F.2d 588, 593 (2d Cir. 1991)). "These remedies 'need not match those requested by a party or originally provided by the court's earlier judgment.' " *Id.* (quoting *Alcoa* at 288).

The Department does not offer the Court any set of remedies that aid in achieving compliance. Rather, it simply relies on a set of antiquated "facts" and misrepresentations in an attempt to demonstrate contempt. In fact, Hinds County has requested that the Department and the Monitors offer narrowly tailored solutions to help achieve compliance for over a year; yet, nothing has occurred. Instead, the Department and the Monitors have maintained the same approach from the beginning: that all sections of the Consent Decree must be fulfilled ***at the same time***. While Hinds County acknowledges that it must meet compliance with all sections of the Consent Decree, it is simply not possible for the County to use its limited resources to focus on every single aspect of the Consent Decree at the same time[4]. Stated another way, in this Response, the County offers the Court specific, narrowly tailored remedies to the immediate demands of the Consent Decree. In focusing the County's limited resources to specific areas, one priority at a time, compliance can be achieved and sustained. As such, Hinds County is requesting the Court to use its wide discretion to deny the Department's motion and grant relief to the County by way of setting forth specific remedies that will help the County achieve compliance with the Consent Decree.

---

[4] Hinds County faced a similar dilemma with its youth detention center. Only when compliance efforts were changed to a sequential approach did compliance take root. And, to get the County off the youth detention consent decree, the district court has again this year approved another re-prioritization approach.

**FACTS AND CIRCUMSTANCES**

Instead of responding to every misstatement and inaccuracy in the Department's Motion and Memorandum, Hinds County will utilize the government's framework and proffer what efforts the County has taken - and discuss the uneven results. Further, Hinds County will identify witnesses with factual knowledge in a specific area of concern and propose narrowly tailored relief.

**1. POLICIES AND PROCEDURES**

The effective date of the settlement agreement was July 2016. All Hinds County detention facilities[5] since Spring 2017 have had policies and/or procedures that are modeled after American Correctional Association ("ACA") accreditation guidelines. The Department and monitors rejected the policies as a whole because the policies were not "specific enough" to the settlement agreement. Hinds County thereafter explored both out-of-state and in-state options for drafting policies more specific to the consent decree. All the while, the facilities remain under the ACA general policies.

Hinds County engaged Karen Albert in October 2018 to write the specific policies and procedures. Ms. Albert currently serves as a technical resource provider and instructor for the National Institute of Corrections ("NIC") in the areas of jail administration, resource management and direct supervision. Despite this close relationship with the NIC and no objection expressed by Monitor Simpson to Hinds County, the Department has only approved a couple of policies - and then only after multiple drafts and quibbling. Hinds County, via Karen Albert, has submitted 11 specific

---

[5] The term "detention facilities" includes those directly under the Sheriff: RDC; Jackson Downtown ("JDC"); and, the County Work Center ("WC"). The County's fourth detention facility, the Henley Young Juvenile Justice Center ("Henley Young") is operated by an Executive Director answering to the County Administrator and Board (after litigation with the youth court judge).

policies in areas such as booking, release, protective custody, searches, use of force, incident reporting, investigations, prisoner rights/conditions of confinement, grievance procedures, sexual abuse and misconduct. The Department has only approved two: booking and release. If the Department cannot timely provide meaningful feedback, let alone approve the policies drafted by an NIC-associated expert, how is this Hinds County's fault?

*Witnesses: Karen Albert; Sandra Dalton; Synarus Green; Mary Rushing*

**RELIEF SOUGHT**

Hinds County respectfully submits that the narrow relief appropriate for policy and procedure development requiring the Department provide either specific edits or approval within 10 days of a Karen Albert submission.

**2.    USE OF FORCE**

The Department of Justice alleges that the County "has not remedied long-standing problems with use of force in the Jail." [DOC.] 30 at ¶. 4. The Department of Justice's complaints with respect to use of force basically pertain to: a) policies; b) training; and, c) reporting.

With respect to policies, the detention facilities have an ACA use of force policy in place, and Karen Albert has drafted a more specific use of force policy. Ms. Albert first submitted the use of force policy on December 18, 2018. To date and three drafts later, the Department of Justice has still not approved the NIC-associated Albert drafted policy. Nevertheless, all new detention officers receive State of Mississippi required use-of-force training in the dentition officer orientation program. Detention has further added to the state minimum eight hour use of force training an annual eight hour use-of-force

refresher training. Moreover, detention has begun direct supervision training under the NIC which is designed, in part, to reduce the need for the use of force.

With respect to use-of-force reporting, in 2016 reporting was virtually non-existent and what reporting did occur was paper based. The Sheriff has since implemented a policy and practice that all incident reports, including use of force, are completed using the jail management system (JMS) software. This system allows for documenting, tracking and supervisory review of use of force. Hinds County's internal compliance monitor promptly sends these reports to the Department. Moreover, the Sheriff's internal affairs department compiles an investigative summary of every reported use of force. These summaries are provided to the Sheriff, Jail Administrator, Deputy Jail Administrator, and Department of Justice/federal monitors.

*Witnesses: Ric Fielder; Synarus Green; Terry Miller; Mary Rushing*

**RELIEF SOUGHT**

Hinds County respectfully submits that narrowly tailored relief should require the Department to grant final approval to the use-of-force policy. Once approved, Hinds County should conduct training specific to the approved use-of-force policy, additional training on report writing and report review within six months.[6]

3. **STAFFING AND PRISONER SUPERVISION**

The Department staffing complaints reflect a cookie cutter approach that has too often failed in other jurisdictions. *See Jones, et al. v. Gusman, et al.*, United States District Court Cause Number 2:12-cv-00859-LMA (despite building a new facility at a cost of $145 Million, culture issues and understaffing remain—and a detention deputy

---

[6] Ideally all training would occur faster, but staffing levels make faster training unfeasible.

was arrested in May for smuggling contraband.) The Department of Justice continues advocating "433" as the number of detention officers needed for the three adult detention facilities (JDC, RDC and WC). In support of 433, the Department of Justice advances non-contextual misrepresentations such as "staffing levels are comparable to staffing levels over past years." [DOC.] 30, ¶p. 5. A more accurate statement is that the Sheriff's total number of detention staff has remained consistent in the 225-240 range ***despite*** recruitment efforts and Hinds County budgeting for 271 positions at a starting pay more than the State of Mississippi. More glaring, the Department's argument ignores: a) youthful offenders were relocated to the Henley Young Juvenile Justice Center in September 2017 where staffing numbers are appropriate; and, b) the average number of overall county detainees has significantly decreased from approximately 1,100 per day to a current daily average of 570. *See* Declarations of Synarus Green and Kenneth Lewis, Response Ex. "A" and "C". It is non-sensical to complain that Hinds County still needs the same 433 detention officer staffing level for half the population.

      Population reductions have occurred creatively and without cooperation from some stakeholders. Foremost, Hinds County created a Criminal Justice Coordinating Committee ("CJCC") co-chaired by the senior circuit judge and county administrator. The CJCC in turn facilitated training on the revised Mississippi criminal rules encouraging fair and reasonable bond. At the same time, the County increased use of electronic monitoring as a means to reduce the average number of detainees.[7] Monitoring, as well as circuit court administrative orders, have produced results despite a disengaged district attorney's office and the City of Jackson's disproportionately high crime rate. Still, the

---

[7] Hinds County has spent over $1.3 Million on electronic monitoring in the last two years. Arguably, the electronic monitoring is now over-used, as the County and Courts attempt to balance decreasing the jail population while protecting the community.

number of unindicted and length of stay times for those not eligible for electronic monitoring mean further significant population reduction is unlikely. While Hinds County is optimistic the district attorney's office will become more engaged and efficient beginning January 2020, an order from this Court would help.

Make no mistake, Hinds County does not allege staffing is adequate to promote consistent constitutional compliance. Staffing retention is ***the*** biggest challenge facing the County. But that challenge is not unique to Hinds County: *see* State of Mississippi, Wilkinson County, Mississippi, etc. It's not even unique to Mississippi: *see State of Texas; State of Alabama.*[8] The Department and Monitors telling Hinds County staffing is an issue isn't new nor helpful in ***solving*** the staffing challenges.

***Witnesses: Sandra Dalton; Carmen Davis; Ken Johnson; Kenneth Lewis; Gary Maynard; Mary Livers; Pete Luke; Mary Rushing; Morris Thigpen***

**RELIEF SOUGHT**

Hinds County respectfully submits that enforcement of [DOC.] 8, ¶ 46 will promote autonomy and a professional environment. Further, a new staffing study based on the decreased daily population; a population cap; and, on-the-record hearings for the detainees not indicted in 90 days or not tried within 270 days will promote compliance. Most importantly, determination of the best use of the existing facilities for population management/staffing is crucial.

---

[8] Alabama has 2,000 prison guards and needs another 1,800-2000. U.S. News and World Report, September 8, 2018; Texas spent $9 Million in signing bonuses in 2018, yet Texas saw a 29% security officer turnover and chronic understaffing; KBTX-TV Report, July 20, 2019.

4. **SUPERVISOR QUALIFICATIONS AND TRAINING**

The Department takes issue, based on the Sixth and Seventh Monitor's reports, with the qualifications of trainers and supervisors. At the time of those reports, the concerns were valid. However, since that time the Sheriff has returned the former assistant jail administrator, Ric Fielder, to his position as well as utilizing Fielder for training on use-of-force. The Sheriff has demonstrated his commitment to non-interference via a March 2019 special Order assigning Major Rushing "to execute all duties and responsibilities relating to Detention Services…". Nevertheless, the Court should ask: at what point does a serious, often violent population warrant an independent detention operation accountable to the Court rather than just elected officials.

With respect to finding specific qualified individuals, where is the labor pool? County (or even State) detention is not a career that attracts those whose skills are needed for management. The labor pool does not consist of the college educated, experienced professionals compliance craves. People who have those skills can simply get better, safer jobs. Ultimately, the County is left with mostly people who desperately need a stable job and want to do better but need loads of training—and that's before you factor in salaries, safety and location. In 2018-2019, Darryl Graves provided distinct, specialized training to the Henley Young Juvenile Justice Center's front-line supervisors and administrative staff. Mr. Graves, a Hinds County native, was struck by just how basic he had to make training; even he overestimated capacity of the employees. In January 2019, Mr. Graves met with Monitor Simpson to express what he termed as reasonable expectations; of course, no "priority recommendation" includes this knowledge.

The County was recently fortunate to appoint a former Bureau of Prisons associate warden as executive director at the Henley Young Juvenile Justice Center. As with many

County positions[9], this individual is paid significantly less than comparable positions in the federal system. Moreover, while well-qualified, the new executive director is having an eye-opening indoctrination into Hinds County's staffing and political challenges. Short of a court order mandating comparable pay and assurance that detention facilities are not subject to local politics, securing more qualified and better trained supervisors is difficult, if not impossible.

***Witnesses: Darryl Graves; Mary Livers; Gary Maynard; Mary Rushing; Morris Thigpen***

**RELIEF SOUGHT**

*In Camera* discussion with the Court as the job performance of specific personnel is at issue.

**5.     PHYSICAL PLANT**

Hinds County concedes the obvious: the 1994 poorly designed, poorly constructed RDC that holds a population far longer than normally intended is in poor condition despite millions of dollars of repairs over the last five years. *See* Declaration of County Administrator Carmen Davis, Response Ex. "B". The Department paints with a broad brush, however, in an attempt to impute the RDC physical plant problems to three other county facilities *and* ignores the on-going, emergency efforts of the County. Hinds County, since 2013, has spent approximately $7,100,000 on County detention facilities. *Id*. Just in the last six months, the Hinds County Board of Supervisors has approved an additional $700,000. *Id*. County maintenance staff are on site at RDC seven days a week

---

[9] The Hinds County administrator is paid less than administrators in other large (population over 100,000) counties; same for the board attorney, planning and zoning director, etc.

*11*

and the Sheriff has assigned a liaison captain to work with maintenance in prioritizing repairs.

RDC would benefit most from a criminal justice system that timely moves detainees out of the facility. Here, again, what would help the most, is a court order requiring any detainee or unindicted detainee after 90 days have a hearing on the record, any detainee not tried within 220 days have a hearing on the record, and prohibition against holding said detainees without a hearing. Moving detainees on to State facilities will decrease the exploitation of physical vulnerabilities of RDC.

***Witnesses: Robert Bell; Carmen Davis; Mary Livers; Pete Luke; Gary Maynard; Mary Rushing***

**RELIEF SOUGHT**

Renovate Pod-C (again); existing facilities study; new facility(?); require the Hinds County District Attorney and the City of Jackson to attend CJCC meetings with binding authority; population cap.

**6. YOUTH CHARGED AS ADULTS**

The Department's assertions regarding Hinds County's detention of juveniles charged as adults ("JCA's")[10] are, simply, misrepresentations. The Department takes Hinds County to task, for example, over the length of time involved in deciding where to locate the JCA's ("significant delay"). Here is what occurred: no one knew what to do. The Henley Young Juvenile Justice Center Monitor, Mr. Dixon, didn't want JCA's at the Henley Young Juvenile Justice Center, as it would represent a 21-day, meeting compliance facility developing enhanced education and mental health programing. Such

---

[10] The settlement agreement uses the term "Youthful Offenders." Youthful Offenders and JCA are synonymous in this context.

an expansion of mission to dual tracks of short-term delinquency and long-term JCA's would inevitably stymie Henley Young's progress. Monitor Parrish proposed remodeling the Work Center at a cost of several million dollars; Hinds County engaged an architect, plans were drawn. Other monitors, consultants and elected officials expressed opinions. Hinds County considered RDC, but it has no outdoor exercise area.

After due consideration, Mr. Dixon proposed that all *new* JCA's would go directly to the Henley Young Juvenile Justice Center, but those already at RDC would remain in a specific-age appropriate area at RDC. Major Rushing supported the proposal, and Sheriff Mason gladly obliged. With no better solutions, on September 5, 2017, Hinds County implemented Mr. Dixon's recommendations. The results are overwhelmingly positive--if not perfect. Further, the Department and monitors know that Hinds County has increased counseling services, though it involved a state court litigation challenge to the Board's appropriation power by an angry youth court judge. Hinds County provides a licensed qualified mental health care professional, four case workers for a population capped at 32 and is engaged in a search for a full-time psychologist.

Perhaps nothing better demonstrates the Department's misrepresentations than its accusation Hinds County is deliberately obstinate with respect to "priority recommendations" and continued improvements. [DOC.] 31 at ¶22. The priority recommendations are:

- adding temporary programming space
  (Not in Settlement Agreement[11]);

- converting a part-time psychologist to a full-time psychologist
  (Search on-going after part-time psychologist gave a $160,000 per year ultimatum);

---

[11] Recommendations that exceed what is required to achieve constitutional compliance or do not directly address a constitutional violation is disfavored. *M.D. by Stukenberg v. Abbott*, --F.3d—(Fifth Cir., July 8, 2019).

- adding some mental health coverage
  (Nebulous, but ongoing);

- putting in security features
  (No documented Henley Young Juvenile Justice Center incident caused by deficient "security features");

With respect to education services for longer-term JCA's, MISS. CODE ANN. § 43-21-621 places education under the purview of the youth court judge and local school district. Nevertheless, Hinds County has engaged David Domenici to advise the County regarding educational programming. Hinds County and Jackson Public Schools are exploring a co-share agreement with Mr. Domenici for the upcoming school year. With all due respect to the Department and Monitor Simpson, Henley Young Juvenile Justice Center's path to sustainable constitutional compliance has received Chief Judge Jordan's approval.

***Witnesses: Leonard Dixon; David Domenici; Fernandeis Frazier; Darryl Graves***

**RELIEF SOUGHT**

The Court should enter an order that compliance in *J.H. v. Hinds County, et al.,* United States District Court Cause Number 3:11-cv-327-DPJ-FKB is presumptive compliance in the present matter and eliminate unnecessary expense and continuing confusion by having primary recommendations beyond what Judge Jordan has approved. Further, any JCA not tried within 270 days should have a hearing off the record as to why that youth should remain in custody.[12]

---

[12] Henley Young has housed youth in excess of 365, 400 and 500 days. It is ridiculous to expect the County to feed, clothe, educate and provide counseling and healthcare for two to three or more years of an individual under the age of 18. Henley Young cannot be the social safety net for society's failings.

## CONCLUSION

We're asking elected officials to prioritize something the constituencies electing the officials place limited priority. The constituency likes elected officials to be "tough on crime", set high bonds, pave roads and ensure safe bridges. Lower car tags would be nice, too. None of the constituent's priorities support constitutional compliance at the jail. Heck, it's a challenge to convince the State to add crimes to the list of those eligible for expungement. The State itself places little emphasis on rehabilitation and chooses to dump both released criminals and released mental health patients in Hinds County. The Hinds County detention facilities are not designed nor intended to solve the larger problems, yet it is all of the many larger problems that complicate the County's compliance efforts.

Hinds County agrees with the Department that achieving agreement milestones is lagging. Hinds County disagrees with the Department as to the circumstances enveloping the slow pace of compliance. The Department says Hinds County isn't trying hard enough. Hinds County has said for over a year that it is exasperated trying to navigate the juxtaposition of Department regulations, monitors' recommendations and local politics. Hinds County respectfully requests an opportunity to put evidence on the record so the Court can grant the appropriate relief. The citizens deserve no less.

Respectfully submitted this the 22nd of July, 2019.

/s/Pieter Teeuwissen
ANTHONY R. SIMON, MSB # 10009
PIETER TEEUWISSEN, MSB #8777

/s/Claire Barker
CLAIRE BARKER, MSB # 101312

**OFFICE OF THE BOARD ATTORNEY**
316 SOUTH PRESIDENT STREET
POST OFFICE BOX 686
JACKSON, MISSISSIPPI 39205-0686
OFFICE:       601-968-6797
FACSIMILE:  601-948-1003

CLAIRE BARKER, LEGAL COUNSEL,
HINDS COUNTY SHERIFF DEPARTMENT
407 E PASCAGOULA STREET
JACKSON, MS 39205-0686
OFFICE:       601-974-2900
FACSIMILE:  601-968-6705

## CERTIFICATE OF SERVICE

The undersigned certifies that he has this day electronically filed the foregoing document with the Clerk of the Court using the Court's electronic filing system (ECF), which sent notification of such filing to all attorneys of record.

Respectfully submitted this the 22nd day of July, 2019.

        /s/Pieter Teeuwissen
        ANTHONY R. SIMON, MSB # 10009
        PIETER TEEUWISSEN, #8777

        /s/Claire Barker
        CLAIRE BARKER, MSB # 101312