IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF MISSISSIPPI

NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>PLAINTIFF, )<br>)<br>v. )<br>)<br>)<br>)<br>HINDS COUNTY, ET AL., )<br>)<br>DEFENDANTS. )<br>_____ ) | Case No.: 3:16-cv-00489-CWR-JCG |

**UNITED STATES' REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT
BE HELD IN CONTEMPT**

I. **Introduction**

Defendants admit that their efforts to implement the Settlement Agreement, Doc. No. 8-1 ("Settlement"), covering conditions in the Hinds County Detention Center ("Jail"), have not produced "sustainable, constitutional compliance."[1]  But they contend they are not in contempt. Defendants' Memo 3.  Their attempts to avoid contempt are unavailing.  They have not done what the Settlement clearly requires them to do, *see* United States' Motion 1-2, and at bottom, they do not contend otherwise.  Defendants' Response 2, 4.

---

[1] Hinds County's  Response to Motion for an Order to Show Cause Why Defendants Should Not Be Held In Contempt at 2, Doc. No. 35 (hereinafter "Defendants' Response"); *see* Memorandum of Authorities In Support of Hinds County's Response to Motion for an Order to Show Cause Why Defendants Should Not Be Held In Contempt at 1-3, Doc. No. 36 (hereinafter "Defendants' Memo"); *see also* United States' Motion for an Order to Show Cause Why Defendants Should Not Be Held in Contempt, Doc. No. 30 (hereinafter "United States' Motion"); United States' Memorandum in Support of Its Motion for an Order to Show Cause, Doc. No. 31 (hereinafter "United States' Memo").

1

The parties agree that the Court should order additional narrowly tailored relief. Defendants, however, seek relief from fulfilling the terms of the Settlement. Defendants cite *Whitfield v. Pennington*, 832 F.2d 909 (5th Cir. 1987) (internal citation omitted) as purported support for excusing a defendant's noncompliance with a settlement if mitigating factors exist. However, in *Whitfield* the Fifth Circuit held that the district court abused its discretion in excusing defendants' clear violation of court orders. 832 F.2d at 915. Similarly, as discussed in the United States' Memo and this Reply, Defendants have ignored deadlines, made promises to the Court that they did not keep, and repeatedly delayed making decisions when offered ample technical assistance by the Monitor. Accordingly, the United States seeks relief aimed at bringing Defendants into compliance with the Settlement.

Dangerous Jail conditions persist, as demonstrated by recent incidents of rioting, assaults against prisoners, assaults against officers, escapes, and frequent security breaches.[2] For example: 1) Over the weekend of June 28-29, 2019, rioting resulted in multiple injuries. Just two months before, on April 19, 2019, rioting broke out on the same pod after a power outage. Prisoners escaped from their units and tried to breach the control room. Apel, *supra* note 2; *see* United States' Memo 7; 2) On July 24, 2019, staff found two prisoners fighting and recovered an iron pipe during this incident. One of the prisoners needed hospitalization. Ex. A, (Incident Number 191275); and 3) On July 27, 2019, staff observed at least three prisoners on the roof of

---

[2] *See* Ex. A, a compilation of some of Defendants' recent "immediate notifications," which are required by Settlement Para.161. The "immediate notifications" are serious incident reports that must be promptly disclosed within three days of an event. These incidents occurred after the United States filed its Motion. The United States expects to introduce some of these reports at any show cause hearing. *See, also,* Therese Apel, "7 injured in 2 days of jail fighting at Raymond Detention Center," NBC 3 WLBT (June 29, 2019, 9:42 pm), https://www.wlbt.com/2019/06/30/injured-days-jail-fighting-raymond-detention-center/ (reporting use of weapons and injuries from the June 2019 riot); Shaleeka Powell, "We've had it up to here; sheriff makes more contraband arrests," ABC 16 WAPT (July 18, 2019 5:41 pm) , https://www.wapt.com/article/weve-had-it-up-to-here-sheriff-makes-more-contraband-arrests/28435678 (reporting continued problems with contraband). The Jail's investigations of reported serious incidents remains a concern. For instance, the County has not completed an investigation for a 2018 Jail homicide. *See* United States' Memo 7.

the Raymond Detention Center. The prisoners were pulling a bag, made out of a jumpsuit, onto the roof. As many as seven total prisoners may have been involved. Ex. A., (Incident Number #191291).

## II. Policies and Procedures

Defendants concede that they have not produced Settlement-compliant policies. Defendants' Memo 5-6. Even if existing policies comport with American Correctional Association standards, as Defendants assert, the policies must meet *Settlement* requirements. Defendants' initial submission of policies, in Spring 2017, demonstrated no effort to conform policies to Settlement requirements. Defendants point to "11 specific [revised] policies" as proof of more recent efforts to meet Settlement requirements. *Id.* To date, Defendants have produced only three policies that meet Settlement requirements: pre-booking, records, and booking. Monitor's Eighth Report at 10, Doc. No. 33. The United States and the Monitor have provided comments on the remaining eight policies to which Defendants refer, but Defendants have not produced revised versions responding to the most recent comments. Moreover, as described by the Monitor's security expert, eleven revised policies is a "minuscule" number of the total that still need to be drafted, reviewed and edited, if necessary. Ex. B, Excerpt of Transcript of Status Conference, May 29, 2019, at 31:10-11.

Defendants also point to their "engage[ment]" of Karen Albert in late 2018 to assist in drafting policies as proof of progress. Defendants' Memo 5-6. Although Ms. Albert is not a member of the monitoring team, the Monitor recruited and pays for Ms. Albert to provide technical assistance to the County because Defendants took so long to hire a consultant to help with drafting policies.[3] Ms. Albert's consultation is not an example of Defendants' good faith.

---

[3] The Monitor recruited Ms. Albert to help with the release procedures in early 2018, and then later asked her to help more broadly with policy revisions. The County never contracted with Ms. Albert as a consultant to help with

3

Defendants' proposed relief, requiring a short deadline for the United States to approve draft policies or provide "specific edits," fails to address the extremely slow pace at which they have produced initial draft policies.  It also implies that the United States (and the Monitor) have not already provided detailed edits in a timely fashion.  In fact, the United States has consistently provided timely and appropriate comments to each draft policy iteration, which the Monitor has consolidated with the Monitoring team's comments per Defendants' request.  The problem is that the Defendants do not then respond to those comments in a timely manner.

### III.  Use of Force

Defendants do not claim that they have complied with the Settlement's use of force requirements.  Settlement paras. 50-62, 130-31.  In spring 2017, Defendants submitted policies, including a use of force policy, that were not modified to meet Settlement requirements.  U.S. Memo 11.  By their own admission, Defendants did not submit a proposed use of force policy that was purportedly modified to comply with the Settlement until December 2018, after Ms. Albert was hired and long past the Settlement deadline of January 19, 2017.  Defendants' Memo 6; Settlement para. 131.  Defendants submitted the latest version of a proposed use of force policy in June 2019.  The United States and the Monitor provided comments on the proposed policy in July 2019, noting that the policy does not incorporate safeguards such as clearly defined terms and standards, inventory controls, documentation requirements, and proper review procedures as required by the Settlement. [4]  Settlement paras. 50-62, 130-31.  Instead of addressing those comments, Defendants ask the Court to require the United States to approve the

---

policy development.  *See* United States' Memo 3 n.2 (citing Monitor's Seventh Report).

[4]  Defendants incongruously claim that they have improved use of force practices with more "direct supervision" of prisoners while also acknowledging that they cannot properly staff the Jail.  *Compare* Defendants' Memo 7 *with* id 1.  It is also unclear what "direct supervision" has to do with adopting use of force safeguards.  Moreover, training is less likely to be adequate if it is based on poorly constructed policies.

June 2019 version of the policy. Defendants' Memo 7. Doing so would implement a policy that does not comply with the Settlement.[5]

Defendants highlight their Jail Management System ("JMS") and investigative summaries, but do not claim that the system or the summaries have resulted in adequate use of force reporting and review, or timely and thorough investigations that comply with the Settlement. Defendants' Memo 7; *see generally* Settlement, Sec. IV. The Monitor has long expressed concerns about the JMS system, including its inaccuracies and technological deficiencies, as well as Defendants' inability to document and investigate even the most serious incidents. *See* Monitor's Eighth Report 6, 18, 42-50, 79-83, 90-91. The Monitor and the United States also have provided the Court with illustrative, unrebutted examples of the types of incidents that are not fully investigated. *Id.*; United States' Memo 6-10. They include serious assaults, riots, and even a possible homicide. *Id.*

### IV.   Staffing and Prisoner Supervision

All parties acknowledge that current Jail staffing and supervision cannot ensure constitutional compliance. See Defendants' Memo 9. Defendants admit they have made no progress at increasing staffing, with staffing levels remaining "in the 225-240" range over the course of the Settlement. Defendants' Memo 8; United States' Memo 15-17. They contend that stagnant staffing levels are an immutable reality and a drop in Jail population eliminates any need to take additional action. Defendants' Memo 8. Defendants' premise is mistaken. Jail population decreases can help ameliorate staffing shortages only if they enable the Jail to close units or take other actions that permit a decrease in the number of required staffing posts.

---

[5] Defendants' propose to conduct training on use of force and report writing within six months. This proposal would be acceptable if the training is based on policies that comply with the Settlement.

The Monitor and her team have repeatedly offered technical assistance on how to consolidate facilities, reorganize operations, develop a recruitment plan, create step increases for retention, implement direct supervision, improve housing assignment procedures, and make other changes that might allow Defendants to operate the Jail with fewer staff (or better utilize existing staff). United States' Memo 15-17. Defendants have failed to take advantage of this assistance and have not made necessary funding decisions, adopted incremental improvements, or developed a plan to address a dangerous staffing and security situation.

Defendants propose various forms of relief to address understaffing, including complying with Settlement Paragraph 46's requirements for prisoner supervision policies and procedures, obtaining a new staffing study, imposing a population cap, requiring hearings for unindicted detainees, and deciding facility usage. Defendants' Memo 9. Staffing is undoubtedly a primary factor for the ongoing lack of Settlement compliance, and the first step to fixing these problems is to implement the Settlement and the Monitor's priority recommendations.[6]

### V.  Supervisor Qualifications and Training

Defendants acknowledge the validity of the United States' concerns about supervisor qualifications and training. Defendants' Memo 10. They ask the Court to consider the need for "an independent detention operation accountable to the Court rather than just elected officials." Defendants' Memo 10. This proposal appears to resemble a federal receivership. While the United States does not seek a receiver at this time, it agrees with Defendants that the Jail needs professional management. An interim step could include meaningful efforts to comply with the qualified jail administrator requirement of the Settlement. Settlement para. 38. Qualified Jail

---

[6] Defendants suggest that broader problems with the local criminal justice system exacerbate Jail deficiencies. Defendants' Memo 8-9. The Criminal Justice Coordinating Committee ("CJCC") required by the Settlement provides a forum to address broader criminal justice issues. *See* Settlement Sec. IV.N.

management also could be attracted by implementing other longstanding Settlement requirements and associated recommendations from the Monitor and the United States, such as increasing overall staffing levels with more budgeted positions and a recruitment program, enforcing minimum hiring standards to improve supervisor qualifications, and developing clearer policies to reduce arbitrary decision-making by the Sheriff or other County officials. *See, e.g.,* United States' Memo 15-18.

Defendants propose an *in camera* discussion with the Court to discuss individual staff job performance. A more appropriate remedy would target systemic improvements, such as those recommended by the Monitor.

**VI. Physical Plant**

All parties agree that the Raymond facility is plagued by physical security and plant problems. Defendants' Memo 11; United States' Memo 19-21. The question is how to address these longstanding problems. Defendants claim that they have spent in excess of $7 million since 2013 to repair Raymond. Defendants' Memo 11. Regardless of how much the County spends, however, continuing to operate unstaffed units will result in ongoing damage and the need to spend additional money for repairs. Short of moving all unsupervised prisoners out of Raymond, there are a number of longstanding, more limited reforms that Defendants have not implemented, such as hiring a qualified lock repair company or moving from ad hoc maintenance to a more organized, streamlined system that prioritizes critical repairs. *See* United States' Memo 19-21. This is another area in which the lack of a prioritized plan has resulted in stagnation and ongoing danger to prisoners and staff.

Defendants again suggest a number of criminal justice system reforms to address physical plant deficiencies. Defendants' Memo 12. It is critically important, however, that Defendants

implement the Monitor's more concrete recommendations, such as requiring Defendants to hire qualified contractors and creating a formal maintenance program. United States' Memo 18-21.

### VII. Youth Charged As Adults

The Settlement requires Defendants to place juveniles in a safe and secure facility that provides appropriate educational, mental health, and behavioral programs. Settlement, Sec. IV.K. After a protracted period of time, Defendants decided to use Henley-Young Juvenile Justice Center, a short-term youth detention facility, for youth who are charged as adults and had been assigned to the Jail. United States' Memo 21-22; Defendants' Memo 12-13. Having made that decision, Defendants must now ensure that the facility has the appropriate programming and space for more long-term youth, as required by Settlement Sec. IV.K. Defendants have taken steps, but certain additional actions are necessary to enable further progress.[7] For example, the Settlement requires Defendants to: 1) develop and implement a "screening, assessment and treatment program" so that youth with serious mental illness and disabilities receive "appropriate programs, supports, education, and services," Settlement para. 78; 2) provide youth "adequate free appropriate education, including special education," Settlement para. 79; and 3) develop and implement "a behavioral treatment program appropriate for youth," Settlement para. 84. As one means to reach those goals, the Monitor, Defendants, and Henley-Young administrators developed a plan to hire a full-time psychologist. There is, however, no apparent timeline for implementing this plan. *See* United States' Memo 21-23; Defendants' Memo 13-14.

---

[7] Defendants also reference a separate Henley-Young case brought by the Southern Poverty Law Center ("SPLC"). Defendants' Memo 14. While Defendants seek to tie the cases together, the United States only requires that Defendants meet the terms of the Settlement. There is no suggestion that the cases involve competing obligations.

## VIII. Conclusion

For the foregoing reasons, the United States respectfully requests that the Court grant its Motion, conduct expedited contempt proceedings, and order appropriate relief.  The United States also respectfully requests that, prior to scheduling an evidentiary hearing on the United States' Motion, the Court hold a conference with the parties to discuss the hearing's parameters, pre-hearing disclosures, and the scope of any discovery.

                Respectfully submitted,

**FOR THE UNITED STATES:**

| | |
|---|---|
| D.  MICHAEL HURST, JR. | ERIC S. DREIBAND |
| United States Attorney | Assistant Attorney General |
| Southern District of Mississippi | Civil Rights Division |
| | |
| | STEVEN H. ROSENBAUM |
| | Chief |
| | Civil Rights Division |
| | Special Litigation Section |
| | |
| /s/ Candace G. Mayberry | /s/ Laura L. Cowall |
| CANDACE G. MAYBERRY (MS #104014) | LAURA L. COWALL (DC # 481379) |
| MITZI DEASE PAIGE (MS #6014) | Special Counsel |
| Assistant U.S. Attorneys | |
| U.S. Attorney's Office | (202) 514-1089 |
| Southern District of Mississippi | (202) 514-0212 (fax) |
| 501 E. Court Street – Ste. 4.430 | |
| Jackson, MS 39201 | /s/ Christopher N. Cheng |
| candace.mayberry@usdoj.gov | CHRISTOPHER N. CHENG (PA #69066) |
| (601) 973-2838 | Trial Attorney |
| (601) 965-4409 (fax) | christopher.cheng@usdoj.gov |
| | (202) 514-8892 |
| | (202) 514-4883 (fax) |

AARON FLEISHER
Trial Attorney
aaron.fleisher@usdoj.gov

United States Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, N.W.
Washington, DC  20530