**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**UNITED STATES OF AMERICA**                                                                                    **PLAINTIFF**

**V.**                                                                                       **CAUSE NO. 3:16-CV-489-CWR-JCG**

**HINDS COUNTY,** *et al.*                                                                                            **DEFENDANTS**

**ORDER**

Before the Court is the parties' Joint Motion for Settlement. The motion arises from the United States' request to find the Hinds County Board of Supervisors and Hinds County Sheriff Victor Mason in contempt of the July 19, 2016 Consent Decree. In lieu of a trial on the United States' request, the Stipulated Order outlines remedial relief to ensure Hinds County's compliance with the Consent Decree.

The Court has reviewed the parties' pleadings, proposed findings of fact and has considered counsel's responses to the Court's questions raised at a hearing. The motion is ready for adjudication.

**I.      Facts and Procedural History**

Hinds County operates three detention facilities: the Raymond Detention Center (RDC), the Work Center (WC), and the Jackson Detention Center (JDC) (collectively referred to as the "Jail"). On June 23, 2016, the United States filed this complaint seeking to enjoin Hinds County from "depriving Hinds County prisoners of rights, privileges or immunities secured and protected by the Constitution of the United States."[1] The United States described a jail system where riots, assaults, and other forms of violence were commonplace. It noted "serious deficiencies with Jail policies, procedures, staffing," and a host of other issues.

---

[1] Hinds County has incarcerated both pretrial detainees and persons convicted of misdemeanors and felonies in the Jail. The Court will often refer to those incarcerated in the Jail as "prisoner" in this Order despite this distinction.

On July 19, 2016, Judge Barbour approved a consent decree between the parties with the express goals of providing those imprisoned in Hinds County "with reasonable safety, protection from harm, and conditions of confinement that conform to the requirements of the United States Constitution and federal law." The Consent Decree requires Hinds County, acting through its Sheriff and Board of Supervisors, to make significant changes to its system of incarceration.

On August 18, 2016, Judge Barbour granted the parties' joint motion to appoint Elizabeth Lisa Simpson as the monitor of the Consent Decree.[2] Simpson provides the Court with periodic reports describing the status of the County's compliance based on visits to the Jail and other communications. Due to Judge Barbour's retirement the matter was reassigned to the undersigned on December 17, 2018.

Regretfully, despite more than three years having passed, Hinds County has yet to reach compliance with the Consent Decree.

Assaults at the Jail remain commonplace. The Monitor identified 39 reported assaults in June and August 2018 alone. These assaults are violent, with prisoners being sent to the emergency room for stab wounds, dislocations, broken bones, and collapsed lungs.

In September 2018, Landon Veal was so brutally beaten while at RDC that he can no longer function independently. Officers who responded to the scene left him lying on the floor – without providing first aid – while they questioned others on the scene about what happened. The officers then left. It was only in October 2019, when media released video of the incident, that the Monitor and the Court learned the extent of the violence and circumstances of the assault.[3]

---

[2] Ms. Simpson has assembled a team of experts to assist her with her duties. They have done an excellent job.
[3] Veal has filed a lawsuit against these defendants. *Landon James Veal, by and through his General Guardian Joanne Palmer v. Hinds County, Miss.*, Civil Action. No., 3:19-CV-485-CWR-FKB (S.D. Miss.). In the Complaint he alleges that his counsel obtained surveillance video from the RDC and the "video clearly shows a jail which is out of control. Hinds County and Sheriff Mason have essentially relinquished control of the jail to the inmates." Docket No. 1.

In December 2018, a person incarcerated at RDC was beaten and stabbed to death by other prisoners. Five people were involved, several of whom have since been charged with murder. The initial and supplemental incident reports did not even include the fact that the person had been killed. The Consent Decree requires such basic reports.

Numerous incidents of excessive force by correctional officers occur at RDC. Officers or their supervisors fail repeatedly to report these incidents of use of force. On November 28, 2018, a sergeant picked up a shotgun, walked into a person's cell, and repeatedly struck the person with the butt of the shotgun. *See* Monitor's Seventh Monitoring Report, Docket No. 27 at 36 (Mar. 5, 2019). To make matters worse, the involved officers then lied to the Sheriff's Internal Affairs Division investigator about a number of issues. *Id.* Officers have punched prisoners in the face, used tasers, and used chemical restraints on prisoners without supervisory approval, something which is in direct contravention of the Consent Decree.

RDC has a disturbing history of riots. A riot occurred on April 19, 2019. Three more followed in late June 2019. During the June riots, prisoners effectively took over one of the three pods that make up RDC. The prisoners threatened to stab officers with shanks and took their keys. At some point, officers barricaded themselves into a control room for their safety – ceding control of the pod until help arrived. The officers planned to retreat into the control room's bathroom should the prisoners breach the control room door, which thankfully did not occur.

Many factors contribute to the continuing lack of safety. For sake of clarity, the Court has identified three primary areas of concern: physical infrastructure, policies and procedures, and staffing and management.

A.      **Physical Infrastructure**

Under the Consent Decree, Hinds County had to make certain physical improvements to its jail facilities. That did not happen.

At RDC, doors and locks are broken. Prisoners can "break out of their cells, break out of their housing units and even enter a [jail] control room." Monitor's Eighth Monitoring Report, Docket No. 33 at 35 (June 27, 2019). RDC lacks a working sprinkler system and fire hoses, making fire safety a "critical area of concern." *See* Monitor's Ninth Monitoring Report, Docket No. 46 at 4 (Nov. 13, 2019). At WC, County maintenance was supposed to repair and upgrade the entry doors in housing units 1 and 3, but instead tack welded one side of the door, meaning the door "can still be forced open" by prisoners. *Id.* at 33. At JDC, the facility still "does not have an outdoor recreation yard." *Id.* at 18.

Conditions of confinement are deplorable. Prisoners live in units that are infested with rats, roaches, snakes, and spiders. During the Court's August 2019 visit to all three facilities, prisoners at RDC were forced to eat while sitting on the floor because of a lack of tables and seating.[4] The Court was told that the County would get tables and seating by November. Counsel for Hinds County did not inform the Court that the tables had been installed until December 2019.

The lack of compliance continues despite Hinds County purportedly having spent over $7 million on its detention facilities since 2013 and approved an additional $500,000 for the final months of 2019.

---

[4] They had to sit on the floor rather than in their darkened cells inches from their toilets, many of which were not functioning properly. The cells were darkened because there were no working lights in the cells. Such conditions are clearly dehumanizing and inexcusable.

4

B.   **Policies and Procedures**

According to the Consent Decree, Hinds County should have created a policies and procedures manual well over two years ago. The Monitor advises that such a manual would likely include more than 100 individual policies, ranging from medical care to use of force. To date, Hinds County has only three developed policies that meet the standards of the Consent Decree. **Three!**

The County says that the policy review process is cumbersome and stymied by the overzealous edits and feedback of the United States. It is difficult to credit because after Hinds County received feedback on policies it had drafted in early 2017, it failed to follow through and institute a plan to address the feedback. There was no progress on the policies until 2018, when a consultant with the Monitoring Team took initiative and began to help the County.

The lack of policies has resulted in a failure to institute many of changes mandated by the Consent Decree. Staff lack guidance on the proper standards and procedures to follow. Record keeping remains inconsistent and untrustworthy.

C.   **Staffing and Management**

From the beginning, the lack of adequate staffing posed a critical barrier to the County's compliance with the Consent Decree. The lack of staffing and supervision directly impacts safety and the flow of contraband. Incident reports show that most assaults occur when no officers are present. *See* Monitor's Sixth Monitoring Report, Docket No. 24 at 17 (Nov. 15, 2018). Incidents are often only discovered after the fact or when prisoners call for assistance during an assault. *Id.* Without supervision, prisoners regularly leave their housing units and the facility. In one incident described in Monitor's June 2019 report, two prisoners were found outside RDC, not to escape but to recover three bags of contraband to bring back into the facility.

The Consent Decree requires Hinds County to adequately supervise prisoners and safely operate its jail facilities. It defines "adequate" as following the "direct supervision" method in which detention officers are placed inside housing units and have "continuous direct contact with prisoners and are not routinely separated from prisoners by physical barriers." Direct supervision requires routine interactions with and checks on prisoners by detention officers. According to Hinds County's updated staffing needs analysis, a total of 433 positions are required to fill all posts in the Jail assuming the facilities were operating at capacity. This translates to staffing levels of 5 people in administration, 280 at RDC, 64 at WC, and 84 at JDC.

Hinds County's facilities are not operating at capacity today, meaning the required staffing levels are lower. Given Hinds County's decision to return State prisoners to the Mississippi Department of Corrections ("MDOC") and other reasons, both WC and JDC are significantly underutilized. *See* Docket No. 46 at 14. Given the closure of one of its three pods and other factors resulting in a smaller prisoner population, RDC only requires 246 positions. However, as of November 2019, only 113 staff positions were filled at RDC. In other words, RDC has less than half of the staff it needs to run safely.

The County faces many challenges with hiring and retaining staff, especially officers and management. While it has hired additional detention officers in the past year and approved a pay increase, it lost a greater number of officers. Despite the Consent Decree requiring specific education and work experience for all supervisors and trainers, the County repeatedly hires people who do not meet these requirements. At RDC, this means that not only are there not enough staff, but that the current staff are being managed or trained by people who lack the qualifications to help them do their job effectively.

Perhaps most troubling, Sheriff Victor Mason – who left office in December 2019 – repeatedly failed to respect the authority of the qualified individuals who are in management roles. The Consent Decree requires that a qualified Jail Administrator and Assistant Jail Administrator manage the bulk of the day-to-day operations of the Jail. Yet, the Monitor cites numerous examples of Sheriff Mason intervening or directly contradicting their efforts.

For example, on June 7, 2018, Hinds County Sheriff Deputies and MDOC officers conducted a random "shakedown" at the Jail without authorization of the Jail Administrator and in contravention of the Consent Decree. During the shakedown, officers shot a 12-gauge shotgun filled with blanks to create a "noise diversion," again outside of the standards set in the Consent Decree. The Monitor notified Sheriff Mason in her August 2018, November 2018, and March 2019 reports that he needed to issue "an order permanently curtailing the use of law enforcement and outside agency officers to conduct such shakedowns." Sheriff Mason did nothing to address the issue until March 29, 2019, when he issued a special order giving the Jail Administrator the authority to "execute all duties and responsibilities relating to Detention Services." Since the special order, there have been no shakedowns. According to the Monitor, the Sheriff still regularly intervened in other personnel decisions or activities that were solely in the purview of the jail administrators under the Consent Decree.

**D.     Summary**

As of the most recent Monitor's report, the County has reached sustained compliance (meaning compliance for at least 18 months) in only one of the 92 requirements of the Consent Decree. *Only one*. The County has reached substantial compliance in six and partial compliance in 47 areas. The County has made improvement towards the classification of prisoners, hiring of some qualified personnel, provision of mental health services, use of well-being checks,

implementation of training requirements, and drafting of certain policies. However, a constant refrain in the Monitor reports is that there has "been no change" with the County's compliance in numerous areas. In general, the County has failed to comply with the Consent Decree, which requires the County to have achieved and maintained substantial compliance with the Agreement for at least two years.

## II. Legal Standards

### A. Consent Decree

"A consent decree embodies an agreement of the parties and is also an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgment and decrees." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431 (2004) (quotation and citation omitted). "A consent decree is akin to a contract yet also functions as an enforceable judicial order." *United States v. Chromalloy American Corp.*, 158 F.3d 345, 349 (5th Cir. 1990). "Courts possess the inherent authority to enforce their own injunctive decrees." *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985) (quotations and citation omitted).

### B. Contempt

To establish civil contempt, the movant "bears the burden of establishing by clear and convincing evidence: (1) that a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000) (quotations and citation omitted). If a violation of the order is demonstrated, the burden shifts to the violating party to "show either mitigating circumstances that might cause a district court to withhold the exercise of its contempt power, or a substantial compliance with the consent order." *Whitfield v. Pennington,* 832 F.2d 809, 914 (5th Cir. 1987).

### C. Settlement Agreements

The parties have come to the Court having worked out yet another agreement, which they believe should be adopted.

"In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (citation omitted). The Court must analyze "the facts and law relevant to the proposed compromise." *Id*. The Court's role is not to adjudicate the dispute, however, since "[t]he very purpose of the compromise is to avoid the delay and expense of such a trial." *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982) (citation omitted).

## III. Discussion

Here, the terms of the Consent Decree were negotiated by the parties. They advised the court that "all parties were in agreement with the terms of the Settlement Agreement . . . and requested the Court to sign th[e] Order approving and implementing the Settlement Agreement." Docket No. 8.[5] They told the Court that the "Agreement [was] reasonable and equitable, and reflects the Parties' mutual desire to protect the constitutional rights of Hinds County prisoners while avoiding the burdens of contested litigation." Docket No. 2. Based upon these representations, the Court adopted the order presented by the parties.

Today, the parties agree that Hinds County has not reached compliance with all provisions of the Consent Decree. Docket No. 54 at 2. In fact, there has been no sustained compliance with 91 of the 92 requirements of the Consent Decree. Yet, to not waste "time in an

---

[5] In the Settlement Agreement the parties "stipulate[d] and agree[d] that all of the prospective relief in this Agreement is narrowly drawn, extends no further than necessary to correct the violations of federal rights as set forth by the United States in its Complaint and Findings Letter, is the least intrusive means necessary to correct these violation, and will not have any adverse impact on public safety or the operation of a criminal justice system." Docket No. 8-1, at ¶ 167.

unnecessary and protracted trial," the United States and Hinds County ask this Court to enter a stipulated order defining a remedial plan for Hinds County to get on a path to compliance.

While not explicitly stated, the parties are inviting the Court to sidestep the issue of whether Hinds County should be found in contempt. Instead, the parties ask the Court to merely give Hinds County one more chance to comply with the Consent Decree.

Allowing the County to move forward without facing accountability is concerning given the extent of the County's failings. At least one prisoner has died, and numerous others have been stabbed, brutally beaten, and assaulted while the County failed to meet the terms to which it agreed. The County even fails to meet one of the most basic requirements of a jail: providing working doors. The County has subjected its prisoners, its corrections officers, and the broader community of Hinds County to danger from its repeated failure to take this Consent Decree seriously.

These kinds of conditions, here and elsewhere, create the environment for local communities to call into question our very system of criminal justice. Calls to shut down prisons are being made here in Mississippi and across the country.[6] Given failures of those trusted to oversee and ensure the constitutionality of our jails and prisons, as seen in the instant case with Hinds County, the views held by prison abolitionists are resonating with a growing number. What positive value to our society are jails and prisons that fail to have working doors?

---

[6] *See* Alissa Zhu, *'Shut down MDOC': Here's why advocates are calling for feds to investigate Mississippi prisons*, Clarion Ledger (Jan. 8, 2020, 4:05 PM), https://www.clarionledger.com/story/news/2020/01/08/why-advocates-calling-feds-investigate-mississippi-prisons/2845650001/; *see also* Matthew Haag, *N.Y.C. Votes to Close Rikers. Now Comes the Hard Part*, N.Y. Times (Oct. 17, 2019), https://www nytimes.com/2019/10/17/nyregion/rikers-island-closing-vote html; Jill Tucker and Joaquin Palomino, *In historic move, SF supervisors vote to close juvenile hall by end of 2021*, San Francisco Chronicle (June 4, 2019), https://www.sfchronicle.com/bayarea/article/Closure-of-SF-s-juvenile-hall-less-than-one-13936500.php; Ross Terrell, *Atlanta Activists Continue Push to Close City Jail*, GPB Radio News (May 6, 2019), https://www.gpbnews.org/post/atlanta-activists-continue-push-close-city-jail; Fernando Tormos-Aponte and Clarissa Rile Hayward, *Close the Workhouse campaign gains momentum*, The St. Louis American (Apr. 9, 2019), http://www.stlamerican.com/news/columnists/guest_columnists/close-the-workhouse-campaign-gains-momentum/article_6f2b2694-5ad3-11e9-a2f6-6fc099d8c855 html.

Given the facts at hand, the Court should find Hinds County and Sheriff Mason in contempt. The Consent Decree has been in effect. Hinds County and Sheriff Mason were required to take certain steps under the Consent Decree, and the evidence is overwhelming that the defendants failed to meet those requirements. *See Am. Airlines Inc.*, 228 F.3d at 581. While failings of the broader criminal justice system have impacted the County's ability to comply – like the extended time it takes for cases to move to disposition in the local court system[7], both the Sheriff and the Board of Supervisors took actions that were in direct contravention of the Consent Decree. These actions range from the Sheriff's staffing and oversight decisions in the Jail to the Board's approval of – and lenience with – contractors who failed to make required repairs month after month.[8] Hinds County's entire system of incarceration has failed to meet the standards of the Consent Decree and ensure the constitutional treatment of its prisoners.

While a finding of contempt is warranted, the parties' stipulated order outlines what is perhaps the most comprehensive remedial plan for Hinds County to become compliant that the Court has seen from the parties. Ten months from today, the County should have made significant progress on developing and implementing policies, making repairs to the physical plant and ensuring incarcerated youth have necessary programming, among other necessary investments. The terms of the Stipulated Order are "fair, adequate and reasonable and . . . not the

---

[7] Seyma Bayram, *What Can the Hinds DA Do to Cure the System*, Jackson Free Press (Oct. 2, 2019), https://www.jacksonfreepress.com/news/2019/oct/02/what-can-hinds-da-do-cure-system/. The excessive delay in having cases process from indictment to disposition is well documented. *See, e.g.*, *Patterson v. Hinds Cnty*, No. 3:13-CV-432-CWR-FKB, 2016 WL 7177762 (S.D. Miss. June 10, 2016); *Patterson v. Kidd*, 3:13-CV-432-CWR-FKB, 2014 WL 4773977 (S.D. Miss. Sept. 24, 2014); *Franklin v. State*, 136 So.3d 1021, 1038 (Miss. 2014). At various status conferences the Court has convened with the parties, counsel for the County and the Sheriff have pointed their fingers at the District Attorney as the cause of this delay. Hinds County voters elected a new district attorney in the same election that they ousted Sheriff Mason. Hopefully, while this remedial plan is in place, these parties will not be able to suggest that the new district attorney is a cause of many of the problems.

[8] The Court is particularly disturbed by Sheriff Mason's conduct. Many of his actions served no purpose other than to frustrate the county's compliance with the consent decree. For him, the silver lining to his recent electoral defeat is that the Court is refraining from holding him in contempt as he will have no role, managerial or otherwise, with this Jail and, hopefully, no other jail.

product of collusion between the parties." *Cotton*, 559 F.2d at 1330. Accordingly, the parties' Motion for Settlement is granted.

Given the changes in the Sheriff's office and on the Board of Supervisors – as well as the District Attorney's office, the Court trusts that the proposed remedial plan will be implemented in good faith and with all speed. An agenda from a recent Board meeting highlights its effort to make the necessary investments to implement the Stipulated Order, even before the Court reached a decision on the Joint Motion. Such initiative hopefully signals that sustained compliance is forthcoming.

However, the Court reminds the parties that "[o]nce invoked, 'the scope of a district court's equitable powers . . . is broad, for breadth and flexibility are inherent in equitable remedies.'" *Brown v. Plata*, 563 U.S. 493, 538 (2011) (citation omitted). This Court will do whatever it takes within the confines of the law to ensure the parties follow the Consent Decree and we finally see an end to the violence and neglect that has plagued the Jail all these years.

## IV.    Conclusion

The parties' Joint Motion is **GRANTED.** The Stipulated Order is attached as Exhibit 1 to this Order.

**SO ORDERED**, this the 16th day of January, 2020.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE