**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DISTRICT**

**UNITED STATES OF AMERICA**                                                                 **PLAINTIFF**

**VS.**                                          **CIVIL ACTION NO. <u>3:16-CV-00489-CWR-JCG</u>**

**HINDS COUNTY, ET AL.**                                                       **DEFENDANTS**

<u>**STIPULATED ORDER**</u>

THIS MATTER comes before the Court on the parties' Joint Motion for Entry of Stipulated Order (ECF No. 53), filed on December 16, 2019 to resolve the United States' Motion for an Order to Show Cause Why Defendants Should Not be Held in Contempt (June 24, 2019), ECF No. 30.

In the interest of expediting Defendants' compliance with the parties' Settlement Agreement ("Settlement") (ECF No. 8-1), which was entered as an Order of the Court on July 19, 2016, ECF No. 8, it is hereby

**ORDERED** that the parties' Joint Motion for Entry of Stipulated Order (ECF No. 53) is **GRANTED**, and it is further

**ORDERED** that, in granting the parties' Joint Motion, the Court finds, as agreed by the parties and demonstrated by the record, that:

1.     Defendants are not in compliance with all provisions of the parties' Settlement Agreement (ECF No. 8-1), which was entered as an Order of the Court on July 19, 2016, ECF No. 8.

2.     As a result, more specific remedial relief is necessary, as set forth below.

    3.    The specific relief set forth below complies in all respects with the provisions of 18 U.S.C. § 3626(a).  The relief is narrowly drawn, extends no further than necessary to correct ongoing violations of federal rights agreed by the parties with the entry of the Settlement Agreement, and is the least intrusive means necessary to correct these violations, and will not have an adverse impact on public safety or the operation of the criminal justice system.

    4.    The Settlement remains in effect.  This Order does not waive any Settlement requirements.

As stipulated by the parties, it is further

**ORDERED** that specific relief will consist of the following:

The County shall complete all of the enumerated items below by the indicated dates, which are to be calculated from the entry date of this Order.  For any provision requiring a plan, the Settlement's policy review and approval process, Settlement § 6, as modified by this Order, shall apply.  Specifically, the United States and the Monitor shall provide input and have the opportunity to review and approve the plans.  Plans required by this Order must indicate tasks, deadlines, responsible individuals, and any necessary funding sources.  All plans shall be implemented upon approval by the United States and the Monitor.

The Settlement's self-reporting and monitoring processes, Settlement § 7, also shall apply to this Order.  The County shall report on its progress with this Order as it is required to report on progress with the Settlement.  The Monitor shall monitor compliance with this Order as the Monitor does with the Settlement.  One year from the entry of this Order, the parties shall reconvene with the Court to determine whether additional compliance plans are necessary.

I.    SAFETY & SECURITY/PHYSICAL PLANT

    A. The County shall use a qualified security contractor, with the assistance and oversight of an architect with corrections experience, to accomplish the following safety and security

measures at Raymond Detention Center. That architect shall conduct periodic inspections of the contractor's work and report to the Monitor.

1. In any occupied pod, the County will convert all control room doors, housing unit entry doors, recreation yard doors (that open into the "horseshoe"), isolation doors and "cage doors" to electronically controlled swing doors to the control panel so they can be electronically operated with a CML type locking mechanism. The County will complete door conversion within 4 months.

2. Within 4 months, the County shall reinforce all C Pod cell doors with a strip of steel to reduce the risk of tampering as part of the ongoing renovation of this Pod.

3. In B Pod, the County shall modify the control room doors, housing unit doors, and recreation doors to swinging doors. The County also shall install a new electronic control panel so that all doors can be electronically controlled. The "cage" doors have a keyway on only one side. The County also shall upgrade the "cage" doors so that there is a keyway on each side (as is currently the case in C Pod). The County shall repair the primary security door that controls access between the main corridor (Great Hall) and B Pod as a part of the B Pod modifications so that it can be controlled electronically from master control. These repairs will be completed within 4 months.

4. The County will reinstall the fire hoses in secured cabinets as part of the renovation process of each pod. This will be completed within 4 months.

5. The County shall convert the cell doors in B Pod Units 3 and 4 to swinging doors with the CML type locking mechanism that is in place in the sample cell in C Pod. The County shall also reinforce the cell doors in Units 1 and 2 with a strip of steel as is being used in C Pod. These renovations will be completed within 6 months.

6. If A Pod is not utilized for housing, renovation of A Pod recreation yard and cage doors and the control panel may be postponed until such time as it is used for housing. If A pod is used even on an occasional basis, these doors will be converted to secure swinging doors and tied to a new control panel.

7. The County shall replace all holding cell doors in the booking area with modern full transparent panel (both top and bottom) security doors to facilitate deputies conducting a documented fifteen-minute well-being check on each multi-person cell and occupied single cell. The County will discontinue the use of the holding cells that are not directly visible from the booking station. This will be completed 6 months.

B. Within 10 months, the County shall complete a Master Plan to determine the long-term use of each of the three facilities and evaluate the option of building a new facility or further renovating existing facilities. To implement the Master Plan, the County shall:

3

1. Retain a consultant with experience in master planning to facilitate the process of long-term planning The County will retain the consultant within 4 months.

2. The plan will include deadlines for other necessary safety and security repairs and renovations at all three facilities, as long as they remain open, including deadlines for installing necessary fire suppression/prevention systems, all of which will be conducted by a qualified security contractor.

3. Work with the monitoring team to gather the information that is needed for the long-term planning process.

4. Form a committee to develop and implement the Master Plan, which will include the County Administrator, the Sheriff, the Jail Administrator, the facility captains, and the Board of Supervisors President. Other members may be included at the discretion of the County and the Sheriff. The Committee will be formed within 4 months.

II. SAFETY AND SECURITY/STAFFING

A. Within 3 months, the County shall create a staffing plan to increase the supervision of inmates at RDC. The plan shall include the following:

1. A plan to provide direct supervision for Pod C when it reopens.

2. A staffing plan which optimizes the use of available staff to provide supervision at all three facilities including, among other strategies, rotation of staff from JDC and the WC to RDC to increase the staff coverage of RDC.

3. An increase in the time that officers are in the housing units at RDC by having the control officers fill out the housing unit logs based on radio communication from the housing unit officers and utilize welfare check sheets at the cell doors of those inmates held in segregation.

4. At the Work Center, installation of an alarm system on the housing unit fire exit doors. The County will add a camera that covers each of the four fire exit doors. This will allow only one officer to manage each housing unit and will result in an opportunity to assign 20.4 positions to other areas or facilities. This work will be completed within 3 months.

B. The County shall improve recruitment and retention initiatives to ensure adequate levels of competent staffing to provide reasonably safe living conditions in the Jail.

1. Within 30 days, the County shall retain an appropriately credentialed corrections recruitment and retention consultant, with input from the Monitor.

2. Within 4 months, the County shall hire or designate a full-time Recruitment Officer within the Detention Division specifically for recruitment of detention officers.

    3. Within 4 months, with the assistance of the recruitment and corrections consultant, the County shall develop a Recruitment and Retention Plan to implement the substantive requirements of the Settlement.

    4. Within 6 months, the County shall develop and implement a process that provides criteria for merit-based promotion and establishes a career ladder.

    5. Within 10 months, the County shall implement a plan for retention pay based on merit, time in service, or a combination.

C. The County shall Hire a Jail Administrator that meets the requirements of Paragraph 38 of the Settlement Agreement.

    1. Within 60 days, the County shall adjust the job description as needed to adhere to the minimum qualifications and post the position at a locally competitive salary.

    2. If there is a qualified candidate(s), the County shall make an offer to hire an individual to fill the position within 4 months of posting the position. If there is not a qualified candidate, the County, Monitor and United States will confer to determine next steps and will report to the Court regarding the same.

    3. Within 30 days of hiring the Settlement-compliant Jail Administrator, this individual shall evaluate the organizational structure of the three-facility jail system and develop a plan to reassign staff consistent with any change in the organizational structure.

## III. DEVELOPMENT AND IMPLEMENTATION OF POLICIES AND PROCEDURES

A. The County shall accelerate the development and adoption of policies and procedures.

    1. Within 60 days, the County shall provide a Table of Contents listing the policies and procedures to be developed, anticipated deadlines for completion of each draft policy, and deadlines for submission of each draft policy to the Monitor and DOJ. The Table of Contents deadlines shall prioritize policies that are necessary for safety and security. The Monitor and DOJ shall have the opportunity to review and approve the Table of Contents.

    2. The County's policy committee will provide draft policies to the monitoring team and DOJ consistent with the timeline identified in the Table of Contents, will notify the Monitor and DOJ of any anticipated delays to meeting projected submission dates and will implement an identified plan to correct the delays. The monitoring team and DOJ will make a good faith effort to return comments and suggestions about the draft policies within a two-week time frame. The policy committee will make a good faith effort to incorporate those suggestions and consider those comments.

3. Within 14 days of receiving the Table of Contents, DOJ will identify policies that may be disseminated to staff on an interim basis before the Settlement-required policy review and approval process is completed. Approval of these policies by the Monitor and DOJ will still be required to achieve compliance with the Settlement Agreement.

4. The above provisions are specific remedial relief to the Settlement-required policy review and approval process, which remains in effect.

B. The County shall develop a plan for implementation of the policies.

1. Within 3 months of the United States' and Monitor's approval of each policy or procedure, the County shall develop the curriculum and materials for training on the new policy or procedure.

2. Within 3 months of the United States' and Monitor's approval of each policy or procedure, the County shall develop the training plan for training new and current detention officers and staff on the new policy or procedure, with dates for completion of each set of training.

C. The County shall increase staff accountability for complying with use of force requirements.

1. Within 30 days, the Jail shall ensure that handheld video recorders are available and planned uses of force are video recorded.

2. Within 5 months, an individual experienced in corrections shall train deputies on a Settlement-compliant use of force policy, including Settlement requirements for reporting of use of force.

3. Within 5 months, supervisors shall be trained on use of force reviews so that they include collection and preservation of videos, witness statements, and medical records. This training shall emphasize supervisors' responsibility for ensuring complete use of force reports and for referring staff for training and investigation, as required by the Settlement.

IV. POPULATION MANAGEMENT

A. The County shall develop a Pretrial Services program to provide for long-term population management which will maximize the options in facility use. The program shall include the following:

1. Within 4 months, the County shall retain a consultant experienced in the area of implementation of pretrial services programs.

    2. Within 4 months, the County shall hire a full time individual qualified to oversee the development and implementation of a pretrial services program. This individual shall have or within 12 months shall obtain certification by the National Association of Pretrial Services Agencies (NAPSA).

    3. The County shall engage stakeholders in the implementation of a pretrial services program either through the CJCC or a specially formed committee.

    4. The County shall provide the technical support for implementation of a risk assessment instrument for purposes of pretrial release decision-making. That risk assessment shall be implemented within one year after retaining the pretrial services consultant.

    5. The County shall authorize the free attendance at NIC training for pretrial executives for individuals involved in the development of the pretrial program within 9 months.

## V. HENLEY-YOUNG

    A. Within 30 days, the County will post at a locally competitive salary for a full time clinical social worker or psychologist to serve as a treatment director or coordinator. If there is a qualified candidate(s), the County will make an offer within 3 months of posting the position. If there is not a qualified candidate, the County will consult with the Monitor and United States to determine appropriate adjustments to the recruiting process and will report regularly, and at each status conference, regarding its efforts. If a clinical social worker is hired for the position, the County will contract with a psychologist to provide any assessment, therapeutic or consultation services needed in addition to the services of the clinical social worker. The County will consult with the Monitor to set the appropriate number of contract hours.

    B. Within 3 months, Henley-Young shall administer a daily program, including weekends and holidays, to provide structured educational, rehabilitative, and/or recreational programs for youth during all hours that youth shall be permitted out of their cells. Programming shall include:

        1. Activities which are varied and appropriate to the ages of the youth;

        2. Structured and supervised activities which are intended to alleviate idleness and develop concepts of cooperation and sportsmanship;

        3. Supervised small group leisure activities, such as a wide variety of card and table games, arts and crafts, or book club discussions; and

        4. Hinds County, by and through its County Administrator and/or Executive Director at Henley-Young, shall maintain exclusive control and maintenance of any facilities or technology that promotes compliance with this provision.

C. The programming described in Paragraph B shall include group and individual psychosocial skill building programs designed to address criminogenic needs and promote positive youth development such as:

1. cognitive behavioral programming;
2. independent living skill training;
3. relationship and positive communication skills;
4. anger management;
5. peer refusal skills;
6. trauma informed programming; and
7. pre-vocational skill building.

**SO ORDERED**, this the 16th day of January, 2020.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE
