IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA                                                         PLAINTIFF

V.                                                                    CAUSE NO. 3:16-CV-489-CWR-JCG

HINDS COUNTY, *et al.*                                                          DEFENDANTS

**ORDER**

On April 10, 2020, Defendant Hinds County received the unfortunate news that a detention officer at the Raymond Detention Center tested positive for COVID-19, the respiratory disease caused by the novel coronavirus SARS-CoV-2. The officer was last at work on April 3, when she interacted with much of the detention center's leadership team. (A screening that morning failed to identify any symptoms from the employee.) According to the County, it subsequently identified 18 persons who had "close contact" with the officer and arranged for those persons to self-quarantine.

COVID-19 poses a serious threat to this country. Every State has been affected by it.[1] Employees and the incarcerated in jails and prisons are at peculiar risk. Hinds County is no exception. Incarcerated populations are uniquely susceptible to COVID-19 because "the most important strategy of physical distancing simply is not possible in prisons, jails, and detention centers."[2] The virus spreads quickly and easily. For example, after one Arkansas Department of

---

[1] *See* Justine Coleman, *All 50 states under disaster declaration for first time in US history*, The Hill (Apr. 12, 2020), https://thehill.com/policy/healthcare/public-global-health/492433-all-50-states-under-disaster-declaration-for-first. Mississippi saw its first diagnosis on March 11, 2020. *See* Sarah Fowler, *Coronavirus in Mississippi: 88 new cases, eight deaths reported Wednesday*, The Clarion Ledger (Apr. 8, 2020), https://www.clarionledger.com/story/news/2020/04/08/coronavirus-mississippi-new-cases-deaths-reported-april-8-wednesday/2963852001/. Today, 36 days later, there have been 3,624 confirmed cases and 129 deaths. *See Coronavirus Disease 2019 (COVID-19)*, Mississippi State Department of Health, https://msdh.ms.gov/msdhsite/_static/14,0,420.html#caseTable (last visited Apr. 16, 2020).

[2] Letter from Harvard T.H. Chan School of Public Health and Harvard Medical School faculty to Massachusetts Governor Charlie Barker (Mar. 31, 2020), https://cdn1.sph.harvard.edu/wp-content/uploads/sites/2464/2020/03/HCSPH-HMS-Faculty-Letter-on-COVID-19-in-jails-3-31-20-FINAL.pdf; *see*

Corrections prisoner tested positive for the virus, subsequent testing of his housing unit unearthed that 43 of the 46 other men in his unit were also positive and asymptomatic.[3] The symptoms, while sometimes mild, can be fatal. At least two detainees have died at the New York City Department of Corrections' Rikers Island facility, where more than 330 detainees and 650 employees have tested positive.[4] In the federal system, the Bureau of Prisons estimates that 449 prisoners have tested positive and 16 have died.[5] The death toll increases every day.  It's grim.

In this case, the Monitor has informed the Court that Hinds County took several steps to prevent the introduction of the virus, including disinfecting housing units, limiting visitation, conducting temperature screenings of employees as they enter facilities, and efforts to get additional testing. However, now that the virus has been introduced to the jail system, the County's plans to mitigate the virus' inevitable damage are unclear.

In Arkansas, the Department of Corrections had received 250 testing kits from the state health department after its first positive COVID-19 case, so it was able to test and quarantine prisoners almost immediately after. The Court is unaware of the extent of Hinds County's testing capability or whether the system has the capacity to quarantine the potentially hundreds of

---

also *United States v. Roeder*, No. 20-1682, 2020 WL 1545872, at *2 (3d Cir. Apr. 1, 2020) ("It goes without saying that prisons generally are crowded spaces and therefore are less than conducive to the practice of social distancing."). Even the simple task of washing the hands frequently with soap and warm water eludes the incarcerated. *See, e.g.,* Keri Blakinger and Beth Schwartzapfel, *Soap and sanitizer can keep coronavirus at bay, but many prisoners can't get them*, USA Today (Mar. 7, 2020), https://www.usatoday.com/story/news/investigations/2020/03/07/prison-policies-inmates-best-coronavirus-practices/4978412002/.

[3] Samantha Michaels, *Want to Know How Fast Coronavirus Can Spread in Prison? Look at Arkansas*, Mother Jones (Apr. 13, 2020), https://www motherjones.com/coronavirus-updates/2020/04/cummins-unit-prison-arkansas-coronavirus-spread/.

[4] *Daily Covid-19 Update, Wednesday April 15, 2020*, New York City Board of Correction, https://www1.nyc.gov/assets/boc/downloads/pdf/News/covid-19/Public_Reports/Board%20of%20Correction%20Daily%20Public%20Report_4_15_2020_To%20Publish.pdf (last visited Apr. 16, 2020).

[5] *Covid-19 Coronavirus*, Federal Bureau of Prison, https://www.bop.gov/coronavirus/ (last visited Apr. 16, 2020).

detainees currently incarcerated in the jail who either are already infected or may become infected.

The parties entered into the Consent Decree to ensure, in part, that the "conditions of confinement . . . conform to the requirements of the United States Constitution and federal law." Docket No. 8-1 at 4. The County has primary responsibility for meeting those requirements, but this Court "possess[es] the inherent authority to enforce" the Consent Decree. *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985) (quotations and citation omitted).

Absent adequate measures to test detainees for COVID-19 and isolate those who test positive, the Court is concerned that the conditions of confinement at Hinds County's jails may fall short of the detainees' right "to be secure in [their] basic human needs, such as medical care and safety." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 648 (5th Cir. 1996) (en banc); *see also, e.g., United States v. Norbert*, 3:19-CR-50-CWR-FKB, Docket No. 42 at 6 (S.D. Miss. Apr. 8, 2020). The safety of jail employees is equally concerning and important, since without adequate staff, the facilities will run at even greater risk of danger.

The Court has several outstanding questions, including:

1. Does the Jail staff have enough personal protective equipment?
2. How many COVID-19 tests are available for testing detainees?
3. Does Hinds County have adequate access to medical care for detainees, assuming there are severe cases that require hospitalization?
4. Is there enough space in the Jail to quarantine or isolate symptomatic detainees separately given CDC guidance?[6] If not, has the County identified alternatives, such as housing detainees elsewhere like some other states have done?[7]

---

[6] *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited Apr. 16, 2020).

[7] *See, e.g.,* Abbie Vansickle, *A New Tactic To Fight Coronavirus: Send The Homeless From Jails To Hotels*, The Marshall Project (Apr. 6, 2020), *https://www.themarshallproject.org/2020/04/03/a-new-tactic-to-fight-coronavirus-send-the-homeless-from-jails-to-hotels*

Accordingly, the Court believes a telephonic hearing is necessary to hear the steps the parties are taking to meet their obligations as set forth in the Consent Decree. The Court will schedule that call.

**SO ORDERED**, this the 16th day of April, 2020.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE
