IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**UNITED STATES OF AMERICA**                                                      **PLAINTIFF**

**VS.**                                                    **CIVIL ACTION NO. 3:16-CV-489-CWR-RHWR**

**HINDS COUNTY, ET AL.**                                              **DEFENDANTS**

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO TERMINATE OR, ALTERNATIVELY, MODIFY CONSENT DECREE**

Defendants, Hinds County, Hinds County Board of Supervisors, and Victor Mason, in his official capacity as Sheriff, respectfully submit this memorandum of authorities in support of the motion to terminate or, alternatively, modify the consent decree between Plaintiff the United States of America and Defendant Hinds County, Mississippi.[1]  Agreement [8-1].

## I.  INTRODUCTION

"[P]rison officials must maintain their facilities consistent with the restrictions and obligations imposed by the Constitution." *Lewis v. Casey*, 518 U.S. 343, 365 (1996) (Thomas, J., concurring).  To that end, the Prison Litigation Reform Act (PLRA) prevents federal courts "from providing more than the constitutional minimum necessary" when courts attempt to exercise control over state-run prisons and detention facilities. *Jones v. Gusman*, 296 F.R.D. 416, 429 (E.D. La. 2013) (emphasis added) (citing *Frazar v. Ladd*, 457 F.3d 432, 438 n.19 (5th Cir. 2006)).

---

[1] Mason has been sued in his official capacity only, which means that any claims aimed at him are duplicative of the claims aimed at the County.  *See, e.g.*, *Brumfield v. Hollins*, 551 F.3d 322, 331 n.9 (5th Cir. 2008) (noting that a suit against an individual in his official capacity is tantamount to suit against the entity that employs the individual); *Daigre v. City of Waveland*, No. 1:10-CV-568, 2012 WL 12885098, at *4 (S.D. Miss. Sept. 25, 2012) ("The Supreme Court has held that claims against a governmental agent in his or her official capacity are not against the actual employee, but are against the office that the employee holds." (collecting cases)).  He is also no longer the Sheriff of Hinds County.  Show Cause Order [100] at 2.  On November 23, 2021, Tyree Jones was elected Sheriff of Hinds County.  Resp. to Show Cause Order [105] at 6.  Jones, in his official capacity as Sheriff, should be substituted as defendant.  FED. R. CIV. P. 25(d).

1

Indeed, Congress enacted the PLRA to "extricate [federal courts] from managing state prisons." *Brown v. Collier*, 929 F.3d 218, 228 (5th Cir. 2019) (citation omitted); *Brown v. Plata*, 563 U.S. 493, 530 (2011) ("The PLRA states that no prospective relief shall issue with respect to prison conditions unless it is narrowly drawn, extends no further than necessary to correct the violation of a federal right, and is the least intrusive means necessary to correct the violation." (citing 18 U.S.C. § 3626(a))).

That's the gist here. In 2016, the parties entered into a sweeping sixty-four (64) page settlement agreement, or "consent decree," that purportedly addressed the county inmates' conditions of confinement—at a constitutional minimum.[2] *See* Agreement [8-1]. Yet its 167 requirements (excluding subparts and sub-subparts) govern virtually every aspect of life at the County's detention facilities. And it's enforced by this Court, in its entirety. *E.g.*, Show Cause Order [100]. Accordingly, because the consent decree's policies and provisions exceed the constitutional minimum necessary to provide the County's inmates with basic sustenance, and the conditions of the County's facilities do not violate the inmates' basic constitutional rights, the consent decree must be terminated or, alternatively, modified pursuant to 18 U.S.C. § 3626(b) of the PLRA.[3]

## II. BACKGROUND

The Department of Justice (DOJ) filed suit against Hinds County, the Hinds County Board of Supervisors, and Victor Mason, in his official capacity as Sherriff, on June 23, 2016. Compl. [1]. In their complaint, the DOJ alleged that the County "subjected prisoners . . . to [an

---

[2] The County refers to the 2016 settlement agreement as "consent decree" for simplicity sake. *Infra* Section III(A).

[3] To be clear, the County moves to terminate or, alternatively, modify the consent decree to the extent it can be construed as governing four facilities: (1) Raymond Detention Center (RDC), (2) Work Center (WC), (3) Jackson Detention Center (JDC), and (4) Henley-Young Juvenile Justice Center (Henley-Young). The JDC closed in 2020.

unconstitutional] systemic pattern or practice of conditions of confinement" and likewise "exhibited deliberate indifference to the life, health, and safety" of the prisoners in violation of the Eighth and Fourteenth Amendments of the U.S. Constitution. *Id.* at 6.

On the same day, the parties jointly moved for Entry of a Settlement Agreement, Joint Motion [2, 3], which was granted by this Court on July 19, 2016. Order [8]. The consent decree, as defined under the PLRA, grants prospective relief regarding conditions of confinement and mandates the County to adhere to numerous, far-reaching policies and provisions while operating its facilities.[4] Agreement [8-1].

Additionally, the consent decree created a monitoring team. *Id.* at 54–55. The monitoring was intended to "provide technical assistance, conduct regular site visits[5], and serve as the eyes and ears of the Court." Show Cause Order [100] at 8 (footnote omitted). The monitors have now issued a total of fifteen (15) monitoring reports. *See* Status Report [101].

---

[4] The parties entered into the consent decree to address "constitutional violations alleged by the United States" and to provide court-enforced prospective relief at three facilities: "The Hinds County Adult Detention Center ('HCDC') [or, also known as, Raymond Detention Center (RDC)] and Work Center ('Farm') in Raymond, Mississippi, and the Jackson Detention Center ('JDC') in Jackson, Mississippi, are collectively referred to as the 'Jail.' . . . Through the provisions of this Agreement, the Parties seek to ensure that the conditions in the **Jail** comply with the United States Constitution." Agreement [8-1] at 4–5 (emphasis added); *see also* Stipulated Order [60] at 1.

Plaintiff's later filed a motion for an order to show cause in June 2019. Mot. to Show Cause [30]. In it, Plaintiff highlighted that the County "transition[ed] all youth to the Henley-Young Juvenile Detention Center." *Id.* at 7. From that motion, Plaintiff extended the consent decree's reach from three facilities to four facilities, to wit: RDC, WC, JDC, and Henley-Young.

As noted *supra*, the County moves to terminate or, alternatively, modify the consent decree to the extent it governs the County's four facilities. By the same token, the County intentionally reserves its right(s) to later assert any arguments, claims, and/or defenses against Plaintiff concerning Plaintiff's breach of the consent decree and any actions or events by Plaintiff related to Henley-Young facility.

[5] As of the filing of this memorandum, neither the monitoring team nor the DOJ have set foot in the RDC in nineteen months. Resp. to Show Cause Order [105] at 2. Perhaps recognizing the problematic nature of this fact, the monitor has cobbled together a week-long inspection of the RDC next week, January 24-29, 2022. *See* Ex. ##, Proposed Agenda Re: Inspection. Defendants, as a result, hereby reserve the right to supplement the record with relevant evidence that may arise from that inspection.

At the outset, remedial efforts started slow for the County. A review of the latest monitoring report makes clear that compliance—even partial compliance—was nearly non-existent at the monitoring team's first site visit in 2017. Status Report [101] at 22–23. Due to the lack of success, on January 16, 2020, the parties entered into a stipulated order. Stipulated Order [60-1]. That order devised a "remedial plan for Hinds County to get on a path to compliance." *Id.* at 10. To date, the County has substantially complied with that order. Resp. to Show Cause Order [105]; *see also* Decl. of Gary Chamblee [105-2].

Of course, the Stipulated Order [60-1], and the Consent Decree [8-1] it was intended to facilitate, were formulated and entered in a pre-pandemic world. The pandemic's impacts reach far and wide and have not spared the County, yet the County has continued to make improvements to life at the facility.

Fast-forward to October 2021, the County's compliance with the consent decree paints a different picture. The monitoring team found the County in either sustained compliance or partial compliance with nearly seventy-percent (70%) of the consent decree's policies and provisions; a far cry from the monitoring team's first visit and a clear reflection of the positive, upward trend of operations at the RDC. Status Report [101] at 23.

And things continue to trend upwards notwithstanding the pandemic. In June 2021, for example, Hinds County hired Major Kathryn Bryan—an experienced, professional detention administrator, recommended by the monitoring team and approved by the DOJ—to serve as the County's Detention Administrator.[6] Resp. to Show Cause Order [105] at 2. By October 2021, or the date of the monitoring team's most recent report, Major Bryan had served as Detention Administrator for only two months.

---

[6] Major Bryan is an American Jail Association Certified Jail Manager. Decl. of Major Kathryn Bryan [105].

Further, on December 3, 2021, the voters of Hinds County elected Tyree Jones as the new Sheriff of Hinds County. Sheriff Jones immediately met with RDC administrators and the Hinds County Board of Supervisors to pledge his support in continuing to improve the RDC. *Id.* In all candor, while Sheriff Jones' relationship with Major Bryan has been damaged, operations and improvements at the RDC continue to take hold and move forward, and the County is navigating the institution.

That's not all. Since August 2021, the County has experienced zero suicides in its facilities. *Id.* at 3. And while one (1) death resulted from violence, Major Bryan personally investigated the incident and authored the after-action report. *Id.*

Other examples of improvement include, but are not limited to:

- On Tuesday, January 18, 2022, the Hinds County Board of Supervisors unanimously approved a five-percent (5%) pay raise for county detention employees (i.e., a rate higher than the Mississippi Department of Corrections' starting pay for correctional officers), along with premium pay[7];

- New command staff, all of whom have been enrolled in training to obtain national certification as jail managers;

- New Health Services Administrator;

- Full-time Mental-Health Nurse Practitioner;

- An updated staffing plan to staff the RDC under a direct supervision model;

- A bi-monthly cadet class for prospective employees;

- Newly implemented policies regarding contraband, suicide prevention, mental health, and prisoner-on-prisoner or jailor-on-prisoner violence;

- Numerous construction renovations, some of which are ongoing;

- Advanced training for administrators;

---

[7] Prior to the latest raise, a previous raise was approved in 2021 and employees began receiving the initial raise in November 2021.

- Ongoing training for staff, including mental health training; and

- The construction of a mental-health living unit.

*Id.* at 7–20.

Nevertheless, on November 23, 2021, the Court entered an order *sua sponte* requiring the County to show cause "to determine whether Hinds County should be held in civil contempt and RDC placed into federal receivership."[8] Show Cause Order [100] at 2. The County promptly responded to the Court's Show Cause Order on December 14, 2021, Resp. to Show Cause Order [105], and an evidentiary hearing was initially scheduled for the week of January 24, 2022. Scheduling Order [107]. On January 18, 2022, the Court granted the County's emergency motion to continue the evidentiary hearing. Order [109]. The hearing is reset for the week of February 14, 2022.[9] *Id.*

### III. ARGUMENT & AUTHORITIES

#### A. The PLRA

("The PLRA contains a variety of provisions to bring this [prison condition] litigation under control."). *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). More importantly, the Act also functions to "relieve states of the onerous burden of complying with consent decrees that often reach far beyond the dictates of federal law." *Plyler v. Moore*, 100 F.3d 365, 370 (4th Cir. 1996);

---

[8] The Court's Show Cause Order primarily focused on the inmates' conditions of confinement at the RDC.

[9] Because an evidentiary hearing is set on the Show Cause Order, the County requests that the Court consolidate the show cause hearing with the pre-termination hearing. *See Guajardo v. Tex. Dep't of Crim. Justice*, 363 F.3d 392, 394 (5th Cir. 2004) (per curiam) ("Whether to hold a PLRA pre-termination evidentiary hearing is within the discretion of the district court; generally, to receive such a hearing, plaintiffs' submissions must allege specific facts which, if true, would amount to an ongoing violation."). Doing so is not only logical but prudent. The County is moving to terminate or, alternatively, modify the consent decree in whole (or in part). That raises issues regarding the RDC, specifically, and the County's compliance with the consent decree, which is the scope of the Court's Show Cause Order. Therefore, consolidating the hearings not only permits the Court to bundle these actions to expedite their resolution, but it also promotes judicial economy amongst the parties and this Court, saving time and resources.

*accord Brown*, 929 F.3d at 229 ("[P]rospective relief like the consent decree at issue in this case must be terminated on the motion of any party unless such relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and . . . is narrowly drawn and the least intrusive means to correct the violation." (second alteration in original) (internal quotation marks and citation omitted)); *Gilmore v. California*, 220 F.3d 987, 991 (9th Cir. 2000) ("It is clear that Congress intended the PLRA to revive the hands-off doctrine."); *Inmates of Suffolk Cnty. Jail v. Rouse*, 129 F.3d 649, 655 (1st Cir. 1997) ("Congress passed the PLRA in an effort, in part, to oust the federal judiciary from day-to-day prison management."); *United States v. Terr. of the V.I.*, 884 F. Supp. 2d 399, 406–07 (D.V.I. 2012) (noting that PLRA sponsors "criticized judicial orders under Federal law [which] have effectively turned control of the prison system away from elected officials accountable to the taxpayer, and over to the courts" (alteration in original) (internal quotation marks and citation omitted)).

> Accordingly, the Act reads:
>
> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The Court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A); *Benjamin v. Jacobsen*, 172 F.3d 144, 150 (2nd Cir.) (en banc) (describing that the PLRA's purpose is "to provide that in civil actions arising under federal law challenging conditions in prisons (including pretrial detention facilities) 'prospective relief' may not be granted in the absence of certain findings"), *cert. denied*, *Benjamin v. Kerik*, 528 U.S. 824 (1999).

7

Of note, the PLRA also expressly defines certain material terms. *See Inmates of Suffolk Cnty. Jail*, 129 F.3d at 655 (analogizing the PLRA's definitional instructions as a "purposeful," "linguistic anomaly"). Relevant here, "Prospective relief" is defined as "all relief other than compensatory monetary damage." 18 U.S.C. § 3626(g)(7). "Relief," in turn, means "all relief in any form that may be granted or approved by the court, . . . includ[ing] consent decrees . . . ." 18 U.S.C. § 3626(g)(9). "Consent decree" is "any relief by the court that is based in whole or in part upon the consent or acquiescence of the parties but does not include private settlements." 18 U.S.C. § 3626(g)(1).

As hinted to in its definition, consent decrees constitute one of the two forms of settlements addressed by the PLRA. 18 U.S.C. § 3626(c). Unlike private settlement agreements, consent decrees must comply with the provisions outlined in 18 U.S.C. § 3626(a). *Id.* The PLRA's specific provisions on this point read as follows:

> **(1) Consent decrees.**--In any civil action with respect to prison conditions, the court shall not enter or approve a consent decree unless it complies with the limitations on relief set forth in subsection (a).
>
> **(2) Private settlement agreements.**--**(A)** Nothing in this section shall preclude parties from entering into a private settlement agreement that does not comply with the limitations on relief set forth in subsection (a), if the terms of that agreement are not subject to court enforcement other than the reinstatement of the civil proceeding that the agreement settled.
>
> . . . .

18 U.S.C. § 3626(c)(1)–(2).

It's undisputed that the parties considered the agreement in this case to be a consent decree consistent with 18 U.S.C. § 3626(c)(1). The consent decree explicitly states: "The United States and the County stipulate and agree that this Agreement complies in all respects with the requirements for prospective relief under the Prison Litigation Reform Act, 18 U.S.C. § 3626(a)."

8

Agreement [8-1] at 61. The Show Cause Order reveals that the Court also considers the agreement to be a consent decree as contemplated by 18 U.S.C. § 3626(c)(1). *E.g.*, Show Cause Order [100] at 13 (highlighting that "[f]ederal courts are not reduced to approving consent decrees and hoping for compliance . . . [o]nce entered, a consent decree may be enforced" (first alteration in original) (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 440 (2004))).

### B. Termination of the Consent Decree under 18 U.S.C. § 3626(b)

#### 1. 18 U.S.C. § 3626(b)(1), (b)(2), (b)(3)

Against this backdrop, the County turns to termination or, alternatively, modification. Section 3626(b) governs the termination or modification of existing federal court orders, like the consent decree. To be eligible for immediate termination, the Act provides:

> In any civil action with respect to prison conditions, a defendant . . . shall be entitled to the immediate termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

18 U.S.C. 3626(b)(2). By contrast, § 3626(b)(1)(A)(i) entitles any party to terminate an existing consent decree "2 years after the date the court granted or approved the prospective relief." *See Guajardo*, 363 F.3d at 394 ("Institutional consent decrees are not intended to operate in perpetuity. The PLRA strongly disfavors continuing relief through federal courts; indeed, its fundamental purpose was to extricate them from managing state prisons." (cleaned up)).

But sometimes there is more to the analysis; the next section, § 3626(b)(3), provides a limitation to termination. *James v. Lash*, 965 F. Supp. 1190, 1193 (N.D. Ind. 1997) ("Where the requisite findings were not made, the plaintiffs are nonetheless protected by § 3626(b)(3) . . . ."). Pursuant to that subsection, the PLRA provides:

> Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief [(1)] remains necessary to correct a current and

> ongoing violation of the Federal right, [(2)] extends no further than necessary to correct the violation of the Federal right, and [(3)] that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.

18 U.S.C. § 3626(b)(3).

### 2. 18 U.S.C. § 3626(b)'s Burden-Shifting Framework

In terminating the consent decree, the County bears the initial burden to prove that the consent decree is subject to immediate termination under § 3626(b)(2) or that two years have passed since the Court approved the consent decree under § 3626(b)(1)(A)(i), or both. Once met, then the burden shifts to Plaintiff to prove the substantive requirements of § 3626(b)(3).

The Fifth Circuit, in *Guajardo*, is instructive here. There, the panel explained:

> [The defendant], in seeking termination, must initially establish the requisite passage of time. 18 U.S.C. § 3626(b)(1)(iii) (relief terminable upon motion of any party, but "in the case of an order issued . . . before the date of enactment of the [PLRA], 2 years after such date of enactment"). As held by most courts, the burden of proof then shifts to the [plaintiffs] to demonstrate ongoing violations and that the relief is narrowly drawn. 18 U.S.C. § 3626(b)(3). *See* [*Laaman v. Warden*, 238 F.3d 14, 20 (1st Cir. 2001)]; *Ruiz v. Johnson*, 154 F. Supp. 2d 975, 984 n.12 (S.D. Tex. 2001) (observing that constitutional violations were found where prisoners met their burden of proof); *Imprisoned Citizens Union v. Shapp*, 11 F. Supp. 2d 586, 604 (E.D. Pa. 1998), *aff'd sub nom. Imprisoned Citizens Union v. Ridge*, 169 F.3d 178 (3d Cir. 1999) (holding PLRA not unconstitutional for placing on prisoners burden for proving ongoing violations).
>
> <u>We agree with the great majority of courts to address this issue: a plain reading of the PLRA, including its structure, imposes the burden on the prisoners</u>. Section 3626(b)(3) places a limitation on the termination of prospective relief under a consent decree if the court makes the requisite written findings based on the record; but <u>the burden of proof to support these findings is obviously on the party opposing termination</u>. Accordingly, that burden was allocated correctly to plaintiffs.

*Guajardo*, 363 F.3d at 395–96 (emphases added).

### 3. Analysis

The County moves to terminate the consent decree under both § 3626(b)(2)'s immediate termination provision and § 3626(b)(1)(A)(i)'s two-year provision. Regarding the immediate-

termination provision, the Court entered its order approving the consent decree but solely in accordance with the decree's terms. Order [8]. In other words, the consent decree declared that *the parties* "stipulate[d] and agree[d] that all of the prospective relief in this Agreement [was] narrowly drawn, extend[ed] no further than necessary to correct the violations of federal rights . . . , [and was] the least intrusive means necessary to correct the[] violations[.]" Agreement [8-2] at 61. But critically, the order is devoid of any affirmative language demonstrating that *the Court* reviewed the consent decree—line-by-line, provision-by-provision—and found specific constitutional violations or that the decree's terms were narrowly drawn, extended no further than necessary, and were the least intrusive means to correct the alleged constitutional violations. Order [8]; *see Jones*, 296 F.R.D. at 429 (noting that although "[t]he parties to the consent judgment . . . stipulated that it complies with the PLRA, . . . the Court conducts an independent inquiry"). This fact alone renders the consent decree subject to termination from its outset.

Notwithstanding, the County is authorized to terminate the consent decree pursuant to § 3626(b)(1)(A)(i). Under that subsection, relief "shall be terminable" two years after the Court granted the consent decree. Here, the consent decree was approved on July 19, 2016. Order [8]. Consequently, and for this independent reason, the consent decree "shall be terminable" under § 3626(b)(1)(A)(i) because over four years have passed since the Court's order and approval.

Because the County has satisfied its burden under both § 3626(b)(2) and § 3626(b)(1)(A)(i), the burden now shifts to Plaintiff to prove why the consent decree should not terminate under § 3626(b)(3). *See Guajardo*, 363 F.3d at 395–96.

Stated differently, Plaintiff shoulders the burden of proving "current and ongoing" constitutional violations, and the County is entitled to termination if Plaintiff does not carry their burden of proof. *See id.* The "current and ongoing" inquiry is not focused on past or future events.

11

*See Castillo v. Cameron County*, 238 F.3d 339, 353 (5th Cir. 2001) (explaining that, under the PLRA, the focus of courts is not on "conditions that existed in the past or [on] conditions that may possibly occur in the future"); *Lancaster v. Tilton*, No. C-79-1630-WHA, 2007 WL 4570185, at *6 (N.D. Cal 2007) (noting that while "[i]nstantaneous snapshots are impossible[,]" "facts in close temporal proximity are probative"). This Court instead must assess the conditions of confinement "at the time termination is sought," *Castillo*, 238 F.3d at 353, allowing the parties to put on evidence regarding whether or not there are any existing unconstitutional conditions at the RDC or the other facilities.[10] *Ruiz v. United States*, 243 F.3d 941, 950 (5th Cir. 2001) (citation omitted).

If Plaintiff meets its burden, then Plaintiff bears the additional burden of proving the second and third elements of § 3626(b)(3). Under the second element, Plaintiff must show that "aspects of the consent decree remain necessary to correct those violations." *Id.*; *see also Depriest v. Walnut Grove Corr. Auth.*, No. 3:10-CV-663-CWR-FKB, 2015 WL 3795020, at *15 (S.D. Miss. June 10, 2015) (Reeves, J.) ("Having found the current and ongoing violations, the Court must now decide whether the provisions set forth in the parties' Consent Decree are necessary to resolve them." (citation omitted)). If Plaintiff proves the second element, then Plaintiff must further show

---

[10] As noted, it's the Plaintiff's burden to raise "current and ongoing" constitutional violations against the County. "The constitutional rights of a pretrial detainee are found in the procedural and substantive due process guarantees of the Fourteenth Amendment." *Estate of Henson v. Wichita County*, 795 F.3d 456, 462 (5th Cir. 2015). Fourteenth Amendment constitutional challenges may be brought under two alternative theories: (1) as an attack on a "condition of confinement" or (2) as an "episodic act or omission." *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare*, 74 F.3d at 644–45). Here, the action undergirds the former, not the latter. To succeed on a conditions-of-confinement claim, Plaintiff must satisfy a three-element test, proving:

> (1) a rule or restriction or the existence of an identifiable intended condition or practice or that the jail official's acts or omissions were sufficiently extended or pervasive; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of the inmate's constitutional rights.

*Cadena v. El Paso County*, 946 F.3d 717, 727 (5th Cir. 2020) (citation omitted); *see also Montano v. Orange County*, 842 F.3d 865, 874 (5th Cir. 2016).

that "those parts of the decree are narrowly drawn and the least intrusive means to correct the applicable violation." *Ruiz*, 243 F.3d at 950.

In its review, "[t]he district court should engage in specific, provision-by-provision examination of the consent decree, measuring each requirement against the statutory criteria." *Id*. In *Ruiz v. United States*, Judge Stewart, writing for the panel, delineated the Court's obligations as follows:

> Section 3626(b)(3) outlines specific standards to be followed when a district court considers whether to terminate a consent decree providing for prospective relief. It requires "particularized findings, on a provision-by-provision basis, that each requirement imposed by the consent decree [] satisfies the need-narrowness-intrusiveness criteria, given the nature of the current and ongoing violation." *Cason v. Seckinger*, 231 F.3d 777, 785 (11th Cir. 2000). "It is not enough [for the district court] to simply state in conclusory fashion that the requirements of the consent decree[] satisfy those criteria." *Id.* Rather, "the district court should engage in specific, provision-by-provision examination of the consent decree, measuring each requirement against the statutory criteria." *Id.*
>
> . . .
>
> [This] procedure . . . is mandated by § 3626(b)(3) and cannot be circumvented by a mere recitation of the key statutory language. Instead, the requisite findings must be evinced in writing with respect to each remaining aspect of prospective relief. *See Cason*, 231 F.3d at 785 (finding that § 3626(b)(3) requires "[p]articularized findings, analysis, and explanations [to] be made as to the application of each criteria to each requirement imposed by the consent decrees"). Otherwise, the district court should terminate the unnecessary relief, assuming that the other requirements for termination under § 3626 are met.

243 F.3d at 950 (first, second, and third alterations in original).

To sum it up: The County has satisfied its burden under § 3626(b)(2) and § 3626(b)(1)(A)(i) to terminate the consent decree. And because the DOJ will not able to meet their burden under § 3626(b)(3), the consent decree must be terminated, or, at a minimum, modified to remove the numerous policies and provisions that are unnecessary to correct any purported violation of federal rights and that are doing nothing more than hindering the County's efforts to improve conditions at the RDC.

### IV.     CONCLUSION

In "a system of federal courts representing the Nation, subsisting side by side with 50 state judicial, legislative, and executive branches, appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief." *Rizzo v. Goode*, 423 U.S. 362, 379 (1976); *E.T. v. Paxton*, 19 F.4th 760, 770 (5th Cir. 2021) (same).  This Court's continued enforcement of the consent decree, absent review of the decree in accordance with the PLRA, raises significant federalism concerns due to the decree's incredible breadth that supplants the authority and responsibility of local government.  Because the County has satisfied its burden under 18 U.S.C. § 3626(b)(2), the consent decree is now terminable in whole or in part pending Plaintiff's burden under § 3626(b)(3).[11]

This, the 21st day of January, 2022.

Respectfully submitted,

**PHELPS DUNBAR, LLP**

BY:   */s/ W. Thomas Siler, Jr.*
        Reuben V. Anderson, MB #1587
        W. Thomas Siler, Jr., MB #6791
        Nicholas F. Morisani, MB #104970
        4270 I-55 North
        Jackson, Mississippi 39211-6391
        Post Office Box 16114
        Jackson, Mississippi  39236-6114
        Telephone: 601-352-2300
        Telecopier: 601-360-9777
        Email: reuben.anderson@phelps.com
                tommy.siler@phelps.com
                nick.morisani@phelps.com

**ATTORNEYS FOR DEFENDANTS**

---

[11] The County respectfully requests the opportunity to file post-termination-hearing briefs to fully assess whether Plaintiff has met its burden under § 3626(b)(3).  *See, e.g.*, *DePriest*, 3:10-CV-663-CWR-FKB, 2015 WL 3795020, at [161 & 162] (Reeves, J.) (filing post-hearing memorandums in response—support and opposition, respectively—to defendant's motion to terminate prospective relief).

## **CERTIFICATE OF SERVICE**

    I, W. Thomas Siler, Jr., certify, that, on January 21, 2022, I had this MEMORANDUM BRIEF electronically filed with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to all counsel of record in this matter.

                                                        */s/ W. Thomas Siler, Jr.*
                                                        W. Thomas Siler, Jr