```
 1                    IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
 2                            NORTHERN DIVISION

 3

 4   UNITED STATES OF AMERICA                              PLAINTIFF

 5   VERSUS                      CIVIL ACTION NO. 3:16-CV-00489-CWR-RHWR

 6   THE HINDS COUNTY BOARD OF SUPERVISORS,
     HINDS COUNTY SHERIFF, ET AL.                          DEFENDANTS
 7

 8

 9                     VIDEOCONFERENCE PROCEEDINGS
                  BEFORE THE HONORABLE CARLTON W. REEVES,
10                   UNITED STATES DISTRICT COURT JUDGE,
                             JANUARY 18, 2022,
11                          JACKSON, MISSISSIPPI

12

13                      (Appearances noted herein.)

14

15

16

17

18

19

20

21
     REPORTED BY:
22
         CANDICE S. CRANE, RPR, CCR #1781
23       OFFICIAL COURT REPORTER
         501 E. Court Street, Suite 2.500
24       Jackson, Mississippi  39201
         Telephone:  (601)608-4187
25       E-mail:  Candice_Crane@mssd.uscourts.gov
```

```
 1   APPEARANCES VIA VIDEOCONFERENCE:

 2      FOR THE PLAINTIFF:

 3          CHRISTOPHER N. CHENG, ESQ.
            SARAH G. STEEGE, ESQ.
 4          LAURA L. COWALL, ESQ.
            HELEN VERA, ESQ.
 5          MITZI DEASE-PAIGE, ESQ.

 6      FOR THE DEFENDANTS:

 7          WILLIAM T. SILER, ESQ.
            NICHOLAS F. MORISANI, ESQ.
 8          RAYFORD G. CHAMBERS, ESQ.

 9      ALSO PRESENT:

10          ANTHONY NJOKU
            ELIZABETH SIMPSON
11          DAVID PARRISH

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          **TABLE OF CONTENTS**

2    Style and appearances.....................................1-2

3    Court Reporter's Certificate.............................. 25

1        PROCEEDINGS VIA VIDEOCONFERENCE, JANUARY 18, 2022

2

3        THE COURT:  Good morning.  Can you-all hear me?  I see

4   people nodding.

5        MR. SILER:  We can, Your Honor.

6        THE COURT:  Okay.  I'm going to ask unless you're

7   speaking to keep your mic muted.

8        But who do I have on for the United States?

9        MR. CHENG:  This is Christopher Cheng; I'll be speaking

10  for the United States.  We also have Laura Cowall, Helen Vera,

11  Sarah Steege, and Mitzi Dease-Paige from the U.S. Attorney's

12  Office.  And we also have some staff listening in, Your Honor,

13  Mr. Njoku.

14       THE COURT:  Okay.  Thank you, Mr. Cheng.

15       Who do I have on for Hinds County?

16       MR. SILER:  Your Honor, this is Tommy Siler.  Ray

17  Chambers is also on, and Nick Morisani is joining us by

18  telephone.

19       THE COURT:  And is -- I know we've discussed this

20  matter before.  Is anyone separately representing the sheriff?

21       MR. SILER:  Well, Phelps Dunbar is representing both --

22       THE COURT:  Okay.

23       MR. SILER:  -- defendants.  And -- but Mr. Chambers is

24  also here.  He, I think, is here representing -- Ray, don't

25  let me put words in your mouth, but you represent the sheriff

1    as well.

2          THE COURT:  Is that correct, Mr. Chambers?

3          MR. CHAMBERS:  That is correct.  And, Your Honor, just

4    for another note (AUDIO GAP).  That is correct, but the Board

5    is approving the sheriff's appointed attorney (AUDIO GAP) that

6    I'm sure that he'll be making an appearance once he's

7    approved.

8          THE COURT:  Okay.  That's on the Board's agenda today;

9    right?

10         MR. CHAMBERS:  Yes, sir.

11         THE COURT:  Okay.  And who is that person?  I mean, can

12   you disclose it yet?  I mean, I know it hasn't been approved I

13   guess.  I saw it at the bottom of the agenda.

14         MR. CHAMBERS:  It's Attorney John Hall.

15         THE COURT:  Okay.  John Hall, right, H-a-l-l?

16         MR. CHAMBERS:  Yes, sir.

17         THE COURT:  Okay.  And I do know -- I see the monitors

18   are also present, Ms. Simpson, and who else is on your team,

19   Ms. Simpson?

20         MS. SIMPSON:  Dave Parrish is on my team and on this

21   call.

22         THE COURT:  Okay.  Thank you.

23         All right.  Thank you-all for making yourselves

24   available for this call.  This call as you can imagine is in

25   response to the emergency motion that was filed on Friday

1   after -- sometime Friday.  This Court became aware of it

2   Friday afternoon, but I want to talk about that particular

3   motion and also the upcoming hearing on the show cause -- in

4   response to the show cause order.

5        Now, the motion, Mr. Siler, indicates that Mr. Morisani

6   has been diagnosed with COVID, and he's one of the lead

7   counsel I guess on behalf of the County in this matter.  And

8   your motion also indicates that you and Mr. Morisani have been

9   working together, and you may have been exposed -- well, you

10  were exposed at least to him.

11       Have you been diagnosed with anything, Mr. Siler?

12       MR. SILER:  No, Your Honor.  I'm sorry.

13       THE COURT:  Okay.  And with respect to Mr. Morisani's

14  status, what's -- and, Mr. Morisani, you may speak for

15  yourself or whatever.  But what's your status, Mr. Morisani?

16       MR. MORISANI:  At this time, Your Honor, I'm still

17  quarantining at home, and I understand that I'll be able to

18  return to work tomorrow.

19       THE COURT:  All right.  And obviously the -- I think

20  the motion indicates that the fact that Mr. Morisani came down

21  with COVID has impaired the County and its ability to prepare

22  adequately for the hearing that the Court had scheduled for

23  January 24th.  I do believe that under -- under that schedule,

24  the parties were to have exchanged exhibits and other things,

25  witness lists, exhibits, and come to any stipulated facts, I

 1    believe by either Wednesday or Thursday of this week.  Maybe

 2    it's Thursday, the 21st, is that correct, or was it the 20th?

 3         Anyway, the parties -- I mean, you-all will agree that

 4    you-all were supposed to -- if this matter were to go for a

 5    hearing on the 24th, there was some deadlines that y'all had

 6    to meet prior to the 24th; right?

 7         MR. SILER:  Yes, Your Honor.

 8         THE COURT:  Okay.  All right.  Now, based on the

 9    motion, in paragraph 11 of the motion, Mr. Siler says that the

10    Government does not oppose continuing the matter for purposes

11    of -- because of Mr. Morisani's COVID diagnosis, and is that

12    correct, Mr. Cheng?

13         MR. CHENG:  I think it's more accurate to say that we

14    defer to the Court, Your Honor.  We don't take a position

15    whether to oppose or support it, but we completely defer to

16    the Court.

17         THE COURT:  Okay.  All right.  Now, I am aware that the

18    motion also -- that Hinds County put the Court on notice that

19    the defendants are in the process of drafting a motion to

20    terminate or modify the 2016 consent decree pursuant to the

21    Prison Litigation Reform Act, the PLRA.  That motion has not

22    been filed yet.

23         When does the defendants believe that they will file

24    that particular motion?

25         MR. SILER:  Your Honor, a lot of that has to do with

1    whether the Court's going to continue the hearing.  When we

2    began -- we didn't initially want to file this motion at this

3    particular point in time, but when the hearing got set, it

4    sort of -- we felt like we had to get moving on dealing with

5    that, and our intention was to file it either Friday of last

6    week or today.

7         If we're going to continue the hearing, we're -- we can

8    certainly put that off.  Our whole purpose of this was not to

9    sandbag and put the Court in a difficult position -- because

10   we understand, because I know the Court does -- if the PLRA

11   has sort of a time limit, you know, deadlines on it when we

12   file a motion like this.  We're not trying to make anybody's

13   life miserable trying to deal with it.  That's why we wanted

14   the Court to know that in addition to the fact that

15   Mr. Morisani was dealing with health issues, that we just

16   wanted you to be aware that was something we were going to do

17   if -- if -- so that's a longwinded way of getting around to

18   saying this:  If we're going to go forward with the hearing

19   next week, then we're going to probably file the motion

20   hopefully today.  If we're not going forward with it, then we

21   are not going to be rushing through to get that motion filed.

22        And as a matter of fact, if it would help with

23   scheduling, we can -- we can work through with everybody and

24   report to the Court's calendar about when the right time to

25   file it would be.

1          THE COURT:  Well, from reading the assertions there in

2     this motion, if the Court were to put it -- delay the hearing

3     by a week or two or even three weeks, I believe that your

4     motion suggests that no matter when the Court resets it, the

5     County anticipates filing a motion to terminate the consent

6     decree.

7          MR. SILER:  That's correct, Your Honor.

8          THE COURT:  So if the Court were to say we're going to

9     reset this to January 31st, I believe what I've read in the

10    papers is that on January 28th, I could very well expect a

11    motion to terminate the consent decree to be filed on the 28th

12    of January.  And therefor the County says that triggers an

13    automatic stay, and therefor it doesn't matter that the Court

14    would be prepared to hear this.

15         I'm just using a random date as the 31st for right now,

16    and that's not the date.  I mean, I expect that it may be a

17    little bit later than that.

18         But am I to understand that the County intends, no

19    matter when this Court sets this hearing, that the County

20    intends to file a motion to terminate the settlement

21    agreement?

22         MR. SILER:  That's correct, Your Honor.  And the timing

23    is just a matter of not trying to burden the Court with a lot

24    of things at once.  I guess we just wanted to put the Court on

25    notice that that was coming, and we'll try to get it done at a

1    time that's as convenient as possible for everybody, including

2    the Court.

3        THE COURT:  Okay.  Now, Mr. Cheng, the Government

4    suggests that in deferring to the Court, that if the Court

5    does grant the request, the motion to continue the case, the

6    Government says that as represented by Mr. Siler in the motion

7    that the United States requests that it be reset -- that the

8    hearing be reset as the earliest date convenient for the Court

9    in February of 2022.

10       Is that an accurate representation of the Government's

11   position, Mr. Cheng?

12       MR. CHENG:  Yes, Your Honor.

13       THE COURT:  I do think that a continuance is in order

14   due -- based on the allegations -- based on the

15   representations of Mr. Morisani's status.  And the Court

16   looked at its schedule, and I do want to give the parties

17   sufficient time to do what they deem is necessary.

18       I do agree with the Government, though, that the

19   hearing ought to occur as early as possible, and instead of on

20   a date that might necessarily be convenient for all parties,

21   on a date that's going to be primarily convenient for the

22   Court.  And in that case, I'm going to reset it to

23   February the 14th.

24       And is there any reason for anyone to believe that the

25   Court's projected -- I think the Court's earlier order

1   suggested that the hearing would proceed and would be

2   concluded with all the evidence and testimony to be offered by

3   either of the parties should take no more than four days

4   between the parties.

5         Is there any reason from any of the parties that they

6   would anticipate that a hearing should -- could not occur on

7   the Court's announced, previously announced schedule, two days

8   for the Government and two days for the defendants?

9         MR. CHENG:  Your Honor, I don't think there's a problem

10   on the part of DOJ.  I am not totally sure about the

11   monitoring team.  I understand there might be a scheduling

12   issue on the 15th for Dr. Dudley, but I would defer to a

13   monitor on that issue.

14         THE COURT:  Well, let me first say I expect the hearing

15   to occur here in open court.  Obviously, if there's a witness

16   who has to testify, including Mr. Dudley or anyone else who

17   has to testify -- well, we'll talk about that.  For my

18   monitors, they can testify remotely if necessary.  I'm not

19   sure if any of the other witnesses will be given that right.

20         But other than Mr. Dudley, any difficulties with any of

21   the other witnesses or parties?  Well, maybe I shouldn't open

22   it up to difficulties, because the Court is going to set this

23   for the week of February the 14th.  And we will operate around

24   that schedule.

25         Again, the two days for the Government and two days for

1    the defendant, and with the final day being an opportunity for

2    the parties to use that opportunity for closing arguments or

3    closing responses or something in that nature.

4         Now --

5         MR. SILER:  Judge, could I -- could I inter- -- or

6    mention I hate to bring this up, but I am -- I have a trip

7    scheduled to begin on February the 15th.

8         THE COURT:  You have what to begin on February the

9    15th?

10        MR. SILER:  Yes, sir.  (AUDIO GAP).

11        THE COURT:  You have what?  I didn't hear you.  I'm

12   sorry.  I'm sorry; I'm speaking over you.  I didn't hear what

13   you said that you have on February the 15th.

14        MR. SILER:  I have a trip scheduled for which I have

15   already bought plane tickets and reserved rooms and got a lot

16   of people depending on me to be there.  It will keep me -- I

17   guess I'd better say that my wife will shoot me if I can't

18   make that trip, you know, if that makes any difference.

19        THE COURT:  I'm -- you were going in and out,

20   Mr. Siler.  I did hear that you say you have a trip on

21   February the 15th that you've purchased -- you've already

22   bought the trip.  You've already bought a hotel, and you said

23   something about your wife?

24        MR. SILER:  Just that she would shoot me if I fouled

25   this trip up.

1          THE COURT:  In that -- I mean, I just don't see it as

2    possible for this Court to delay putting this on, and I'm not

3    suggesting that you miss your trip at all.  But I think the

4    14th -- setting it by the 14th of February, which is almost a

5    month away, allows someone else, if necessary, to help get up

6    to speed.

7          Well, before we do that, let's talk about what this

8    hearing might look like.  Now, obviously I've been involved in

9    at least one of these before in the *DePriest versus Walnut*

10   *Grove* case where the state moved to terminate a consent

11   decree, and there was a lot of testimony and evidence taken in

12   that particular case.

13         Here, we have all of these monitors' reports through

14   November of 2021, and we have, in my order scheduling the

15   contempt hearing, I alluded to the fact that the parties --

16   well, not alluded to the fact.  The parties were supposed to

17   submit any stipulated facts and agree and seek agreement on

18   that that they could.

19         Do the parties expect that there will be stipulations

20   reached in this case, or will we have to have evidence on --

21   you know, evidence that takes us -- I don't know where it

22   might take us.  And I'll ask the Government first, Mr. Cheng,

23   what about any stipulations that the parties ought to be able

24   to reach?

25         MR. CHENG:  Well, Your Honor, it was interrupted a bit

1  by I think Mr. Morisani's medical situation.  But our

2  understanding is that the defendants are reluctant to admit

3  monitoring reports into evidence, so we don't have a

4  stipulation even on that part of the record.  And it isn't

5  likely that we'll be able to come up with stipulated facts

6  that are going to be helpful to the Court on many of the major

7  contempt issues.

8      I should also alert the Court that if we can't resolve

9  some of these evidentiary issues, it's likely we will be

10  filing a motion *in limine*.  We have also been trying to come

11  to some type of stipulation about expert qualifications and

12  authenticity of documents.  We're a little more hopeful on

13  that issue; that also was unresolved.

14      So the bottom line is if we can't get agreement on some

15  of these types of big picture, relatively noncontroversial

16  items, prolonged argument about the specific facts that would

17  make the record I think isn't going to be very productive.

18      THE COURT:  Okay.  Do the defendants disagree with that

19  assessment?

20      MR. SILER:  Your Honor, I'd say we don't disagree with

21  it necessarily.  We will be able to stipulate to some facts,

22  but my feeling on this is that we're definitely going to have

23  to put on testimony.  As I've said before, none of these

24  monitors, no one's been in this facility for over -- or almost

25  two years, and so the reports themselves don't seem to us to

1   accurately reflect the amount of changes that have gone on

2   there.  And so we believe that there's going to have to be

3   testimony to give the Court an accurate picture of what's

4   going on at that facility.

5        THE COURT:  Okay.  All right.  I hear you.  I was not

6   going to, over the last year or so -- since the County alleged

7   that COVID has disrupted things so badly in many of their

8   previous violations -- there's no way in the world I was going

9   to put the monitors at risk with being over in a facility

10  where the central command staff all came down with COVID and

11  killed the former sheriff.

12       So, you know, that's -- you know, we accept that we

13  blame COVID for certain things, but I hear you.  So we -- all

14  right.

15       MS. SIMPSON:  Your Honor?

16       THE COURT:  Yes, Ms. Simpson.

17       MS. SIMPSON:  Given the point that was just raised, I

18  thought I should probably mention to counsel that in

19  anticipation for -- of the hearing being continued and the

20  fact that my team had set aside next week for the hearing, we

21  are going to use that week to be on site.  So Mr. Parrish and

22  I will definitely be on site.

23       Mr. Moeser is awaiting test results on COVID, and that

24  will determine whether he's on site or not.  And I believe

25  Dr. Dudley is going to do the site visit remotely.  So we will

1    be on site next week and be able to report our findings at the

2    time of the hearing.

3         THE COURT:  Okay.  Thank you, Ms. Simpson.  That's

4    helpful.

5         MR. CHAMBERS:  Your Honor?

6         THE COURT:  Yes.

7         MR. CHAMBERS:  This is Ray Chambers.  I just wanted to

8    bring to the Court's attention that the week of February 12th

9    to the 16th, all the Board of Supervisors will be at

10   Washington, DC, for the National Conference of County

11   Legislators.

12        THE COURT:  Well, thank you, Mr. Chambers.  I hear

13   that.  It's not -- well, does that -- will they be removed

14   from office if they don't attend that particular thing?

15        MR. CHAMBERS:  No, sir.  But I just wanted to bring

16   that out to the Court just in case for any reason you wanted

17   to hear from them particularly at the hearing.

18        THE COURT:  Okay.  Well, they can choose not to come to

19   this hearing if they want to.  This hearing is going to --

20   there's no need for the Court to continue to delay.  I realize

21   the County may file its motion to terminate, and the County's

22   position is that once they file this motion, there's an

23   automatic stay.  So I would encourage the County if they do do

24   that, they should go ahead and file their motion as soon as

25   possible.

1          And I understood Mr. Siler's -- the motion that the

2     Court is hearing today, I understood that the Government does

3     not intend to file -- did not intend to file a response to the

4     current motion to continue for COVID reasons.  But I suspect

5     the United States will file a response if the County proceeds

6     with filing the motion to terminate the settlement agreement.

7          Is that correct, Mr. Cheng?

8          MR. CHENG:  I think that's accurate, Your Honor.  As a

9     matter of fact -- actually we're getting a little bit of an

10    echo.  I think there's a line open.  Somebody might want to

11    mute their sound.

12         THE COURT:  Okay.

13         MR. CHENG:  It's 251-459-2001.

14         So, Your Honor, yes, we would file a response if

15    there's a motion for a PLRA motion.  Additionally, we think in

16    some ways that motion is almost like a dispositive motion.

17    They should be required to file it before the evidentiary

18    hearing rather than just filing it whenever they wish.  It

19    would certainly avoid a lot of wasted time and effort if they

20    file it at a time when the Court can hear any relevant

21    evidence on that issue.

22         We don't actually think a motion like that has any

23    grounds, but nonetheless because there is this receivership

24    issue pending, to avoid wasteful resources, there should be

25    some restriction on when they can file the motion.

1          THE COURT:  Thank you.  Thank you.  That actually makes

2    sense.

3          Since the defendants are already working on the motion,

4    Mr. Siler, are the defendants prepared to file their motion by

5    1:00 p.m., on Friday, January 21st?

6          MR. SILER:  Yes, Your Honor, we can file it on or

7    before then.

8          THE COURT:  Okay.  The Government then will have until

9    the 27th to respond.  Is that sufficient time for the

10   Government, Mr. Cheng?

11         MR. CHENG:  Yes, Your Honor, I believe so.

12         THE COURT:  Okay.  And to the extent the defendant

13   needs to file a reply, it should do so by close of business

14   January 31st.

15         MR. SILER:  We can do that, Your Honor.

16         THE COURT:  Okay.  And if the Court needs to hear

17   anything prior to that, we'll let the parties know.  So we're

18   going to -- we're still moving forward, unless the Court stays

19   it based on the briefing that will be filed, this hearing will

20   begin on February the 14th.  It's my anticipation the evidence

21   will be from February 14th through the 17th.  Again, the 18th

22   will be a date for closing arguments.

23         The other portions of the order are still in effect,

24   except for, you know, again, if there are any -- I'm moving

25   the timeframe for the stipulations obviously.  And the witness

1 lists and the exhibit lists, if there are any exhibit lists,

2 witness lists, stipulations, proposed findings of fact and

3 conclusions of law, they should all be submitted by the close

4 of business on February the 9th, which is Wednesday before the

5 14th.

6       And, of course, the other request is still applicable;

7 that is, I think in the earlier order I told the parties to go

8 ahead and be in a position to present names of potential

9 receivers, so if the Court were to take that step, there could

10 be little delay in trying to find appropriate persons for

11 that.

12       MR. CHENG:  Your Honor?

13       THE COURT:  Yes, Mr. Cheng.

14       MR. CHENG:  I think that sounds reasonable to the

15 department.  We do have a question about order of

16 presentation.  We were assuming the United States goes first,

17 but we did want to clear that up with the Court and make sure

18 that was also the Court's thoughts and the defendant's views.

19       THE COURT:  That was the Court's thoughts, but since it

20 is a motion on contempt on the -- you know, on the agreement

21 itself.  But, you know, let me hear from the defendants in

22 case they -- because we do have a court reporter here.  I do

23 want that -- for the record, the court reporter is present

24 today.

25       Does the defendant oppose that order of proof?

1          MR. SILER:  No, Your Honor.  I think that would be

2    acceptable to the defendant.

3          THE COURT:  Okay.

4          MR. CHENG:  And, Your Honor?

5          THE COURT:  Yes, Mr. Cheng.

6          MR. CHENG:  Also rebuttal, we assume the two days also

7    includes some time for rebuttal.  So after the defendants

8    presented their case, the monitors can respond.  And when the

9    monitors speak, the defendants can respond as well.

10          THE COURT:  We may -- we may set aside some time for

11    rebuttal, but I'm not going to -- any rebuttal will be done on

12    that Friday, but we're going to do closings on Friday as well.

13    So any rebuttal will be limited, too, and you will know the

14    week of the trial how much time you will have for rebuttal.

15    It won't be long.  I mean, it won't be much time.

16          And I'll tell the parties now, we will do whatever we

17    can do to stay within that particular timeframe, that one

18    week.  It may require -- it may require that we are here a

19    little bit longer than from 9:00 to 5:00, and it may require

20    that on some of the days; it may.  It probably should not, but

21    it may, so just be prepared.

22          We will social distance in the courtroom as much as

23    possible.  I mean, the parties and lawyers -- we really have

24    only lawyers and witnesses and parties, but this courtroom is

25    big enough for people to spread out even if some persons are

1    sitting in the jury box or out of the way.

2         All the lawyers, for example, do not have to sit at

3    counsel table if they don't want to.  We will do our best to

4    protect each other.

5         Mr. Chambers, to the extent that there will be another

6    lawyer involved in the case after the County has approved,

7    they should enter their -- Mr. Hall should enter his

8    appearance immediately and be prepared to participate at

9    whatever level he wishes or whatever that week of the 14th.

10        MR. CHAMBERS:  Yes, sir.

11        THE COURT:  All right.  Is there anything else we need

12   to take care of?

13        MR. CHENG:  Yes, Your Honor, two administrative issues.

14   The first is, we will be in touch with the courtroom deputy

15   about exhibits and how the Court prefers the exhibits, in

16   terms of how many notebooks or copies everyone wants or if

17   there's anything else we should be aware of.

18        But related to that issue is the issue of the personal

19   identifier information.  As we were going through the

20   exhibits, we noticed that Ms. Simpson, for example, cites the

21   number of incident reports.  There are a number of compendia

22   of incident reports that have some sensitive or PII.  We were

23   thinking about filing a motion to seal and wanted to give the

24   Court a head's up on that.

25        While redaction is possible, it might end up with an

1    exhibit that has so much stuff edited out, it's not that

2    useful to the Court.  But we do want to bring that up in case

3    the Court has any preferences about how to handle the PII

4    issues.

5         THE COURT:  Okay.  We'll be able to give you some

6    direction shortly on that.  I mean, I think sealing certain --

7    well, sealing some of this information would be appropriate.

8    I'm not sure if everything ought to be sealed automatically,

9    but the parties should do their best to make sure that there

10   is no personal identifying information.  Particularly

11   information that could be used in a way to harm any of these

12   persons who might -- whose identification might be disclosed

13   in some way.

14        Is there anything else we need to take care of?

15        MR. CHENG:  I believe Ms. Simpson flagged one more

16   issue for me.  If the defendants file a motion under the PLRA,

17   would they be objecting to Ms. Simpson touring as part of

18   their effort to stay the Court's orders?

19        MR. SILER:  To be frank with you, I have not even

20   considered that possibility, and I don't know that I've got a

21   response available to it right at the moment, Your Honor.

22        THE COURT:  All right.  Well, right now she's disclosed

23   she intends to -- she and her team, Mr. Parrish, intend to be

24   there during the week of the -- some portion during the week

25   of the 24th, and I would imagine as in previous instances,

1  there's already a request for documents or other things that

2  might be out there that the County has already -- that is

3  either producing or has produced, because she's been doing --

4  the team has been doing their job on a monthly basis, anyway.

5  So if obviously -- obviously if that's going to be part of the

6  defendants -- if a stay would abrogate her right to conduct

7  any of her monitoring duties, obviously the sooner the

8  defendants file that the better.

9       So, I mean, we'll deal with that if it comes.  I mean,

10  right now she's announced that she's scheduled to be there at

11  some point during the week of the 24th.  And I imagine --

12  Ms. Simpson, please tell me if I'm wrong.  I assume there's

13  already been some communication with persons on the ground

14  there who you normally talk to about the information that you

15  generally need to do your monitoring reports, anyway; is that

16  correct?

17       MS. SIMPSON:  That's correct.  We have let the

18  compliance coordinator know that we're planning on being

19  on-site and the documents that we would like to review before

20  being on-site.  He's the one we normally coordinate these site

21  visits with.

22       THE COURT:  Okay.  Well, thank you.

23       Is there anything else?

24       MR. CHENG:  Nothing from the United States, Your Honor.

25       THE COURT:  All right.

1          MR. SILER:  Nothing from the defendants, Your Honor.

2          THE COURT:  All right.  Well, thank you-all again for

3     making yourselves available.  I look forward to receiving any

4     filings that the parties wish to file, and obviously I'll see

5     you on February 14th.

6          This concludes all that the Court has in this matter.

7          The Court is now in recess.

8     *****************************************************************

**COURT REPORTER'S CERTIFICATE**

I, Candice S. Crane, Official Court Reporter for the United States District Court for the Southern District of Mississippi, do hereby certify that the above and foregoing pages contain a full, true, and correct transcript of the proceedings had in the forenamed case at the time and place indicated, which proceedings were stenographically recorded by me to the best of my skill and ability.

I further certify that the transcript fees and format comply with those prescribed by the Court and Judicial Conference of the United States.

THIS, the 31st day of January, 2022.


/s/ Candice S. Crane, RPR, CCR

Candice S. Crane, RPR, CCR #1781
Official Court Reporter
United States District Court
Candice_Crane@mssd.uscourts.gov