IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.: 3:16-cv-00489-CWR-RHWR |
| | ) | |
| | ) | |
| HINDS COUNTY, ET AL., | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

## UNITED STATES' MEMORANDUM IN SUPPORT OF THE MOTION *IN LIMINE* FOR ADMISSION OF MONITORING REPORTS

The United States files this memorandum in support of its motion *in limine* for admission of the Monitoring Reports of the Court-appointed Monitor, Elizabeth E. Simpson, at the evidentiary hearing on the Order to Show Cause and Defendants' Motion to Terminate or, Alternatively, Modify the Consent Decree.  *See* Order to Show Cause, Nov. 23, 2021, ECF No. 100 ("Order to Show Cause"); Order, Jan. 10, 2022, ECF No. 107; Defs.' Motion to Terminate or, Alternatively, Modify Consent Decree, Jan. 21, 2022, ECF No. 111 ("Motion to Terminate"). The Monitoring Reports constitute highly relevant evidence and are admissible under multiple exceptions to the hearsay rule, namely, the records of regularly conducted activity, public records, and residual hearsay exceptions.  The motion *in limine* should be granted.

## I.     The Monitoring Reports Are Highly Relevant to the Proceedings

Evidence is relevant if it has "any tendency" to make a fact "of consequence" to the action more or less probable.  Fed. R. Evid. 401.  Relevant evidence is generally admissible,

unless the United States Constitution, other federal law, or a rule of evidence provides for its exclusion.  Fed. R. Evid. 402.

At the upcoming hearing, the Court will determine whether to hold Hinds County, et al. ("Defendants"[1]), in civil contempt for violation of the court-ordered Settlement Agreement and Stipulated Order.  *See* Settlement Agreement Between United States of America and Hinds County, Miss. Regarding Hinds County Jail, July 19, 2016, ECF No. 8-1 ("Consent Decree" or "Decree"); Stipulated Order, Jan. 16, 2020, ECF No. 60-1 ("Stipulated Order"[2]).  Contempt is warranted if the Court finds:  "1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order."  *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000) (quoting *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992)).

If the Court holds Defendants in contempt, the Court will then determine the proper remedy to bring them into compliance, including potential receivership.  Receivership is an appropriate remedy where the Court finds:  (1) "clear necessity," (2) "legal and less drastic equitable remedies are inadequate," and that the (3) "benefits of receivership outweigh the burdens."  *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012); *see also Plata v. Schwarzenegger*, 603 F.3d 1088, 1093–94 (9th Cir. 2010) (describing receivership as "recognized equitable tool[] . . . to remedy otherwise uncorrectable violations of the Constitution or laws").

---

[1] Defendants include Hinds County, Mississippi; the Hinds County Board of Supervisors; and the Sheriff of Hinds County, in his official capacity.  Settlement Agreement Between United States of America and Hinds County, Miss. Regarding Hinds County Jail, July 19, 2016 ("Consent Decree" or "Decree," ECF No. 8-1 ¶¶ 1-4.

[2] The Stipulated Order is a remedial plan Defendants agreed to in order to achieve compliance with the Consent Decree.  *See* Order to Show Cause at 9.

The Monitoring Reports are critical to resolution of the contempt proceedings and selection of a remedy.  The Reports were created pursuant to the Agreement to assess Defendants' compliance and provide recommendations for achieving compliance.  *See* Consent Decree ¶¶ 149–50; Order, July 19, 2016, ECF No. 8 at 2 (ordering that the Consent Decree "be implemented by the parties in accordance with its terms").  The Consent Decree recognizes that the findings in the Monitoring Reports "will be considered persuasive, but rebuttable, in Court." Consent Decree ¶ 150.

The Monitor's years of detailed, careful Reports constitute evidence of material facts at issue before the Court, namely, the status of Defendants' compliance in each substantive area of the Consent Decree and the continued need for the Decree's provisions.  The Monitoring Reports therefore constitute evidence of a consequential fact—Defendants' progress towards compliance and the ongoing need for the provisions of the Decree.  The Reports establish that Defendants have had multiple opportunities to correct the deficiencies observed by the Monitor and have failed to fix longstanding problems in the Hinds County Detention Center ("Jail" [3]).  This history of noncompliance is directly relevant to the need for receivership.  The Monitoring Reports demonstrate the need for a receiver to correct persistent, ongoing violations of federal law at the Jail.  The Court's reliance on the Monitoring Reports in issuing the Order to Show Cause further indicates that the Reports are highly relevant to the upcoming proceedings.  *See, e.g.*, Order to Show Cause at 4, 9–10, 17–18, 19 (citing to and quoting Monitoring Reports).

Accordingly, the Monitoring Reports are relevant evidence and generally admissible, unless Defendants can establish that some other rule provides a basis for their exclusion.

---

[3] The Jail includes the Hinds County Adult Detention Center in Raymond, Mississippi; the Hinds County Work Center in Raymond, Mississippi; and the Jackson Detention Center in Jackson, Mississippi. Agreement ¶ 4.  The Settlement Agreement also covers facilities used to house youth, including the Henley-Young Juvenile Justice Center.  *Id.* § IV.K.

**II.      The Monitoring Reports Are Admissible Under Multiple Hearsay Rules**

The parties have conferred in an attempt to reach agreement as to a stipulation to the

Monitoring Reports, but have not been able to reach agreement.  The United States anticipates

that Defendants may argue that the Reports contain hearsay and should be excluded on that basis.

However, under Federal Rule of Evidence 803, certain categories of hearsay evidence are

admissible regardless of the declarant's availability to testify, because the evidence is sufficiently

reliable.  The Monitoring Reports, all of which are filed on the public record in this case, may be

admitted under either Rule 803(6) or Rule 803(8).  Alternatively, the Monitoring Reports are

properly admissible pursuant to Rule 807, the Residual Exception, because the circumstances of

their creation carry significant trustworthiness guarantees and are more probative than any other

evidence the United States could obtain.

**A. The Monitoring Reports Should Be Admitted as "Records of a Regularly Conducted Activity" Under Rule 803(6)**

Rule 803(6) allows the introduction of a "record of an act, event, condition, opinion, or

diagnosis" if:  1) the record was made at or near the time of the regularly conducted activity by

someone with knowledge of that activity, or from information transmitted by someone with

knowledge; 2) the record was kept in the course of the regular activity of an occupation; 3) the

making of the record was a regular practice of that activity; 4) these conditions can be shown by

the testimony of the custodian of the record or another qualified witness; and 5) "the opponent

does not show that the source of information or the method or circumstances of preparation

indicate a lack of trustworthiness."  Fed. R. Evid. 803(6).

All five conditions are met here.  The Monitoring Reports were compiled and drafted

shortly after on-site and virtual tours to the Jail, during which the Monitor interviewed staff and

prisoners, reviewed records, and toured facilities.  The Monitor is a professional in the criminal

justice field, and it is her vocation to provide technical assistance to local governments.[4]  She

conducted the on-site and virtual assessments of the Jail and authored the Monitoring Reports as

part of her occupational and court-appointed duties.  The Reports are therefore records kept in

the regular course of her job as a court-appointed Monitor, and she has a regular practice of

making such Reports.  These Reports were not prepared in anticipation of litigation by an expert

retained by either party but rather as part of the Monitor's regular duties as ordered by the Court

and agreed to by the parties.  *See* Consent Decree ¶¶ 136, 148–150.  These conditions can all be

established by the Monitor herself, who will testify at the evidentiary hearing.

Finally, there is nothing about the source of information or the method or circumstances

surrounding the preparation of the Monitoring Reports that indicates a lack of trustworthiness.

The process the Monitor must follow in writing these Reports, under the terms of the parties'

Decree, safeguards against inaccuracies or untrustworthy methods.

First, the Decree itself requires that the Monitoring Reports are based on "review of a

sufficient number of pertinent documents and interview[s] [of] a sufficient number of staff and

prisoners to accurately assess current conditions."  *Id.* ¶ 150.b.  Defendants provide those

documents to the Monitor directly, and they are entitled to accompany the Monitor during site

visits.  *See id.* ¶¶ 142, 143, 147.  The Decree also mandates that the Monitoring Reports include a

"description [of] . . . the factual basis for each of the Monitor's findings."  *Id.* ¶ 150.d.

Second, to ensure these requirements are met, both Defendants and the United States

have the opportunity to comment on the Report before it is filed.  *Id.* ¶ 149.  During this

comment period, either party has the opportunity to correct inaccuracies in the Monitoring

---

[4] *See* Mem. of Law in Support of Joint Mot. to Appoint Elizabeth Lisa Simpson as Monitor, Aug. 18, 2016, ECF No. 10 at 2–4 (describing Monitor's background and qualifications, including her work as technical advisor on jail population management and developing alternatives to incarceration for Bernalillo County, New Mexico).

Report.  The Monitor considers this feedback before submitting the final version to the Court.

*Id.*  Under this process, there is no reason to doubt the trustworthiness of the Monitoring Reports.

Indeed, the Court's repeated quoting and citing of the Reports in the Order to Show Cause shows

their trustworthiness.

Accordingly, the Monitoring Reports should be admitted as records of her regularly

conducted professional activity, under Rule 803(6).

**B.  The Monitoring Reports Should Be Admitted as Public Records Under Rule 803(8)**

The Monitoring Reports are also admissible as "public records" under Rule 803(8).  In

civil cases, Rule 803(8) allows the admission of "a record or statement of a public office if . . . it

sets out . . . a matter observed while under a legal duty to report" or "factual findings from a

legally authorized investigation," provided that the opponent of the evidence "does not show that

the source of information or other circumstances indicate a lack of trustworthiness."  Fed. R.

Evid. 803(8).

"[E]valuative reports are presumed not to be excluded under the hearsay rule unless there

are indications of untrustworthiness."  *Moss v. Ole S. Real Est.*, 933 F.2d 1300, 1305 (5th Cir.

1991).  The trustworthiness inquiry focuses on the preparation of public records and reports as

the indicia of their reliability, "not on whether the court agrees with the conclusions" reached.

*Id.* at 1307.  A nonexclusive list of factors proposed by the Rules' Advisory Committee are

"helpful in determining trustworthiness:  (1) the timeliness of the investigation; (2) the special

skill or expertise of the official; (3) whether a hearing was held and at what level; and (4)

possible motivational problems."  *Id.* at 1305; *see also id.* at 1307 ("[t]he four factors suggested

by the Advisory Committee correctly focus attention on the preparation of the report").  The

party seeking exclusion of the evidence bears the burden to prove it untrustworthy.  *Dale v. Ala Acquisitions, Inc.*, 398 F. Supp. 2d 516, 520 (S.D. Miss. 2005) (citing *Moss*, 933 F.2d at 1305).

Here, the declarant is the court-appointed official who oversees the Consent Decree "subject to the supervision and orders of the Court."  Consent Decree ¶¶ 136, 139.  As the Decree outlining the Monitor's responsibilities is an Order of the Court, the Monitor is under a legal duty to investigate progress towards compliance and report on that progress via the publicly available Reports.  In this way, the Monitor is as accountable to the public as any other officer producing a publicly available report.

Significantly, the policy behind the Rule 803(8) exception "is that public records or reports, by virtue of their being based on legal duty and authority, contain sufficient circumstantial guarantees of trustworthiness to justify their use at trial."  *United States v. Davis*, 826 F. Supp. 617, 621 (D.R.I. 1993) (internal quotations and citation omitted); *Moss*, 933 F.2d at 1308 ("Evaluative reports generally do not have the four problems associated with most hearsay—problems of memory, perception, ability to communicate, and sincerity.").  "The assumption is that public officers will perform their duties, that they lack motive to falsify, and that the public inspection to which the records are subject will disclose inaccuracies."  *Davis*, 826 F. Supp. at 621 (citing 5 WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1632 at 618–21 (James H. Chadbourn rev. ed. 1974)); *see also* Fed. R. Evid. 803 advisory committee's notes ("Justification for the [Rule 803(8)] exception is the assumption that a public official will perform his duty properly . . . .").

The four factors proposed by the Advisory Committee for assessing trustworthiness further support the reliability of the Monitoring Reports.  First, as discussed, the Monitoring Reports were prepared shortly following site visits, both in-person and virtual, to the Jail.

Second, the Monitor was selected by joint agreement of the parties because of her specific skills, experience, and competency for the monitoring role.  *See* Mem. of Law in Support of Joint Mot. to Appoint Elizabeth Lisa Simpson as Monitor, Aug. 18. 2016, ECF No. 10 at 2–4.  And given the Monitor's independence[5] and her selection by joint motion, there are no concerns regarding the Monitor's motive to do anything but issue fair and accurate Reports.  *See Moss*, 933 F.2d at 1305 (providing example of railroad company's own version of events contained in its company records as suggestive of potential unreliability).  That the Monitor did not convene hearings in issuing her Reports is insufficient to overcome the presumption of reliability afforded to public records, particularly where the parties' Decree does not contemplate that process.  *See Dubois v. State Farm Fire & Cas. Co.*, 734 F. Supp. 722, 724 (E.D. La. 1990) (finding it "irrelevant" that no hearing was held given circumstances of report's preparation).  Additionally, the provisions in the Decree that mandate the Monitor's reporting methodology, *see generally* Consent Decree § VII, ensure that the preparation of the Reports followed a reliable process, and reliability of preparation is the touchstone of trustworthiness.  *See Moss*, 933 F.2d at 1307.

In an analogous case in the District Court for the District of Columbia, the Magistrate Judge found that reports of a court monitor may be admissible on several grounds, including the public record exception, "as (1) matters observed pursuant to duty imposed by law as to which matters there was a duty to report or (2) factual findings resulting from an investigation made pursuant to authority granted by law."  *Evans v. Williams*, 238 F.R.D. 1, 2 (D.D.C. 2006) (also finding that other exemptions to hearsay rule applied); *see also Evans v. Fenty*, 480 F. Supp. 2d 280, 293, 296 n.27 (D.D.C. 2007) (later opinion by presiding District Court Judge, noting that

---

[5] The Monitor can be terminated only by joint stipulation of the parties or for good cause unrelated to the Monitor's findings, with Court approval.  Agreement ¶ 140.  "Neither the County nor the United States, nor any of their employees or agents, may have any supervisory authority over the Monitor's activities, reports, findings, or recommendations."  *Id.*

Magistrate Judge's rulings regarding admissibility of Court Monitor's reports are final).  The District Court Judge considered the Court Monitor's reports as evidence in support of Plaintiff's motion for receivership.  *Evans v. Fenty*, 480 F. Supp. 2d at 297.  The process followed for submitting the reports in that case is identical to the process in this case, wherein the parties have the opportunity to comment on the draft report before it is submitted to the Court.

 The Defendants here have been given the opportunity to review the Monitoring Reports before they were submitted to the Court and provide any objections, comments, or requests for clarification.  Defendants also did not raise objections to the Court regarding the Monitoring Reports or the Monitor's methodology when the Reports were filed on the public docket.  There can be no legitimate argument from Defendants—especially given their ability to correct any errors in the Reports *before* they are publicly filed in the record—that the Monitoring Reports are unreliable.

 Accordingly, the Court may also admit the Monitoring Reports under Rule 803(8).

**C.  If Not Admissible Under Rule 803(6) or 803(8), the Monitoring Reports Are Admissible Under Rule 807**

If the Court finds that the Monitoring Reports are neither records of regularly conducted activity nor public records, the Court may still admit them under Federal Rule of Evidence 807. That Rule, called the "Residual Exception," allows for the admission of hearsay statements not subject to any other exception in Rules 803 or 804.  To be admitted under the residual exception, the statement must:  1) have sufficient guarantees of trustworthiness, after considering the totality of the circumstances under which it was made and any corroborating evidence, and 2) be more probative than other evidence that the proponent can obtain through reasonable efforts. Fed. R. Evid. 807.

The Monitoring Reports meet these requirements.  First, as noted above, the Reports have significant circumstantial guarantees of trustworthiness, given the Consent Decree's court-ordered mandates on what the Monitor must include and consider in compiling the Reports, the parties' opportunity to review the Reports prior to filing, and the Monitor's experience in conducting this type of assessment.  *Cf. United States v. El-Mezain*, 664 F.3d 467, 499 (5th Cir. 2011) (holding residual exception did not apply where there was "nothing known about the circumstances under which the documents were created, the duty of the authors to prepare such documents, the procedures and methods used to reach the stated conclusions, and, in the case of two of the documents, the identities of the authors").  The Monitor's independence, and the fact that she was selected by joint motion of the parties, further guarantees the trustworthiness of her reporting.  *See Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178, 1182 (5th Cir. 1975) (admitting publication from government agency over hearsay objection where author's "only conceivable interest was in insuring safety").  And as above, the Court's repeated quoting and citing of the Monitoring Reports in the Order to Show Cause shows their trustworthiness.

10

There is also significant evidence corroborating the Monitoring Reports already in the record, as the Court has heard directly from Jail administrators at periodic status conferences during the course of this case. *See, e.g.*, Tr. of Videoconference Proceedings, Sept. 15, 2021, at 29:21–32:1. Second, the Monitoring Reports are undoubtedly more probative than other evidence that the United States can obtain through reasonable efforts. If the Reports are excluded, the United States could be forced to put on testimony by the Monitor and her consultants, as well as numerous deputies, prisoners, administrators, and other officials in order to prove everything contained in the Monitoring Reports.

Such testimony would also be a waste of the Court's time. This goes to the purpose of the Federal Rules of Evidence to "administer every proceeding fairly" and to "eliminate unjustifiable expense and delay."[6] Fed. R. Evid. 102. The Monitor's evaluations serve to inform the Court of progress towards compliance, so that the Court can determine if remedial efforts are moving at an appropriate pace, or if Defendants should be held in civil contempt for failing to abide by the Consent Decree. In writing the Monitoring Reports, the Monitor is serving as the eyes and ears of the Court inside the facility. Without the Monitoring Reports, the Court would either need to hear days' worth of testimony from the Monitor, her consultants, and other witnesses, walking through each of the substantive provisions in excruciating detail, or schedule its own tours, meet with prisoners, interview staff, and conduct all other activities currently assigned to the Monitor, in order to assess Defendants' compliance. Appointing a Monitor and requiring the Monitor to submit Reports to the Court at regular intervals is a much more efficient way for the Court to receive this information. Allowing those Reports into evidence therefore

---

[6] Rule 807 previously required that the admission of residual hearsay "best serve the purposes of these rules and the interests of justice." Fed. R. Evid. 807 advisory committee's notes to 2019 amendment. That requirement was deleted as part of the 2019 Amendments, but only because it was superfluous in light of Rule 102. *Id.*

11

serves the interests of justice and the purposes of efficiency and reliability inherent in the Federal Rules of Evidence.

Moreover, the Monitor and her consultants will be available for cross examination by Defendants at the evidentiary hearing planned for the week of February 14, 2022.  Even though Defendants had every opportunity to address any concerns about the accuracy of the Reports during the review and comment period, Defendants are also free to cross examine the Monitor and her consultants regarding their methods, conclusions, and any other topic relevant to the Monitoring Reports.  In addition, Defendants are free to put on their own witnesses to rebut any portions of the Reports that Defendants believe are inaccurate.

Accordingly, if the Court does not find Rules 803(6) or (8) to be applicable to the Monitor's Reports, the Court may still admit the Reports under the residual exception of Rule 807.

## III.   Conclusion

For the foregoing reasons, the United States requests that the Court grant the Motion in full, and admit into evidence the Monitoring Reports.

Respectfully Submitted,

**FOR THE UNITED STATES:**

Darren J. LaMarca      .
United States Attorney
Southern District of Mississippi

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief
Civil Rights Division
Special Litigation Section

MITZI DEASE PAIGE (MS #6014)
Assistant U.S. Attorneys
U.S. Attorney's Office

LAURA L. COWALL (DC #481379)
Deputy Chief
laura.cowall@usdoj.gov

Southern District of Mississippi
501 E. Court Street – Ste. 4.430
Jackson, MS 39201
MPaige@usa.doj.gov
(601) 973-2840
(601) 965-4409 (fax)

(202) 514-1089
(202) 514-0212 (fax)

/s/ *Christopher N. Cheng*
CHRISTOPHER N. CHENG (PA #69066)
Trial Attorney
christopher.cheng@usdoj.gov
(202) 514-8892
(202) 514-4883 (fax)

SARAH STEEGE
Trial Attorney
sarah.steege@usdoj.gov

HELEN VERA
Trial Attorney
helen.vera@usdoj.gov

United States Department of Justice
Civil Rights Division
Special Litigation Section
150 M St., N.E.
Washington, DC  20002

DATED:  February 1, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 1, 2022, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

<div style="margin-left:40%">

*/s/Christopher N. Cheng*

CHRISTOPHER N. CHENG
Attorney for the United States
United States Department of Justice
Civil Rights Division
Special Litigation Section
150 M Street, N.E.
Washington, DC  20002
(202) 514-8892
christopher.cheng@usdoj.gov

</div>