IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA                                                    PLAINTIFF

VS.                                             CIVIL ACTION NO. 3:16-CV-489-CWR-RHWR

HINDS COUNTY, ET AL.                                                         DEFENDANTS

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO
CONTINUE AND FOR PRODUCTION OF DOCUMENTS AND OTHER DISCOVERY**

Defendants, Hinds County, Hinds County Board of Supervisors, and Victor Mason, in his official capacity as Sheriff ("the County" or "Defendants"), respectfully submit this instant motion to continue the consolidated evidentiary hearing and request for production and other discovery.

I.   INTRODUCTION

A litigant has the fundamental right to fairness in every proceeding. Fairness is upheld by avoiding even the appearance of partiality. *See, e.g.*, *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). When actions stand at odds with these basic notions, we must act or suffer the loss of public confidence in our judicial system. "[J]ustice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14 (1954).

Given the current state of the record, a continuance of the consolidated evidentiary hearing is warranted and would not prejudice either the United States or Defendants. Moreover, to the extent such communications exist, Defendants should be permitted to obtain information from the Monitors[1] regarding their ex parte communications with Hinds County employees,[2] and the

---

[1] The Monitors are Elizabeth Simpson, David M. Parrish, Jim Moeser, and Dr. Richard Dudley.

[2] "Hinds County" means Hinds County, Mississippi, including the Hinds County Sheriff's Office, the Hinds County Board of Supervisors, and the "Jail" as that term is collectively defined in paragraph 4 of Settlement Agreement Between The United States of America and Hinds County, Mississippi Regarding The Hinds County Jail (ECF 8-1).

Monitors' ex parte communications with the United States.[3] Defendants should also be permitted to depose the Monitors. And the parties should be prohibited from engaging in witness preparation with the Monitors. Finally, DOJ should be required to disclose information related to their expert witnesses, including written reports, by February 7, 2022.

## II.  BACKGROUND

On November 23, 2021, the Court entered a show cause order, directing the County to show cause as to why it should not be found in contempt and a receiver appointed to operate the Hinds County Detention Center at Raymond, Mississippi. Show Cause Order [100]. On December 14, 2021, the County timely responded to the Court's show cause Order. Response [105]. On January 10, 2022, the Court set a hearing on the show cause Order for January 24, 2022.

On Friday, January 14, the County moved to continue the January 24 hearing on account of counsel for the County testing positive for COVID-19 and co-counsel being exposed to that individual. Motion [108]. As part of that Motion, the County informed the Court of its intention to file a motion to terminate the Consent Decree [8-1] under the Prison Litigation Reform Act, 18 U.S.C. § 3626. *Id.* On January 18, 2022, the Court held a status conference at which the Court announced that it would reset the hearing for February 14, 2022. During this hearing, Monitor Lisa Simpson indicated that the monitors were scheduling a visit to the facility the week of January 24, 2022. In addition, the Court and the parties discussed Defendants' then-forthcoming PLRA motion, established a briefing schedule for that motion, and Defendants timely filed the motion on January 21, 2022. *See* Motion [111], Memorandum [112].

The monitors indeed began a site visit on January 24, this being their *first on-site visit* to the RDC *in nearly two years*. *See* Jan. 19, 2022, E-mail from L. Simpson to Defendants' Counsel

---

[3] "Ex parte communications" means communications that did not include Defendants' counsel.

with Site Visit Schedule, attached as **Exhibit "A."** The visit began January 24, 2022, and it remains ongoing, with interviews occurring earlier today. *See, e.g.*, Feb. 1, 2022 E-mail from L. Simpson to Counsel, attached as **Exhibit "B."**

On February 1, 2022, the Court held a status conference with the parties. During that conference, the Court made clear it believed the show cause issue could be heard February 14 because that issue was predicated on a view of the record that looked back in time from the date of the Court's show cause Order [100], November 23, 2021. In addition, the Court posed questions to the parties related to the extent to which both the show cause issue and the PLRA motion could be heard at the same time, with the parties ultimately opting to move forward with hearing both issues at the February 14 hearing.[4] Among other topics discussed at the February 1 conference, the Court made clear that if Defendants wanted to obtain information from the monitors prior to the February 14 hearing, they should file a motion for that information. Lastly, based on statements made during a status conference held on February 1, 2022, the information gained by each of the four monitors during this latest monitoring visit will be the subject of testimony from those monitors that the United States offers at the February 14, 2022 consolidated evidentiary hearing.

### III.  ARGUMENT & AUTHORITIES

**A.  The County respectfully requests a continuance of the February 14 consolidated hearing or that**, **at a minimum**, **the hearing be bifurcated**.

At present, if the consolidated evidentiary hearing proceeds as scheduled, Defendants will be seriously prejudiced in their ability to defend themselves for numerous reasons. First, prior to January 2022, the monitors had not been in the facility for nearly two years, and during the week

---

[4] Defendants' counsel acknowledge that during the February 1 conference, they opted to move forward with a hearing on both the contempt issue and the PLRA motion starting on February 14, 2022. In reflecting further on the timing of such a consolidated hearing and for the reasons set forth in this memorandum, *see infra* Section III.A., proceeding with a hearing on both issues on February 14 risks prejudicing Defendants' efforts to present and respond to evidence at that hearing, but this prejudice can be avoided.

3

of January 24 (when the evidentiary hearing originally was set to take place), the monitors began a monitoring inspection that remains ongoing today. *See* **Exhibit** "**B**".

This monitoring tour will provide the factual basis for the monitors' forthcoming testimony at the consolidated evidentiary hearing. As the history of this case indicates, the monitors have provided the Court with lengthy, 100-plus page reports containing their opinions related to conditions and operations at the County's detention facilities. Thus, the ongoing monitoring visit and forthcoming sixteenth monitoring report will provide the monitors' views on current conditions and operations at the facility.

Yet, under the terms of the challenged consent decree, that report will not be ready until early March 2022. *See* [8-1] Consent Decree at ¶ 149, pp. 55-57. Meanwhile, Defendants have had no opportunity—despite trying—to conduct discovery related to the monitors' impressions and observations regarding the current conditions of the facility and its operations. Defendants have not sat idle, *see infra* Section III.B. But, even assuming they are afforded leave to obtain information and testimony from the monitors and the monitors could gather, scan, and make complete production of the various requested documentation, Defendants would not receive that information within any reasonable time prior to the February 14, 2022 hearing.

Thus, *the hearing* will serve as Defendants' first opportunity to obtain meaningful information and testimony related to the monitors' observations, findings, and opinions. The hearing will, in essence, be Defendants' first—and only—opportunity to conduct discovery. Such trial by surprise is directly contrary to notions of fairness, due process, and the spirit of Federal Rules of Civil Procedure 1 and 26. But this can be avoided. The County requests a reasonable continuance of the February 14 consolidated evidentiary hearing.

4

In the alternative, only, the County respectfully requests that the hearing be bifurcated such that the contempt portion proceed as planned on February 14, while the motion to terminate is continued for a time that is reasonable to allow Defendants to prepare for the hearing through discovery, retention of an expert, and preparation for testimony and cross-examination. There is no discernible prejudice arising from allowing a fair record to be developed in the unique circumstances that resulted in the first monitoring tour in nearly two years taking place <u>after</u> Defendants announced their intention to seek termination of the consent decree. Bifurcation of the hearing and continuing the PLRA issue also provides credibility when one considers it is reasonable to assume the PLRA hearing will take longer, will involve an analysis of <u>current</u> conditions and operations as opposed to an analysis of information <u>looking</u> <u>back</u> from the November 23, 2021 show cause order, and will require a greater number of witnesses and live testimony.

**B.  The monitoring team should be required to produce any ex parte communications with Hinds County's employees.**

The Monitors should be required to produce the following information to Defendants on or before February 7, 2022:

- All notes, documents, and electronically stored information[5] that memorialize any communications that a Monitor(s) has had with any employee of Hinds County since January 1, 2021.

- All written communications (documents and electronically stored information) from a Monitor(s) to any employee of Hinds County since January 1, 2021 that did not include Defendants' counsel.

- All written communications (documents and electronically stored information) from any employee of Hinds County to a Monitor(s) since January 1, 2021 that did not include Defendants' counsel.

---

[5] "Electronically stored information" means electronically stored information – including emails, text messages, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations – stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.

5

Under Federal Rule of Evidence 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without evidence," and "the fact is of consequence in determining the action." *Badmus v. Mutual of Omaha Ins. Co.*, 709 F. App'x. 260, 262 (5th Cir. 2017). In general, under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case." The Monitors' ex parte communications with employees of Hinds County are relevant to the claims or defenses in this action because the Monitors have a history of using their communications with employees of Hinds County in this action. Given that history, Defendants should have access to all of the Monitors' communications with employees of Hinds County, to particularly include the Monitors' ex parte communications with its employees.

If Defendants do not have those ex parte communications, then the playing field is unjust. Moreover, to the extent the Monitors have had ex parte communications with Hinds County employees, Defendants have no way of knowing what information the Monitors excluded from their reports. Likewise, without access to the Monitors' ex parte communications with Hinds County employees, the Court and the parties have no way of knowing whether the Monitors have received information that supports Defendants' positions in this action that the Monitors have not included in their reports or otherwise disclosed to the Court and the parties.

**C.** **The monitoring team should be required to produce any ex parte communications with the United States.**

The Monitors should be required to produce the following information to Defendants on or before February 7, 2022:

- All written communications (documents and electronically stored information) between the Monitor(s) that did not include Defendants since January 1, 2021.

6

Ex parte communications between the Monitors and the United States are relevant to issues of bias, independence, and prejudice. If, for example, the United States is directing, coordinating, or coaching the reports, findings, or testimony of the Monitors, then the Monitors are not unbiased, and they certainly are not independent.[6] The same is true to the extent, if any, that the Monitors and the United States are coordinating their efforts. Evidence that tends to show bias or motive is admissible under Federal Rule of Evidence. 608. *Adams v. Memorial Herman*, 973 F.3d 343, 351 (5th Cir. 2020) (citation omitted). Defendants respectfully request that the Court require the Monitors to produce to Defendants all written communications (documents and electronically stored information) between the Monitor(s) that did not include Defendants since January 1, 2021.

### D. Defendants should be permitted to depose the monitoring team.

The Monitors have issued fifteen reports. The Monitors' sixteenth report will not be available before the hearing scheduled to commence on February 14, 2022. Yet, it was made clear during the February 1, 2022 status conference that the United States intends to use testimony from the monitors as expert testimony at the February 14 consolidated evidentiary hearing. For that reason, Defendants will not know what the Monitors will say about any new information they have obtained or new findings or conclusions they have related to current conditions and operations at the facility until they testify at the hearing. Put simply, that is not how the adversarial process is designed to work. The only way Defendants can learn what new information, findings, or conclusions the Monitors intend to testify about starting on February 14 is if Defendants are permitted to depose the Monitors before the hearing commences. The consent decree does not prohibit the deposition of the Monitors in this action, and Defendants respectfully request that the Court permit Defendants to depose the Monitors.

---

[6] Counsel for the United States have repeatedly referred to the monitors as their "experts."

PD.36625376.1

### E.     The monitors should be forbidden from participating in witness preparation of any kind.

The Monitors are supposed to be independent. They are not independent if the parties are permitted to engage in witness preparation with them. Therefore, the Court should enter an order prohibiting the parties from engaging in witness preparation – for hearings, trials, or depositions – with the Monitors.

### F.     The United States should be required to disclose its expert witnesses along with corresponding written reports

Beyond indicating that they intend to call the monitors at the February 14 consolidated hearing and referring to them as the United States' "experts," the United States has failed to disclose any details about the purported expert witnesses it intends to call at the hearing. Under Federal Rule of 26(a)(2), the United States is required to disclose the identity of any expert witnesses it may use to present evidence under Federal Rules of Evidence 702, 703, or 705, as well as written reports containing "all opinions" and "the basis and reasons for them"; "facts or data considered by the witness in forming them"; "any exhibits"; "qualifications"; "all other cases, during the previous four years, the witness testified as an expert [in]"; and a statement regarding compensation. FED. R. CIV. P. 26(a)(2); LOCAL UNIFORM CIVIL RULES 26(a)(2)–(3); *United States v. McWhirter*, 376 F.2d 106, 106 (5th Cir. 1967); *HCB Fin. Corp. v. Kennedy*, No. 1:10-CV-559-HSO-JCG, 2016 WL 6216179, at *1 (S.D. Miss. Mar. 28, 2016). What's more, it would be highly prejudicial to Defendants' case-in-chief, as detailed above, if Defendants were not permitted a fair and reasonable opportunity to prepare for expert testimony and opinions hat the United States intends to offer through the monitors or any other purported expert. Therefore, Defendants respectfully request information of this nature to be fully disclosed by February 7, 2022.

8

## IV.  CONCLUSION

For these reasons, Defendants respectfully request that the Court continue the consolidated evidentiary hearing or, in the alternative only, bifurcate the hearing such that the show cause issue proceed on February 14 but the PLRA issue be continued to allow Defendants sufficient time to conduct the discovery requested in this Motion related to observations, impressions, and other information the monitors now have related to the current conditions and operations of the Raymond Detention Center, the Work Center, and the Henley Young Patton Detention Center.

This, the 2nd day of February, 2022.

                              Respectfully submitted,

                              **PHELPS DUNBAR, LLP**

BY:  */s/ Nicholas F. Morisani*
      Reuben V. Anderson, MB #1587
      W. Thomas Siler, Jr., MB #6791
      James W. Shelson, MB #9693
      Nicholas F. Morisani, MB #104970
      4270 I-55 North
      Jackson, Mississippi 39211-6391
      Post Office Box 16114
      Jackson, Mississippi  39236-6114
      Telephone: 601-352-2300
      Telecopier: 601-360-9777
      Email:  reuben.anderson@phelps.com
              tommy.siler@phelps.com
              nick.morisani@phelps.com

                            **ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that on February 2, 2022, I had this Memorandum electronically filed with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to all counsel of record in this matter.

*/s/ Nicholas F. Morisani*
Nicholas F. Morisani
