IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO.: 3:16-CV-00489-CWR-RHWR |
| ) | |
| HINDS COUNTY, et al., ) | |
| ) | |
| Defendants. ) | |

**UNITED STATES' RESPONSE TO DEFENDANTS' MOTION TO CONTINUE AND
FOR PRODUCTION OF DOCUMENTS AND OTHER DISCOVERY**

Defendants have filed a Motion[1] to continue the hearing on a motion they filed, to seek confidential notes and communications of the Monitoring team, and to seek impermissible discovery from the Monitoring team. ECF Nos. 121, 122. Defendants' Motion should be denied because the Motion is untimely, is barred by the language of the parties' Consent Decree, and seeks to undermine the independent monitoring process to address the ongoing constitutional violations at the Hinds County Jail.[2]

**I.     Background**

The Parties entered into a Consent Decree seeking to resolve various constitutional violations at the Jail in July 2016. Order, ECF No. 8; Consent Decree, ECF No. 8-1 at ¶ 10.

---

[1] The full name of Defendants' filing is Urgent and Necessitous Motion to Continue and for Production of Documents and Other Discovery, which will be referred to as "Motion" throughout.

[2] The Consent Decree defines the Hinds County Jail to include the Raymond Detention Center (RDC), the Work Center, the (now-closed) Jackson Detention Center, and any additional facility used to house County prisoners, which now includes the Henley-Young Juvenile Justice Center. ECF No. 8-1 at ¶ 16.

Following the continued lack of progress in achieving compliance with the Decree and Stipulated Order, this Court's Order to Show Cause, issued on November 23, 2021, directed Defendants to "explain why it should not be held in civil contempt and why a receivership should not be created to operate RDC." ECF No. 100 at 28.  The Court set the show cause hearing for January 24, 2022, but continued that hearing to February 14, 2022 following Defendants' first motion to continue and notice of intent to file a motion to terminate the Consent Decree.  *See* Jan. 18, 2022 Order, ECF No. 109; Defs. Emergency Mot., ECF No. 108.  Defendants specifically agreed in their first motion to continue to a hearing in February 2022.  Defs. Emergency Mot., ECF No. 108 at ¶ 12.  The Court's Order setting the evidentiary hearing for February 14, 2022 also set a deadline of February 1, 2022 for all motions *in limine*.  Jan. 18, 2022 Order, ECF No. 109 at 2.  Defendants filed their Motion, including a second request for a continuance, on February 2, 2022.

## II.     Defendants' Motion is Untimely

Defendants filed their Motion seven weeks after they filed their response to the Court's Order to Show Cause, nearly two weeks following their Consent Decree termination motion, and after the Court's deadline for filing motions *in limine*.  ECF No. 109 at 2 ("*Any* motions *in limine* shall be filed by February 1.") (emphasis added).  A motion filed after the Court's scheduling deadlines is subject to dismissal.  *See* Local Rule 7(B); *Bishop Ins. Agency LLC v. Bishop Ins. Servs. PLLC*, No. 1:18CV350-HSO-JCG, 2020 WL 11191843, at *2 (S.D. Miss. Aug. 3, 2020) (motion *in limine* denied because it was untimely "even though the delay was within Plaintiff's reasonable control."); *Morris v. Sorenson*, No. MO:16-CV-0071-DC, 2019 WL 654542, at *5 (W.D. Tex. Feb. 12, 2019) (motion *in limine* denied as untimely); *Leonard v. Electro-Coal Transfer, L.L.C.*, No. CIV. A. 01-1354, 2002 WL 34371500, at *1 (E.D. La. Apr. 10, 2002)

(same); *Brawhaw ex rel. Hays v. Mariner Health Care, Inc.*, No. CIV A 2:06CV194-P-B, 2008 WL 2906620, at *1 (N.D. Miss. July 24, 2008) (same).  Defendants' Motion was filed after the motions *in limine* deadline and should be dismissed as untimely.

**III.     The Court Should Not Continue, for a Second Time, the Consolidated Hearing on Defendants' Own Motion that Defendants Agreed Should Be Conducted in February**

Defendants agreed to a hearing in February 2022 in their first motion to continue.  Defs. Emergency Mot., ECF No. 108 at ¶ 12 ("Defendants do not oppose Plaintiff's request related to rescheduling of the hearing at the earliest date convenient for the Court in February 2022.").  The Court, relying on Defendants' representation, set the hearing for the week of February 14th.  Jan. 18, 2022 Order, ECF No. 109 at 2.  Defendants again represented to this Court that the Order to Show Cause and Consent Decree termination motion should be heard at the same time; Defendants' own Memorandum confirms this.  ECF No. 122 at 3.  Now Defendants seek to reverse both of their positions in their second request to continue.  Their arguments are unpersuasive.

First, Defendants argue that they will be prejudiced if the hearing is not continued because "the hearing will serve as Defendants' first opportunity to obtain meaningful information and testimony related to the monitors' observations, findings, and opinions." ECF No. 122 at 4.  This is not true.  The Monitors have submitted *fifteen* monitoring reports since 2016 documenting their opinions and assessments following site visits and communications with staff at the Jail.  *See, e.g.*, ECF Nos. 33, 101.  As in the past, Defendants and their attorneys were permitted to, and did, join the most recent monitoring site visit beginning on January 24, 2022, where they had full opportunity to question the Monitors about their observations and assessments.  Also pursuant to past practice, the Monitors have scheduled a meeting to debrief

3

the parties about their January 2022 site visit observations and preliminary feedback.  At this meeting, Defendants will be free to question the Monitors as they wish.  Indeed, Defendants have had the opportunity to engage in ex parte communications with the Monitoring team since the Court entered the Consent Decree in 2016.  *See* Consent Decree, ECF No. 8-1 at ¶ 141.  Defendants' argument of insufficient access and communications with the Monitoring team lacks merit.

Second, Defendants argue, despite their previous agreement to consolidation, that bifurcating the Order to Show Cause hearing and Consent Decree termination hearing is appropriate to adequately prepare for the termination hearing.  ECF No. 122 at 3, 5.  Defendants made the unilateral decision to file a termination motion pursuant to the Prison Litigation Reform Act (PLRA).  Defs. Emergency Mot., ECF No. 108 at ¶ 4.  Defendants acknowledge that their motion to terminate, filed on January 21, 2022, triggered the PLRA stay provisions in which an action shall be stayed 30 days following the termination motion unless it is postponed by court order for up to 60 additional days for good cause.  *See* 18 U.S.C. § 3626(e)(2)(A)(i); § 3626(e)(3).  Delaying the hearing on Defendants' motion to terminate the Consent Decree would put unnecessary strain on this Court in reaching a final decision prior to the expiration of the stay, even if the Court decides to postpone the stay until April 2022, as long as is permitted.  Despite acknowledging "Defendants['] respect [of] the judicial resources of this Court," ECF No. 108 at ¶ 6, Defendants' attempt to bifurcate will prevent the efficient use of the Court's resources to assess the current conditions at the Jail.  Their attempt to delay runs contrary to the Court's "inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."  *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016); *see also Sanchez v. Chevron N. Am. Expl. & Prod. Co.*, No. 20-30783, 2021 WL 5513509, at *3 (5th Cir.

Nov. 24, 2021) ("Certainly, trial courts have the inherent authority to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.") (internal citations omitted).  If Defendants are not ready for an evidentiary hearing on their own motion to terminate the Consent Decree, Defendants are free to withdraw the motion.

**IV.     Defendants' Attempt to Obtain Discovery from the Monitors and the United States Is Contrary to Consent Decree Requirements for Monitor Independence**

Defendants make a variety of arguments seeking to access confidential information and discovery from the United States and the Monitoring team on the eve of the already-postponed consolidated hearing.  Defendants' arguments are untimely, *supra* at Section II., rely on no on-point legal authority, and contradict the agreed-upon language of the Consent Decree.

*A.     Communications Between the Monitoring Team and Hinds County Employees*

Defendants first seek the production of documents and electronically stored information involving the Monitoring team and Hinds County employees, including the Monitor's confidential notes.  ECF No. 122 at 5-6.  In reviewing the Consent Decree, the plain language of the document controls.  *See Alvarado v. Citibank, N.A.*, 775 F. App'x 164, 166 (5th Cir. 2019); *Delta Seaboard Well Servs., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 602 F.3d 340, 343 (5th Cir. 2010).  The Consent Decree specifically allows for *private*, ex parte communications between Hinds County employees and the Monitor.  ECF No. 8-1 at ¶ 141("The Monitor may engage in ex parte communications with the County and the United States regarding this Agreement.")  It also provides the Monitor and the United States with "*full and complete* access to the Jail, Jail documents and records, prisoner medical and mental health records, staff members, and prisoners." *Id.* at ¶ 142 (emphasis added).

The Decree also addresses the confidentiality of information within the Monitor's control; "all information obtained by the Monitor will be maintained in a confidential

5

manner." *Id.* at ¶ 146. Paragraph 152 of the Decree further confirms that the Monitor "may not . . . disclose information provided to the Monitor pursuant to this Agreement, except as authorized by this Agreement, the Court, or by joint stipulation of the parties." *Id.* The Consent Decree thus protects the Monitor's ability to communicate privately with Hinds County employees and protects the Monitor's internal, written deliberations.

As recognized by the parties in crafting the Decree language regarding confidential Monitor communications, granting Defendants' request would impede the Monitor's role to candidly discuss compliance efforts with Hinds County employees. Employees will be less forthcoming knowing that their private conversations with the Monitoring team will be scrutinized by teams of lawyers. Defendants' request for private communications between the Monitors and Hinds County employees should be denied.

Moreover, the Monitors are officers of the Court. Courts adjudicating discovery requests of quasi-judicial officers have routinely denied such requests. *See Gary W. v. Louisiana Dep't of Health and Human Res.*, 861 F.2d 1366, 1368-69 (5th Cir. 1988) (finding that special master was performing a quasi-judicial function and thus was not subject to discovery); *Fed. Trade Comm'n ex rel. Yost v. Educare Ctr. Servs., Inc.*, EP-19-CV-196-KC, 2020 WL 4334765, at *3 (W.D. Tex. May 26, 2020) (quashing subpoena served on court-appointed receiver because it implicated her quasi-judicial functions and would subject her to "discovery risks impugning her integrity and good-faith decision-making").

Disclosure of monitor notes would also impair the deliberations of quasi-judicial officers, contrary to principles analogous to deliberative process privilege. *See Skelton v. U.S. Postal Serv.*, 678 F.2d 35, 38 (5th Cir. 1982) (citing *NLRB v. Sears, Roebuck & Co.*, 421

U.S. 132, 149-50 (1975)) (stating that the "purpose of the [deliberative process] privilege is to protect the decision-making process from the inhibiting effect that disclosure of predecisional advisory opinions and recommendations might have on" frank discussion); *Gilby v. Hughs*, 471 F. Supp. 3d 763, 767 (W.D. Tex. 2020) (citing *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S 1, 8-9 (2001)) (stating that the deliberative process privilege rests on the "obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them" (internal quotations omitted)).

Finally, the Monitoring team should not be required to search their files to reproduce documents already in the possession of the County and its staff.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i).  This Court has wide discretion in determining the scope and effect of discovery, *JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 936 F.3d 251, 255 (5th Cir. 2019), and maintains the inherent authority to manage its Monitor's time and focus so that the Court gets the information it needs from its Monitor.  Opening the Monitor up to discovery by the parties will sidetrack the Monitor from her overall purpose of monitoring Defendants' compliance and reporting to the Court.

      B.     *Communications Between the Monitoring Team and the United States*

Defendants next seek the production of ex parte communications between the Monitoring team and the United States.  ECF No. 122 at 6-7.  Similar to communications between the Monitoring team and Hinds County employees, ex parte communications between the United States and the Monitors, and complete access to the Jail and its records, are authorized by Consent Decree paragraphs 141-42.  The Decree permits both parties to have ex parte

communications with the Monitor. Disclosing documentation of such ex parte communications would defeat the purpose of permitting them, as the parties agreed in the Decree. Defendants' efforts to access the private communications between the United States and the Monitoring team also are in conflict with the confidentiality protections in the Decree. *See* ECF No. 8-1 at ¶ 146.

Adjudicating other requests for discovery of quasi-judicial officers, courts have denied requests for communications with litigants. *See, e.g.*, *Fed. Trade Comm'n ex rel. Yost v. Educare Ctr. Servs., Inc.*, EP-19-CV-196-KC, 2020 WL 4334765, at *3 (W.D. Tex. May 26, 2020) ("Here, too, Defendants' requests—for Movant's communications with the litigants and counsel and for records obtained while carrying out her duties—ultimately go to Movant's underlying 'mental processes,' even though Defendants do not seek Movant's in-person testimony about her decision-making."). Finally, as noted above, opening the Monitor up to the discovery requested by Defendants would sidetrack her from her central function of monitoring Defendants' compliance and reporting to the Court.

    C.    *Depositions of the Monitoring Team*

Defendants also request to depose the entire Monitoring team. ECF No. 122 at 7. This Court's Order on January 18, 2022 addressed the parameters of the evidentiary hearing, including the filing of findings of fact, conclusions of law, exhibit lists, witness lists, proposed receivers, and motions *in limine*. ECF No. 109 at 2. Pursuant to its inherent authority to manage these proceedings, the Court did not authorize depositions of the Monitoring team. *Id.* Indeed, the Monitoring team serves on behalf of the Court, so an attempt to depose them is an improper attempt to depose a judicial officer. *Gary W. v. Louisiana Dep't of Health and Human Res.*, 861 F.2d 1366, 1369 (5th Cir. 1988) (internal citations omitted) (denying request to depose special master because "courts have refused to issue subpoenas for oral testimony of the

decision-makers as to the basis for their opinions absent extreme and extraordinary circumstances.").

While the Consent Decree does not specifically address depositions of the Monitoring team, the Court retains the inherent authority to bar Defendants from doing so. A federal court has "inherent power" and discretion to protect and enforce its own orders, including the Consent Decree in this case. *See United States v. Alcoa*, 533 F.3d 278, 287 (5th Cir. 2008) ("[T]he district court has powers 'inherent in the jurisdiction of the chancery' to effectuate a consent decree."); *Ho v. Martin Marietta Corp.*, 845 F.2d 545, 548-49 (5th Cir. 1988) (stating that "[o]nce the district court enters the settlement as a judicial consent decree ending the lawsuit, the settlement takes on the nature of the judgment," and the court has the "right to protect its own final judgments"); *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977) ("Discretion . . . must be left to a court in the enforcement of its decrees."). An attempt to depose the Monitoring team would chill communications between the Monitors and the respective parties and would chip away at the independence of the monitoring process.

### D. *Witness Preparation*

Defendants devote three sentences of argument, without any legal authority, to claim the Parties cannot engage in witness preparation with the Monitoring team for the upcoming hearing. ECF No. 122 at 8. However, the Consent Decree specifically allows for ex parte communications between the Monitors and the Parties. ECF No. 8-1 at ¶ 141. Defendants have the same opportunity as the United States to confer with the Monitoring team in advance of the February 14 hearing. Restrictions on witness preparation would impede the preparation of the parties and would prevent the efficient administration of the upcoming hearing. Indeed, in this very case, the parties have both had the opportunity to prepare for testimony with the monitors in

prior proceedings. *See, e.g.*, ECF No. 51 (U.S. witness list for 2021 hearing); *see also Jones v. Gusman*, 12-cv-00859 (E.D. La. Oct. 9, 2020) at ECF No. 1349 (United States' witness list including four members of monitoring team). Restricting witness preparation has no purpose other than to restrict the United States' ability to effectively communicate with the Monitors for the upcoming evidentiary hearing and should not be allowed.[3]

E. *Expert Reports by the Court's Monitoring Team*

Defendants' final argument is that the United States must disclose expert witness reports authored by the Monitors and must provide information for party retained expert witnesses ahead of the hearing. ECF No. 122 at 8. Defendants are correct that the United States intends to call members of the Court's Monitoring team at the upcoming hearing. While the United States agrees with Defendants that the Monitors are experts in their respective fields,[4] experts of the Court are not subject to the expert report requirements of the Federal Rules of Civil Procedure because they are not retained by any party. *See* Fed. R. Civ. P. 26(a)(2)(b). The Monitor's opinions and assessments and their factual bases are also thoroughly documented in their monitoring reports. The United States does not intend to call any retained expert witnesses and need not provide information other than what it is providing in its witness disclosures to Defendants.

---

[3] Defendants claim the Monitors "are not independent if the parties are permitted to engage in witness preparation with them." ECF No. 122 at 8. Not so. The Monitors communicate ex parte with the parties pursuant to the plain language of the Consent Decree; the Monitor's potential communications with the parties ahead of a hearing does not alter the Monitor's independent role assessing compliance with the Consent Decree.

[4] *See, e.g.*, ECF No. 9 at 1 ("Plaintiff . . . and Defendants, Hinds County . . . hereby jointly and respectfully request that this Court appoint Elizabeth Lisa Simpson as the Monitor in this case . . . the Monitor will serve as *a court appointed expert* to ensure implementation of, and compliance with, the Agreement.") (emphasis added).

## V. Conclusion

For the foregoing reasons, this Court should deny Defendants' Motion in full.

Respectfully submitted,

DARREN J. LaMARCA
United States Attorney
Southern District of Mississippi

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief
Civil Rights Division
Special Litigation Section

MITZI DEASE PAIGE (MS #6014)
Assistant U.S. Attorney
MPaige@usa.doj.gov
U.S. Attorney's Office
Southern District of Mississippi
501 E. Court Street – Ste. 4.430
Jackson, MS 39201
(601) 973-2840
(601) 965-4409 (fax)

LAURA L. COWALL (DC #481379)
Deputy Chief
laura.cowall@usdoj.gov
(202) 514-1089
(202) 514-0212 (fax)

/s/ Christopher N. Cheng
CHRISTOPHER N. CHENG (PA #69066)
Trial Attorney
christopher.cheng@usdoj.gov
(202) 514-8892
(202) 514-4883 (fax)
SARAH STEEGE
Trial Attorney
sarah.steege@usdoj.gov
HELEN VERA
Trial Attorney
helen.vera@usdoj.gov
United States Department of Justice
Civil Rights Division
Special Litigation Section
150 M Street, N.E.
Washington, DC  20002

DATED:	February 3, 2022

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 3, 2022, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

          *s/ Christopher N. Cheng*
CHRISTOPHER N. CHENG
Attorney for the United States
United States Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, NW
Washington, DC 20530