

_____

No. 3:16-CV-489-CWR-RHWR

UNITED STATES OF AMERICA,

*Plaintiff,*

*v.*

HINDS COUNTY, ET AL.

*Defendants.*

_____

ORDER

_____

Before CARLTON W. REEVES, *District Judge.*

Hinds County has filed an Urgent and Necessitous Motion to Continue and for Production of Documents and Other Discovery. Docket No. 121. For the reasons provided below, the motion to continue is denied, while the motion for the production of documents and other discovery is granted in part and denied in part.

## I.      Motion to Continue

This Court originally set an Evidentiary Hearing regarding its Order to Show Cause for January 24, 2022. Hinds County, however, filed its first Urgent and Necessitous Motion to Continue on January 14. Docket No. 108. In it, the County advised that one of its principal attorneys had contracted COVID-19, and several of its attorneys had been exposed and required quarantine. *Id.* The County also informed the Court that it intended to file a motion to terminate the July 2016 Consent Decree pursuant to the Prison Litigation Reform Act (PLRA). *Id.*

As a result of the County's representations, the Court granted the emergency motion, rescheduled the hearing for February 14, and established a briefing schedule for the PLRA motion. *See* Docket No. 109.

In the ensuing Memorandum in Support of Motion to Terminate or, Alternatively, Modify the Consent Decree, the County argued that "[b]ecause an evidentiary hearing is set on the Show Cause Order, the County requests that the Court consolidate the show cause hearing with the pre-termination hearing." Docket No. 112, at n.9. It claimed that "[d]oing so is not only logical but prudent[,]" and that "consolidating the hearings not only permits the Court to bundle these actions to expedite their resolution, but it also promotes judicial economy amongst the parties and this Court, saving time and resources." *Id.* The Department of Justice agreed. The parties again confirmed their desire at a February 1 status conference. *See* Docket No. 122, at n.4.

Accordingly, this Court heeded the parties' wishes and extended the scheduled hearing by an additional week to hear

2

evidence on both the Order to Show Cause and the PLRA motion.

Now, just 12 days before the hearing, Hinds County reneges. In its second Urgent and Necessitous Motion to Continue, it essentially argues that the consolidated hearing it asked for constitutes trial by ambush. And after bemoaning the fact that the court-appointed Monitoring Team had not conducted an in-person visit for two years due to the pandemic, it now claims to be "seriously prejudiced" by the Monitoring Team's January 24 Site Visit. *Id.* at 3. It appears that the County is discovering that the truncated schedule it adamantly requested may present some practical ramifications. *See* Docket No. 128, at 42 (Attorney for the County protesting that "the problem is we've just been crunched so much on time trying to find an expert witness at the last second to do something has been virtually impossible[.]").

Unfortunately for Hinds County, the Court is unable to accommodate this request. Time was and is of the essence. "The PLRA plainly conveys congressional intent that termination of prospective relief regarding prison conditions be decided swiftly by referring to termination as 'immediate,' requiring the court to rule 'promptly,' and providing mandamus to remedy any failure to issue a prompt ruling on a termination motion." *Hart v. Agnos*, No. CV-77-0479-PHX-NVW, 2008 WL 2008966, at *6 (D. Ariz. Apr. 25, 2008). The filing of a PLRA motion triggers a 30-day deadline for the Court to act. If the Court neither acts nor takes advantage of the option to postpone the deadline for "no more than 60 days," the case enters into an automatic stay. Surely the County knew that its filing of the motion to terminate would trigger these deadlines.

This Court has availed itself of the 60-day extension, which will expire on April 21, 2022. Yet given the "independent inquiry" required of the Court, as well as the potential need for "line-by-line, provision-by-provision" findings, it is important to proceed rapidly in this matter. *See* Docket No. 112, at 11. The motion for a continuance is denied and the hearing on the Order to Show Cause and PLRA motion must go forward as scheduled.

## II. Motion for Production of Documents and Other Discovery

The County complains that the United States once referred to the Monitoring Team as its experts. Docket No. 125, at 8-10. Counsel for the United States obviously misspoke. *See also* Docket No. 124, at 10 (the United States explaining that the Monitoring Team are "experts of the Court" and "are not retained by any party.").[1]

By its terms, as the parties negotiated and agreed to, the Consent Decree requires an independent Monitor. *See* Docket No. 8-1, VII.A. As the Department of Justice explained in a recent memorandum,

> In many cases involving consent decrees and settlements with state and local governments, the use of monitors is essential to the successful implementation of the decree or agreement. Monitors serve a crucial role as an independent

---

[1] The Consent Decree explicitly permits the Monitors to testify. Docket No. 8-1, ¶ 153 ("Unless called to testify by the Court or one of the parties to this Agreement, the Monitor may not testify regarding any matter or subject he or she may have learned as a result of his or her performance under this Agreement.").

validator of a jurisdiction's progress in imple-
menting the reforms required by a settlement.
They are generally selected after an extensive
negotiation between the parties, with approval
by the supervising federal court. Because they
are officers of the court, monitors act as neutral
arbiters of a jurisdiction's compliance with a de-
cree, a process that can increase the confidence
the Court and stakeholders have in the settle-
ment process.

Memorandum from Attorney General Merrick Garland to
Heads of Civil Litigating Components and United States At-
torneys at 2-3 (Sept. 13, 2021). In this case, the Monitoring
Team consists of subject-matter experts recommended by the
parties and charged by Judge Barbour[2] with being the eyes
and ears of the Court. *See Eng. v. Cunningham*, 269 F.2d 517,
525 (D.C. Cir. 1959).

The plain language of the Consent Decree outlines the Moni-
tor's role. The decree speaks to the "autonomy of the monitor"
in that "neither the County nor the United States, nor any of
their employees or agents, may have any supervisory author-
ity over the Monitor." Docket No. 8-1, VII.A. and ¶ 140. The
Monitor, however, "must be subject to the supervision and
orders of the Court[.]" *Id.* ¶ 139.

No evidence in the record indicates, nor do any of the parties
allege, that the members of the Monitoring Team have failed
to comply with these requirements.

---

[2] The Consent Decree and Monitoring Team were approved by U.S. Dis-
trict Judge William H. Barbour, Jr. The case was transferred to the under-
signed in December 2018 upon Judge Barbour taking senior status.

**A.      Ex Parte Communications with Hinds County's Employees**

Hinds County requests the production of all notes, documents, and electronically stored information that memorializes the Monitor's communications with any Hinds County employees. Additionally, the County requests all written communications between the Monitor and Hinds County that did not include counsel. The United States argues that these requests are antithetical to the decree and undermine the Monitoring Team's ability to do its job effectively.

The plain language of the consent decree controls. *See Delta Seaboard Well Servs., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 602 F.3d 340, 343 (5th Cir. 2010). Relevant here, the Consent Decree grants the Monitoring Team "full and complete access" to the jail, including staff members; requires that all information obtained by the Team be maintained in a confidential manner; and forbids the Team from disclosing information provided to it, except as authorized by the decree, the Court, or by joint stipulations of the parties. Docket No. 8-1, ¶¶ 142, 146 and 152. Together, these provisions suggest that at the very least, the County's requests are disfavored.

Moreover, the requests—specifically, the request for all written communications between the Monitor and Hinds County employees—seriously undermine the Monitoring Team's ability to do its job well. Where communications are subject to discovery, individuals may be less willing to be forthcoming. And disclosure now would be contrary to the decree's requirement that the Monitoring Team maintain all information confidentially. Accordingly, this broad request is denied.

6

The County's request for all notes, documents, and electronically stored information that memorializes the Monitor's communications with any Hinds County employees regarding the most recent monitoring visit is more persuasive. This is because the Sixteenth Monitor's Report will not be available until March 2022, per the Consent Decree. As a result of this schedule, the County argues that it has had "no opportunity—despite trying—to conduct discovery related to the monitors' impressions and observations regarding the current conditions of the facility and its operations." Docket No. 122, at 4.

On one hand, this argument is seriously weakened by the fact that this Court attended the January 24 Monitoring Team Site Visit to the Raymond Detention Center and Work Center and counted no fewer than three of defendants' attorneys present as well as key personnel from the County, including its Compliance Coordinator. The only party not in attendance was, in fact, Plaintiff. Thus, it is lost on this Court how Hinds County is disadvantaged: counsel saw what the Monitoring Team saw. On the other hand, the Court recognizes that neither party will have the Sixteenth Monitoring Report at its disposal and thus, this request will be granted in accordance with the conditions set forth below.

First, the discoverable communications must be related to the January 24 Monitoring Site Visit. *See* Docket No. 8-1, ¶ 143. Second, the discovery may extend no further than November 24, 2021, the date that the Monitoring Team filed its Fifteenth Monitoring Report.

The Court grants this limited discovery to aid both parties in their preparation for the evidentiary hearing, given that the Sixteenth Monitoring Report will not be available by then.

The Monitoring Team is directed to provide these communications to the parties no later than Thursday, February 9.

**B.     Ex Parte Communications with the United States**

Hinds County also requests any communications between the United States and the Monitoring Team since January 1, 2021, as it claims it speaks to potential bias. For support, Defendants cite to Fed. R. Evid. 608.

The United States argues that the decree explicitly authorizes the parties to have ex parte communications with the Monitor, Docket No. 8-1, ¶ 141, and to now permit discovery of those communications would be prejudicial. The Court agrees. Accordingly, this request is denied.

**C.     Deposing the Monitoring Team**

Because the Court has granted the County's request for all notes, documents, and electronically stored information that memorializes the Monitor's communications with any Hinds County employees concerning the monitoring visit, the request to depose the monitoring team is denied.

**D.     Witness Preparation of the Monitoring Team**

Next, Hinds County argues that the parties should not be permitted to contact the Monitoring Team in advance of the hearing. It insinuates that the Department of Justice is trying to coach the Monitors regarding their testimony.

Either party is permitted to call the Monitor and/or her team as a witness. And in accordance with the Consent Decree, the parties are equally authorized to have ex parte communications with the Monitoring Team. Docket No. 8-1, ¶ 141. The County's attempt to spin authorized communications with the Monitoring Team as nefarious is unpersuasive. The Court

trusts that its independent, court-appointed experts would
not abide attempts by any party to coach them or otherwise
influence their responses.

### E.    Expert Disclosures

In its present motion, filed on February 2, the County re-
quested that the Court require the United States to disclose its
experts and any reports in accordance with Fed. R. Civ. P.
26(a)(2) by February 7. This was somewhat surprising, be-
cause on February 1, the United States filed a motion *in limine*
which also requested that the County disclose its experts and
any reports in accordance with Fed. R. Civ. P. 26(a)(2) by Feb-
ruary 7. *I.e.*, the parties requested the same relief and dead-
line.[3]

This request is now moot as the Court imposed the February
7 consent deadline on the parties. Still, the parties—specifi-
cally the County—are reminded that "before service of a dis-
covery motion, counsel must confer in good faith to deter-
mine to what extent the issue in question can be resolved
without court intervention." Local Uniform Civil Rule 37(a).

### III.    Conclusion

For the foregoing reasons, the motion is granted in part and
denied in part.

---

[3] Further developments show that the County was unprepared to abide
by its own proposed deadline. In an email, the County's attorney stated
"[w]ith respect to defense experts, we are working to retain experts and
believe we are close to doing so, but I do not think it reasonable to have
an expert provide a report given the expedited nature of the hearing in
this matter." Docket No. 119, Exhibit 1. Essentially, the County attempted
to use the power of the Court as both sword and shield, holding its adver-
sary to a deadline that it refused to meet itself.

**SO ORDERED**, this the 8th day of February, 2022.

s/ C<small>ARLTON</small> W. R<small>EEVES</small>

*United States District Judge*