IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| VS. | CIVIL ACTION NO. 3:16-CV-489-CWR-RHWR |
| HINDS COUNTY, ET AL. | DEFENDANTS |

**DEFENDANTS' RESPONSE IN OPPOSITION TO UNITED STATES'
MOTION *IN LIMINE* FOR ADMISSION OF MONITORING REPORTS**

Defendants, Hinds County, Hinds County Board of Supervisors, and Tyree Jones, in his official capacity as Sheriff, respectfully submit this response in opposition to the motion *in limine* for admission of monitoring reports [117] filed by Plaintiff the United States of America ("DOJ").

## I.   INTRODUCTION

The DOJ moves this Court *in limine* to admit fifteen monitoring reports drafted by the Monitor. The County's primary concern regarding the global admittance of the monitoring reports—accepted for the truth of the matter asserted—relates to the County's inability to identify and verify many of the sources of information underlying the Monitor's fifteen reports. The Fifteenth Monitoring Report, for instance, is a 138-page document filled with opinion and purported fact. It lacks citations to documents and the names of the sources who supplied the information. The County understands that the Monitor carefully drafted the report, relying on her notes and the opinions from her team. Yet the County has no way of challenging the bases of those opinions without knowing who or what makes up those bases.

## II.   ARGUMENT & AUTHORITIES

Under the Federal Rules of Evidence, hearsay is a statement, written or otherwise, that: (1) "the declarant does not make while testifying at the current trial or hearing"; and (2) "a party offers

1

in evidence to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c). Here, because the declarant, Elizabeth Simpson, drafted the monitoring reports prior to the evidentiary hearing, and because the DOJ attempts to admit the reports for the truth of the matter asserted, the monitoring reports are classic examples of hearsay and hearsay-within-hearsay.

As a general rule, hearsay is inadmissible as competent evidence at a hearing unless otherwise provided by the Federal Rules of Evidence or other law. FED. R. EVID. 802. This rule also attaches to each level of hearsay. FED. R. EVID. 805. As noted by the Fifth Circuit in *Rock v. Huffco Gas & Oil Co.*, "[t]o be admissible, both levels of hearsay must come within exceptions to the hearsay rule." 922 F.2d 272, 280 (5th Cir. 1991).

In this vein, the monitoring team consists of the court-appointed monitor and three team members: David Parrish, Jim Moeser, and Dr. Richard Dudley. Fifteenth Report [101]. Each team member serves a unique function; that is, Simpson assigns a specified set of policies to each team member. In their roles, the team members conduct on-site (or virtual) visits, document review, and analysis to determine the extent of the County's compliance (or noncompliance) with the decree. Due to this, not only do the monitoring reports constitute hearsay as whole, but the meat of the decrees comprise hearsay-within-hearsay.

Distilled down, the DOJ must first prove that the monitoring reports as a whole fit within a hearsay exception. After, the DOJ must show how each level of hearsay is admissible under the hearsay-within-hearsay rule. *See* FED. R. EVID. 602 advisory committee note (witness may not testify "to subject matter of [a] hearsay statement, as he has no personal knowledge of it").

In their initial brief, the DOJ ignores the hearsay-within-hearsay rule.[1] Instead, the DOJ focuses on three hearsay exceptions, namely, Federal Rules of Evidence 803(6), 803(8), and 807,

---

[1] Strictly for purposes of its [117] Motion, DOJ should be precluded from addressing the hearsay-within-hearsay rule for the first time in their rebuttal brief. *See DAK Americas Miss. Inc. v. Jedson Eng'g,*

2

that, in their opinion, exclude the monitoring reports from the rule against hearsay. Supporting Brief [118] at 4, 6, 10. The County addresses the inapplicability of each exception, in turn.

### A.     Federal Rule of Evidence 803(6)

Turning first to the business records exception under Federal Rule of Evidence 803(6), it excludes "[a] record of an act, event, condition, opinion, or diagnosis" from the general rule against hearsay if: (1) "the record was made at or near the time—or from information transmitted by—someone with knowledge"; (2) "the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit"; (3) "making the record was a regular practice of that activity"; (4) "all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification"; *and* (5) "the opponent does not show that the source of information nor or the method or circumstances of preparation indicate a lack of trustworthiness." FED. R. EVID. 803(6).

The DOJ argues that, without a *single* case citation, precedential or not, that the exception's five conditions are met because the reports were drafted "shortly after" the on-site or virtual visits; the Monitor, Simpson, is "a professional in the criminal justice field" and it's her "vocation to provide technical assistance to local governments"; Simpson's monitoring reports are "part of her occupational and court-appointed duties"; the reports "were not prepared in anticipation of litigation by an expert retained by either party;" and "nothing about the source of the information or the method or [the] circumstances . . . indicate[] a lack of trustworthiness." Supporting Brief [118] at 4–5.

---

*Inc.*, No. 1:18-CV-31-HSO-JCG, 2019 WL 1413753, at *6 (S.D. Miss. Mar. 28, 2019) ("The Court does not consider arguments raised for the first time in a rebuttal."). The County isn't clairvoyant. But County does not contend that similar argument may be raised by the DOJ at the appropriate time during the hearing.

3

This is unpersuasive. The monitoring reports are designed for this Court and the accompanying litigation, not as a business record. In the seminal case, *Palmer v. Hoffman*, the Supreme Court, in affirming the trial court's exclusion of an accident report, stated:

> [The report] is not a record made for the systematic conduct of the business as a business. An accident report may affect that business in the sense that it affords information on which the management may act. It is not, however, typical of entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls. . . . Unlike payrolls, accounts receivable, accounts payable, bills of lading and the like, these reports are calculated for use essentially in the court, not in the business. Their primary use is in litigating, not in railroading.

318 U.S. 109, 113–14 (1943).

Unlike "payrolls, accounts receivable, accounts payable, bills of lading and the like," the reports are not "typical entries made systematically or as a matter of routine to record events or occurrences to reflect transactions with others, or to provide internal controls." *Id.* Rather, the reports are generated by court-order, Agreement [8-1] at 56, for the specific purpose of ascertaining whether the County is in compliance with the court-enforced consent decree. *See United States v. Novotny*, 184 F. Supp. 2d 1071, 1083 (D. Colo. 2001) (excluding profit and loss statement because they were prepared in response to a specific government request, not in the course of regular business activity), *aff'd*, 71 App'x 792 (10th Cir. 2003).

The Fifth Circuit has explained that the "justification" of the business records exception "rests on the assumption that business records are reliable because they are created on a day-to-day basis and the very regularity and continuity of the records are calculated to train the recordkeeper in habits of precision." *Rock*, 922 F.2d at 279 (cleaned up). This principle isn't being served; the team works for the Court, and not the County, the United States, nor the detainees. Agreement [8-1] at 55. Thus, reporting on a third-party's compliance is not synonymous to a business record as contemplated by the exception.

4

Nor are the monitoring reports trustworthy.  Information in business records provided by someone other than an individual with a duty to gather the information in the normal course of business is inadmissible hearsay.  *See* FED. R. EVID. 803(6), 805.  The trustworthiness concern stands with the supplier.  One court articulated:

> Double hearsay exists when a business record is prepared by one employee from information supplied by another employee. If both the source and the recorder of the information, as well as every other participant in the chain producing the record, are acting in the regular course of business, the multiple hearsay is excused by Rule 803(6). However, <u>if the source of the information is an outsider, Rule 803(6) does not, by itself, permit the admission of the business record</u>. The outsider's statement must fall within another hearsay exception to be admissible because it does not have the presumption of accuracy that statements made during the regular course of business have.

*United States v. Baker*, 693 F.3d 183, 188 (D.C. Cir. 1982) (emphasis added) (citing *United States v. Davis*, 571 F.2d 1354 (5th Cir. 1978)).

The suppliers and sources of information for the reports are "former prisoners and staff, family members, local officials, criminal justice officials[], private defense attorneys, and relevant community members," Agreement [8-1] at 57; or outsiders to the monitoring team and the Court.  Moreover, none of these individuals have a duty to the monitors to supply information.  Agreement [8-1] at 57 ("The County will direct all employees, contractors, and agents to cooperate fully with the Monitor and the United States.").  Rather, their duty, if any, rests in themselves or, at times, to the County.  Put another way, the monitoring team possesses no control over these suppliers and sources.  Their reporting power—to collect compliance-based opinions—manifests solely from an agreed-to decree and extends no further.  This distinction is fatal to the DOJ's business-records-exceptions argument and the overall admissibility of the monitoring reports.  The Court should deny the DOJ's motion to the extent they seek to admit the fifteen monitoring reports under Federal Rule of Evidence 803(6).

## B.     Federal Rule of Evidence 803(8)

Turning to the public records exception, it reads: "A record or statement of a public office [is admissible hearsay]" if it sets out "the office's activities," "a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel"; or "in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation" *and* "the opponent does not show that the source of information nor or other circumstances indicate a lack of trustworthiness." FED. R. EVID. 803(8).

By invoking the public records exception, the DOJ attempts to create a universal hearsay exception applicable to court-appointed monitors. The Court should reject this argument for several reasons. For starters, the monitoring team does not constitute a public office. Order [130] at 5 ("The decree speaks to the 'autonomy of the monitor' in that 'neither the County nor the United States, nor any of their employees or agents, may have any supervisory authority over the Monitor.'"); Agreement [8-1] at 58 ("[R]ecords maintained or in the custody of the Monitor must not be deemed public records subject to public inspection."). As such, the team's reports are neither a product of an agency or department of the United States nor an agency or department of the County. *See United States v. Central Gulf Lines, Inc.*, 974 F.2d 621, 627 (5th Cir. 1992) (stating in regard to the public records exception that "the duty to prepare [a] report can be delegated under government regulations . . . as a report of a department or agency of the United States").

There are likewise concerns underlying the trustworthiness of the reports, similar to those stated in relation to the business record exception. That is, if the supplier or the information is not under an official duty to furnish information to the public officer, then an essential link is broken.

6

The assurance of accuracy in the monitoring reports does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail.

*United Technologies Corp. v. Mazer*, 556 F.3d 1260 (11th. Cir 2009), is illustrative here. There, the district court excluded a third-party statement in a report prepared by the Office of the Inspector General over assertions that such report was admissible under the business records and the public records exceptions to hearsay. *Id.* at 1278. On appeal, the Eleventh Circuit affirmed, explaining that "for the [business records and public records] exceptions to apply, the report must contain 'factual findings' that are 'based upon the knowledge or observations of the preparer of the report,' as opposed to a mere collection of statements from a witness." *Id.* (quoting *Miller v. Field*, 35 F.3d 1088, 1091 (6th Cir. 1994)). "In other words, placing otherwise inadmissible hearsay statements by third-parties into a government report does not make the statements admissible." *Id.* (cleaned up).

As noted, the reports serve a distinct purpose, which is to provide the Court with opinions and thoughts in furtherance of their duty to serve as eyes and ears for the Court. Ultimately, however, the Court is charged with determining whether the County is in compliance with the consent decree. In making that determination, the County is not implying that the Court overlook the monitoring reports as a guide, but the reports, on their own, do not establish findings of fact immune to evidentiary objections. *See, e.g.*, *Ariza v. City of New York*, 139 F.3d 132, 134 (2d Cir. 1998) (excluding report, which was summary of attitudes and beliefs, as not the type of factual investigatory report contemplated by Rule 803(8)).

### C.     Federal Rule of Evidence 807

The final hearsay exception the DOJ identifies is the residual exception under Federal Rule of Evidence 807. It excludes a hearsay statement from the general rule if "the statement is

supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement" and "it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." FED. R. EVID. 807(a).  Moreover, the hearsay statement is only admissible if the proponent gives an adverse party reasonable notice of an intent to offer the statement <u>including its substance and the declarant's name</u> so that the party has a fair opportunity to meet it." FED. R. EVID. 807(b) (emphasis added).

As a threshold matter, the DOJ's inability to satisfy the notice requirement precludes resort to Rule 807.  Namely, the fifteen monitoring reports are replete with references to statements, parts of statements, and summaries of statements that the Monitor represents were made by unidentified declarants.[2]  In seeking wholesale admission of all fifteen monitoring reports for the truth of the matter asserted, the DOJ has failed to give any <u>reasonable</u> notice that connects the substance of the statements contained within the Monitor's reports or the declarants' names underlying those statements. *See, e.g.*, *United States v. McArdle*, No. 2:20-CR-56-JRG-HBG, 2021 WL 149411, at *5 (E.D. Tenn. Jan. 15, 2021) (addressing parties' dispute over what constituted reasonable notice related to Rule 807, with the defendant requesting 60 days' notice while the United States requested 14 days' notice, and the Court directing both parties to provide the notice required by Rule 807 thirty (30) days prior to trial).

Aside from this flaw, the DOJ's arguments in favor of applying Rule 807(b) fall flat.  First, the DOJ argues that requiring the "Monitor and her consultants, as well as numerous deputies, prisoners, administrators, and other officials in order prove everything contained in the Monitor

---

[2] It is unclear from the monitoring reports whether the declarant's statements were made to the Monitor herself, to one of her subject-matter experts, or to a third-party (creating another level of hearsay), and then circulated back to the Monitor.

8

Reports" would be "a waste of the Court's time." Supporting Brief [118] at 11. In the next paragraph, the DOJ doubles down urging that this Court "would . . . need to hear days' worth of testimony." Even if so, brandishing testimonial evidence as "a waste" runs contrary to the Federal Rules of Evidence.[3] In *United States v. Mathis*, the Fifth Circuit articulated:

> In both civil and criminal cases, our common law heritage has always favored the presentation of live testimony over the presentation of hearsay testimony by the out-of-court declarant. . . . The assumption which underlies the hearsay rule is that the reliability of statements made in the courtroom may be better made to appear than a second hand recitation of those uttered out of court. []
>
> [The residual rule] was designed to encourage the progressive growth and development of federal evidentiary law by giving courts the flexibility to deal with new evidentiary situations which may not be pigeon-holed elsewhere. Yet tight reins must be held to insure that this provision does not emasculate our well developed body of law and the notions underlying our evidentiary rules.

559 F.2d 294, 299 (5th Cir. 1977).

In a more recent case, the Fifth Circuit described, "We have been clear that the residual hearsay exception is to be used only rarely, in truly exceptional cases, and that the lodestar of the exception is whether a hearsay statement has equivalent circumstantial guarantees of trustworthiness relative to other hearsay exceptions." *United States v. Reed*, 908 F.3d 102, 120 (5th Cir. 2018) (cleaned up). "[T]he determination of trustworthiness is drawn from the totality of the circumstances surrounding the making of the statement, but it cannot stem from other corroborating evidence." *Id*. Even a quick glance at the monitoring reports endorses the County's argument. Accordingly, this DOJ's argument must be rejected.

### D. No Previous Objections

The DOJ takes issue that the County elected not to "raise objections to the Court regarding the Monitoring Reports or the Monitor's methodology when the Reports were filed." Supporting

---

[3] It's evidence that both parties will have the needed time put on the evidence necessary to make their record.

Brief [118] at 9.  To the DOJ, "[t]here can be no legitimate argument . . . that the Monitoring Reports are unreliable."  Not so.

The consent decree's implementing provision on this point is permissive, not mandatory.  It states in pertinent part: "If any party wishes to comment, comments must be submitted to the Monitor no later than 10 business days after the draft is provided to the parties."  Agreement [8-1] at 56.  The decree follows with, "The Monitor *must* consider the comments of the county and the United States, if any, before issuing each final Compliance Report."  *Id.*  Notably absent from the decree is any mandatory language requiring the County to raise objections to the reports at the time of filing.  Consequently, there is no waiver or estoppel.

And that makes sense.  As stressed, the monitoring reports are not judicial orders, and they are not steadfast.  They are guideposts for the Court to assess interim data relating to the County's compliance with the consent decree.  The DOJ's argument on this issue is without merit.

### E. Motion to Terminate Or, Alternatively, Modify Consent Decree

For purposes of the County's motion to terminate or modify the consent decree, not all fifteen monitoring reports are relevant.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" *and* "the fact is of consequence in determining the action."  FED. R. EVID. 401.  Whether a proposition is "of consequence" to the determination is a question that is governed by substantive law.

The first substantive prong of 18 U.S.C. § 3626(b)(3) particularly scrutinizes whether there are "current and ongoing" violations of a federal right.  With regard to the "current and ongoing" element, courts assess the alleged violations "at the time termination is sought," which, here, is January 14, 2022.  *Castillo v. Cameron County*, 238 F.3d 339, 353 (5th Cir. 2001).  The inquiry is not focused on past or events that may occur in the future.  *Id.*; *accord Cason v. Seckinger*, 237

F.3d 777, 783 (11th Cir. 2000) (Congress intended 'current and ongoing' to mean a presently existing violation, not a potential, or even likely, future violation.").

Furthermore, the intent of the monitoring reports is to outline the County's compliance with the consent decree and the Court's stipulated order. By contrast, the reports do not weigh whether the County is systemically violating a detainee's federal right. Agreement [8-1] at 57 ("Each Report: Must evaluate the status of compliance for each provision of the Agreement[.]").

Accordingly, the majority of the monitoring reports, especially those too remote in time, are not only irrelevant, those reports contain no facts "of consequence" in determining whether there are any "current and ongoing" violations of federal rights.

### III.   CONCLUSION

At this juncture, the County sees no justification in prematurely, and categorically, admitting the Monitor's reports. For these reasons, the County respectfully requests that the Court deny the DOJ's motion to admit the monitoring reports *in limine*.

This, the 8th day of February, 2022.

                                                                                                                                                        Respectfully submitted,

                                                          **PHELPS DUNBAR, LLP**

                                          BY:   */s/ Nicholas F. Morisani*
                                                      Reuben V. Anderson, MB #1587
                                                      W. Thomas Siler, Jr., MB #6791
                                                      James W. Shelson, MB #9693
                                                      Nicholas F. Morisani, MB #104970
                                                      Loden P. Walker, MB #105996
                                                      4270 I-55 North
                                                      Jackson, Mississippi 39211-6391
                                                      Post Office Box 16114
                                                      Jackson, Mississippi  39236-6114
                                                      Telephone: 601-352-2300
                                                      Telecopier: 601-360-9777

PD.36626633.1

          Email: reuben.anderson@phelps.com
             tommy.siler@phelps.com
             jim.shelson@phelps.com
             nick.morisani@phelps.com
             loden.walker@phelps.com

         **ATTORNEYS FOR DEFENDANTS**

PD.36626633.1

## **CERTIFICATE OF SERVICE**

I, Nicholas F. Morisani, certify, that, on February 8, 2022, I had this RESPONSE electronically filed with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to all counsel of record in this matter.

*/s/ Nicholas F. Morisani*
Nicholas F. Morisani