IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO.: 3:16-CV-00489-CWR-RHWR |
| ) | |
| HINDS COUNTY, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* FOR ADMISSION OF MONITORING REPORTS**

The Parties in this case agreed on an independent monitor with subject matter experts to assess conditions in the Hinds County Jail and file public reports advising the Court regarding the status of compliance with the Parties' Consent Decree, ECF No. 8-1. The Consent Decree establishes the methodology and sources of information that the Monitor has utilized in authoring the Monitoring Reports. In light of the Defendants' participation in and agreement to the monitoring process, Defendants' current contention that the Monitoring Reports are unreliable and inadmissible at the bench trial is not persuasive. The Monitoring Reports constitute highly relevant, admissible evidence, and the United States' Motion *in Limine* for Admission of the Monitoring Reports, ECF No. 117, should be granted.

**I.     The Monitoring Reports Are Admissible Evidence at the Upcoming Evidentiary Hearing.**

As a preliminary matter, the Court, not a jury, will make findings in the pending proceedings in this case. The nature of bench proceedings alleviates concerns regarding hearsay and "hearsay-within-hearsay," as the Federal Rules of Evidence—including the rules regarding

hearsay—are typically relaxed in a bench trial setting. *See Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993) (concluding procedures in district court are less formal at a bench hearing "and the district court may rely on otherwise inadmissible evidence, including hearsay evidence"); *Moorhead v. Mitsubishi Aircraft Intern., Inc.*, 828 F.2d 278, 287 (5th Cir. 1987) ("[S]trict evidentiary rules of admissibility are generally relaxed in bench trials.") (quoting *Null v. Wainwright*, 508 F.2d 340, 344 (5th Cir. 1975)); *Nelton v. Cenac Towing Co., LLC*, Civil Action No. 10-373, 2010 WL 4702373 (E.D. La. Nov. 12, 2010) ("[I]t is noted that this is a bench trial and that '[s]trict evidentiary rules of admissibility are generally relaxed in [such] trials.'" (quoting *Moorhead*, *supra*)). Evidentiary rules do not apply with the same rigor in bench proceedings, because district courts are trusted to identify and disregard unreliable evidence, or else afford it less weight. *United States v. Compania Cubana De Aviacion*, 224 F.2d 811, 820 (5th Cir. 1955) (explaining that the "rules of evidence relating to admission and exclusion" are "intended primarily for the purpose of withdrawing from the jury matter which might improperly sway the verdict, and not for the trial judge, who is presumed to act only upon proper evidence") (quoting *MacDonell v. Capital Co.*, 130 F.2d 311, 318 (9th Cir. 1942)).

In the context of a similar proceeding involving the New Orleans Parish Jail, the district court admitted the lead monitor's report despite hearsay objections, citing the relaxed standards that apply to non-jury proceedings. Order and Reasons, *Jones v. Gusman*, 2:12-cv-859, ECF No. 629, 1–2 (E.D. La. Mar. 17, 2014) (attached as Exhibit A). This Court should similarly evaluate the Defendants' evidentiary objections with the relaxed standards for a bench hearing in mind.

Admitting the Monitoring Reports at the bench proceedings is also consistent with the Monitor's role as the Court's "eyes and ears" with regard to the Consent Decree, First Order of Contempt, Feb. 4, 2022, ECF No. 126 at 5, and will allow for an efficient and fair presentation of

complex matters that cover a multi-year period. *See* Fed. R. Evid. 102 (federal evidentiary rules should be construed to "eliminate unjustifiable expense and delay," with the goal of "ascertaining the truth and securing a just determination").

### A. The Reports Should Not Be Excluded As "Hearsay-Within-Hearsay."

Defendants' "hearsay-within-hearsay" objections appear to target the nature of the monitoring process itself, particularly the reliance on documents and interviews to make findings. Defs' Response Br. ("Defs' Br."), ECF No. 131 at 2. However, as experts, the Monitor and her team[1] are able to rely on hearsay evidence to formulate opinions, provided that their methods are reliable, and they use the kind of facts or data that are reasonably relied on by experts in their field. *See* Fed. R. Evid. 702 & 703. The hearsay rules regarding records of regularly conducted activity and public records similarly require that the Defendants show that the Monitoring Reports rely on "untrustworthy" sources of information in order to warrant the Reports' exclusion from evidence. Fed. R. Evid. 803(6)(E) & 803(8)(B).

Consideration of information obtained from document review, site visits, and interviews is inherent to the work of a court monitor, and does not render the Monitoring Reports inadmissible. *See* Consent Decree, July 19, 2016, ECF No. 8-1 ¶ 150.b (requiring the Monitor to "review . . . a sufficient number of pertinent documents and interview a sufficient number of staff and prisoners to accurately assess current conditions"). The Defendants' contentions that reliance on these sources of information makes the Monitoring Reports unreliable ignores the safeguards built into the monitoring process, including the Defendants' direct participation in the

---

[1] The Monitor's employment of monitoring team members does not affect the admissibility of the Monitoring Reports, as the Consent Decree provides for this structure and requires that all team members are "governed and bound by the terms of this Agreement as the Monitor is governed and bound by those terms." Consent Decree, July 19, 2016, ECF No. 8-1 ¶ 141.

3

process, and the Monitor's reliance on the County's own records.² *See, e.g.*, Monitor's 15th Report, Nov. 24, 2021, ECF No. 101 at 2 (noting that the "remote site visit was completed through conference calls and video conferencing with key personnel, members of the Monitoring Team and County and DOJ representatives," and that the County's Compliance Coordinator provided the Monitor "extensive documentation" for review). Again, the Court can be trusted to disregard any portions of the Monitoring Reports that it deems unsupported at bench trial proceedings.³

To the extent that the Monitoring Reports include out-of-court statements—and Defendants have not identified any particular statements in their Response—the Court can consider these statements for the truth of the matter asserted provided each layer of hearsay conforms to a hearsay rule. Fed. R. Evid. 805. Statements made by County employees to the monitoring team, for example, are statements of a party-opponent and admissible. Fed. R. Evid. 801(d)(2). Their inclusion in Monitoring Reports does not pose a hearsay issue.⁴

In sum, the hearsay-within-hearsay rule does not impede the Court's consideration of the Monitoring Reports as evidence at the upcoming evidentiary hearing.

---

² Moreover, the Monitoring Reports include a reprint of the Monitor interview schedule and interviewee names, and the Monitor provides the interview schedule to all parties in advance of each inspection. The Compliance Coordinator who works with Jail staff and the Monitor to set up these interviews is also a County employee. Consent Decree, ECF No. 8-1 ¶ 160.

³ Moreover, the Monitor and her subject matter experts have been listed as witnesses for the upcoming evidentiary hearing, and Defendants will also have an opportunity to cross-examine them. U.S. Witness List, ECF No. 133.

⁴ It is proper for the United States to respond to the Defendants' "hearsay-within-hearsay" argument in its Reply brief, although the Defendants argue otherwise. Defs' Br. at n. 1. The purpose of a reply brief to engage with the Defendants' arguments raised in response to a motion; a movant is not required to anticipate every possible responsive argument and preemptively address it in its opening brief. Moreover, it will be more expedient for the Court to have the parties' evidentiary arguments set out in writing in advance of the bench hearing rather than on the fly during the hearing, as Defendants propose. *Id.*

## B.     The Exception for Records of Regularly Conducted Activity Applies.

The Monitor has submitted sixteen reports (including one interim report), each created with regularity and pursuant to her professional obligations. *See* Consent Decree, ECF No. 8-1 ¶¶ 148–50 (setting out the timing and methodological requirements for the Monitoring Reports). Defendants do not dispute the satisfaction of Rule 803(6)'s requirements, but argue that the Monitoring Reports are "not synonymous to a business record." Defs' Br. at 4. Rule 803(6), however, does not require a business analogue, as the Rule applies generally to records of any regularly conducted activity. *See* Fed. R. Evid. 803(6) (excepting records of "an act, event, condition, opinion, or diagnosis," where admissibility criteria are met).

As to *Palmer v. Hoffman*, 318 U.S. 109 (1943), cited by Defendants, the Advisory Committee's Notes to Rule 803(6) attribute the exclusion of the investigatory report in that case to concerns about motive, as the defendant corporation prepared the report at issue in anticipation of litigation. Fed. R. Evid. 803(6) advisory committee's notes. Here, the Monitor's independence from the litigating parties means that none of the motive concerns that animated the ruling in *Palmer* apply. *See* Consent Decree, ECF No. 8-1 ¶ 140 ("Neither the County nor the United States, nor any of their employees or agents, may have any supervisory authority over the Monitor's activities, reports, findings, or recommendations."). Defendants' attempt to compare the investigatory report in *Palmer* to the Monitoring Reports is thus wide of the mark.

Indeed, the rationale for exempting records of regularly conducted activity from the hearsay rule supports admitting the Monitoring Reports. The Advisory Committee's Notes counsel that the "duty to make an accurate record as part of a continuing job or occupation" warrants the presumption of reliability. Fed. R. Evid. 803(6) advisory committee's notes (citations omitted). The Monitor authored her reports pursuant to a duty to report accurate and

5

complete information regarding the status of the County's compliance with the Consent Decree, in her role as Monitor. Consent Decree, ECF No. 8-1 ¶¶ 148–150. Thus, contrary to Defendants' arguments, both the Rule and the reasoning behind it support admitting the Monitoring Reports as records of regularly conducted activity.

      **C.**      **The Monitor Functions as a Public Officer and Agent of the Court.**

The Monitoring Reports are also admissible as records of a public office pursuant to Rule 803(8): The Monitor is appointed by the Court and serves as the Court's eyes and ears, *Ruiz v. Estelle*, 679 F.2d 1115, 1161–62 (5th Cir.), *amended in part, vacated in part*, 688 F.2d 266 (5th Cir. 1982) (explaining that a court monitor is "the court's agent"); the Monitor is accountable to the public, as the Monitor's final reports are publicly filed and available for inspection, *see United States v. Davis*, 826 F. Supp. 617, 621 (D.R.I. 1993) (reasoning that the "public inspection to which the records are subject will disclose inaccuracies"); and the Monitoring Reports set out "a matter observed while under a legal duty to report," Fed. R. Evid. 803(8)(A)(ii), because the monitoring process was ordered by the Court, by agreement of the parties.

The Defendants' arguments against application of the public records exception do not persuade. *See* Defs' Br. at 6. The fact that the Monitor functions independently of the United States Department of Justice and the County strengthens the reliability of the Monitor's reporting; it does not call into question the public nature of the Monitor's role as an agent of the Court, acting under Court supervision. *See* Consent Decree, ECF No. 8-1 ¶ 140 (Monitor not subject to parties' supervision and subject to termination only by joint stipulation or good cause, as approved by the Court); Order, ECF No. 11 (court appointment of Elizabeth Simpson as Monitor). The provision of the Consent Decree that excludes the Monitor's files from public

record act demands relies upon the Monitor's independence from any "State, County or local agency," Consent Decree, ECF No. 8-1 ¶ 154, and has no bearing on the applicability of this hearsay rule.  The Monitor has a legal obligation to produce accurate reports by virtue of the Court's appointment and pursuant to Court supervision, *id.* ¶ 139, which justifies the application of the public records exception here.

The Defendants' reliance on *United Technologies Corp. v. Mazer*, 556 F.3d 1260 (11th Cir. 2009), Defs' Br. at 7, is also misplaced.  The Monitoring Reports were each authored following site visits to jail facilities and personal review of the County's records, and report on the status of the County's compliance with the Consent Decree at the time of review.  Consent Decree, ECF No. 8-1 ¶¶ 148–50.  The Reports contain "factual findings . . . based upon the knowledge or observations of the preparer of the report," and in no way resemble the "mere collection of statements from a witness" that was described in *Mazer*.  556 F.3d at 1278 (quoting *Miller v. Field*, 35 F.3d 1088, 1091 (6th Cir. 1994) (internal quotation marks omitted)).  The Monitoring Reports are more similar to other investigatory reports that this Circuit has deemed admissible.  *See Shepard v. Dallas County*, 591 F.3d 445, 456–58 (5th Cir. 2009) (affirming decision to admit DOJ report regarding constitutionality of certain jail conditions over Rule 403 objections, where the DOJ report was "well-grounded in facts obtained through personal observation of the jail during several visits, interviews of jail personnel, and reviews of jail policies and procedures, incident reports, grievances, and medical records").

For these reasons, the Defendants' arguments are unavailing, and the Monitoring Reports should be admitted under the exception for public records.

### D. The Residual Exception Applies to the Monitoring Reports in Light of their Unique Reliability.

The requirements for admitting the Monitoring Reports pursuant to the residual exception are met here, too.

First, the United States provided advance, written notice of its intention to offer these reports as evidence. After unsuccessfully attempting to obtain a stipulation for their admission from Defendants, the United States filed the instant motion *in limine* to affirmatively admit the reports, thirteen days prior to the upcoming evidentiary hearing. United States' Motion *in Limine* for Admission of Monitoring Reports, Feb. 1, 2022, ECF No. 117. The United States provided further notice of its intent via its exhibit list. United States Exhibit List, ECF No. 132. The Defendants already possess all fifteen of the Monitoring Reports in question. These measures constitute actual notice of the United States' intention to invoke the residual exception in seeking admission of the Monitoring Reports and pass muster under Rule 807.[5]

Second, there are circumstantial guarantees of the Reports' trustworthiness and corroboration.[6] *See* Mem. of Law in Support of Mot. *in Limine*, ECF No. 118 at 10–11 (describing the structure of the monitoring process and citing corroborating statements from Jail administrators to the Court during periodic status conferences). As discussed, the Reports were created pursuant to the Monitor's official duties as an agent of the Court, the Monitor relied on information provided largely by the County and its agents, and the monitoring process was

---

[5] Monitoring reports were also listed on the United States' exhibit list for the 2019 contempt proceedings. U.S. Exhibit List Attachment, ECF No. 49-1 at 8-9.

[6] The 2019 Amendments to Federal Rule of Evidence 807 eliminated the equivalence analysis and now require consideration of corroborating evidence. Fed. R. Evid. 807, advisory committee's notes; *cf.* Defs' Br. at 9 (citing *United States v. Reed*, 908 F.3d 102, 120 (5th Cir. 2018), for the propositions that "the lodestar of the exception is whether a hearsay statement has equivalent circumstantial guarantees of trustworthiness relative to other hearsay exceptions," and "determination of trustworthiness . . . cannot stem from other corroborating evidence.").

established by the parties as a fair and appropriate method of monitoring the Consent Decree. Defendants do not explain why the Court should ignore these indicia of trustworthiness.

Finally, the Monitoring Reports are more probative as to the Defendants' compliance with the terms of the Consent Decree than any other evidence that the United States and Defendants can obtain through reasonable efforts.  Fed. R. Evid. 807.  The Monitor was appointed to streamline the flow of information to the Court regarding the County's compliance with each of the Consent Decree's provisions, and the resulting Reports are the best evidence of the status of the County's compliance.  This Court has already relied on the Monitoring Reports in issuing rulings.  *See, e.g.*, First Order of Contempt, Feb. 4, 2022, ECF No. 126 at 2, 8–9, 11. Indeed, the Consent Decree itself recognizes that findings in the Monitoring Reports are to be "considered persuasive, but rebuttable, in Court."  Consent Decree, ECF No. 8-1 at ¶ 150.  And the Defendants also have cited Monitoring Reports in support of their positions.  *See, e.g.*, Mem. in Support of Joint Motion for Entry of Stipulated Order, ECF No. 54 at 2 ("[Parties] agree that the Court may rely upon the entire record in this proceedings, including, but not limited to, previously filed monitor reports as well as exhibits already entered into the record as part of the United States' Motion."); Brief in Response to [100] Order to Show Cause, ECF No. 105 at 17–18 (relying on monitor reports to describe reduction in number of "trash cells").

Admitting the Monitoring Reports is thus in keeping with the Federal Rules of Evidence's purpose to administer proceedings fairly, while avoiding unjustifiable expense and delay.  Fed. R. Evid. 102.  The Reports satisfy the requisites for admissibility under the Residual Exception, and should be considered at the upcoming evidentiary hearing.

**II.     The Monitoring Reports Are Relevant to the Upcoming Proceedings.**

The Monitoring Reports are highly relevant to the upcoming evidentiary hearing, which will determine whether the Defendants are in contempt of multiple provisions of the Consent Decree, whether to issue remedial relief including a potential federal receiver, and whether to terminate or modify the Consent Decree.  The Defendants focus only on the motion to terminate or modify, Defs' Br. at 10–11, without considering the contempt and remedy questions that are also at issue.

The Reports are pertinent to these proceedings in multiple, overlapping respects.  The Reports contain evidence of the Defendants' failure to implement the terms of the Consent Decree, which is relevant to contempt.  *See Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000) (requiring failure to comply with a court order to warrant contempt).  The more recent Reports contain evidence of ongoing violations of federal law in the jail facilities, which is relevant to the motion to terminate or modify the Consent Decree.  Indeed, the parties stipulated that the obligations imposed on the Defendants by the Consent Decree were "necessary to correction the violations of federal rights" alleged by the United States.  Consent Decree, ECF No. 8-1 ¶ 167.

The Reports also document that the Defendants have been on notice of the longstanding nature of the problems in the jail facilities for years, and have failed to act reasonably to resolve the problems.  In this vein, the Reports are evidence that Defendants know about the risks to persons incarcerated in their jail facilities.  *See Hope v. Pelzer*, 536 U.S. 730, 745 (2002) (citing to a DOJ report as having specifically advised prison officials of the unconstitutionality of their practice of using a hitching post restraint as punishment).

Finally, the Reports document the Defendants' course of conduct following entrance of the Consent Decree, which the Court will need to examine in weighing remedial measures, including the potential for receivership. *See Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012) (requiring a finding that "legal and less drastic equitable remedies are inadequate" in order to justify imposition of federal receivership).

## III. Conclusion

For the foregoing reasons, the United States requests that the Court grant the Motion *in Limine* in full, and admit into evidence the Monitoring Reports.

Respectfully submitted,

**FOR THE UNITED STATES:**

DARREN J. LaMARCA
United States Attorney
Southern District of Mississippi

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief
Civil Rights Division
Special Litigation Section

MITZI DEASE PAIGE (MS #6014)
Assistant U.S. Attorney
U.S. Attorney's Office
Southern District of Mississippi
501 E. Court Street – Ste. 4.430
Jackson, MS 39201
MPaige@usa.doj.gov
(601) 973-2840
(601) 965-4409 (fax)

LAURA L. COWALL (DC #481379)
Deputy Chief
laura.cowall@usdoj.gov
(202) 514-1089
(202) 514-0212 (fax)

/s/ *Christopher N. Cheng*
CHRISTOPHER N. CHENG (PA #69066)
Trial Attorney
christopher.cheng@usdoj.gov
(202) 514-8892
(202) 514-4883 (fax)

11

        SARAH STEEGE
        Trial Attorney
        sarah.steege@usdoj.gov

        HELEN VERA
        Trial Attorney
        helen.vera@usdoj.gov
        United States Department of Justice
        Civil Rights Division
        Special Litigation Section
        950 Pennsylvania Avenue, N.W.
        Washington, DC  20530

DATED:  February 10, 2022

## **CERTIFICATE OF SERVICE**

  I hereby certify that on February 10, 2022, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

                *s/ Christopher N. Cheng*
                CHRISTOPHER N. CHENG
                Attorney for the United States
                United States Department of Justice
                Civil Rights Division
                Special Litigation Section
                950 Pennsylvania Avenue, N.W.
                Washington, DC 20530