# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

J.H. AND DISABILITY RIGHTS                                                       PLAINTIFFS
MISSISSIPPI

V.                                                           CIVIL ACTION NO. 3:11-CV-327-DPJ-FKB

HINDS COUNTY, MISSISSIPPI                                                         DEFENDANT

ORDER

This § 1983 case was filed in 2011 by a group of plaintiffs challenging the conditions of confinement in the Henley-Young Juvenile Justice Center. The parties ultimately settled their dispute, and they have been working together under a series of consent decrees since March 2012. Plaintiffs now seek clarification of certain provisions of the current order, the Extended Third Amended Consent Decree. Mot. [163]. Defendant Hinds County, Mississippi, likewise requests clarification. *See* Resp. [164] at 4.

Prior to September 2017, Henley-Young housed only youth under the jurisdiction of the Youth Court. But since September 2017, Henley-Young has also housed juveniles charged as adults (JCAs) in pre-trial detention. The parties agree that all juveniles housed at Henley-Young fall within the Extended Third Amended Consent Decree's definition of "youth," which "refers to individuals confined at Henley-Young." Extended 3d Am. Consent Decree [161] at 2. Their disagreement concerns the application of paragraph 2.1 of the Extended Third Amended Consent Decree to JCAs. That paragraph provides in pertinent part:

> [T]he parties agree that Provision 2.1 necessarily requires Henley-Young to discharge youth under youth court jurisdiction on or before his/her 21st day at Henley-Young. The parties agree that henceforth the 21 day time limit requiring discharge and refusal of admission of youth will not apply to juveniles charged as adults. . . . The parties further agree that Provision 2.1 necessarily requires Henley-Young to adhere to the monitor's recommended 32-resident capacity limit on average daily population, and that Henley-Young cannot exceed an average

daily population of 32 residents, and that any admission that would require an [average daily population] in excess of 32 residents must be denied.

*Id.* ¶ 2.1.

Plaintiffs ask the Court to clarify "that (1) all youth confined at Henley-Young, including JCAs, are subject to and protected by this Consent Decree; (2) the 32-resident cap applies to JCAs; and (3) the County is in violation of this Consent Decree when it houses children under Youth Court jurisdiction beyond the 21-day limit." Mot. [163] at 4.

Defendant does not dispute Plaintiffs' construction as to its first and third requests. But as to the second, Defendant "respectfully requests that this Court clarify that the 32[-]resident limit at the Henley-Young facility does not apply to its JCA population." Resp. [164] at 4. Defendant explains:

> The "32 person cap" under the consent decree in the instant case was appropriate for juveniles under the jurisdiction of the youth court for a myriad of reasons. However, it is obvious that this limit cannot reasonably apply to the JCA population as the [d]efendant has no ability to determine how many juveniles charged criminally as adults will be admitted into Henley-Young nor whether their cases will move expeditiously through the judicial system. With the recent rise in violent crime, the bottleneck of cases that exist within the Hinds County judicial system resulting partially because of the pandemic[,] and the high bonds administered by Hinds County judges, it is likely that the population of JCAs housed at Henley-Young will exceed 32 residents.

*Id.* at 3.

Defendant makes some legitimate points, but the parties crafted this document, and the Court must construe the words they chose. *See Frew v. Janek*, 780 F.3d 320, 327 (5th Cir. 2015) ("Consent decrees are construed according to 'general principles of contract interpretation.'" (quoting *Dean v. City of Shreveport*, 438 F.3d 448, 460 (5th Cir. 2006))); *Bay Point High & Dry, Inc. v. Gore Brennan*, No. 1:06-CV-178-LG-JMR, 2007 WL 2908637, at *2 (S.D. Miss. Oct. 3, 2007) ("[Mississippi] law requires this Court to accept the plain meaning of a contract as the intent of the parties where no ambiguity exists. In other words, legal purpose or intent should

2

first be sought in an objective reading of the words employed in the contract . . . .") (quoting *A & F Props. Inc. v. Madison Cnty. Bd. of Supervisors*, 933 So. 2d 296, 301 (Miss. 2006))). And those words clearly place an overall cap on the average daily population of 32 residents, as opposed to a limit to the number of residents under Youth Court jurisdiction. *See* Extended 3d Am. Consent Decree [161] ¶ 2.1 ("The parties agree . . . that Henley-Young cannot exceed an average daily population of 32 residents . . . .").

That said, Defendant is not without recourse. If the landscape regarding the volume of JCAs Henley-Young is required to accept has changed such that the 32-resident limit is no longer feasible or appropriate, Defendant may move to modify the Extended Third Amended Consent Decree. Plaintiffs would then have a full opportunity to respond, and the Court could hear from the Court-appointed monitor on any proposed changes.

For now, Plaintiffs' Motion for Clarification [163] is granted. All youth confined at Henley-Young, including the JCAs, are subject to and protected by the Extended Third Amended Consent Decree. The overall 32-resident cap includes all youth confined at Henley-Young, including JCAs. And Defendant is in violation of the Extended Third Amended Consent Decree if and when it houses children under Youth Court jurisdiction beyond the 21-day limit set forth in paragraph 2.1.

**SO ORDERED AND ADJUDGED** this the 16th day of August, 2021.

s/ *Daniel P. Jordan III*<br>CHIEF UNITED STATES DISTRICT JUDGE

3