# Exhibit D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

J.H. AND
DISABILITY RIGHTS MISSISSIPPI

Plaintiffs,

v.

HINDS COUNTY, MISSISSIPPI,

Defendant.

Civil Action No.
3:11-CV-327-DPJ-FKB

## EXTENDED THIRD AMENDED CONSENT DECREE

On June 1, 2011, Plaintiffs filed suit challenging the conditions of confinement at Henley-Young Juvenile Justice Center ("Henley-Young"). Defendant responded to the Complaint and denied all the allegations. Plaintiffs and Defendant, without any admission on behalf of either, agreed that it was in the best interests of all parties to resolve this matter amicably without further litigation and cost to the taxpayers of Hinds County, Mississippi. The parties therefore negotiated a "Settlement Agreement" (later determined by the district court to be a consent decree), which was entered in March 2012. It was extended in April 2014; amended and extended in March 2016; amended and extended in March 2018; and amended and extended in February 2019 for two years, up to and including March 28, 2021. The parties desire to extend the consent decree for two years, up to and including March 28, 2023.

This Extended Third Amended Consent Decree is not to be construed as an admission of any liability or violation of law by the Defendant. The parties agreed in 2012 to the consent decree's provisions to resolve this litigation. Now, the parties wish to extend all terms and provisions of the Third Amended Consent Decree.

The term "Henley-Young Juvenile Justice Center" (or the like) hereinafter refers collectively to Hinds County and its Board of Supervisors. This Extended Third Amended Consent Decree and its specific requirements shall apply fully to Henley-Young and to any contractors that may provide services to Henley-Young in the future. The term "youth" hereinafter refers to individuals confined at Henley-Young. The parties understand that the requirements herein will be implemented without undue delay as soon as practicable.

Unless otherwise indicated herein, the parties will collaborate to make all reasonable efforts to ensure that within 90 days of the effective date of this agreement, policies and procedures consistent with this agreement are drafted, in the process of being implemented, and that all detention staff receives training on the requirements of this agreement. The parties agree and understand that implementation will be an ongoing process that extends beyond the initial 90 days of this agreement. The parties further agree to the following:

1. This agreement will terminate at the end of two years. If the Court makes written findings based on the record that prospective relief remains necessary after two years to correct a current and ongoing violation of federal rights, this agreement shall not terminate. *See* 18 U.S.C. § 3626(b)(3).

2. The parties stipulate that nothing in this Extended Third Amended Consent Decree constitutes an admission of liability and furthermore, the Defendant denies that it has provided deficient services in any category that is referenced below in this Extended Third Amended Consent Decree.

3. Notwithstanding any other provisions of this Extended Third Amended Consent Decree, the parties stipulate that the remedies contained in this document are necessary to correct an ongoing violation of a federal right, extend no further than

necessary to correct the violation of federal right, and that the prospective relief is narrowly drawn and is the least intrusive means to correct the violations.

4. It is the intent of the parties that the Court will retain ongoing jurisdiction over this Extended Third Amended Consent Decree for purposes of enforcement, pursuant to the terms of the Prison Litigation Reform Act. All provisions of this Extended Third Amended Consent Decree shall be interpreted to be consistent with this intent. In the event that the Court determines that it does not have jurisdiction over this Extended Third Amended Consent Decree for purposes of enforcement, the parties agree to modify the Extended Third Amended Consent Decree to the least extent necessary to ensure ongoing federal court jurisdiction.

## I.   <u>INTAKE</u>

1.1   Hinds County denies that the current intake procedure at Henley-Young is deficient in any manner. However, the parties agree that henceforth: All youth admitted to Henley-Young shall receive a health screening, within 1 hour of admission or as soon as possible as reasonably thereafter, by appropriately trained staff as required by Mississippi Code Ann. § 43-21-321. "Information obtained during the screening shall include, but shall not be limited to, the juvenile's: (a) Mental health; (b) Suicide risk; (c) Alcohol and other drug use and abuse; (d) Physical health; (e) Aggressive behavior; (f) Family relations; (g) Peer relations; (h) Social skills; (i) Educational status; and (j) Vocational status." Miss. Code Ann. § 43-21-321(1). During this screening, Henley-Young shall obtain information regarding the youth's educational status by having the youth or intake officer complete an education screening form developed and provided by the Jackson Public School District. Additionally, the

parties agree that Provision 1.1 implicitly necessitates Henley-Young to require a valid MYCIDS order before a youth can be admitted. The parties also agree that Provision 1.1 implicitly prohibits Henley-Young from admitting a status offender to Henley-Young without full compliance with the Mississippi Code. The parties agree that, in the absence of a valid MYCIDS order and full compliance with the Mississippi Code, a youth cannot be admitted to Henley-Young, and that such youth's admission must be denied.

1.2 Hinds County denies that Henley-Young failed to conduct mental health screenings of juveniles admitted to the facility in accordance with Miss. Code Ann. § 43-21-321. The parties agree, however, that henceforth: All youth shall receive a MAYSI-2 mental health screening upon admission, as required by Miss. Code Ann. § 43-21-321. The screening will be conducted in private by appropriately trained staff of Henley-Young. If the screening indicates that the youth is in need of emergency medical care or mental health intervention including, but not limited to, major depression, suicidal ideation, withdrawal from drugs or alcohol, or trauma, the detention staff shall refer those juveniles to the proper health care facility or community mental health service provider for further evaluation immediately or as soon as reasonably possible.

1.3 Prescription medications will be secured for all youth who have a valid, current prescription within 8 hours of admission, if possible, but in no case, longer than 24 hours after admission, including weekends and holidays. If during a youth's detention, a medical professional either prescribes a new medication or renews a youth's previous prescription medication, Henley-Young will secure the prescription medication within 8 hours of receiving the prescription, if possible, but in no case,

4

longer than 24 hours after receiving the new prescription, including weekends and holidays. Henley-Young shall procure and/or purchase all prescription medications prescribed to confined youth.

1.4    *Meal Compliance: Eliminated by agreement of the parties in March 2016.*

1.5    *Telephone Usage: Eliminated by agreement of the parties in March 2016.*

1.6    Hinds County denies that Henley-Young does not have in place a valid strip search policy. Within 60 days of the date of this agreement, Henley-Young shall develop and implement policies that limit strip searches to instances where Henley-Young staff has an articulable suspicion that a youth may possess weapons or contraband. Anytime a strip search is conducted, Henley-Young staff must document, in writing, their suspicion, obtain permission from a supervisor, and conduct the search in a manner that minimizes the intrusion into the youth's privacy.

## II.    STAFFING AND OVERCROWDING

2.1    *Modified by agreement of the parties in March 2018.* Hinds County denies that there are staffing issues and overcrowding at Henley-Young. However, the parties agree that Henley-Young shall ensure that there are sufficient numbers of adequately trained direct care and supervisory staff to supervise youth safely, protect youth from harm, allow youth reasonable access to medical and mental health services, and allow youth adequate time to participate in out-of-cell activities. Within 90 days of the date of this agreement, Henley-Young shall operate with a direct care staff to youth ratio of 1:8 from the hours of 6:00 a.m. until 10:00 p.m. and a ratio of 1:10 from the hours of 10:00 p.m. to 6:00 a.m. Additionally, the parties acknowledge the November 3, 2014, Hinds County Board of Supervisors' Resolution Regarding the Henley-Young

Detention Center providing that Henley-Young shall not house any youth under youth court jurisdiction for more than 21 days. The parties also agree that Henley-Young is a short-term facility not designed to hold residents for longer than 21 days. In light of the facility's nature and the Board of Supervisors' Resolution, the parties agree that Provision 2.1 necessarily requires Henley-Young to discharge youth under youth court jurisdiction on or before his/her 21st day at Henley-Young. The parties agree that henceforth the 21 day time limit requiring discharge and refusal of admission of youth will not apply to juveniles charged as adults. The parties further agree that Provision 2.1 requires Henley-Young to refuse admission to any youth who is sentenced to a period of greater than 21 days. The parties further agree that Provision 2.1 requires that any time spent off-site in a state of detention (including but not limited to at a psychiatric residential treatment facility) must be counted toward a youth's detention stay. The parties further agree that Provision 2.1 necessarily requires Henley-Young to adhere to the monitor's recommended 32-resident capacity limit on average daily population, and that Henley-Young cannot exceed an average daily population of 32 residents, and that any admission that would require an ADP in excess of 32 residents must be denied.

2.2    *Maximum Capacity Adjustment: Eliminated by agreement of the parties in March 2016.*

2.3    *One-Person Cell: Eliminated by agreement of the parties in March 2016.*


### III.    CELL CONFINEMENT

3.1    Hinds County denies that youth are confined in their cells without engaging in structured, rehabilitative, and educational programming. The parties agree, however,

that henceforth: Youth shall be engaged in structured, rehabilitative, and educational programming outside of their cells during the hours of 7:00 a.m. to 9:00 p.m. each day, including weekends and holidays.

3.2     *Appropriate Access to Living Unit: Eliminated by agreement of the parties in March 2019.*

3.3     Youth who pose an immediate, serious threat of bodily injury to others may be confined in their cells for no longer than 12 hours at a time without administrative approval. Youth who are placed on cell confinement for this reason shall be released from their cells daily to attend school, maintain appropriate personal hygiene and to engage in one hour of large muscle exercise. Staff must perform visual checks on youth who are subject to cell confinement every 15 minutes. Staff must document all instances of cell confinement in writing and must document the justification for determining that a youth poses an immediate, serious threat of bodily harm.

3.4     *Isolation: Eliminated by agreement of the parties in March 2018.*

3.5     *Direct Care Staff on Units: Eliminated by agreement of the parties in March 2018.*


## IV.     STRUCTURED PROGRAMMING

4.1     Hinds County denies that Henley-Young has failed to administer daily, structured, programming for youth detained at the facility. The parties agree, however, that henceforth: Henley-Young shall administer a daily program, including weekends and holidays, to provide structured educational, rehabilitative, and/or recreational programs for youth during all hours that youth shall be permitted out of their cells, pursuant to section 3.1. Programming shall include:

a.   Activities which are varied and appropriate to the ages of the youth;

b. Structured and supervised activities which are intended to alleviate idleness and develop concepts of cooperation and sportsmanship;

c. Supervised small group leisure activities, such as a wide variety of card and table games, arts and crafts, or book club discussions; and,

d. The parties agree that this provision requires Hinds County, by and through its County Administrator and/or Executive Director at Henley-Young, to maintain exclusive control and maintenance of any facilities or technology that promotes compliance with this provision or other provisions of this consent decree.

## V.   INDIVIDUALIZED TREATMENT PLANS/TREATMENT PROGRAM FOR POST-DISPOSITION YOUTH

5.1   Hinds County denies that Henley-Young has failed to provide or has provided deficient individualized treatment plans or treatment programs for post-disposition youth. The parties agree, however, that Henley-Young shall ensure that youth have access to adequate rehabilitative services. Henley-Young shall ensure that children placed in the facility post-disposition will receive constitutionally compliant rehabilitative services.

5.2   Henley-Young shall ensure that youth in need of mental health and/or substance abuse treatment and/or who are in the facility post disposition shall have appropriate treatment plans developed and implemented in accordance with generally accepted professional standards of practice for mental health and rehabilitative services.

5.3   Henley-Young shall implement policies and procedures for the required content of treatment plans, which shall include:

a. That the treatment plan be individualized;

b. An identification of the mental and/or behavioral health and/or rehabilitative issues

8

to be addressed;

c.  A description of any mental health, medication or medical course of action to be pursued, including the initiation of psychotropic medication;

d.  A description of planned activities to monitor the efficacy of any medication of the possibility of side effects;

e.  A description of any behavioral management plan or strategies to be undertaken;

f.  A description of any counseling or psychotherapy to be provided;

g.  A determination of whether the type or level of treatment needed can be provided in the youth's current placement, and

h.  A plan for monitoring the course of treatment, and if necessary, for revising the treatment plan.

i.  A description of the precise terms of the facility's long-term and short-term objectives for the youth, the full range of services to be provided, and procedure, and timetables and staff assignments for the implementation of such treatment plan;

j.  A plan for regularly engaging the family in the youth's treatment plan;

k.  A comprehensive re-entry plan that will assist the youth re-enroll in their home school and access medical, mental health, vocational and rehabilitative services based in the community.

5.4     Henley-Young shall institute a program of periodic staff reviews every three weeks and evaluations of each youth's progress under his/her individualized treatment plan and of the appropriateness of the plan itself and Henley-Young's plan for such review.

5.5     Henley-Young shall develop and implement a program that provides for evening and weekend programs and activities that allow youth to engage in meaningful activities.

5.6     Henley-Young shall develop and implement an adequate quality assurance program.

9

## VI.    DISCIPLINARY PRACTICES AND PROCEDURES

6.1    Hinds County denies that the current disciplinary practices and procedures at Henley-Young are deficient in any manner. The parties, however, agree that henceforth: Henley-Young shall implement a discipline policy and practice that incorporates positive behavior interventions and supports. This policy shall include guidelines for imposing graduated sanctions for rule violations and positive incentives for good behavior.

6.2    Youth who violate major rules may be subject to cell confinement for up to 24 hours for a single rule violation. An occasion in which a youth is alleged to have contemporaneously violated multiple major rule violations shall count as a single rule violation for the purposes of this section. No youth shall be confined to a cell for longer than 8 hours for a single rule violation without receiving written notification of the alleged rule violation and the occurrence of a disciplinary review/due process hearing before an impartial staff member, which includes participation by the accused youth. Under no circumstances shall youth be subjected to involuntary cell confinement for longer than 24 hours for disciplinary purposes. Youth who are placed on cell confinement shall be released daily from their cells to attend school, maintain appropriate personal hygiene, and to engage in one hour of large muscle exercise.

## VII.    USE OF RESTRAINTS

7.1    *Mechanical Restraints: Eliminated by agreement of the parties in March 2018.*

7.2    *Mechanical Restraints–Transportation: Eliminated by agreement of the parties in March 2018.*

7.3    *Misuse of Mechanical Restraints: Eliminated by agreement of the parties in March 2018.*

7.4    No youth shall be restrained for longer than 15 minutes, unless restraints are approved by a mental health professional or if determined to be necessary under section 7.2 or as reasonably necessary to prevent the youth from engaging in acts of self-harm or harm to others. If a youth must be restrained for longer than 15 minutes in order to prevent self-harm, that youth shall, as quickly as possible, be evaluated by a mental health professional or transported to a mental health facility.

7.5    *No Restraint Chairs, Chemical Restraints and/or Tasers: Eliminated by agreement of the parties in March 2016.*

7.6    *No Hogtying in Facility: Eliminated by agreement of the parties in March 2016.*

7.7    *Mechanical Restraints–One-on-One Supervision: Eliminated by agreement of the parties in March 2018.*

7.8    *Mechanical Restraints–Notice to Medical Professional: Eliminated by agreement of the parties in March 2018.*

7.9    *No Electronic Restraints: Eliminated by agreement of the parties in March 2016.*

7.10   *No Firearms in Facility: Eliminated by agreement of the parties in March 2016.*


## VIII.  <u>USE OF FORCE</u>

8.1    Hinds County denies that Henley-Young currently uses force improperly. The parties, however, agree that henceforth: Physical force shall not be used to punish youth. Staff shall only use physical force to stop youth from causing serious physical injury to self or others or to prevent an escape. If physical force is necessary, staff must use the minimum amount required to safely contain the youth. Whenever possible,

staff shall avoid the use of force by first attempting verbal de-escalation techniques. Staff shall be required to fully document in writing every instance of use of force.

8.2 *Notice to Medical Professional After Use of Force: Eliminated by agreement of the parties in March 2019.*


## IX.   MEALS AND NUTRITION

9.1 *All Meals and Snacks Must be Nutritional: Eliminated by agreement of the parties in March 2019.*

9.2 *All Meals and Snacks Must Comply with Nutritional Guidelines: Eliminated by agreement of the parties in March 2019.*

9.3 *Provide Drinking Water Throughout the Day: Eliminated by agreement of the parties in March 2018.*


## X.   CLOTHING

10.1 *Provide Basic Clothing Items: Eliminated by agreement of the parties in March 2018.*


## XI.   HYGIENE AND SANITATION

11.1 *Provide Appropriate Hygiene Products: Eliminated by agreement of the parties in March 2019.*

11.2 *Provide Sleeping Mats and Blankets: Eliminated by agreement of the parties in March 2019.*

11.3 *No Deprivations of Mats and Blankets: Eliminated by agreement of the parties in March 2016.*

11.4    *Sufficient Sanitary Mats and Blankets: Eliminated by agreement of the parties in March 2016.*

11.5    *Clean and Sanitary Environment: Eliminated by agreement of the parties in March 2019.*

11.6    Hinds County shall ensure that Henley-Young complies with relevant law regarding fire safety, weather emergencies, sanitation practices, food safety, and the elimination and management of environmental toxins.

11.7    *Clean Drinking Glasses and Eating Utensils: Eliminated by agreement of the parties in March 2018.*


## XII.    <u>MEDICAL CARE</u>

12.1    Hinds County denies that Henley-Young has failed to provide youth with adequate medical care. The parties agree, however, that henceforth, Henley-Young shall provide youth with adequate medical care, including: prompt screenings, a full physical exam within 72 hours after their detention hearing or disposition order, as applicable; access to medical professionals and/or prescription medications when needed; and prompt transportation to a local hospital in the case of a medical emergency. Hinds County is responsible for procuring and/or paying for all medications provided to residents.

12.2    Henley-Young shall ensure that a medical professional is available to examine youth confined at the facility to identify and treat medical needs, when necessary.

12.3    Henley-Young shall implement its sick call policy and practice which ensures that confined youth who request non-emergency medical attention are examined by a medical professional within 24 hours of a youth placing himself/herself on sick call, excepting weekends and holidays.

12.4    Prescription medications shall only be distributed by licensed medical staff or Henley-Young staff who has been trained by licensed medical personnel.

12.5    Medical and mental health services shall be provided in a manner that ensures the confidentiality of youth's health information.

12.6    Henley-Young shall develop a procedure for monitoring youth who require individualized attention because of medical issues that does not involve requiring the youth to sleep on a mat in the visitation room.

### XIII.    MENTAL HEALTH CARE

13.1    Hinds County denies that Henley-Young has failed to provide adequate mental health care to youth. The parties agree, however, that henceforth: Henley-Young's contractor, Hinds Behavioral Health Services, shall provide adequate mental health services to all confined youth with a mental health diagnosis or serious mental health need, as indicated by the MAYSI-2. This shall include, but is not limited to, the provision of individual and group counseling sessions upon the request of a youth or the youth's parent/guardian, access to a mental health professional at the detention center, and the distribution and medical monitoring of psychotropic medications by a medical professional. Currently, the County budgets for counselor positions within the Youth Court budget. The parties agree that the County shall reallocate such funding to the Henley-Young Facility to provide appropriate and accessible mental-health counselors and case-management counselors to the residents for the development of individualized treatment plans.

13.2    Youth who are confined for longer than thirty (30) continuous days and who are prescribed psychotropic medications, shall be evaluated by a psychiatrist every thirty

14

(30) days. Such evaluations may be performed by and through employees of Hinds Behavioral Health.

13.3   Within 72 hours of a youth's admission to the facility, staff shall develop individual mental health treatment plans for youth who are under the care of a mental health provider. Treatment plans shall emphasize continuity of care and shall ensure that whenever possible, youth are transported to appointments with their regular mental health provider, whether the appointments are standing or made after the youth's initial detention.

13.4   Henley-Young shall develop and implement policies and procedures for referring youth in need of psychiatric services to a licensed psychiatrist for a timely mental health evaluation. Such services may be provided by and through employees of Hinds Behavioral Health.

13.5   Hinds County shall employ or contract for sufficient psychiatric services to permit a psychiatrist to fulfill the following functions:

a.   Conduct needed psychiatric evaluations prior to placing youth on psychotropic medications;

b.   Monitor, as appropriate, the efficacy and side effects of psychotropic medications;

c.   Participate in treatment team meetings for youth under the psychiatrist's care;

d.   Provide individual counseling and psychotherapy when needed;

e.   Evaluate and treat in a timely manner all youth referred as possibly being in need of psychiatric services; and

f.   Provide adequate documentation of treatment.

g.   All evaluations and services outlined above may be performed and/or provided by and through employees of Hinds Behavioral Health or any other duly qualified

15

Mental Health agency.

13.6    The psychiatrist and/or counselors shall review, if necessary, incident reports, disciplinary reports, suicide watch logs, and lockdown logs of youth under their care to determine whether their treatment is working and, if not, how it should be modified.

## XIV.   SUICIDE PREVENTION

14.1    Hinds County denies that Henley-Young failed to provide adequate suicide prevention policies. The parties agree, however, that henceforth: Henley-Young shall develop a multi-tiered suicide prevention policy that has at least three stages of suicide watch. Suicide watch shall not be used as punishment. The "suicide cell" shall be reserved for youth for whom the "suicide cell" is deemed necessary in conjunction with this suicide prevention policy.

14.2    Any youth placed on the highest level of suicide watch shall be evaluated by a mental health professional, ideally within 12 hours, but in no case longer than 24 hours of his or her placement on suicide watch. If a youth on the highest level of suicide watch is not evaluated by a mental health professional within 24 hours, the youth shall immediately be transported to a local mental health facility or emergency room for evaluation and/or treatment.

14.3    Youth on suicide watch shall participate in recreation, school, and any other structured programming. Youth shall not be required to wear a "suicide gown" unless locked in a cell. Staff shall closely monitor youth on suicide watch, which includes logging activities every 15 minutes.

14.4.   When a youth is placed on any level of suicide watch, a report shall be made within

24 hours to the youth court, as well as to the youth's guardian, and his/her defense attorney.

## XV.    FAMILY SUPPORT AND INTERACTION

15.1    *Visitation Shall Not Be Restricted or Withheld: Eliminated by agreement of the parties in March 2016.*

15.2    *Provide Accommodations for Contact Visits: Eliminated by agreement of the parties in March 2016.*

15.3    *Visitation Shall Be Regularly Scheduled: Eliminated by agreement of the parties in March 2016.*

15.4    Youth may receive phone calls from their attorneys. At the discretion of the Director or assignee, in emergency situations, youth may receive phone calls from parents, primary caretakers, or legal guardians. Emergency phone calls and phone calls from attorneys should not be restricted as a form of punishment.

## XVI.   MISCELLANEOUS PROVISIONS

16.1    *Provide Equal Access to All Services: Eliminated by agreement of the parties in March 2018.*

16.2    Hinds County denies that Henley-Young has failed to allow youth to engage in at least one hour of large muscle exercise per day. The parties agree, however that henceforth: All youth shall have the opportunity to engage in at least one hour of large muscle exercise per day.

16.3    *Use of Profanity in the Presence of Residents: Eliminated by agreement of the parties in March 2019.*

16.4    Hinds County denies that Henley-Young does not currently have an adequate grievance policy. The parties agree, however, that henceforth: Henley-Young shall implement an adequate grievance policy that is accessible to all youth regardless of literacy levels, and that provides youth with the opportunity to appeal facility level determinations. Youth shall obtain the grievance forms from the school liaison.

16.5    Hinds County denies that Henley-Young does not currently have an adequate policy whereby youth can request to see their attorney and/or Youth Court counselor. The parties agree, however, that henceforth: Henley-Young shall develop and implement an adequate policy that allows youth of all ages and literacy levels with the opportunity to request to see their attorney and/or Youth Court counsel. Youth shall obtain the form requesting a visit from his/her counselor from the school liaison. Henley-Young agrees to collaborate with the Plaintiffs to design and implement a comprehensive juvenile justice pre-service and in-service training program for detention center staff. Training shall include, but is not limited to, the mandatory reporting requirements for direct care workers, the requirements of the Prison Rape Elimination Act, verbal de-escalation techniques, adolescent brain development and developmental issues, effective communication with adolescents, effective documentation, appropriate use of force and restraint, and best practices for detention center administration.

## XVII. **INDEPENDENT MONITOR**

17.1    *Modified by agreement of the parties in March 2019: This provision will not be in force so long as the 2019–2023 CAP remains in effect. See* Provision 20.7. The Defendant shall contract with Leonard Dixon, within 30 days of the court's entry of this Extended Third Amended Consent Decree, to serve as an expert who will be responsible for documenting the Defendant's compliance with the terms of this agreement and for providing and/or arranging technical assistance and training regarding compliance with this Extended

Third Amended Consent Decree. The expert shall have full and complete access to the facility, including but not limited to, access to detained youth, institutional files, medical files, mental health files, educational files, video tapes, and youth records, staff records, and all other information and other reports by staff, grievances, incident reports, and other relevant documents and files maintained by Henley-Young. The Defendant shall direct all staff to cooperate with the expert.

17.2    Upon the recommendation of the independent expert and with the mutual consent of the parties, the terms of this Extended Third Amended Consent Decree may be modified. Consent will not be unreasonably withheld.

17.3    All non-public information obtained by the expert shall be kept confidential, except that on a quarterly basis the expert shall file a report with the Court documenting the progress of compliance.

17.4    Neither party, nor any employee or agent of either party, shall have any supervisory authority over the expert's activities, reports, findings, or recommendations.

17.5    The expert shall be permitted to initiate and receive ex parte communications with all parties.

17.6    *Modified by agreement of the parties in March 2019: This provision will not be in force so long as the 2019–2023 CAP remains in effect. See* Provision 20.7. The expert shall file with the Court and provide the parties with reports describing the Defendant's steps to implement this Extended Third Amended Consent Decree and evaluate the extent to which the Defendant has complied with each substantive provision of this agreement. Such reports shall be issued quarterly, unless the parties agree otherwise. The reports shall be provided to the parties in draft form for comment at least two (2) weeks prior to their submission to the Court. These reports shall be written with due regard for the privacy interests of individual youth and staff and the interest of the Defendant in protecting against disclosure of non-public information.

17.7 *Modified by agreement of the parties in March 2019: This provision will not be in force so long as the 2019–2023 CAP remains in effect. See* Provision 20.7. The expert shall have a budget sufficient to allow him to fulfill the responsibilities described in this Extended Third Amended Consent Decree. Mr. Dixon may consult with other experts or consultants retained by either party. All parties shall receive copies of all draft reports from the other experts to Mr. Dixon prior to the issuance of Mr. Dixon's report, and shall have the option of being present at briefings from such experts to Mr. Dixon and Defendant. Mr. Dixon may initiate and receive ex parte communication with the parties and their respective experts and consultants.

## XVIII.    PLAINTIFFS' COUNSEL CONTINUED ACCESS

18.1 Plaintiffs' counsel shall have full and complete access to the youth at Henley- Young. They shall also have full and complete access to the facility, youth, and relevant records, including but not limited to institutional files, medical files, mental health files, educational files, video tapes, and youth records, staff records, and all other information and other reports by staff, grievances, incident reports, and other relevant documents and files maintained by Henley-Young relevant to assessing the Defendant's compliance with this Extended Third Amended Consent Decree. The Henley-Young facility includes an audio/video monitoring system, but the Henley-Young Executive Staff do not have access to the equipment. The parties agree that exclusive access to this equipment should inure to the Executive Director in an effort to facilitate timely and complete review of any alleged incident, corrective action (if necessary) and improved disciplinary practices and procedures.

18.2 Plaintiffs' counsel shall have the right to conduct monitoring and educational visits at Henley-Young so long as they provide 48-hour notice. Plaintiffs' counsel retains the

right to investigate any complaints of abuse or neglect at the facility pursuant to its authority under the Protection and Advocacy for Individuals with mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. §§ 10801 *et seq.*, the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("PADD Act"), 42 U.S.C. §§ 15001 *et seq.*, and the Protection and Advocacy of Individuals Rights Program ("PAIR Act"), 29 U.S.C. §§ 794 *et seq.*

18.3   Plaintiffs' counsel shall have the right to conduct confidential interviews with youth currently confined at Henley-Young. Nothing in this Extended Third Amended Consent Decree shall prohibit DRMS or its agents from accessing youth in accordance with Judge Jordan's Preliminary Injunction Order issued on September 12, 2011. ECF No. 24. Plaintiffs agree to indemnify the County for any liability it incurs as a result of Plaintiffs' actions or inactions related to the monitoring of this Extended Third Amended Consent Decree. Plaintiffs further agree to comply with all state and federal confidentiality requirements regarding youth court, educational and/or medical records.

18.4   All interviews of Henley-Young staff shall be coordinated by and with Attorneys representing Henley-Young. All non-public information obtained by Plaintiffs' counsel shall be maintained in a confidential manner.

## XIX.   COMPLIANCE, ENFORCEMENT, AND DISMISSAL

19.1   The parties agree that the implementation and interpretation of this Extended Third Amended Consent Decree shall be guided by the fact that the primary purposes of Mississippi's juvenile system are "rehabilitation and individual treatment rather than retribution." *Buck v. State*, 838 So. 2d 256, 260 (Miss. 2003) (internal quotations and

citation omitted). The same principle that guides the interpretation of Mississippi's Youth Court Act shall guide the implementation of this Extended Third Amended Consent Decree. Both the Act and the Extended Third Amended Consent Decree shall:

> be liberally construed to the end that each child coming within the jurisdiction of the youth court shall become a responsible, accountable, and productive citizen, and that each such child shall receive such care, guidance, and control, preferably in such child's own home as is conducive toward that end and is in the state's and the child's best interest. It is the public policy of this state that the parents of each child shall be primarily responsible for the care, support, education, and welfare of such children; however, when it is necessary that a child be removed from the control of such child's parents, the youth court shall secure proper care for such child.

Miss. Code Ann. § 43-21-103. "Inherent in this policy is the protection and care of children in trouble and the rehabilitation of those gone astray." *Helmert v. Biffany*, 842 So. 2d 1287, 1291 (Miss. 2003).

19.2    This Extended Third Amended Consent Decree shall be binding on all successors, assignees, contractors, employees, agents, and all those working for or on behalf of Hinds County, Mississippi.

19.3    Hinds County agrees that it shall not retaliate against any person because that person has filed or may file a complaint, provided information or assistance, or participated in any other manner in an investigation or proceeding related to this Extended Third Amended Consent Decree.

19.4    Plaintiffs' counsel shall have the right to conduct interviews with staff.

19.5    After the effective date of this Extended Third Amended Consent Decree, the Court shall retain jurisdiction to ensure that the parties fulfill their respective obligations under this Extended Third Amended Consent Decree. In the event that any matter related to this Extended Third Amended Consent Decree is brought to the Court,

the Court may require briefing, and any remedy within the Court's jurisdiction shall be available.

19.6 For purposes of settlement only, the Parties stipulate to class certification. The settlement class is defined as "all youth who are currently or will in the future be confined at Henley-Young."

19.7 Plaintiffs agree to notify the County Board Attorney, the County Administrator, and the Board of Supervisors and give them an opportunity to resolve a problem at Henley-Young prior to initiating media contact.

## XX. 2019–2023 CORRECTIVE ACTION PLAN

20.1 Overview. In March 2021, Parties agree to continue the Corrective Action Plan ("CAP") to facilitate global consent decree compliance within the first 365 days ("Year 1") and the first 180 days of the second year ("Year 2") of the 2021–2023 consent decree period. In this section, "days" refer to calendar days.

20.2 Expert. Defendants agree to engage Anne Nelsen ("Ms. Nelsen") by March 28, 2021, to provide technical assistance to the County (a) in Year 1, to implement core institutional infrastructure required for global consent decree compliance; and (b) in Year 2, to complete and verify implementation of all consent decree provisions.

20.3 Goals and Timeline. Parties agree to the goals and timeline set forth in Table 1, "Timeline and Goals." *See* Attachment 1. Parties agree that the content of Table 1 may be amended by agreement of both parties.

20.4 Measuring Progress. Parties agree to utilize Table 2, "Benchmarks and Needs," to track progress towards goals and to meet and identify outstanding needs. *See* Attachment 2. Parties agree that the content of Table 2 may be amended by agreement

of both parties.

20.5   <u>Benchmarks and Needs</u>. In Table 2, the following definitions apply. "<u>Needs</u>" are results Ms. Nelsen provides are necessary to achieve compliance, which  the County may satisfy through a range of approaches (or recommendations)—so long as the need is met, as to which Ms. Nelsen would provide an opinion. After learning of the need, the County will timely select an approach and provide status updates regarding their selection and progress on Progress Calls (see below). Ms. Nelsen will provide her assessment regarding whether the approach has met the need. "<u>Policy</u>" refers to the institution's goals and intent. "<u>Procedure</u>" refers to what actions must be taken to effectuate those goals. "<u>Tools</u>" refers to objects or documents needed to execute a procedure. "<u>Training & QA</u>" refers to self-sustaining training and internal review systems.

20.6   <u>Progress Calls</u>. Parties agree to have a conference call with Ms. Nelsen and the facility once every three weeks ("Progress Calls") with the goal of sharing information necessary to update Table 2, including by (a) identifying Needs and potential approaches to addressing them; (b) documenting the County's selection of an approach; and (c) reporting on progress made towards that approach.

20.7   <u>Suspended Monitoring and Expert Tours</u>. The parties agree to deprioritize the need for subject-matter monitoring and to deprioritize adjudging the County's progress according to its implementation of recommendations made by the monitor or subject-matter experts in this case. *See* Provisions 17.1, 17.6, 17.7 (suspended by agreement of the parties so long as this CAP is in force). Instead, the County will prioritize implementing core institutional infrastructure required for global compliance, including conclusively finalizing: (a) all policies, procedures, and tools required to

implement procedures; (b) a self-sustaining training program; and (c) an internal review program ("QA"). In Year 1, implementation of policies and procedures will occur on a rolling basis and Ms. Nelsen will provide the parties with feedback on substantive progress, but the parties agree that Year 1 priorities are to meet benchmarks and to satisfy needs as provided in Tables 1 and 2.

20.8    Judicial Oversight. Approximately 30 days prior to the end date of each Phase defined in Table 1, the parties will participate in a status conference before the magistrate judge. Seven days in advance of the status conference, Ms. Nelsen (or Plaintiffs on her behalf) will submit the current versions of Tables 1 and 2 and any required explanation of jointly agreed-upon revisions the parties have made to either table. The parties have the option to submit confidential settlement memoranda in advance of these status conferences.

20.9    Termination. The parties and Ms. Nelsen agree that the County, in a good-faith effort to resolve this matter and conserve taxpayer resources, may engage Ms. Nelsen for these purposes; however, if at any time either the County, Plaintiffs, and/or Ms. Nelsen wish to end this arrangement, this CAP will end effective immediately and Ms. Nelsen's status as Plaintiffs' expert will not change; however, Plaintiffs would be barred from introducing the fact that the County engaged Ms. Nelsen in subsequent litigation. In the event the CAP is terminated, the parties will notify the Court and request a status conference.

20.10  The parties acknowledge that Hinds County has relocated juveniles charged as adults ("JCAs") from the Raymond (adult) Detention Center to Henley-Young; that JCAs in Hinds County are subject to prolonged periods of indefinite pre-trial detention; and that due to the presence of JCAs, the facility was required to become a hybrid short-

term/long-term facility and provide services suitable to both JCA and delinquency populations.

## XXI.  <u>FEES</u>

21.1   The parties agree that the payment and amount of attorney's fees paid by the Defendants shall remain confidential with respect to all parties and may only be disclosed pursuant to a valid court order or public records request.

**SO ORDERED AND ADJUDGED** this the 2nd day of April, 2021.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE


  /s/ *Leslie Faith Jones*
Leslie Faith Jones
Counsel for the Plaintiffs
Mississippi Bar No. 106092
Southern Poverty Law Center
111 East Capitol Street, Suite 280
Jackson, Mississippi 39201
Phone: (601) 948-8882
Facsimile: (601) 948-8885
E-mail: leslie.jones@splcenter.org

  /s/ *Tony R. Gaylor*
Tony R. Gaylor
Counsel for the Defendant
Mississippi Bar No. 10189
Chambers & Gaylor Law Firm PLLC
210 East Capitol Street, Suite 1262
Jackson, Mississippi 39201
Phone: (601) 914-0248
Facsimile: (601) 914-0255
Email: tgaylor@cglawpartners.com


  /s/ *Greta Kemp Martin*
Greta Kemp Martin
Counsel for the Plaintiffs
Mississippi Bar No. 103672
Disability Rights Mississippi
5 Old River Place, Suite 101
Jackson, Mississippi 39202
Phone: (601) 968-0600
Facsimile: (601) 968-0665
E-mail: gmartin@drms.ms