```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                    NORTHERN DIVISION
```

UNITED STATES OF AMERICA                              Plaintiff

V.                          CASE NO. 3:16-cv-489-CWR-RHWR

THE HINDS COUNTY BOARD OF                            Defendants
SUPERVISORS, ET AL

**TRANSCRIPT OF STATUS CONFERENCE**
**VIA VIDEOCONFERENCE**

BEFORE HONORABLE CARLTON W. REEVES
UNITED STATES DISTRICT JUDGE

April 14, 2022
Jackson, Mississippi

The proceedings were reported by a stenographic court reporter.
The transcript was produced using computer-aided transcription.

*Margaret Wasmund, RDR, CRR, CRC*
*Court Reporter*
*2851 Shiloh Road*
*Pelahatchie, Mississippi 39145*
*margaretwasmund@gmail.com/601-329-6113*

APPEARANCES:

REPRESENTING THE PLAINTIFF:

Christopher N. Cheng, Esquire
Laura L. Cowall, Esquire
U.S. Department of Justice
150 M. Street NE, 10th Floor
Washington, DC  20530

Helen Vera, Esquire
U.S. Department of Justice
950 Pennsylvania Ave NW
Washington, DC  20530


REPRESENTING THE DEFENDANTS:

Tony R. Gaylor, Esquire
Hinds County Board of Supervisors
P.O. Box 686
Jackson, MS  39205-0686

Nicholas F. Morisani, Esquire
Phelps Dunbar, LLP
P.O. Box 16114
Jackson, MS  39236-6114

Rayford G. Chambers, Esquire
Chambers & Gaylor, PLLC
P.O. Box 12393
Jackson, MS  39236-2393

John C. Hall, II, Esquire
The Hall Law Group PLLC
263 East Pearl Street
Jackson, MS  39201


ALSO PRESENT:

Ms. Elizabeth Lisa Simpson
Mr. Jim Moeser
Mr. David Parrish

1          (April 14, 2022, 1:41 p.m.)
2               THE COURT:  I apologize for the delay.  I'm going to
3  ask if you are not speaking, please put your microphone on
4  mute.
5      I have a court reporter present.  Can you hear everything,
6  Ms. Wasmund?
7               THE COURT REPORTER:  Yes, sir.
8               THE COURT:  Okay.  Thank you.
9      Well, who do I have on for the United States?  Please
10  introduce yourself to the court reporter.
11               MR. CHENG:  Your Honor, this is Christopher Cheng
12  with the Justice Department, Civil Rights Division.  My
13  colleagues, Laura Cowall and Helen Vera, are also on.  I
14  believe Sarah Steege will be joining us later, but she had a
15  conflict so she may log on a little bit later from now.
16               THE COURT:  And who is on for Hinds County?
17               MR. GAYLOR:  Your Honor (videoconference
18  interference) --
19               THE COURT:  Hold on.  Let me put it --
20               MR. GAYLOR:  Your Honor (videoconference
21  interference) --
22               THE COURT REPORTER:  I'm sorry, Judge.  I can't hear
23  him.
24               THE COURT:  Mr. Gaylor is on for Hinds County.  And I
25  see Ray Chambers too; is that right?

1    MR. CHAMBERS: Yes, Your Honor. Also Nick Morisani
2  and John Hall on for the sheriff.
3    THE COURT: Okay. And the monitors are present.
4  Again, if you're not speaking, put your microphone on mute. I
5  see there's someone separate from the board.
6    MS. SIMPSON: Yes, Your Honor. Lisa Simpson
7  (videoconference interference).
8    THE COURT: I'm sorry, Ms. Simpson. Ms. Simpson is
9  on.
10    MS. SIMPSON: I'm on. And also from my team, Dave
11 Parrish.
12    THE COURT: Mr. Parrish and Mr. Moeser are here.
13 Obviously, I think everyone on this call has now received the
14 court's order that was entered yesterday evening, but that's
15 not the purpose of this particular call at all. But I wanted
16 to -- I understand there's been some difficulty in getting the
17 monitors paid for their services. So I wanted to have a
18 conversation with the parties about that as we -- at least as
19 of yesterday, the old form of the injunction and the consent
20 decree was enforced, and that has not changed. Well, with
21 respect to the relationship that the monitor is going to have
22 with the county, that has not changed.
23    With respect to the new injunction and things, I wanted to
24 find out what's the holdup on getting -- if there is a holdup.
25 I guess I'll hear from the county, see if there is a problem.

1    I had been alerted to a problem, and I guess in the last
2    24 hours I don't know if that issue has been fixed.
3         So what does the county care to say about the late payment
4    or nonpayment or whatever about the monitor's fees?
5              MR. GAYLOR:  Your Honor, this is Tony Gaylor.  Can
6    the court hear me?
7              THE COURT:  Yes, I can hear you.
8              MR. GAYLOR:  There's no issue, Your Honor.  There was
9    one invoice from October of last year that probably had been
10   misplaced.  My assistant has been out on bereavement off and on
11   for the death of her parents, and so we had some issues in
12   finding that invoice.  But the invoices prior to October and
13   the invoices since October have been processed and paid.  So
14   there's not an issue with regard to payment for services
15   rendered to the county.
16             THE COURT:  Okay.  Well, I mean, if there were some
17   delay, I imagine that there were requests to be paid and I
18   guess the county might have been trying to research its records
19   to determine whether or not it would be a duplicate payment or
20   something, because if the county was missing an invoice I would
21   imagine the monitors could send over -- well, I think
22   Ms. Simpson is the only one who has actually been billing the
23   county, I think, with one invoice or however they've been doing
24   it.  If the county loses track of an invoice or something, I'm
25   pretty sure all it would take is a call or an email or a

1    response to a call or an email to get a duplicate.
2         The fact of the matter is if it was a payment back in
3    October, here we are six months later, and I'm assuming it is
4    in the queue to be paid unless it was paid yesterday.  So
5    that's six months waiting on a payment.  And again, that cannot
6    be acceptable in this or any case.
7              MR. GAYLOR:  Your Honor, again, all the invoices
8    prior to October and all the invoices after October have been
9    paid.  Occasionally, there is going to be an invoice that may
10   come up missing.  There may be a processing issue from time to
11   time, but again I don't think it's an -- it's not an issue that
12   should warrant that much attention.  We've communicated that to
13   Ms. Simpson that that October invoice is in the queue to be
14   paid, just like the November, December, January, and February
15   invoices were paid.  And so the ones prior to October were
16   paid.
17        But occasionally contractors, we have issues with invoices
18   that come up missing from time to time with various
19   contractors.  We certainly don't intend for anyone to be denied
20   payment for services that have been rendered.
21        So that invoice has been identified and located.  It has
22   been reviewed, as other invoices often are, and it will be paid
23   as well.
24             THE COURT:  All right.
25             MS. SIMPSON:  Your Honor, if I may?

1  THE COURT: Yes, Ms. Simpson.
2  MS. SIMPSON: Just a reminder, the January invoice
3  has not been paid.
4  MR. GAYLOR: It was approved and processed. February
5  as well, right?
6  MS. SIMPSON: (Videoconference interference.)
7  THE COURT REPORTER: Judge, I can't hear Ms. Simpson.
8  THE COURT: Ms. Simpson, are you speaking or is
9  anyone responding?
10  MS. SIMPSON: February we received, but we have not
11  received January. I was speaking. I just simply repeated that
12  we received February's invoice -- can you hear me?
13  THE COURT: Your Internet seems to be fading in and
14  out.
15  MS. SIMPSON: Okay. It might take me a minute, but
16  I'm going to switch to another computer.
17  THE COURT: Okay.
18  MS. SIMPSON: Can you hear me now?
19  THE COURT: Yes, we can. But you probably need to
20  turn off one of the computers now.
21  MS. SIMPSON: Okay. I am on --
22  THE COURT: There you go. We hear you fine.
23  MS. SIMPSON: -- a different computer now. So
24  hopefully that will work better.
25  THE COURT: Yes.

1          MS. SIMPSON:  I was just saying that we have not
2  received the January payment.  We did receive February's and
3  November and December, but we have not received January or
4  October yet.
5          MR. GAYLOR:  This is the first I've heard about the
6  January invoice, but we'll take a look at our records and make
7  sure that was processed as well.  But we would ask, though,
8  that when these type -- if and when these things occur that we
9  just have the communication necessary to resolve the
10 discrepancy rather than having all of us coming onto a -- have
11 a hearing for it.
12         THE COURT:  It's my understanding that those --
13 Ms Simpson, I am going to let you respond.  But it's my
14 understanding that those attempts to communicate with the
15 county have not turned fruitful at all or are unresponded to;
16 is that correct?
17     You're on mute, Ms. Simpson.
18         MS. SIMPSON:  Sorry.  Switching from the computers, I
19 had to get the technology changed.  Yes, when we received the
20 November and December payments but not October, I sent a number
21 of emails.  Mr. Gaylor responded to the first one saying he'd
22 look into it.  And then I never heard anything further.  I sent
23 several additional emails and did not get a response.  And then
24 I think more recently I sent several emails regarding whether
25 there was going to be a problem going forward.  And I have not

1    received confirmation that there is not a problem going
2    forward.
3                MR. GAYLOR:  If I may.  When you send me an email,
4    Lisa, I respond to your emails.  Now, I believe I expressed,
5    particularly for the October invoice, that we were looking into
6    it trying to find it.  And now we have found it, it's been
7    processed.  We didn't have issues with November, December, or
8    January or prior to October.  So I don't see where it would
9    warrant this level of attention.
10        Now, with regard to January, this is the first I've heard
11   that January's invoice has not been processed.  As you said,
12   you got the processing for February.  So if there is a missing
13   invoice that may have taken place with regard to the mail or
14   whatever, then we can have that conversation and make sure that
15   it's being processed properly.  But again, I don't think it
16   requires this level of attention.
17                THE COURT:  All right.  Well, I just want to
18   encourage the county to make sure that the monitors -- I think
19   one thing you saw from the order that was entered yesterday,
20   the monitors are the eyes and ears of the court.  And I do
21   expect them to be treated accordingly.  And if there are -- if
22   there are any delays in payment obviously communication would
23   help and would work or should work.  So I decided to have this
24   status conference just to make that point clear.  Because
25   again, referring back to the evidentiary hearing as well as

1  referring to the order, as the court pointed out in points in
2  its order, obviously at the hearing the monitors have been
3  accused of something short of criminal conduct.
4      So again -- and this is my opportunity to remind y'all --
5  if you think the monitor is doing something wrong, has billed
6  you wrong, nonpayment or slow payment is not the answer to it.
7  It's to bring it to the attention of the court.  And I'm not
8  sure if it rose to that level, but again being cognizant of
9  what the testimony at trial was, what I heard from the witness
10 stand, I thought it was more important for me to be a part of
11 this conversation right now rather than it coming up three,
12 four, five, six months later.
13     I don't know what process the parties have been using to
14 set the budget and to do everything according to the consent
15 decree and according now to the new injunction, but those words
16 mean something to the court.  And if the budget has not been
17 approved and if you-all are not getting anywhere in that regard
18 on this thing, you need to make sure you're getting everything
19 in order and keeping everything in order.
20         MR. GAYLOR:  Your Honor, in following up on that,
21 Your Honor, the budget and the contract has not been reviewed
22 or revised since -- certainly for the last few years.  And so
23 in light of the order that you put forward, I imagine that
24 we're going to have to certainly take a look and see exactly
25 what it should be going forward.  I believe Ms. Simpson alluded

1  to the fact at some point that some type of agreement or
2  something had been discussed or something in the past prior to
3  several years ago, but I suppose that going forward we'll need
4  to have some level of understanding as to what that budget
5  and/or billing should consist of because it has not been
6  revised in many years.
7        THE COURT:  Okay.  Well, you know, I imagine the
8  parties are still reviewing what the court entered and probably
9  are considering what are their next steps.  But I guess until
10  somebody files some sort of stay or an appeal or whatever, I'm
11  operating as if my order is exactly what it is.  And so I'll
12  expect the parties to continue adhering to -- to not continue,
13  but to adhere to the terms of the order.
14        MR. GAYLOR:  Your Honor, if this is the opportune
15  time -- I didn't know -- but would this be the last order that
16  we should expect with regard to -- the injunction should be the
17  last order pursuant to the last hearings that we had?  Was
18  there anything more forthcoming?
19        THE COURT:  There will be something more forthcoming.
20  I think the opening paragraph of the -- I guess the fourth
21  paragraph of the order:  There will be consequences for the
22  county's inaction.  This order, however, is focused solely on
23  the county's motion to terminate or modify the consent decree
24  under the PLRA.
25       So the parties, based on that representation, should

1  expect that there is more to come.  And I'll just leave it at
2  that.
3              MR. GAYLOR:  Thank you, Your Honor.
4              MR. CHENG:  Your Honor, if I may?
5              THE COURT:  Mr. Cheng.
6              MR. CHENG:  I did want to clarify one thing about the
7  monitor's contract under the original injunction.  The monitor
8  negotiates with the county to establish the terms of the fee.
9  We actually have never been involved.  We don't actually know
10 how much they're paid or how it works.  So it's not something
11 that usually involves the United States unless there is a
12 dispute or there's a problem, and then we get brought in.  So I
13 didn't want the judge thinking -- the court thinking that we're
14 working with the county to try to get Ms. Simpson paid.  That
15 is ultimately something that's worked out between the monitor
16 and the county unless there's a problem.
17     The other thing I did want to mention is -- as I think
18 Ms. Simpson alluded to -- there is an upcoming tour.  While
19 we're not totally familiar with the amount of trouble that
20 Ms. Simpson has had with getting herself paid, we are familiar
21 with the problems with trying to get, for example, the upcoming
22 compliance tour lined up.  We have notified both Mr. Gaylor and
23 counsel for the board, the firm, about getting a date, and we
24 haven't been able to even get a date lined up.
25     So I don't know what's going on with the emails, but there

1   does seem to be a problem with communications.

2           THE COURT:  Well, I guess I'll attribute it to,
3   again, going back to the evidentiary hearing, I guess I'll
4   attribute it to people evaluating where they are at any given
5   point.  Again, I've always been under the impression and I've
6   always operated under the fact that prior to yesterday, the
7   consent decree was in place.  And I'm holding the parties to
8   the consent decree.

9       Now that this court has modified it in some way, obviously
10  you will be held to this one on a going forward basis.  And I
11  would imagine because an interlocutory appeal has been filed
12  and some other things, maybe full cooperation may not be
13  forthcoming.  I don't know.  But I do expect the parties to
14  comply with my order until I'm told that my order is wrong.
15  And those who tell me that my order is wrong would be the folk
16  in New Orleans or in Washington, D.C.

17      So I'm -- that's what I'll say, Mr. Cheng.  Monitoring is
18  still required.  Site visits are still required.  And until
19  this court says otherwise, I expect the parties to comply with
20  it.  Otherwise, we will have even more to say about any new
21  developments because they're -- to go back to Mr. Gaylor's
22  point, there is more to come.

23      Is there anything else we need to take care of?

24          MS. SIMPSON:  Your Honor, since everybody is on the
25  call, maybe it would be a good time to confirm the date that we

1    have proposed for the site visit.  My team proposed that we
2    would travel on Memorial Day, which is May 30th, and then spend
3    the rest of that week on a site visit.  That has been confirmed
4    by DOJ, but we haven't received a confirmation from the county.
5    So if it's possible to get that confirmation now, we can nail
6    that down.
7               THE COURT:  Is that possible, Mr. Gaylor or
8    Mr. Morisani?
9               MR. GAYLOR:  I will defer to sheriff's counsel and
10   Mr. Morisani on that point.
11              MR. MORISANI:  Your Honor, this is Mr. Morisani.  If
12   I may, this is interesting.  I have it on my calendar that
13   they'll be there that week, May 30th, so I don't know where the
14   miscommunication happened.  But I was planning on the tour
15   taking place that week.  So I'll send an email to Ms. Simpson
16   just to confirm that, but I did confirm it with the facility
17   several weeks ago and it's on my calendar.  So I guess that was
18   just a miscommunication, Your Honor.
19              THE COURT:  Okay.  Well, then, it looks like DOJ has
20   got to travel on Memorial Day.  That's just par for the course
21   in this case.  Okay.  Well, you-all will be there that week,
22   and I'm sure everybody will be prepared to have a productive
23   site visit.  Is there anything else we need to take up?
24              MR. CHENG:  I don't think we need to draw your
25   attention to it, Your Honor, too much, but I did want to flag a

1    potential issue.  We're going to work through the order, of
2    course, and figure out what was still left.  But there is
3    actually no compliance coordinator because of the way the
4    provision was struck down.  Now, if the defendants still retain
5    Mr. Green to help coordinate the tour and handle some of the
6    logistics, this may not actually be a problem.  But I did want
7    to flag it that the compliance coordinator provision handles a
8    lot of the logistics.
9         There are also some issues with some of the definitions
10   and how things are assessed that we're going to have to raise
11   with the defendants.  But again, I just flag it for the court's
12   attention just so you don't get surprised by it later, but I
13   don't think we need to resolve it at this hearing.
14              THE COURT:  The compliance coordinator is not the
15   only person who can help coordinate the setting up of a
16   meeting.  And I presume, based on this order, Mr. Green was not
17   fired yesterday based on this order.  So I assume he will still
18   have duties and responsibilities.  He just may not be called a,
19   quote-unquote, compliance coordinator under the terms of the
20   court's previous consent decree.
21        So I suspect that the site visits and everything else are
22   to be far less.  To the extent the county believed that they
23   were cumbersome in some way, hopefully that won't be the case
24   anymore.
25              Is there anything further?  All right.  Thank you for

1  making yourselves available for the call.  I hope everyone have
2  a good holiday Easter weekend for those who celebrate it.  And
3  just good luck, and I'll hear from you and see you if there are
4  any concerns with complying with the court's order.
5       Thank you.  This concludes all that we have.
6            MR. CHENG:  Thank you.
7            THE COURT:  Court's adjourned.
8       (Proceedings concluded at 2:09 p.m.)

CERTIFICATE OF REPORTER

    I, Margaret Wasmund, RDR, CRR, CRC, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

    Dated this 19th day of April 2022.

*Margaret Wasmund*
MARGARET WASMUND, RDR, CRR, CRC
COURT REPORTER