IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>v.<br><br>HINDS COUNTY, et al.,<br><br>DEFENDANTS. | Case No.: 3:16-cv-00489-CWR-RHWR |

**UNITED STATES' MEMORANDUM IN SUPPORT OF RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION**

The United States opposes Defendants' Motion for Reconsideration (Motion), ECF No. 171, of the Court's Second Order of Contempt (Second Contempt Order), ECF No. 165. The Second Contempt Order found Defendants in contempt of longstanding orders designed to protect the constitutional rights of persons detained at the Hinds County Jail (Jail). *See* Second Contempt Order; Consent Decree, (July 19, 2016), ECF No. 8-1; Stipulated Order, (Jan. 16, 2020), ECF No. 60-1. Defendants' Motion gives no good reason for this Court to reverse its Second Contempt Order.

## I. BACKGROUND

On November 23, 2021, the Court issued an Order to Show Cause directing Defendants to explain why they should not be held in contempt of court and why a receiver should not be appointed to run the Raymond Detention Center (RDC). Order to Show Cause, ECF No. 100. Defendants filed a response on December 14, 2021. Defs. Resp. Order to Show Cause, ECF No. 105. Defendants also filed a Motion to Terminate or, Alternatively, Modify Consent Decree on

January 21, 2022.  Motion to Terminate, ECF No. 111.  From February 14 to March 1, 2022, the Court held an evidentiary hearing to address both Defendants' potential contempt and Defendants' Motion to Terminate the Consent Decree.  After considering all of the evidence presented at the hearing and on the record, as well as Defendants' previous response to the Order to Show Cause, the Court entered the Second Contempt Order on March 23, 2022.  The Second Contempt Order specifically found Defendants in contempt of "the Consent Decree and Stipulated Order as they pertain to [the Jail's] A-Pod," and reserved the issue of an appropriate sanction for a later date.  Second Contempt Order at 18.

The Court resolved Defendants' Motion to Terminate on April 13, 2022, holding that the Defendants remained deliberately indifferent to the rights of individuals confined in the RDC.  *See* Order Amending Consent Decree (April 2022 Order) at 14-15, (April 13, 2022), ECF No. 168.  The Court found an array of dangerous conditions at RDC, taking particular notice of deaths, unstaffed posts, and serious physical plant problems in RDC's A-Pod.  *See, e.g.*, April 2022 Order at 45, 49, 79, 84-85.  The Court retained key provisions of the Consent Decree that addressed those conditions, including remedies directly applicable to A-Pod.  *See, e.g.*, April 2022 Order at 54-55 (regarding protection from harm, jail administrator, and direct supervision requirements for housing units).

Despite this ruling, Defendants urge the Court to reverse its Second Contempt Order because of two purported mitigating circumstances.  Specifically, Defendants contend they: (1) "complied with all of the requirements of the Stipulated Order other than those which may have been attributable to A-pod;" and (2) "are actively engaged in closing down A-pod."  Defs. Mem., ECF No. 172.

The Court should deny Defendants' Motion because the bases for the Court's Second Contempt Order remain sound.

## II. LEGAL STANDARDS

### A. Motion to Reconsider Standard

Defendants filed their Motion to reconsider pursuant to Rule 54. Defs. Mem. at 2. That Rule gives a district court discretion to "revise[ ]" an interlocutory order[1] "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Under Rule 54(b), a court "is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (citation omitted). This "flexible" standard reflects "the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires." *Id.* at 337-38 (encouraging district court to look at "interests of justice") (quoting *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015)).

### B. Contempt Standard

To establish contempt, the proponent "bears the burden of establishing by clear and convincing evidence: (1) that a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000) (quotation omitted). "The contemptuous actions need not be willful so long as the contemnor actually failed to

---

[1] The Second Contempt Order does not appear to be a final order because, among other things, the Court has not yet imposed any sanction. *See* Second Contempt Order at 18*; In re United States Bureau of Prisons, Dep't of Just.*, 918 F.3d 431, 436–37 (5th Cir. 2019) (regarding final contempt orders). Likewise, the First Order of Contempt, ECF No. 126, is not a final order either.

comply with the court's order." *Id.* Therefore, "[g]ood faith is not a defense to civil contempt." *Chao v. Transocean Offshore, Inc.*, 276 F.3d 725, 728 (5th Cir. 2002).

In defense of a violation, a contemptuous party may demonstrate "mitigating circumstances that *might* cause the district court to withhold the exercise of its contempt power." *Whitfield v. Pennington*, 832 F.2d 909, 914 (5th Cir. 1987) (citation omitted) (emphasis added); *see also Hill v. Schilling*, No. 3:07-cv-2020-L, 2015 WL 13484485, at *3 (N.D. Tex. Apr. 9, 2015) (finding contemptuous party "has shown mitigating circumstances such that *the court will exercise discretion* to not hold it in contempt" (emphasis added)).

### III.   ARGUMENT

Defendants' representations regarding mitigating circumstances lack credibility; and even if true, the Court properly exercised its discretion to find that they did not merit "withhold[ing] the exercise of its contempt power." *Whitfield*, 832 F.2d at 914.

**A. Defendants are in Contempt and Their Inaccurate Assertions do not Mitigate Against the Court's Contempt Findings.**

Defendants appear to concede that they are in violation of this Court's remedial orders regarding A-Pod; they focus their Motion instead on purported mitigating circumstances. Defs. Mem. at 3-4. Defendants first allege that "the record contains evidence that makes clear the County complied with all of the requirements of the Stipulated Order other than those which may have been attributable to A-pod." Def. Mem. at 4. This is not true. And regardless, the Court properly found that the extensive violations concerning A-Pod still merited a finding of contempt.

Contrary to the assertions made in their brief, Defendants failed to implement the Stipulated Order, as well as many provisions of the Consent Decree. Their failure did not involve just a few Stipulated Order provisions directly mentioning A-Pod. They also failed to

4

timely implement numerous other provisions, including staffing, jail leadership, and other requirements that affect conditions in A-Pod and many other areas of the Jail.  Second Contempt Order at 2 ("[C]ompliance has been elusive.  Court-appointed independent monitors report that Hinds County is in sustained or substantial compliance with only three of 92 requirements of the Consent Decree.  Problems remain with staffing, use of force, basic living conditions, and over-detention, among other issues.  Today's Order, though, is about A-Pod."); *see* Monitor's Sixteenth Monitoring Report at 6, ECF No. 167; Monitor's Fifteenth Monitoring Report at 7, (reporting non-compliance with Stipulated Order requirements II.A.2-3, II.C-3, II.B for staffing plan, III.B.1-2 training on approved policies, I.A.1 electronic door controls, I.A.4 fire hoses, II.B.3-5 retention initiatives, III.C.2 use of force policy implementation, and I.A.6-7, I.B.2 repair deadlines in master plan), ECF No. 101.

      The Court was clearly aware of Defendants' broad compliance failures when issuing both the Second Contempt Order and the April 2022 Order.  *See, e.g.,* Second Contempt Order at 2-3, 9 ("Unprecedented [v]iolence" in the Jail "is not exclusive to A-Pod—but based on the assaults that are actually reported by staff, many of these assaults occur in A-Pod."), 12 ("Current staffing numbers are the lowest they have ever been. . . . Turnover is significant.  Even basic recommendations to increase retention . . . have been rejected."); April 2022 Order at 83-84 (discussing how "terror reigns" because problems with supervision and physical plant, like those on A-Pod, are not remedied); *see also* Monitor's Fifteenth Report at 8-19, (documenting Defendants' widespread violations of both the Stipulated Order and Consent Decree beyond just A-Pod), ECF No. 101.  The record thus shows Defendants failed to comply with more than just the provisions that directly relate only to A-Pod.

5

Moreover, even if Defendants have complied with some provisions of the Stipulated Order, the Court appropriately found that this did not mitigate a finding of contempt for the longstanding, extensive violations concerning A-Pod. The Court conducted a two-week evidentiary hearing, including extensive testimony from Defendant Sheriff Jones and Defendants' other witnesses. The Court properly found that Defendants were in contempt because conditions in A-Pod did not comply with the Stipulated Order and Consent Decree. *See, e.g.*, Second Contempt Order at 5 (finding that "[i]n this very hearing, the Sheriff himself admitted that A-Pod is unsafe." (citing 2-28-22 Tr. Vol. 10 at 1930)), 11 (noting that the "remote surveillance approach" shown in A-Pod during the January 2022 site visit—one officer in the whole pod in the control room—"violates the Consent Decree's requirement for direct supervision and contributes to continuous damage of the facility and violence within the facility" (citing 3-1-22 Tr. Vol. 11 at 2085-97)), 13-14 ("Sheriff Tyree Jones agrees that the combination of cell doors that do not lock and lack of lighting presents serious safety and security issues," and this combination persists, including in A-Pod (citing 3-1-22 Tr. Vol. 11 at 1957)); April 2022 Order at 14-15 (discussing procedural history, how Defendants "begged" for time to turn the "battleship['s]" course, and then "decided to just abandon ship"), 79 (discussing deaths that "occurred on the notorious A-Pod, which 'inmates control,' and even Sheriff Tyree Jones considers unsafe").

The Court's weighing of the evidence and finding of contempt also reflects the extensive time the Court already afforded Defendants to fix the unconstitutional conditions on A-Pod or to close it. Defendants had ample opportunity to close A-Pod after they entered the Stipulated Order over two years ago. Indeed, the Stipulated Order assumed they would close A-Pod, but if not, Defendants were expected to make safety renovations. *See* Second Contempt Order at 2-3.

In adopting the Parties' Stipulated Order, the Court noted that "a finding of contempt [was] warranted" at that time. Order at 11, ECF No. 60. Nevertheless, the "Court grudgingly approved" the Stipulated Order to give Defendants more time, but warned that Defendants needed to implement the ordered reforms. Order to Show Cause at 9, (citing Order at 7, ECF No. 60), ECF No. 100; *see also* Order at 11, ECF No. 60.

In the two years since entry of the Stipulated Order, Defendants kept inmates housed in A-Pod despite deplorable conditions and then (as outlined in Part III.B below) repeatedly violated the orders requiring them to correct the situation. The Court thus found that these longstanding, unremedied, deplorable conditions at A-Pod merited contempt, and that any purported mitigating actions by Defendants did not merit "withhold[ing] the exercise of its contempt power." *Whitfield v. Pennington*, 832 F.2d 909, 914 (5th Cir. 1987).

### B. Defendants' Promise to Close A-Pod Lacks Credibility and Does Not Mitigate Against the Court's Contempt Findings.

Defendants' second purported mitigating circumstance is that they allegedly "are actively engaged in closing down A-pod." Defs. Mot. 3-4. This assertion lacks credibility, and regardless the Court properly dismissed this assertion as not meriting withholding a finding that Defendants are in contempt.

Contrary to Defendants' assertion, the evidence from the hearing does not "make[ ] clear" that "the County is actively engaged in closing down A-pod." *See* Defs. Mot. At 3-4. Rather, the evidence at the hearing showed that Defendants have not yet determined if they will close A-Pod. The Second Contempt Order quoted Defendants' own witness, Gary Chamblee, stating that Defendants still "need to determine if they're going to use A-Pod as [continued housing]."

Second Contempt Order at 18 (quoting 2-24-22 Tr. Vol. 8 at 1500:3) (alteration in original).[2] Similarly, the Defendant Sheriff admitted that the Defendants had not even begun discussions on moving detainees out of A-Pod to other jails. 2-28-22 Tr. Vol. 10 at 1929:21-1930:21 (admitting A-Pod unsafe and no progress on identifying other counties that could take detainees). Additionally, Defendants' written response to the Order to Show Cause affirmatively stated they did not intend to close half of A-Pod. Defs. Resp. Order Show Cause at 3 ("RDC command staff intends to close two of the four units on A Pod while renovating and using the remaining two units on A Pod as soon as detainee population and staffing make it safe to do so.").[3]

After considering all of Defendants' evidence at the hearing, the Court determined that any claim that Defendants were presently in the process of closing A-Pod lacked credibility. The Second Contempt Order specifically found that "[a]mong a long string of broken promises, Hinds County vowed to no longer house detainees in A-Pod. The February 2022 evidentiary hearing, however, revealed that not only are detainees still being housed in A-Pod, but that is *where they will remain indefinitely*." Second Contempt Order at 2 (emphasis added). This finding is well supported by the hearing record, as noted above, as well as by Defendants' long history of broken promises. *Id.* at 17 ("Unfortunately, the County's word has been and still is seriously called into question on many fronts."), *accord* April 2022 Order at 22 (noting "contradictions" between Defendants' promises and actions "call into question the County's credibility on many fronts").

---

[2] Defense witness Chamblee also testified that many of the physical plant issues in A-pod, including those listed as priorities in the Stipulated Order, had been present for years, could have been addressed years earlier, but were not going to be corrected for some time to come. 2-24-22 Tr. Vol. 8 at 1528:22-1532:3.

[3] Moreover, the Second Contempt Order comes on the heels of multiple recent iterations of A-pod plans. As of late November 2021, the Monitor wrote, "Previously A-pod was scheduled to be closed once B-pod reopened [portions of which were reopened in August 2021], but now consideration is being given to keeping two housing units in A-pod operational." Monitor's Fifteenth Monitoring Report at 28, ECF No. 101. This was despite the County's lack of a plan for renovating A-pod and inability to staff it with direct supervision. *Id.*

8

Even if Defendants' promise to close A-Pod at some future point were somehow credible, the Court properly found this potential future action did not merit withholding a finding that Defendants are in contempt. The Second Contempt Order finds conditions at A-Pod to be unconstitutional and that Defendants had failed to bring A-Pod in compliance with the remedial orders. *See generally* Second Contempt Order; *see also* April 2022 Order. Accordingly, the Court properly found that that Defendants had not been actively engaged in closing down A-Pod, and any inchoate plan to do so in the future did not mitigate the Court's need to exercise its contempt power. *See Whitfield v. Pennington*, 832 F.2d 909, 914 (5th Cir. 1987).

### IV.    CONCLUSION

For the reasons above, this Court should deny Defendants' Motion for to Reconsideration in its entirety.

Respectfully Submitted,

DARREN J. LAMARCA  
United States Attorney  
Southern District of Mississippi

KRISTEN CLARKE  
Assistant Attorney General  
Civil Rights Division

STEVEN H. ROSENBAUM  
Chief  
Civil Rights Division  
Special Litigation Section

MITZI DEASE PAIGE (MS #6014)  
Assistant U.S. Attorneys  
U.S. Attorney's Office  
Southern District of Mississippi  
501 E. Court Street – Ste. 4.430  
Jackson, MS 39201  
MPaige@usa.doj.gov  
(601) 973-2840  
(601) 965-4409 (fax)

LAURA L. COWALL (DC #481379)  
Deputy Chief  
laura.cowall@usdoj.gov  
(202) 514-1089  
(202) 514-0212 (fax)

 /s/ *Christopher N. Cheng*  
CHRISTOPHER N. CHENG (PA #69066)  
Trial Attorney  
christopher.cheng@usdoj.gov  
(202) 514-8892  
(202) 514-4883 (fax)

SARAH STEEGE  
Trial Attorney  
sarah.steege@usdoj.gov

HELEN VERA  
Trial Attorney  
helen.vera@usdoj.gov

MATTHEW J. DONNELLY  
Trial Attorney  
matthew.donnelly@usdoj.gov

United States Department of Justice  
Civil Rights Division  
Special Litigation Section  
150 M Street, N.E.  
Washington, DC 20002

DATED:  May 3, 2022

## CERTIFICATE OF SERVICE

      I hereby certify that on May 3, 2022, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

          */s/ Christopher N. Cheng*
          CHRISTOPHER N. CHENG (PA# 69066)
          Attorney for the United States
          United States Department of Justice
          Civil Rights Division
          Special Litigation Section
          150 M Street, N.E. – Room 10.1128
          Washington, D.C. 20530