

# Hinds County Detention Services

| Chapter 13:<br>Health Care | Subject: HEALTH CARE MANAGEMENT |
|---|---|
| Effective Date:<br><br>Pages: | Policy Number: 13-100 |

**CONTENTS:**

    13-101  General
    13-102  Health Care Services Availability
    13-103  Health Screenings
    13-104  Prenatal Counseling/Family Planning
    13-105  Records and Reports
    13-106  Sharing of Information/Confidentiality
    13-107  Training
    13-108  Inmate Refusal of Care

**POLICY:**   Hinds County Detention Services (HCDS) provides twenty-four hour in-house health care (medical, dental and mental health) to all inmates with genuine, non-elective health care needs.  The health care delivery system is predicated on the practice of decentralized triage to maximize resources, complement security and provide cost effective and timely health care services. Such care includes the assistance of community-based medical and mental health care services.

The twenty-four hour professional health care service provides inmates a level of health care quality consistent with national, state and local standards, and community level of care.  The health care provider conforms to practices of confidentiality and maintains appropriate staffing levels as well as certification of its personnel.  HCDS staff is provided comprehensive medical training in responding to medical emergencies and in recognizing symptoms and problems, in order to promote a safe, healthful and effective operational environment.

**PROCEDURES:**

**13-101 GENERAL**

1. The health care provider provides 7 day a week 24-hour on-site health services for the HCDS including the provision of emergency medical care, daily triage, and sick call services for inmates.  Medical staff includes a Mississippi Licensed Physician who serves as Medical Director and is responsible for overseeing the health care services in all HCDS facilities.  All other medical/health care personnel must meet appropriate and current licensing or certification requirements.  The Health Services Administrator (HSA) oversees the administration of the health care program.

2. Health care related judgements are made by the physician, psychiatrist, nurse practitioner, or dentist working for or under contract with the HCDS.  All treatment by health care personnel other than a physician, dentist, psychologist, optometrist,

DEFENDANT'S EXHIBIT D-77



## Hinds County Detention Services

podiatrist, or other independent provider is performed pursuant to written standing orders by personnel authorized by law to give such orders. Written orders from the physician or nurse practitioner are made available to, and maintained by the medical staff. These orders state what medical care may be performed by personnel other than a physician. Any students or interns delivering health care services work only under the direct supervision of medical staff and only at a level commensurate with their training.

3. The health care provider is responsible for identifying needs and scheduling and coordinating the following:

    a. All emergency and non-emergency health care services for inmates committed to HCDS.
    b. All supporting examinations.
    c. All physician services including, general practitioner, surgeon and specialists.
    d. All equipment and supplies used by the medical contractor including all medical supplies, laboratory supplies, pharmaceuticals, forms and related items necessary for the acceptable performance of the contract.
    e. Provisions for chronic care and convalescent care.
    f. Training for medical staff is consistent with their level of health care responsibilities.
    g. All mental health services including any mental health unit.

4. Inmates or any other non-medical personnel are not used for the following duties:

    a. Performing direct patient care services.
    b. Scheduling health care appointments.
    c. Determining access of other inmates to health care services.
    d. Handling or having access to: surgical instruments; syringes or needles; controlled substances or unauthorized access to health records; nor operating diagnostic or therapeutic equipment for which they are not trained.

5. Volunteers are allowed to provide health care services in the facility only on the joint approval of a position description for that person by the designated health care agency and the Detention Administrator, which includes the basis for selection, required training, and length of service, definition of tasks, supervision, and responsibilities. In addition to these procedures, other procedures or policy on volunteers will apply. (Policy 16-600 Volunteers)

6. The health care provider and its staff maintain on-site copies of all licenses necessary to render health care services in the HCDS.

7. Collection and recording of health appraisal data is completed in a uniform manner and is performed only by qualified health care personnel.

8. The health care provider participates in an annual peer review and evaluation of health care services by the Hinds County Public Health, or other qualified peer group designated by the Detention Administrator.

9. Although there are no restrictions imposed on the health care provider in the practice of medicine, all medical staff are required to follow all HCDS security regulations and are

D-000920



## Hinds County Detention Services

required to successfully pass a pre-employment security and background clearance conducted by the Sheriff's Office. Health care staff must complete the HCDS orientation prior to beginning work in the HCDS.

10. Health care staff must display HCDS Identification Badge while working in the HCDS.

11. The HSA schedules and meets with the Detention Administrator on at least a ~~monthly~~ weekly basis to submit any required reports and discuss the contractor's compliance with contractual obligations.

12. The HSA submits monthly reports to the Detention Administrator and Sheriff detailing the overall operation of the health care services program and the overall general health of the persons committed to the custody of the HCDS. The HSA submits to the Detention Administrator a written monthly evaluation of treatments provided to the inmates, which includes a long-term illness report and other statistical information covering the inmate population as defined by the Detention Administrator and HSA and/or outlined in Policy 4-500, Monitoring and Assessment Operations. The Detention Administrator schedules monthly Medical Advisory Committee (MAC) meetings in which the HSA and appropriate health care and HCDS staff participate. The HSA assigns staff to participate in Interdisciplinary Team meetings as required by policy.

13. A written policy and procedure manual for health care providers is maintained by the health care provider. This manual is reviewed and updated annually by the medical provider and the Detention Administrator.

14. First Aid kits and Bloodborne Pathogen Protection kits are located at each Housing Unit Officer's desk as a part of inventory as well as other areas as determined by each Facility Commander. The Fire Safety Officer (FSO) stocks the kits and maintains an inventory listing of approved contents, which is maintained within the kits. The kits are checked monthly and documented by FSO. Staff notify the FSO if items are removed from the kits, and the FSO replaces used contents promptly after this notification. The FSO verifies and tests the access to Automated External Defibrillator throughout HCDS facilities on a scheduled basis, and provides training to security staff on an annual basis.

15. If the health care provider is not able to provide special medical services to inmates in the HCDS, the health care provider arranges for all necessary health care to be provided elsewhere including access to an adequately equipped, licensed general hospital in the community. Arrangements are made with health care specialists in advance of need. All health services that can possibly be conducted in the HCDS are not conducted elsewhere. When appropriate, the physician, nurse practitioner or Discharge Nurse makes referrals for treatment upon an inmate's release.

16. When an inmate is released from the hospital and/or other medical or mental health care provider and is transported back to the Raymond Detention Center/ Work Center/ Jackson Detention Center, he/she must be seen by medical staff to review accompanying medical release documentation entailing treatment and care provisions before the inmates are released to housing units. Health care staff provide treatment information (e.g., lower bunk, restricted recreation activities, etc.) to the housing units if appropriate.

17. Health services provide for continuity of care from admission to discharge and also include providing for preventive medical care of the inmates and program of health care



**Hinds County Detention Services**

 education. The health care provider provides for regular checkups and health appraisals requested by inmates but at least annually.

18. No Detention personnel or medical staff are permitted to conduct medical, pharmaceutical or cosmetic testing on inmates for experimental or research purposes.

19. Medical and dental prostheses are provided when the lack of the same would seriously affect the health and well-being of an inmate. Such a determination is made by a physician or dentist.

20. The inmates are charged a fee per sick call but are not denied services if funds are not available. Inmates are not charged for emergency, mental health visits, or chronic care services. Fees may be waived upon approval of the Detention Administrator. Health care staff do not discuss fees with inmates.

21. Detention Officers are assigned to, and remain in, the clinic and medical units when inmates are present according to the staffing plan.

### 13-102   HEALTH CARE SERVICES AVAILABILITY

1. Medication rounds are provided two times daily, or as directed by prescribing provider, seven days per week. Inmates can make requests for medical services on the kiosk system or make a request to nursing staff during medication rounds.

2. Sick Call is conducted daily. Non-emergency inmate requests for health services must be triaged within 24 hours. (See 13-200, Administration of Treatment).

3. Doctors' clinic is conducted at least two days per week by a licensed physician or advanced level practitioner at each facility. Other clinics are conducted for specialty referrals as needed.

4. The dental care program provides basic dental services including extractions and hygiene services. Services are available at least once per week and on an emergency basis. All examinations and treatment are performed by a dentist licensed to practice in Mississippi. Specialized treatment beyond basic dental care must be at the inmate's expense and upon the approval of the Detention Administrator and HSA.

5. Special Needs Communication Forms are required for all medically-related equipment (e.g., wheelchairs, crutches) in the possession of inmates. The health care provider completes and gives copies to the inmate, the Housing Unit Officer who enters the approval in the *Post Log Book*, and Classification, and one copy remains in Medical.

6. The HSA authorizes placement in and release from Medical Housing. Medical Housing is operated according to 8-700, Medical Housing Operations. The HSA notifies Classification for housing assignment upon release.

MANAGEMENT OF CHEMICAL DEPENDENCY

7. Detoxification is conducted by a coordinated effort between Mental Health, the Medical Unit, Classification staff and involved security staff. The HCDS provides counseling and program services to inmates for alcohol and drug addiction problems.

D-000922



**Hinds County Detention Services**

8. The health care provider manages chemically dependent inmates by:
    a. diagnosing the chemical dependency and/or identifying inmates at risk for adverse response to detoxification.
    b. determining whether the inmate requires non-pharmacologically or pharmacologically supported treatment.
    c. developing individualized treatment plans implemented by the multi-disciplinary team.
    d. making referrals via the discharge planner to specified community resources on release, when appropriate.

**13-103 HEALTH SCREENINGS**

1. During the orientation process, a medical staff member advises inmates of medical, mental health, and dental services that are available. Disease prevention education is offered to newly committed inmates. (See also 16-100, Administration of Programs and Services).

2. Upon the arrestee entry to Booking, the Detention Officer contacts Medical if there appears to be a question of fitness for custody. Inmates who are not fit for custody are not booked into the facility without approval of health care staff.

3. Medical, dental and mental health screenings are conducted on inmates by qualified health care staff as part of the booking process and no later than eight hours after booking (this includes all intra-system transferred inmates). Screenings are conducted in Booking on a 24-hour basis. The medical provider records all findings on the Intake Health Screening and/or Intake Mental Health Screening forms.

4. Mental health screenings occur as part of the medical and intake screening processes. Staff refer inmates for further assessment by mental health staff if there is any indication of, or self-report of, mental health issues. See also, 13-400, Mental Health Services.

5. During the medical intake screening, Medical conducts a PPD Screening on all newly committed inmates unless the inmate reports that s/he had a previous positive PPD. Medical staff conducts additional tests and/or exams if deemed necessary. A PPD is done on all new intakes at 72 hours into the facility. If an inmate refuses to have a PPD when requested, the Medical and Classification staff determine appropriate initial housing.

6. The medical provider completes a history and physical examination within 72 hours of admission. If there is documented evidence of a physical examination by the facility health care provider within the previous 90 days, a new physical examination is not required unless – 1) the initial assessment reveals information which requires a new history and physical, or 2) the medical provider's nursing protocols would otherwise require a new history and physical.

7. Physical examinations include review of initial medical screening, dental histories, lab testing and recording of height, weight, pulse, blood pressure and temperature. Further, the provider performs tests to detect communicable diseases and any other appropriate tests. All relevant information is documented in the Inmate Medical Record.



# Hinds County Detention Services

PHYSICAL EXAMINATION OF INMATES

8. Medical staff conducting the physical examination informs the inmate of the procedures for obtaining access to medical and emergency services while incarcerated at the HCDS. As part of the physical examination, medical staff ask about sexual safety risk considerations.

9. Dental screenings and hygiene services as well as oral hygiene and dental education are completed within 72 hours of admission to the HCDS. Complete initial oral examination and treatment is performed by the dentist within 12 months of admission to the HCDS.

10. Inmates remaining in restrictive housing receive a medical and mental health evaluation every 7 days in order to assess their health and well-being. The medical assessment includes a personal interview and medical evaluation of vital signs, and is documented in the Inmate Medical Record. Restrictive Housing inmates are also checked three times a week by medical staff. Inmates in Restrictive Housing have the opportunity to complete a Sick Call Request Form daily during medication rounds. This check consists of soliciting questions and complaints from the inmate and this information is placed in the inmates' medical record.

11. If an inmate does not maintain proper personal hygiene, then medical staff may indicate whether there is a clinical risk of infection or contamination that may cause harm to the inmate or other persons. Upon notification by medical staff, HCDS staff, under the supervision of the Area Supervisor, implement corrective measures (e.g., movement of the inmate or assisted bathing).

## 13-104 PRENATAL COUNSELING/ FAMILY PLANNING

1. The health care provider administers a pregnancy test upon request, and provides prenatal counseling as well as necessary routine or high-risk prenatal care upon confirmation of an inmate being pregnant. Confirmation of pregnancy consists of positive pregnancy testing results conducted by the medical provider when obtaining a urine specimen and/or blood test (Beta HCG) from the inmate.

2. Upon pregnancy confirmation, a *Pregnancy Information Form* is completed, and the inmate is scheduled to see the physician.

3. The health care provider maintains appropriate management of chemically addicted pregnant inmates.

4. Pregnant inmates are provided obstetrical care consistent with the community standards of care.

5. Recommended medications, treatments, special accommodations (e.g., housing, diet, recreation, programs, and other conditions of confinement, etc.), and follow-up is provided as directed by the physician. The use of restraints is in accordance with 5-600, Use of Restraints.

6. Inmates seeking family planning are assisted by the health care provider in contacting Hinds County Health Department. There must be no delay by the medical provider in contacting DHS and in expediting the appropriate information to the clinic and the

D-000924



**Hinds County Detention Services**

inmate. The medical contractor maintains a resource list of clinic locations, fee schedules and telephone references for funding.

7. The inmate must sign a release of responsibility form which relieves the HCDS and health care provider of related financial liability.

8. The HCDS affords the inmate a reasonable number of timely confidential telephone calls at no cost.

9. The health care provider assists inmates seeking pregnancy termination without delay. The inmate must seek a court ordered furlough to be allowed to proceed to the clinic for pregnancy termination. If a court ordered furlough cannot be obtained in a timely manner by the inmate, transportation is arranged through the Sheriff's Office. If timing becomes an issue, the Detention Administrator determines the course of action. At least one female officer/deputy is provided as escort and an unmarked vehicle must be used.

10. The inmate must attempt to arrange payment to the clinic prior to the medical procedure being conducted. If the inmate is unable to obtain the amount of the fee, the inmate may contact Hinds County Public Health, Planned Parenthood, or Jackson Women's Health Organization to attempt to locate funding for the pregnancy termination. There is no guarantee that government or private funding can be provided.

11. Nothing in this section precludes appropriate pregnancy related health care services that are directed by the physician.

12. If, at any time, an inmate decides against terminating a pregnancy, the inmate must notify the health care provider and the Detention Administrator <u>in writing</u>.

## 13-105 RECORDS AND REPORTS

1. Medical and dental records of each inmate are maintained on-site and secure by the medical contractor. These records are maintained separately from Inmate Record Jackets. The health care provider is the custodian of these records during the performance of all services. The Sheriff has access to all medical records during the term of the health care provider's agreement with the Sheriff's Office. Medical records are accessible by HCDS to allow for transition of provider services.

2. Records which are scheduled for destruction under approved retention schedules of the State of Mississippi are returned to the Sheriff for destruction.

3. Upon the initial medical screening, Medical starts a medical record which contains all medical information relative to the inmate to include the following:
    a. Completed admission screening form; health appraisal data forms
    b. Treatment plan and Progress Notes including nursing care plan; progress reports
    c. All findings, diagnoses, treatment, dispositions
    d. Record of prescribed medications and their administration
    e. Laboratory, x-ray, and diagnostic studies
    f. Signature and title of individual making proper documentation; consent and refusal forms

D-000925



**Hinds County Detention Services**

    g. Release of information forms; place, date, and time of health encounters
    h. Health service reports (e.g., dental, mental health, and consultations)
    i. Discharge summary of hospitalization and other termination summaries

INMATE TRANSFERS AND MEDICAL TRANSPORTS

4. Prior to transfer to another facility or other substantial travel, health care staff assess inmates' suitability for travel

5. Transport staff take a consult sheet (outlining all pertinent medical information and the reasons for the medical transport) in a sealed envelope to provide to the attending physician/nurse.

6. When returning from a medical transport, the transporting staff returns the completed consult sheet to Medical.

7. Prior to any inmate's transfer to another correctional facility, the medical staff prepare a Medical Transfer Summary which includes a summary of the physical exam(s) with lab results, x-ray results, medical and mental health status/problems and conditions, current medications, or medications prescribed that are contraindicated, and any outstanding scheduled appointments and any follow-up needed. A three-day supply of the inmate's scheduled prescription medication should accompany the inmate. The Medical Transfer Summary is forwarded to the Records Supervisor in a sealed envelope. Upon arrival to the correctional facility, the transporting staff must give the Medical Transfer Summary to the reception staff at the receiving facility.

8. Health record information may be disseminated to designated physicians, institutions or medical facilities upon written authorization of the inmate through the use of an Authorization for Release of Information Form.

9. Inmates may request to the Health Services Administrator (HSA) to view their medical records. The HSA may grant this request at his/her discretion.

## 13-106 SHARING OF INFORMATION/CONFIDENTIALITY

1. Information shared by an inmate with health care staff in a therapeutic setting is considered confidential and protected by the Health Insurance Portability and Accountability Act and MS Code, Section 41-21-97.

2. All health care files and documentation are confidential. Health care staff ensure that necessary and appropriate information is shared with appropriate HCDS staff on a "NEED-TO-KNOW" basis only. Such information may not be disseminated further unless documented and approved to do so.

3. If the need for health care information meets the requirements of HIPAA as outlined in 45 CFR 164.512(k)(5) and of MS Code, Section 41-21-97, for disclosure, heath care files and case notes can be read by designated Sheriff's Office staff only with prior approval of either the Sheriff (or the Detention Administrator) <u>AND</u> the Health Services Administrator. **Such review must be in collaboration with the Clinician responsible for the facility**, unless it is to resolve any immediate life-threatening situations and to assure the safety of the inmate, staff, and the community.



# Hinds County Detention Services

4. Health care staff discuss confidentiality issues during initial contact with the inmate. Inmates may waive such confidentiality by signing a *Release of Information*. HCDS staff obtaining this form **for the release** of health care information **to those listed on the form** are prohibited from disseminating the information further unless authorized by the *Release of Information,* as provided in #3 above, **or as otherwise authorized by HIPAA.**

5. All health care files and documentation are maintained in a locked file cabinet/electronic medical record within the mental health or medical offices and do not become part of the inmate's classification/case coordination file or Inmate Record Jacket.

## 13-107 TRAINING

1. The HCSO develops and implements a health care training program for all Sheriff's Office staff to include CPR, first-aid, blood borne pathogen diseases, infectious diseases, medical emergency procedures, tuberculosis screening, identification of emotional and psychological problems, and other health-related training programs as deemed necessary. At a minimum, each staff member must be trained in each of these areas once per year with the exception of first aid recertification which is required every two years.

2. The health services provider participates in orientation and training of Sheriff's Office staff, including orientation to the medical program for new Detention Officers and special training as needed.

## 13-108 INMATE REFUSAL OF CARE

1. When an inmate is offered a medical evaluation, treatment or care, and the inmate refuses, the health care staff informs the inmate of the health care consequences of the refusal. A Detention Officer or health services staff member has the inmate sign a *Treatment Refusal Form*. Should the inmate refuse to sign this form, a notation of the inmate's refusal is indicated on the form and signed by both the Detention Officer and health services staff.

2. Health care is rendered against an inmate's will only if it is determined that the inmate is a danger to him/herself or others.

   FORCED PSYCHOTROPIC MEDICATIONS
3. Any inmate requiring psychotropic medication is encouraged to take his/her medication voluntarily.

4. Medical staff informs the ordering psychiatrist and/or appropriate Mental Health staff if an inmate who has been prescribed psychotropic medication refuses to take it or have it administered.

5. In the event of an emergency wherein an inmate presents an immediate threat to him/herself or others, the psychiatrist or physician is contacted immediately.

6. When all less restrictive or intrusive measures have been employed or have been judged by the treating nurse practitioner with consultation with the physician or



**Hinds County Detention Services**

psychiatrist to be inadequate, forced psychotropic medication may be employed upon a court order.

7. If time does not permit obtaining a court order, the psychiatrist, in consultation with another psychiatrist or physician, can order forced medication. Such consultation is documented. In cases of emergencies where there is an immediate threat to the inmate's safety, the psychiatrist may order forced medication. The treatment plan must address the duration of, and withdrawal from the medication as soon as possible. In the event of prolonged forced medication or the likelihood of future need of forced medication for that inmate, a court order is sought.

REFUSAL OF PHYSICAL EXAMINATION

8. If an inmate fails to cooperate for a physical examination, the medical staff notifies the Shift Commander, who, in conjunction with the health care provider and Classification Officer determines appropriate non-punitive action. If the inmate's condition presents an immediate threat to him/herself, an examination or other medical intervention may be employed to the extent needed to address the immediate threat.

_____
Marshand K. Crisler, Sheriff

Date: _____

D-000928

EXHIBIT NO. D-77
CAUSE NO. 3:16cv489CWR-RHWR
WITNESS R. Dudley
CLERK: TWANA SUMMERS

FEB 17 2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
Candice Crane, REPORTER