IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, <br><br> PLAINTIFF, <br><br> v. <br><br> HINDS COUNTY, et al., <br><br> DEFENDANTS. | Case No.: 3:16-cv-00489-CWR-RHWR |

**UNITED STATES' MEMORANDUM IN SUPPORT OF RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY PENDING APPEAL**

Defendants contend that the New Injunction, ECF No. 169, should not have been entered and the Consent Decree, ECF No. 8-1, should have been terminated. Their Motion to Stay Pending Appeal, ECF No. 191, however, seeks a stay only of the New Injunction. As explained below, Defendants have not met their burden to show that this Court should stay the New Injunction. This Court should accordingly deny their Motion to Stay Pending Appeal.

Additionally, since a stay maintains the status quo prior to an appealed injunction, a stay of the New Injunction would effectively default back to the original Consent Decree. Although the United States would not object to leaving the Consent Decree in place pending appeal, this would be an odd result from Defendants' perspective. But even if Defendants had sought to stay—or more accurately enjoin—the status quo Consent Decree as well, Defendants have not met the higher burden to enjoin the Decree.

## I. BACKGROUND

On June 23, 2016, the United States filed this lawsuit alleging that Defendants were engaging in a "pattern or practice" of Eighth and Fourteenth Amendment violations related to detainee-on-detainee violence, staff use of excessive force, dangerously low staffing levels, jail policies and procedures, housing and classification systems, the physical plant, internal investigations, detention of persons who should have been released, and the treatment of juvenile and suicidal detainees. Compl. at 3-5, ECF No. 1.

The same day as the Complaint, the Parties moved this Court to enter a negotiated Consent Decree to resolve the Complaint and achieve constitutional conditions at the Jail. Joint Mot., ECF No. 2; Joint Mem. in Support, ECF No. 3. Defendants expressly agreed that the entire Consent Decree that they negotiated complied with the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626, and was "narrowly drawn, extends no further than necessary to correct the violations of federal rights," and "is the least intrusive means necessary to correct [the] violations." Consent Decree ¶¶ 166-67; *see also* Joint Mem. in Supp. at 5, ECF No. 3. The Court approved and entered the Consent Decree as a court order with an "Effective Date" of July 19, 2016. Order, ECF No. 8; Consent Decree ¶ 10, ECF No. 8-1.

Pursuant to the Consent Decree, the Court appointed a Monitor to assess Defendants' compliance with the Decree's requirements. Joint Mot. to Appoint Elizabeth Lisa Simpson as Monitor, Aug. 18, 2016, ECF No. 9; Order, Aug. 18, 2016, ECF No. 11. Due to Defendants' failure to comply with the Consent Decree, the United States moved for contempt in June 2019. U.S. Mot. For Order to Show Cause, ECF No. 30. The Parties settled that motion through a Stipulated Order with more specific requirements and timeframes, which the Court entered on

January 16, 2020. ECF Nos. 60 & 60-1.[1]  In adopting it, the Court noted that "a finding of contempt is warranted."  Order at 11, ECF No. 60.  Nevertheless, this "Court grudgingly approved [the Stipulated Order] even though the County had reached sustained compliance 'in only one of the 92 requirements of the Consent Decree.'"  Order to Show Cause at 9, ECF No. 100 (citing Order at 7, ECF No. 60).

Despite the Stipulated Order, Defendants continued in their pattern or practice of constitutional violations, and continued their widespread non-compliance with the Consent Decree and Stipulated Order.  Indeed, the Monitor's fifteenth compliance report of November 24, 2021, concluded Defendants were in substantial compliance with only 3 of the Decree's 92 substantive provisions.  *See* Monitor's Fifteenth Report at 22-23, (Nov. 24, 2021), ECF No. 101.

After several deaths in 2021, status conferences, and a series of reports from the Monitor and the Parties, the Court entered a 28-page Order to Show Cause, (Nov. 23, 2021), ECF No. 100.  That Order directed Defendants to "show cause and explain why it should not be held in civil contempt and why a receivership should not be created to operate" the Jail.  Order to Show Cause at 28.  Defendants filed a response on December 14, 2021.  Defs. Resp. Order to Show Cause, ECF No. 105.  On February 4, 2022, based on admissions in Defendants' response, the Court issued its First Order of Contempt, ECF No. 126, which found Defendants in contempt of more than two dozen Consent Decree provisions and withheld a remedy and potential contempt on other provisions pending further proceedings.

---

[1] The Stipulated Order granted "more specific remedial relief" to supplement the Consent Decree.  Stipulated Order at 1-2, ECF No. 60-1.  That Order provided more specific requirements and timeframes to assist Defendants in achieving compliance with Consent Decree requirements regarding the Jail's physical plant, staffing, policies and procedures, and population management.  *See generally* Stipulated Order.  Like the Consent Decree, Defendants negotiated the Stipulated Order's provisions and stipulated that its remedial relief complied with the PLRA.  Stipulated Order at 2; *see also* Joint Mem. in Supp. Entry of Stipulated Order at 1-2, ECF No. 54.

On January 21, 2022, Defendants filed a PLRA based Motion to Terminate, or, Alternatively, Modify Consent Decree ("PLRA Motion"), ECF No. 111; *see also* Defs. Mem in Supp., ECF No. 112.  From February 14 to March 1, 2022, the Court held an evidentiary hearing to address both Defendants' potential remaining contempt and Defendants' PLRA Motion.  After considering all of the evidence presented at the hearing and in the record, the Court entered the Second Contempt Order, ECF No. 165, on March 23, 2022.[2]  The Second Contempt Order specifically found Defendants in contempt of "the Consent Decree and Stipulated Order as they pertain to [the Jail's] A-Pod," and reserved the issue of an appropriate sanction for a later date.  Second Contempt Order at 18.

The Court resolved Defendants' PLRA Motion on April 13, 2022, finding that the Defendants were engaging in current and ongoing violations of the rights of individuals confined in the RDC.  *See generally* Order Amending Consent Decree, (April 13, 2022), ECF No. 168.[3]  The Court found an array of dangerous conditions and a substantial risk of harm at RDC.  The Court, however, "dramatically scaled back" the Consent Decree.  Order Amending Consent Decree at 2.  The same day as the Order Amending the Consent Decree, the Court entered the New Injunction, ECF No. 169, which largely sets out the Consent Decree provisions the Court retained and modified.

---

[2] The Monitor's sixteenth and most recent compliance report of April 5, 2022, covers up until approximately February 2022, i.e., just before the evidentiary hearing, and like the previous fifteenth report, concludes Defendants are in substantial compliance with only 3 of the Decree's 92 substantive provisions.  *See* Monitor's Sixteenth Report at 22-23, (April 5, 2022), ECF No. 167.

[3] Defendants' PLRA Motion did not seek termination of the Stipulated Order, and the Court's Order Amending the Consent Decree accordingly did not terminate or modify that Order.  The Stipulated Order thus remains in effect after the Court's Order Amending Consent Decree.

4

On June 9, 2022, Defendants appealed both the New Injunction and the Order Amending Consent Decree. Defs. Notice of Interlocutory Appeal, ECF No. 185.[4] The United States appealed these same two orders the next day. U.S. Notice of Appeal, ECF No. 186.

Defendants filed the Motion to Stay at issue here on July 5, 2022. Motion, ECF No. 191; Defs. Br., ECF No. 192. That Motion seeks to stay only "the New Injunction." Motion at 2 (**"Relief Requested**[:] The Court should grant Defendants' Motion to Stay, and stay enforcement of the New Inunction [sic] (ECF 169) pending resolution of the parties' appeal."); *see also id*. at 1 ("Following a hearing, the Court entered its Order Amending Consent Decree (ECF 168), and the New Injunction (ECF 169). The County and the United States have timely appealed those orders (ECF 185, 186). The New Injunction should be stayed pending resolution of the County's appeal."). The Motion seeks no relief regarding the Consent Decree.

## II.   LEGAL STANDARDS

### A. Stay of Injunction Pending Appeal

A stay pending appeal functions as an "intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks and citations omitted); *accord Texas Democratic Party v. Abbott*, 961 F.3d 389, 397 (5th Cir. 2020). Whether a stay is appropriate is "left to the court's discretion," and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken*, 556 U.S. at 433-34.

---

[4] Defendants also appealed the First and Second Orders of Contempt. See ECF Nos. 166 & 181. Defendants filed a Motion for Reconsideration, ECF No. 171, of the Second Order of Contempt, which the United States opposed, ECF No. 175. The Court has scheduled an evidentiary hearing on that motion for July 19, 2022.

5

When exercising that discretion, courts look to the four traditional stay factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* (citation omitted); *accord E.T. v. Paxton*, 19 F.4th 760, 764 (5th Cir. 2021) ("The [*Nken*] factors we consider in determining whether to grant a stay are by now axiomatic.").

### B. Injunction Pending Appeal

While a "substantial overlap" exists between the stay factors and "the factors governing preliminary injunctions," the two inquiries are not "one and the same." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009). "A stay 'simply suspend[s] judicial alteration of the status quo,' whereas an injunction 'grants judicial intervention . . . .'" *Nken*, 556 U.S. at 428-29 (first alteration in original) (quoting *Ohio Citizens for Responsible Energy, Inc. v. NRC,* 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers); *see also id.* (quoting *Turner Broadcasting System, Inc. v. FCC,* 507 U.S. 1301, 1302 (1993) ("By seeking an injunction, applicants request that I issue an order *altering* the legal status quo.")). A preliminary injunction accordingly "'demands a significantly higher justification' than a request for a stay." *Respect Maine PAC v. McKee*, 562 U.S. at 996 (quoting *Ohio Citizens for Responsible Energy, Inc.,* 479 U.S. at 1313) (denying injunctive request)).

For a court to issue a preliminary injunction, the moving party must establish by a preponderance of the evidence that: "(1) it is substantially likely to succeed on the merits of its claim; (2) it will suffer irreparable injury in the absence of injunctive relief; (3) the balance of the equities tips in its favor; *and* (4) the public interest is served by the injunction." *Sahara Health*

6

*Care, Inc. v. Azar*, 975 F.3d 523, 528 (5th Cir. 2020) (emphasis added); *accord Big Tyme Invs., L.L.C. v. Edwards*, 985 F.3d 456, 463-64 (5th Cir. 2021).  "A preliminary injunction is an extraordinary remedy that should not be granted unless the party seeking it has clearly carried the burden of persuasion *on all four requirements*."  *Big Tyme Invs., L.L.C.*, 985 F.3d at 463-64 (emphasis added).  A preliminary injunction is not awarded as a matter of right but rather is entrusted to the sound discretion of the district court.  *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) ("A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right.").  Ultimately, granting a "preliminary injunction is to be treated as the exception rather than the rule." *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

### III.    DISCUSSION

**A. The Stay Factors all Weigh Against Granting Defendants' Requested Stay of the New Injunction.**

**(1) Defendants Fail to Make a Strong Showing of Likelihood of Success on the Merits.**

This Court should find that Defendants have failed to show a likelihood of success, much less the required strong showing, on the merits of their appeal challenge to the New Injunction. As explained below, the Court's Order Amending Consent Decree details pervasive constitutional violations justifying the New Injunction and this Court should reject Defendants' arguments that they are not engaging in "current and ongoing" violations and that their purported "reasonable response" absolves them of their pervasive violations of detainees' constitutional rights.

Most of the New Injunction and Order Amending Consent Decree centers on Defendants' constitutional violations relating to their subjecting detainees to harm and a "substantial risk of

serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  The Court's detailed Order Amending Consent Decree spans 149 pages.  The Court detailed violations of, among other things, the harm and substantial risk of harm from gangs and understaffing, (at 48-51), an "excessive" number of assaults and even homicide, (at 48-51), sexual assaults, (at 83-86), excessive use of force and failures to prevent its reoccurrence, (at 59-61, 63-66, 73-74), inadequate medical and mental health training that "'imperils detainees' wellbeing," (at 53-54), inhumane treatment of detainees in segregation, constitutionally inadequate health and mental health care, (at 102-05), harm caused by or increased by lack of reporting and review of serious incidents, (at 77-81), including a lack of recording and "paltry analysis" of assaults and use of force that adds to the risk of harm, (at 51-52), deficient investigations that increase the substantial risk of harm, (at 91-94), increased substantial risk of harm from ignoring prisoner grievances, (at 96-98), and constitutional Due Process violations related to unlawfully detaining people past their rightful release (at 121-23).

The Court found Defendants' running of the RDC Jail results in "unconscionably high levels of violence," and the "pervasiveness and severity of such incidents distinguish RDC as a place where 'terror reigns.'"  Order Amending Consent Decree at 51 (quoting *Alberti v. Klevenhagen*, 790 F.2d 1220, 1224 (5th Cir. 1986)); *see also* Order Amending Consent Decree at 2 ("Violence remains endemic:  the facility is averaging 20 assaults a month, while it experienced an unprecedented seven in-custody deaths in 2021.").  The Court recounted that the Defendant Sheriff himself admitted that the Jail's A-Pod is "unsafe."  Order Amending Consent Decree at 84 (quoting Tr. vol. 10 at 1930).

### *a. The New Injunction Addresses Current and Ongoing Violations.*

Despite the Court's detailed evidence and analysis, Defendants complain that the Court erred in finding "current and ongoing" violations in accordance with the PLRA, emphasizing, for example, that no one died in RDC in January or February of 2022. Defs. Br. at 3-5. They point to Fifth Circuit law (at 4) that "a current and ongoing violation is one that exists at the time the district court conducts the [PLRA] § 3626(b)(3) inquiry" and that "a court must look at the conditions in the jail at the time termination is sought, not at conditions that existed in the past or at conditions that may possibly occur in the future, to determine if there is a violation of a federal right." *Castillo v. Seckinger*, 238 F.3d 339, 353 (5th Cir. 2001).

They mistakenly extrapolate from this case law that the inquiry should only look at pure isolated snapshots in time, and that past incidents are essentially irrelevant. The "current and ongoing" inquiry, however, does not operate in a temporal vacuum. *Depriest v. Walnut Grove Corr. Auth.*, No. 3:10-CV-663-CWR FKB, 2015 WL 3795020, at *8-9 (S.D. Miss. June 10, 2015) (Reeves, J.). Past violations provide an "appropriate factual foundation" and "reference point" to help establish "current and ongoing" constitutional violations. *Id.; see also id.* at *12 ("Defendant's knowledge of circumstances posing a substantial risk of serious harm was informed by past events."). Defendants' temporal vacuum argument ignores that the United States' claims concern Defendants' "pattern or practice" of constitutional violations. *See generally* Compl., ECF No. 1. And Defendants themselves cite a case that the violations must involve a pattern of "'pervasive conduct,' as opposed to 'isolated incidents.'" Defs. Br. at 6 (quoting *Lakin v. Barnhart*, 2013 WL 5407213, at *7–8 (D. Me. Sept. 25, 2013)). The Order Amending the Consent Decree looked at present conditions and incidents "at the time termination [was] sought" *Castillo,* 238 F.3d at 353, but also appropriately looked to the history of conditions and similar incidents for context and a "pattern."

9

The New Injunction also does not exceed the limits that the PLRA imposes. The Order Amending Consent Decree's detail of the pervasiveness of the current and ongoing constitutional violations justified retaining nearly all *the Consent Decree's provisions* as compliant with the PLRA's requirement "that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation." 18 U.S.C. § 3626(b)(3). Because nearly all the Consent Decree's provisions complied with the PLRA, the New Injunction that retains only some of those provisions easily complies with the PLRA's necessary-narrow-intrusive requirement.

This Court accordingly should reject Defendants' arguments that the Court erred in finding "current and ongoing" constitutional violations and that the Court did not tailor the New Injunction in accordance with the PLRA.

### b. *Defendants did not Reasonably Respond to the Known Substantial Risk of Serious Harm.*

Despite the Court's detailed evidence and analysis of Defendants' pervasive constitutional violations, Defendants also submit that their purported "reasonable response" to the pervasive harm and substantial risk of serious harm absolves them of constitutional violations. Defs. Br at 7-9; *cf. Farmer v. Brennan*, 511 U.S. 825, 844 (1994) ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").

Defendants essentially delete "reasonable" from "reasonable response" and argue that any response—no matter how inadequate—saves them from being found deliberately indifferent

to harms and substantial risk of serious harms that they are well aware of.[5]  Here, the Consent Decree spelled out and put Defendants on notice of the reasonable response to the known substantial risk of serious harm and constitutional violations, and Defendants stipulated in the Decree for purposes of the PLRA that these measures were the minimal necessary response. Consent Decree ¶¶ 166-67.  Defendants' partial compliance with those minimal necessary responses does not absolve or negate their deliberate indifference.  *See Depriest*, 2015 WL 3795020 at *12 (finding "failure to *fully* comply with directives aimed at improving inmate safety implies indifference on the part of Defendant[s]" and dismissing contention "that some affirmative steps taken by them negate a finding of deliberate indifference" (emphasis added)). Partially implementing a minimal reasonable response is not a reasonable response.  *See Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 397–98 (5th Cir. 2000) (A jailer has a "duty to not act with subjective deliberate indifference to a known substantial risk" and accordingly cannot "disregard . . . precautions he kn[ows] should be taken.").

In support of their reasonable response argument, Defendants cite (at 7) the efforts of their former Jail Administrator, Kathryn Bryan, whom they terminated and told "to clean out her car and find her own way home." Order Amending Consent Decree at 19.  They cite (at 7-8) work by Gary Chamblee on facility conditions, but the Court disregarded this as too little a response given the disastrous state of the Jail, where many locks still do not work.  *See, e.g.*, Order Amending Consent Decree at 84-85.  They follow this by citing testimony from various officials about their unspecific and vague efforts to keep the Jail safe.  *See* Defs. Br. at 8-9.  This Court presumably gave this evidence any weight it deserved and determined it was not enough to

---

[5]  Notably, as this Court recognized, for the many detainees at the Jail who have not been convicted of a crime, the Fourteenth Amendment provides a higher level of protection than the Eighth Amendment's deliberate indifference standard.  Order Amending Consent Decree at 41 (citing *Bell v. Wolfish*, 441 U.S. 520, 531 & 545 (1979)).

11

absolve Defendants' deliberate indifference to the substantial risk of harm at the Jail. *See* Order Amending Consent Decree at 2 ("The underlying fundamentals, though, are unchanged."); *id.* at 22 (noting "contradictions" between Defendants' promises and actions "call into question the County's credibility on many fronts"); *see also* Second Contempt Order at 17 ("Unfortunately, the County's word has been and still is seriously called into question on many fronts."). This Court thus should reject Defendants' "reasonable response" argument and find that Defendants have failed to show a likelihood of success, much less the required strong showing, on the merits of their appeal challenge to the New Injunction.

### (2) Defendants will Suffer No Irreparable Harm.

This Court should find that Defendants also have not shown irreparable harm. Defendants' argument on their purported irreparable harm mostly attacks the New Injunction's compliance with the PLRA, and summarily asserts this purported non-compliance with the PLRA constitutes irreparable harm. As explained above, Defendants are unlikely to succeed on their appeal attacking the New Injunction's compliance with the PLRA.

Defendants also put forth conflicting arguments on the purported harm first from the lack of detail and then the detail of New Injunction's requirements. In one breath, Defendants complain the New Injunction contains "no compliance standards or outcome measures" and it has many "ambiguous and open-ended provisions." Defs. Br. at 10-11. Defendants' characterization is wrong. The New Injunction, for example, has compliance standards. New Injunction at 10 ("[P]aragraphs 136 through 158 of the Order Amending Consent Decree, and their subparagraphs, are hereby incorporated and remain in force."); Order Amending Consent Decree at 141 (Paragraph 158(a): ". . . Monitor's Reports will be considered persuasive, but rebuttable, in Court [and each Report] [m]ust evaluate the status of compliance for each

provision of the Agreement using the following standards: (1) Substantial Compliance; (2) Partial Compliance; and (3) Non-compliance.").[6]  Regardless, this Court's granting the Defendants greater flexibility in how to implement injunctive provisions cannot irreparably injure Defendants.

In the next breath, Defendants spin 180 degrees and argue that the New Injunction "comprehensively inserts the district court (and the monitors) into the minutia of running the RDC," "micromanage[s] RDC," and "interferes with" Defendants' "flexibility to address the facts on the ground." Defs. Br. at 11-13.  In other words, the Defendants are complaining that they are injured because the Court partially granted their request to terminate the more specific requirements of the original Decree, and are injured because the New Injunction is too detailed.  Regardless of this conflicting argument, the Consent Decree (that Defendants negotiated) prior to the less detailed New Injunction struck the appropriate constitutional balance between "not micromanag[ing] state prisons" *Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004), and this Court's "duty to protect constitutional rights" "[w]hen a prison regulation or practice offends a fundamental constitutional guarantee," *Turner v. Safley*, 482 U.S. 78, 84 (1987) (quoting *Procunier v. Martinez*, 416 U.S. 396, 405406 (1974), *overruled in non-relevant part by Thornburgh v. Abbott*, 490 U.S. 401 (1989)).  *See also Turner*, 482 U.S. at 84 ("Prison walls do not form a barrier separating prison inmates from the protections of the Constitution.").  Given this appropriate balance in the Consent Decree, the New Injunction's less rigorous requirements will not result in irreparable harm to Defendants.

---

[6] Defendants also complain that the "New Injunction does not contain any provisions regarding its termination [and has] no mechanism for termination." Br. at 10.  The New Injunction has a "Substantial Compliance" standard, and Defendants obviously are aware they can move to terminate the Injunction under the PLRA in two years if they are no longer engaging in "current and ongoing" constitutional violations.  18 U.S.C. § 3626(b).  Regardless, any lack of termination clarity surely cannot not cause any irreparable harm during the time necessary to decide the appeal.

Defendants' last argument submits that paying the monitoring team's costs (of purportedly $275,000/year) is "prohibitive," especially since the monitoring team's "activities have historically been unhelpful to the County's efforts to improve RDC." Defs. Br. at 12. Even if this cost somehow qualified as an irreparable injury, Defendants ignore that the monitoring team's cost should be less under the New Injunction's fewer provisions and less rigorous requirements than under the prior status quo Consent Decree. Moreover, the monitoring team's activities have not been unhelpful. Rather, Defendants' ignoring the monitoring team's reports and technical assistance has led to Defendants' "failure to improve RDC." *See, e.g.*, First Order of Contempt.

Based on the above, this Court should find that Defendants have not shown irreparable harm.

### (3) The United States, the Public Interest, and Detainees will Suffer Substantial Harm.

This Court should find that Defendants have not carried their burden on the last two stay factors, namely "(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 433-34.

These two factors merge when as here the federal government is the party opposing the stay. *Nken*, 556 U.S. at 435. The United States' interest and the "public interest" are the same, as are their substantial injuries. The public interest includes the interests of the detainees whose constitutional rights Defendants continuously violate. Defendants' violations of these constitutional rights, even for just minimal periods of time, cause irreparable injuries. *See Elrod v. Burns,* 427 U.S. 347, 373 (1976) (plurality) (finding loss of constitutional "freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); *accord BST Holdings, L.L.C. v. Occupational Safety & Health Admin., United States Dep't of Lab.*, 17 F.4th 604, 618

(5th Cir. 2021); *see also Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("When constitutional rights are threatened or impaired, irreparable injury is presumed."). Additionally, the severity of these constitutional violations makes them even more irreparable; the Court found Defendants are subjecting detainees to unconstitutional conditions where "terror reigns." *E.g.*, Order Amending Consent Decree at 51 (quoting *Alberti v. Klevenhagen*, 790 F.2d 1220, 1224 (5th Cir. 1986)).

The United States also maintains a significant federal interest in upholding the Constitution and remedying its violations. Injunctive remedies "designed to end a continuing violation of federal law," like the injunction here, are "necessary to vindicate the federal interest in assuring the supremacy of that law." *Green v. Mansour*, 474 U.S. 64, 68 (1985); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."); Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997b (requiring Attorney General to certify belief that civil "action by the United States is of general public importance and will materially further the vindication of rights, privileges, or immunities secured or protected by the Constitution").

Defendants' arguments on these last two stay factors miss the mark and ignore the above law. As for substantial injury, Defendants ignore that the United States represents the public interest and the serious harm to incarcerated persons that would flow from the absence of injunctive relief. *See* Defs. Br. at 12-13. They also repeat their misplaced argument that the Consent Decree has not been "helpful in improving conditions at the RDC," again ignoring that Defendants never made substantial efforts to comply with it. *E.g.*, First Order of Contempt. As for the public interest, Defendants repeat their argument about federalism and that states have a

strong interest in administration of prisons. *See* Defs. Br. at 12-13. As above, this ignores that the public (and Defendants) have no interest in violating the Constitution and that federalism concerns give way to this Court's "duty to protect constitutional rights" "[w]hen a prison regulation or practice offends a fundamental constitutional guarantee," *Turner*, 482 U.S. at 84. And as above, the United States' interest and the public interest are one and the same here.

This Court accordingly should find that Defendants have not carried their burden on the last two stay factors, or any of the four factors, and deny the stay.

### B. Defendants Have Not Asked to Enjoin the Consent Decree, but Even if They Had, Defendants Have Not Met the Higher Burden to Enjoin the Decree.

The purpose and function of a stay is simply to suspend an appealed injunction's alteration of the status quo during the appeal. *Nken*, 556 U.S. at 428-29. Prior to the New Injunction, the status quo was the Consent Decree. Neither Defendants' Motion nor their Brief asks this Court to enjoin or even stay the Consent Decree. Rather, their "**Requested Relief**" is that the Court "grant Defendants' Motion to Stay, and stay enforcement of the New Inunction [sic] (ECF 169) pending resolution of the parties' appeal." Motion at 2.

Even if Defendants had asked for a stay of the Consent Decree (in addition to the New Injunction), this Court should deny that extreme request. Because a "stay" of the Consent Decree would alter the status quo prior to the appealed New Injunction, the request effectively would be for an injunction pending appeal, which "'demands a significantly higher justification' than a request for a stay." *Respect Maine PAC*, 562 U.S. 996, 996 (2010) (quoting *Ohio Citizens for Responsible Energy, Inc.,* 479 U.S. at 1313); *accord Nken*, 556 U.S. at 428-29.

Indeed, because enjoining the Consent Decree would alter rather than preserve the status quo, that altering injunction would be akin to a "mandatory" injunction (versus a "prohibitory" injunction that maintains the status quo) that requires yet an even higher showing. For a

mandatory injunction altering the status quo, Defendants would "bear[ ] the burden of showing a clear entitlement to the relief under the facts and the law." *Justin Indus., Inc. v. Choctaw Secs., L.P.*, 920 F.2d 262, 268 n.7 (5th Cir. 1990); *accord Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976) ("Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party.").

As explained above, Defendants fail to make the required lesser showing to stay even just the New Injunction. Given the significantly higher showing necessary for an injunction pending appeal that alters the status quo, even if Defendants had asked to enjoin or stay the Consent Decree, this Court should deny it. Accordingly, if this Court grants Defendants' Motion to Stay, the Court should find that the status quo Consent Decree would control during the pendency of any appeal.[7]

## IV. CONCLUSION

For the reasons above, this Court should deny Defendants' Motion to Stay Pending Appeal.

Respectfully Submitted,

DARREN J. LAMARCA
United States Attorney
Southern District of Mississippi

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

---

[7] At best, Defendants' opaque Motion to Stay would make the Order Amending the Consent Decree the controlling injunctive order pending the appeal. This Court entered the Order Amending Consent Decree just prior to entering the New Injunction. Defendants' Motion seeks to stay only "the New Injunction," and not the Order Amending Consent Decree. Motion at 2; *see also id*. at 1. This is despite Defendants' Notice of Interlocutory Appeal, ECF No. 185, specifically appealing both the New Injunction and the Order Amending Consent Decree, and their Motion to Stay specifically noting the appeal of both those orders in the sentence just prior to seeking a stay of just the New Injunction. Motion at 1. Staying the New Injunction thus could default back to the Order Amending the Consent Decree. This stay would result in no substantive change because the Order Amending the Consent Decree, (which deletes, retains, and modifies Consent Decree provisions), is the functional equivalent of the New Injunction.

|  |  |
|---|---|
|  | STEVEN H. ROSENBAUM<br>Chief<br>Civil Rights Division<br>Special Litigation Section |
| MITZI DEASE PAIGE (MS #6014)<br>Assistant U.S. Attorney<br>U.S. Attorney's Office<br>Southern District of Mississippi<br>501 E. Court Street – Ste. 4.430<br>Jackson, MS 39201<br>MPaige@usa.doj.gov<br>(601) 973-2840<br>(601) 965-4409 (fax) | LAURA L. COWALL (DC #481379)<br>Deputy Chief<br>laura.cowall@usdoj.gov<br>(202) 514-1089<br>(202) 514-0212 (fax)<br><br>CHRISTOPHER N. CHENG (PA #69066)<br>Trial Attorney<br>christopher.cheng@usdoj.gov<br>(202) 514-8892<br>(202) 514-4883 (fax)<br><br>SARAH STEEGE<br>Trial Attorney<br>sarah.steege@usdoj.gov<br><br>HELEN VERA<br>Trial Attorney<br>helen.vera@usdoj.gov<br><br>/s/ *Matthew J. Donnelly*<br>MATTHEW J. DONNELLY<br>Trial Attorney<br>matthew.donnelly@usdoj.gov<br><br>United States Department of Justice<br>Civil Rights Division<br>Special Litigation Section<br>150 M Street, N.E.<br>Washington, DC 20002 |

DATED:   July 19, 2022

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 19, 2022, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

                                                       _/s/ Matthew J. Donnelly_
                                                       MATTHEW J. DONNELLY
                                                       Attorney for the United States
                                                       United States Department of Justice
                                                       Civil Rights Division
                                                       matthew.donnelly@usdoj.gov