

# Hinds County Detention Services

| Chapter 5: Safety and Emergency Procedures | Subject: USE OF FORCE |
|---|---|
| Effective Date: Febr 1, 2020<br>Pages: 1-6 | Policy Number: **5.500** |

**CONTENTS:**

    5-501 Use of Force Generally
    5-502 Chemical Agents and Other Security Equipment
    5-503 Reporting
    5-504 Supervisor Response
    5-505 Health Care Response

**POLICY:** Clear written guidelines govern the use of force that describe the circumstances and condictions under which staff are permitted to use force to restrain and control the behavior of inmates. Force, restraints, and security equipment are only used as a control measure. Incident reports are prepared following all uses of force to provide for review of the rationale for, and the specifics of the use of force.

**PROCEDURES:**

### 5-501 USE OF FORCE GENERALLY

1. Use of force includes the application of physical, chemical (see 5-502 below), or mechanical measures (see also, 5-600, Use of Restraints) on an inmate except in cases of mechanical restraints applied to facilitate movement as outlined in Policy 9-400, Internal Movement.

2. Force should not be applied in a manner solely for purpose of causing injury, nor applied on the inmate longer than necessary. Staff should not use any force methods for which they have not received training or unauthorized. Any authorized security equipment is issued by the Shift Supervisor at the beginning of each shift.

3. Authorized and prohibited use of force includes:

| Authorized Use of Force | Prohibited Use of Force |
|---|---|
| a. Prevent the commission of a felony, including escape<br>b. Prevent an act which could result in death or serious bodily injury to self or another person.<br>c. Defend one's self or another against a physical assault<br>d. Prevent or control a riot or disturbance.<br>e. Prevent serious damage to the facility | • Continued application of force after compliance has been met<br>• Force that exceeds the level of force required by the totality of circumstances.<br>• Response to verbal insults or threats.<br>• Failure to follow instruction where there is no immedate threat to safety or security |

DEFENDANT'S EXHIBIT DEF-052 (7/22)



## Hinds County Detention Services

| Authorized Use of Force | Prohibited Use of Force |
|---|---|
| f. Overcome active physical resistance to a lawful command<br>g. Assisting health care staff in the administration of medical treatment only upon direction of a physician and court order in accordance with 13-200 Administration of Treatment (see #9-11 below, planned use of force). | • Punishment or discipline, or retaliation.<br>• Choke holds<br>• Strikes to an inmate's head.<br>• Strikes with any object in an attempt to gain control.<br>• Threats of force<br>• Crowding the inmate<br>• Grabbing/pulling an inmate by restraints |

4. When the use of force is justified, only that amount and type of force that is reasonable to accomplish the authorized objective shall be employed. All use of force stops once staff regain control. Consideration is given to the surroundings and any unintended injury to the subject or others.

5. When possible, staff should utilize de-escalation techiques consistent with HCDS training to control the situation prior to the use of force including using verbal directives.

6. The Use of Force Levels are meant to be used as a guideline for staff to select effective, reasonable, and legal force options in a verbal or physical encounter. As the level of force presented escalates, staff may increase the level of response until the resistance ceases and the staff gains control. As soon as compliance is reached, the officer(s) must de-escalate their response level to the commensurate level of force necessary to control the subject. Use of Force Levels in no way suggests that each step must be implemented and in order, rather that the staff response must be commensurate with the level of force presented.

### Use of Force Levels

| Level of Force Presented | Examples | Commensurate staff response |
|---|---|---|
| Compliant | | Officer presence |
| Verbal Resistance | Refuses to comply | Officer presence<br>Verbal Commands |
| Passive Resistance | No physical resistance, but forces officer to employ physical measures to establish control | Contact Controls (i.e., soft or hard empty hand controls; compliance holds; escort holds) |
| Active Resistance | Assaultive and threatens bodily harm; evasive movements that are a threat to safety;<br>Overt, hostile, attacking movements; | Lesser response (e.g., as outlined in passive resistance). Use of chemical devices; use of electronic control device; Use of restraints.<br><br>Other less-lethal Weapons (i.e., foam rubber launchers), with approval of the shift supervisor. |



# Hinds County Detention Services

| Level of Force Presented | Examples | Commensurate staff response |
|---|---|---|
| Imminent Threat to Inflict Serious Bodily Harm or Death on another person. | | Lesser response (e.g., as outlined in passive and active resistance).<br><br>Deadly force (firearms only if available and authorized by the facility commander) |

7. Any use of force will be followed without delay by medical examination and treatment in acccordance with 5-506, Health Care Response.

8. Strikes or similar offensive force measures are only used as a defensive response.

   PLANNED USE OF FORCE
9. Planned use of force includes the use of force in response to an inmate's actions, where the inmate's behavior does not pose an imminent threat to the inmate's own safety or another individual's safety, or upon court order. Such cases may include cell extractions, shakedowns, involuntary administration of medication, or group activity with the purpose of disrupting detention operations the specific procedures for which are addressed in other policies. For any planned use of force, staff will notify their immediate supervisor prior to any planned use of force. Staff will assess the immediacy and level of danger and use only the level of force necessary to achieve the authorized objective.

10. Staff must consult with medical and mental health staff prior to all planned uses of force to determine if there are alternatives or limitations on the use of force such as assisting with de-escalation or facilitating voluntary compliance. Force used to administer medication as outlined in #3 above requires the participating officers to complete a use of force report.

11. All planned use of force will be video and audiotaped.

## 5-502  SECURITY/LESS-LETHAL EQUIPMENT

1. Chemical agents, electronic control devices, and/or less lethal firearms are only to be used when the need to use that specific force measure is clearly indicated to eliminate an active threat, and when the level of force is least likely to cause injury to the officers or inmates involved. Such force may not be used as a means to force an inmate to comply with verbal orders unless such non-compliance presents an immediate threat.

2. Only properly trained/certified officers may administer a chemical agent or use other security/less-lethal equipment described in this procedure. Similarly, only agency issued security equipment may be used. Oleocapsicum foam is the only authorized chemical agent used by HCDS.

EXH052-003



## Hinds County Detention Services

3. The Facility Commander identifies staff who are authorized to be issued, carry, or use chemical agents and other force related security equipment, as described below. Such equipment is inspected prior to use.

   a. Aids to thwart suicide attempts by hanging (e.g., 9-11 tool) may be located at housing unit control stations and inventoried as part of inventory verification at the beginning of each shift.
   b. Electronic control devices may be issued to Area Supervisors.
   c. Oleocapsicum (OC) may be carried by any Detention Officer trained and certified in its use.
   d. Other less-lethal weapons such as foam rubber launchers will be kept in a locked location and used only upon approval of the shift supervisor.

4. Security/Less-Lethal equipment inventory records (e.g., documenting the serial number, weighing chemical agents prior to issue) are maintained in the armory. Access to the armory is provided to shift supervisors, emergency response team supervisor, Facility Commander, and Detention Administrator.

5. Any staff authorized to carry OC reports to the Shift Supervisor prior to the beginning of each tour of duty to weigh the OC container. Random weighing of ALL staff authorized to carry OC occurs at least once a month. OC containers are weighed after each use.

6. Anyone exposed to chemical agents or other related security equipment must be examined by medical staff immediately following the incident. Exposed staff and/or inmates are decontaminated after exposure to chemical agents.

7. Any security/less-lethal equipment intended for the planned use of force must be obtained in accordance with 1-300, Inventory, which outlines the role of the Inventory Manager to maintain, inventory, issue, and audit the issue and use of security/less-lethal equipment. Audits of security/less-lethal equipment are conducted in accordance with Sheriff's Office policy, General Order 2016-03-01. Under no circumstance are lethal weapons to be authorized in the facility without approval of the Detention Administrator, and then only when there is likelihood that lives could be jeopardized.

8. Use of protective equipment found in each facility's secured inventory/armory room may include:

   a. Protective vests
   b. Tactical protective goggles
   c. Chemical protective masks
   d. Protective helmets with shield

### 5-503 REPORTING

1. Officers involved or witnessing the use of force notify their immediate supervisor without delay.

2. Officers involved in or witnessing the use of force notify medical staff to assess the inmate as soon as practical, but no more than thirty (30) minutes after the use of force. Any delay in the medical assessment will be reported to the shift supervisor.



## Hinds County Detention Services

3. The officer initiating the use of force completes all fields of an Incident Report in the Jail Management System (JMS): Incident Reports prior to the end of the shift including:

   a. A unique incident number for each use of force;
   b. The names of all participants and witnesses (staff, inmates or public).
   c. Housing location
   d. Date and time
   e. Description of the events leading to the use of force including what appeared to precipitate the use of force, and attempts to de-escalate the situation without force;
   f. Description of the level of resistance, staff response, types and level of force threatened or used (including the frequency and duration of use such as discharges from electronic control devices and chemical sprays/canisters).
   g. Type of force/holds/strikes used;
   h. Length of time the inmate was restrained, and any periods of time the inmate was released from restraints;
   i. Notifications prior to, or immediately following the use of force to supervisors and/or health care providers;
   j. Description of any observed injuries, and any medical care provided and to whom;
   k. Reference to any associated incident report or inmate disciplinary report completed which pertains to the events that prompted the use of force;
   l. Signature of staff on the printed report attesting to the accuracy and completeness of the report.

   If for any reason JMS is not used or unavailable, officers write an Incident Report of the Use of Force using the appropriate incident reporting forms.

4. All officers witnessing the use of force complete a Supplemental Report. The supplemental report indicates the unique incident report number generated from the Incident Report form.

5. If necessary, staff who have completed a report may submit a Supplemental Report to incude any additional information learned or recalled following the completion of the initial Incident Report.

**5-504 SUPERVISOR RESPONSE**

1. The respective Area Supervisor responding to a use of force incident provides for the following:

   a. Health care for anyone in need.
   b. Photographs of all injuries sustained or verification that no injuries were sustained within two hours following the use of force. Photographs will be taken with medical staff present. Inmates who refuse consent to be photographed must sign a waiver indicating their refusal.
   c. Victims, staff, and witnesses are identified, separated, and advised of the prohibition to discuss the incident with other persons involved.
   d. Witness statements are taken confidentially.



**Hinds County Detention Services**

    e. Preserve any use of force documentation, including video records, or describe why any planned use of force was not documented.

2. The Shift Supervisor reviews all Incident Reports and Supplemental Reports submitted by involved staff, inmates, and witnesses prior to the end of the shift in accordance with 1-500, Incident Reports. The supervisor indicates approval, disapproval, or recommended action regarding the force used.

3. If the JMS system does not automatically prompt the chain of command, a copy of all use of force reports are forwarded and approved through the chain of command by the Facility Commander to the Detention Administrator, Sheriff's Legal Counsel, Internal Affairs Division, and the Sheriff.

4. All evidence is to be documented and secured in accordance with 1-500, Incident Reports.

5. All use of force incidents are investigated in accordance with 1-600, Investigations.

6. The Detention Administrator in conjunction with the assigned investigator conducts an incident debrief once the investigation is concluded. A summary of the findings is submitted to the Sheriff. The Detention Administrator determines if there is a need for changes in policy and procedure and training provisions.

## 5-506 HEALTH CARE RESPONSE

1. A member of the Detention Medical Staff conducts an examination and provides necessary treatment to anyone involved in the use of force. Results of inmate medical treatment, including a body chart summary of injuries, is entered in the Inmate Medical File. Inmates who refuse medical treatment must sign a medical refusal form.

2. All staff persons are required to receive immediate medical attention and provide documentation of treatment, if injuries are sustained.

3. Inmate wellness checks are conducted every 15 minutes until/unless medically cleared.

4. If Detention facility Medical staff learn during the assessment/treatment process that an inmate under their care sustained injuries during an unreported use of force, s/he must report these findings to the Shift Supervisor or higher ranking staff (including Investigations) not believed to have been involved in the unreported incident, consistent with 1-600, Investigations.

Lee Vance, Hinds County Sheriff
Date: 1|27|2020

EXHIBIT NO. D-52
CAUSE NO. 3:16cv489CWR-BWR
WITNESS David Parrish
CLERK: TWANA SUMMERS

JUL 19 2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
Margaret Wasmun REPORTER