**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**UNITED STATES OF AMERICA**                                    **PLAINTIFF**

**VS.**                                        **CIVIL ACTION NO. 3:16-CV-489-CWR-RHWR**

**HINDS COUNTY, ET AL.**                                  **DEFENDANTS**

**DEFENDANTS' REBUTTAL IN
SUPPORT OF MOTION TO STAY PENDING APPEAL**

Defendants Hinds County, Mississippi, and Sheriff Tyree Jones, in his official capacity (collectively, "the County"), respectfully submit this Rebuttal in support of their Motion to Stay Pending Appeal (ECF 191).

## INTRODUCTION

Plaintiff United States of America ("Plaintiff") opposes the County's stay request claiming that the County has not shown that each of the four factors weigh in favor of a stay.  Plaintiff also appears to claim that the County should have sought to enjoin the [169] New Injunction rather than seeking a stay of the [169] New Injunction, and, as a result, even if a stay were granted the result would simply restore the [8] Consent Decree.  For clarity, the County's rebuttal will follow the same structure as Plaintiff's opposition brief.

## REBUTTAL ARGUMENTS

*A*.  ***The County has demonstrated a strong likelihood of success on the merits****.*

The County's opening brief demonstrate a strong likelihood of success on the merits.  *See* [192] Mem. at 3-10.  In opposition, Plaintiff focuses on the Court's findings related to the alleged substantial risk of serious harm and argues that the Court "appropriately looked to the history of conditions and similar incidents . . . ."  [198] Opp'n at 9-10.  Plaintiff then claims the County was deliberately indifferent to the purported substantial risk of serious harm, arguing the consent

decree's requirements establish the only reasonable response available to the County and then devoting three conclusory sentences to downplay the County's evidence of the various reasonable responses in which it has engaged related to conditions at Raymond Detention Center ("RDC"). *Compare* [192] Mem. at 7-10 & nn.9-41 *with* [198] Opp'n at 11-12.

Put simply, Plaintiff's opposition falls well short of refuting the strong likelihood of success on the merits demonstrated through the County's opening brief.  Plaintiff overlooks the fact that establishing a violation of a federal right that is "current and ongoing" inquiry is not synonymous with whether Plaintiff can establish that the County has complied with the myriad requirements of a sprawling consent decree.  *See Plyer v. Moore*, 100 F.3d 365, 370 (4th Cir. 1996). The violation of a federal right must be one that exists at the time termination is sought, not one that existed in the past or that might possibly occur in the future. *Castillo v. Seckinger*, 238 F.3d 339, 353 (5th Cir. 2001).

Plaintiff joins this oversight with a near complete lack of any effort to address the County's argument that record evidence does not satisfy the requisite objective inquiry of a substantial risk of serious harm.  *Compare* [192] Mem. at 5 with [198] Opp'n at 7-8.  In a similar way, Plaintiff does not attempt to explain how the evidence depicting the County's myriad responses to any purported substantial risk of serious harm were not reasonable, merely claiming in conclusory fashion the consent decree established what was reasonable and that the County "essentially delete[s] 'reasonable' from 'reasonable response' . . . ."  [198] Opp'n at 10.  Here, the County demonstrated it responded reasonably to any purported substantial risk of serious harm, *see* [192] Mem. at 7-10, and Plaintiff's failure to address these efforts in any meaningful way does nothing to help them refute the County's showing a strong likelihood of success on the merits.

Plaintiffs have failed to refute the County's strong likelihood of success on the merits, and thus this element weighs in favor of staying the New Injunction while the parties pursue their respective appeals.

**B**. *The County will suffer irreparable harm absent a stay of the New Injunction*.

The County's opening memorandum explained why it will suffer irreparable harm absent a stay of the New Injunction.  [192] Mem. at 10-12. Namely, the County maintained the New Injunction did not include any compliance standards or other means for measuring successful compliance with its terms and thus was neither narrowly drawn nor the least intrusive means for remedying any purported violation of federal rights at RDC.  *Id*.  The County also argued the New Injunction could cause irreparable harm because it impermissibly inserts the Court into the day-to-day operations of the RDC, something the Fifth Circuit counsels courts not to do.  *Id*.  Lastly, the County contended the loss in funds required to be paid to the monitors to oversee the New Injunction would lead to irreparable harm for the County.  *Id*. at 12.  In opposition, Plaintiff claims the County offers conflicting arguments and that the costs of monitoring the New Injunction "should" be less than the costs of monitoring the [8] Consent Decree. [198] Opp'n at 12-14.

Turning first to Plaintiff's "conflicting arguments" position, this is a red herring and does nothing to overcome the fact that leaving in place the New Injunction and its compliance requirements while the parties prosecute their respective appeals will subject the County to irreparable harm.  The New Injunction's provisions excessively insert this Court into the RDC's day-to-day operations, addressing such global issues as the broadly named, all-inclusive concept of "protection from harm" to tasks as specific and fundamental as drafting use of force reports by RDC staff, *see* [192] Mem. at 11.  As such, the New Injunction presents the very situation against which the Fifth Circuit cautions: it "necessarily interferes with [the County's] flexibility to address

3

the facts on the ground, which, as has been repeatedly recognized in this litigation, are ever-changing." *Valentine v. Collier*, 978 F.3d 154, 165 (5th Cir. 2020).  At the same time, the New Injunction does not include any outcome measures or any goals against which the County can set its sights in hopes of complying with and bringing to an end these and other provisions contained in the New Injunction.

This latter point, irreparable injury caused by a lack of any meaningful, specific goals that the County can aim to satisfy in order to end the New Injunction appears completely lost on Plaintiff.  Instead, Plaintiff blindly claims the County's arguments—that the New Injunction's provisions excessively interfere with RDC's day-to-day operations while failing to include any compliance standards or outcome measures that the County can aim to satisfy and thus bring those same provisions to an end—somehow creates a contradiction. [198] Opp'n at 12-13.  This, in turn, leads to precisely the situation that led to the County's termination motion: of a broad, ambiguous injunction whose existence remains viable through the subjective interpretations, measurements, and opinions of monitor and her consultants. As the Fifth Circuit has cautioned, however, this sort of federal court micromanagement of RDC should be avoided.  *See Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004) (citing *Bell v. Wolfish*, 441 U.S. 520, 562 (1979)).

Lastly, Plaintiff's toss-in response to the County's contention related to its financial losses occasioned by the continued monitoring of yet another injunction is without merit. Plaintiff offers no tangible support for its assumption that the monitors' costs will be less, and even if they were, lower costs will continue to drain the County's limited resources.  Plaintiff similarly fails to explain its conclusory claim that the County has "ignored" the monitors' reports and technical assistance, and the irony of Plaintiff's suggestion that the monitors have been helpful is laid bare by the fact

the Court decided to appoint a receiver and directed the monitors to cease operations within thirty (30) days of a receiver's appointment.

In sum, Plaintiffs have failed to refute the County's showing of irreparable harm.

**C**. ***A stay is in the public interest and will not substantially injure other parties interested in the proceeding***.

In its stay motion, the County reasoned that individualized relief was not at issue in this case, and a stay of the New Injunction would not substantially injure Plaintiff. *See* [192] Mem. at 12. The County further contended there was no evidence the New Injunction will be helpful in improving conditions at RDC, and, as shown in its analysis of the first element related to success on the merits, Plaintiff did not establish "continuous and ongoing violations" within the meaning of the PLRA's relevant provisions. *See id.* at 12-13.

Apparently seeking to downplay the fact this case does not involve individual plaintiffs, Plaintiff cites three cases, but none arise from a context such as this, where Plaintiff is the United States and detainees' rights are at issue.  For example, this case does not involve an individual plaintiff claiming deprivation of First Amendment rights. *Compare Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.") (citation omitted).  This also is not a case involving individual plaintiffs who have established that their constitutional rights are being violated on an ongoing basis; rather, whether there are any ongoing constitutional rights violations is precisely what is in dispute on appeal in this case. *Compare BST Holdings, L.L.C. v. Occupational Safety & Health Admin., United States Dep't of Lab.*, 17 F.4th 604, 618 (5th Cir. 2021) ("For the individual petitioners, the loss of constitutional freedoms 'for even minimal periods of time . . . unquestionably constitutes irreparable injury.'") (quoting *Elrod*, 427 U.S. at 373).

Plaintiff's reliance on a third case, *Obama for America v. Husted*, is odd indeed.  697 F.3d 423, 436 (6th Cir. 2012) (citations omitted).  *Husted* appears to contradict Plaintiff's position that impairment of constitutional rights automatically constitutes irreparable injury by suggesting that when "constitutional rights are threatened or impaired" that will give rise only to a presumption of irreparable injury. *See id*.  Even so, any such presumption is refuted by the very fact that the County disputes any such constitutional rights violations are current and ongoing (as required by the PLRA) and that dispute is now squarely before the Fifth Circuit.

Lastly, Plaintiff's argument based on the "federal interest in assuring the supremacy of [federal] law" arises from a context entirely distinct from this case, the Eleventh Amendment.  *See Green v. Mansour*, 474 U.S. 64, 67 (1985) (presenting question of whether, under the Eleventh Amendment, federal courts have certain powers over state officials and finding that a remedy entered against a state official which is designed to end a continuing violation of federal law is what gives life to the Eleventh Amendment).  Aside from arising in a different context, Plaintiff's reliance on its interest in the supremacy of federal law wholly ignores the counter federal interest in staying out of the minutiae of prison operations.  *See, e.g.*, *Bell*, 441 U.S. at 562.

At bottom, Plaintiff has failed to establish that staying the New Injunction will result in substantial injury to it, and Plaintiff has offered no evidence that it might result in substantial injury to any other party interested in this proceeding. Consequently, these final two elements—whether a stay is in the public interest and whether a stay will substantially injure other parties interested in the proceeding—both weigh in favor of staying the New Injunction.

**D.  *Plaintiff's argument regarding enjoining the [8] Consent Decree is a non-starter*.**

Plaintiff's argument that staying the [169] New Injunction would somehow restore the [8] Consent Decree unless the former is enjoined is a nonstarter.  On April 13, 2022, the Court entered

its order granting in part and denying in part the County's [111] Motion to Terminate or, Alternatively, to Modify the Consent Decree.  The Court expressly observed "the County's alternative request—for the Consent Decree to be dramatically scaled back—is . . . due to be granted." [168] Order Amending Consent Decree at 2.  The Court concluded, "[a] new injunction with only the preserved and modified paragraphs shall issue." *Id*. at 149.  As these provisions make clear, the [8] Consent Decree came to an end upon entry of the Court's [168] Order "dramatically scal[ing] back" the [8] Consent Decree, and a "new injunction with only the preserved and modified paragraphs" was issued.  Thus, far from resurrecting the [8] Consent Decree, staying the [169] New Injunction simply returns the parties to the point at which the Court had disposed of the consent decree yet not entered the [169] New Injunction.  Any other reading would render the [168] Order a nullity.

## CONCLUSION

For the foregoing reasons, the County respectfully requests an order staying the New Injunction.

Dated:  August 1, 2022.

PD.38231891.1

Respectfully submitted,

**PHELPS DUNBAR, LLP**

BY:   */s/ Nicholas F. Morisani*
Reuben V. Anderson, MB #1587
W. Thomas Siler, Jr., MB #6791
James W. Shelson, MB #9693
Nicholas F. Morisani, MB #104970
Loden P. Walker, MB#105996
4270 I-55 North
Jackson, Mississippi 39211-6391
Post Office Box 16114
Jackson, Mississippi  39236-6114
Telephone: 601-352-2300
Telecopier: 601-360-9777
Email: reuben.anderson@phelps.com
tommy.siler@phelps.com
jim.shelson@phelps.com
nick.morisani@phelps.com
loden.walker@phelps.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that on August 1, 2022, I had this Memorandum electronically filed with the Clerk

of the Court, using the CM/ECF system, which sent notification of such filing to all counsel of

record in this matter.

*/s/ Nicholas F. Morisani*
Nicholas F. Morisani