IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF MISSISSIPPI

NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> PLAINTIFF, ) <br> ) <br> v. ) <br> ) <br> ) <br> ) <br> HINDS COUNTY, ET AL., ) <br> ) <br> DEFENDANTS. ) <br> ) | Case No.: 3:16-cv-00489-CWR-RHWR |

**UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF**

**MOTION FOR RECONSIDERATION**

The United States respectfully submits this Memorandum of Law in Support of its Motion for Reconsideration, pursuant to Federal Rules of Civil Procedure 60(b) and 62.1, asking that the Court reconsider its termination of Section K of the 2016 Consent Decree.  Settlement Agreement Between the United States of America and Hinds County, Mississippi Regarding the Hinds County Jail, ECF No. 8-1 (July 19, 2016) ("Consent Decree").  Section K governs conditions of confinement for youth charged as adults.  Since 2019, Defendants have confined all of those youth at Henley-Young Juvenile Justice Center ("Henley-Young").  On October 1, 2022, Henley-Young housed 34 youth charged as adults.

In terminating Section K, this Court cited its reluctance to interfere with a separate consent decree also covering conditions at Henley-Young.  *J.H. v. Hinds Cnty.*, No. 3:11-CV-327-DPJ-FKB (S.D. Miss. filed June 1, 2011).  Order Amending Consent Decree, ECF No. 168

1

at 110 ("Order"). The Court instructed that, "[o]n a going-forward basis, therefore, concerns about Henley-Young are best submitted to the discretion and sound judgment of the Presiding Judge in that case." *Id.* The *J.H.* decree now has been terminated. *J.H.*, No. 3:11-CV-327-DPJ-FKB, Order Granting Motion to Terminate Extended Third Amended Consent Decree, ECF No. 196 (S.D. Miss. Oct. 13, 2022) (Exh. A).

Meanwhile, the record before the Court shows, and the Court has recognized, that ongoing violations of these youths' constitutional rights persist. Section K remains necessary to remedy ongoing constitutional violations, and the Court should reconsider its termination of those provisions. The United States therefore asks this Court to exercise its broad discretion under Rule 60(b) to issue an indicative ruling pursuant to Rule 62.1(a)(3) stating that, if the Court of Appeals remands for this purpose, the Court will modify its Order Amending Consent Decree to reinstate all provisions that remain necessary to address ongoing violations of youthful detainees' rights. Those provisions include all Section K provisions except the sight and sound provision (provisions 78, 79, 81, 82, 83, and 84).

## BACKGROUND

In July 2016, this Court entered the Consent Decree resolving the United States' allegations that Defendants were responsible for the unconstitutional conditions of confinement at the Hinds County Jail (the "Jail").[1] Consent Decree, ECF No. 8-1. The Consent Decree addressed the rights of both adult detainees at the Jail, and youth charged as adults. *See id.* As to youth specifically, the Consent Decree required Defendants to ensure that youth charged as

---

[1] The Consent Decree defined the Jail to include the Raymond Detention Center (RDC); the Work Center; the Jackson Detention Center (currently used by the County as a court holding facility for persons in the Sheriff's custody); and any additional or replacement facility used to house County detainees, which now includes Henley-Young. *See* Consent Decree, ECF No. 8-1 at ¶ 16.

2

adults would be separated by sight and sound from adult detainees, *and* to ensure that they would be provided care and services appropriate for juveniles, some of whom have serious mental health needs and other special needs. *See* Consent Decree, ECF No. 8-1, Section K. In 2020, the parties entered into another stipulated order to resolve the United States' contempt motion stemming from the County's failure to comply with the Consent Decree. Stipulated Order, ECF No. 60-1 (Jan. 16, 2020). The 2020 Stipulated Order imposed additional requirements on Defendants to address staffing, leadership, and programming deficiencies affecting youth charged as adults. *See id.* at Section V.

On January 21, 2022, Defendants moved to terminate the Consent Decree pursuant to the Prison Litigation Reform Act, 18 U.S.C. § 3626 ("PLRA"). Motion to Terminate, or Alternatively, Modify Consent Decree, ECF No. 111 (Jan. 21, 2022). The Court held an evidentiary hearing in February and March 2022. On April 13, 2022, the Court issued new orders terminating some provisions of the Consent Decree while keeping others; among the terminated provisions was the entirety of Section K, the provisions governing youthful detainees. Order, ECF No. 168 at 110 (April 13, 2022); *see also* the New Injunction, ECF No. 169 (Apr. 13, 2022) (excluding, among other provisions, Section K of the Consent Decree governing conditions for youthful detainees).

The Court noted that the Defendants had transferred youth charged as adults from the adult Jail to Henley-Young, a facility designed primarily for short-term housing of adjudicated youth. *See* Order, ECF No. 168 at 110. The transfer meant that the youth were separated by sight and sound from adults. The Court also found, however, that Defendants were in only partial compliance with Consent Decree paragraphs 78, 79, 81, 82, 83, and 84. *Id.* These provisions required Defendants to place youth charged as adults in a facility that could provide

3

appropriate assessments, housing, education, mental health services, and other programs designed to meet their needs; imposed training requirements for staff supervising youth; and imposed restrictions on the use of solitary confinement for youth.[2] *See* Consent Decree, ECF No. 8-1, Section K.  The record before the Court showed that Defendants' failure to comply with all of these provisions continues to place youth charged as adults at unconstitutional risk of harm.  As the Court found, Defendants' inadequate level of compliance with the Consent Decree's requirements for staff training "is insufficient to safeguard youth detainees' constitutional right to protection from harm," citing an incident in which a Henley-Young officer used inappropriate force on a youth and describing the incident as "unconstitutional."  Order, ECF No. 168 at 65–66.  The Court cited additional examples of dangerous incidents and ongoing problems at Henley-Young in its discussions of problems affecting the overall Jail system.  *See id.* at 85–86 (citing a report of a disturbance and sexual assault at Henley-Young as an example of the County's non-compliance with sexual safety provision of the Consent Decree, and of the ongoing risk of harm due to inadequate staffing and supervision); *id.* at 53 n.13 (noting that Monitor's expert Mr. Moeser cited contraband as a top concern at Henley-Young).

Nevertheless, the Court terminated the youthful prisoners provisions because

> there is a separate Consent Decree governing the County's detention center for Youthful Prisoners, Henley-Young.  The Court wishes to avoid interference with that Consent Decree.  On a going-forward basis, therefore, concerns about Henley-Young are best submitted to the discretion and sound judgment of the Presiding Judge in that case.  *See J.H. v. Hinds County*, No. 3:11-CV-327-DPJ-FKB (S.D. Miss. filed June 1, 2011).

---

[2] The Consent Decree also required compliance with federal law applicable to youth held in institutional settings.  *See* Consent Decree, ECF No. 8-1, Section K (citing Individuals with Disabilities Education Act, 20 U.S.C §§ 1400–1482).

Order, ECF No. 168 at 110; *see also J.H.*, No. 3:11-CV-327-DPJ-FKB (private class action case and resulting consent decree concerning conditions of confinement for youth held at Henley-Young, a facility which at the inception of the *J.H.* case held only youth in custody of the Hinds County Youth Court). Thus, in terminating Section K, the Court presumed that the *J.H.* decree would continue to exist and would provide oversight of detained youths' constitutional rights "[o]n a going-forward basis." Order, ECF No. 168 at 110.

Both parties have appealed the Order amending the consent decree and the New Injunction. *See* Defendants' Notice of Interlocutory Appeal, ECF No. 185 (June 9, 2022); United States' Notice of Appeal, ECF No. 186 (June 10, 2022).

On October 13, 2022, the court in *J.H.* granted defendants' unopposed motion to terminate the decree. *See* Exh. A. In granting the unopposed motion, the court in *J.H.* made no findings about defendants' compliance with the consent decree or the constitutionality of conditions at Henley-Young. See *id.*

## DISCUSSION

This Court should reconsider its decision to terminate the youthful prisoner provisions of the Consent Decree, because the termination of the *J.H.* decree constitutes a significant change in factual conditions or law. Circumstances such as these warrant equitable relief pursuant to Federal Rule of Procedure 60(b), which permits relief of a final judgment, and Rule 62.1, which

permits the district court to issue an indicative ruling on a Rule 60 motion while an appeal is pending.

### A. Legal Standard

Federal Rule of Civil Procedure 60(b) allows a district court, in its discretion, to relieve a party from an otherwise final judgment pursuant to any one of several enumerated reasons. *See* Fed. R. Civ. P. 60(b). The court must strike a "delicate balance between the sanctity of final judgments . . . and the incessant command of a court's conscience that justice be done in light of all the facts." *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980) (quoting *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 77 (5th Cir.1970)). The standard for this review is "flexible and the district court necessarily has great authority over modification motions." *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 439 (5th Cir. 2011) (hereinafter *LULAC*). The moving party bears the burden of proving "that modification is warranted," whether by lessening the requirements of the judgment or by "impos[ing] a new and more effective remedy." *Id.* at 438 (citing *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384 (1992)).

The court may grant relief if "applying [the judgment] prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). Typically, in institutional reform cases, this subsection of the Rule is invoked by defendants arguing that changed circumstances warrant termination of obligations under a consent decree or other judgment. *See, e.g.*, *Horne v. Flores*, 557 U.S. 433, 447 (2009) (relief from a judgment is appropriate if "a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest") (citation omitted); *Rufo*, 502 U.S. at 383 (court may grant relief if movant shows that a "significant

6

change in circumstances warrants revision"). However, changed circumstances can warrant relief pursuant to Rule 60(b)(5) sought by either party. *See, e.g.*, *LULAC*, 659 F.3d at 439 (explaining that modification of a consent decree sought by both parties may be justified "where there were no factual or legal changes other than recognition of the fact that the initial remedy had failed").

The court also may grant relief from a judgment for "any . . . reason that justifies [such] relief." Fed. R. Civ. P. 60(b)(6). Although courts use this final catch-all reason sparingly, and only when none of the other subsections apply, Rule 60(b)(6) can justify appropriate relief in "extraordinary circumstances." *See, e.g.*, *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 747 (5th Cir. 1995) (collecting cases). Appropriate grounds for relief pursuant to Rule 60(b)(6) include an unanticipated intervening change of circumstances — i.e., the Rule allows the Court to grant relief "to cover unforeseen contingencies" in order to accomplish justice. *Steverson v. GlobalSantaFe Corp.*, 508 F.3d 300, 303 (5th Cir. 2007) (finding that the district court abused its discretion in denying plaintiff's Rule 60(b) motion, where plaintiff contended he was not adequately informed of the rights he was relinquishing in a workplace-injury-related settlement) (quoting *Stipelcovich v. Sand Dollar Marine, Inc.*, 805 F.2d 599, 604–05 (5th Cir.1986)).[3]

Although a court may not grant relief pursuant to Rule 60(b) while an appeal is pending, it may issue an indicative ruling on a motion for relief that is barred by a pending appeal. Fed. R. Civ. P. 62.1. In such an indicative ruling, the court may "state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial

---

[3] A motion seeking relief under Rule 60(b)(5) or (b)(6) must be made within a "reasonable" time. Fed. R. Civ. P. 60(c)(1). Because it has been only a few weeks since the *J.H.* decree was terminated, the United States' Rule 60(b) motion is timely.

7

issue." Fed. R. Civ. P. 62.1(a)(3). The district court may then "decide the motion if the court of appeals remands for that purpose." Fed. R. Civ. P. 62.1(c).

### B. Analysis

This Court should reconsider its termination of Section K, determine which provisions are necessary to address ongoing rights violations, and issue an indicative ruling stating that it will restore the provisions upon remand of the New Injunction, ECF No. 169.

Relief pursuant to Rule 60(b) is warranted here, because circumstances have changed, drastically, in the short time since the Court terminated Section K of the Consent Decree. The reason for the Court's termination of all provisions protecting the rights of youthful detainees no longer exists, because, in a development unforeseen at the time of this Court's ruling on Section K, the *J.H.* decree now has been terminated. Therefore, there is no longer any risk of interference with that decree, and there is no alternative court oversight to address ongoing constitutional violations at Henley-Young.

The record before this Court shows that youth charged as adults and detained in Hinds County continue to be held in unlawful conditions that cause them harm and expose them to an unacceptable risk of harm. As a result, the equities in this case, the interests of justice, and the public interest all weigh strongly in favor of this Court reinstating requirements that Defendants bring conditions for youthful detainees into compliance with federal law. *See, e.g.*, *LULAC*, 659 F.3d at 437 (Rule 60(b) relief is warranted where enforcement of the judgment "without modification would be detrimental to the public interest") (quoting *Rufo*, 502 U.S. at 384); *Steverson*, 508 F.3d at 305 (noting that Rule 60(b) "should be liberally construed in order to

achieve substantial justice") (quoting *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir.1981)).

Although the Consent Decree allowed Defendants to use Henley-Young to achieve sight-and-sound separation of youth from adult detainees, the Consent Decree also required that Henley-Young, or any other alternative youth facility, meet the additional provisions governing conditions for youth charged as adults. *See* Consent Decree, ECF No. 8-1, Section K (setting forth, in paragraphs 78–79 and 81–84, requirements for programming for youth with serious mental illness and disabilities, classification and housing, staff training, use of segregation, and appropriate education and behavioral treatment programming). As the Court is aware, such youth may require longer-term housing and more extensive services than youth adjudicated by a juvenile court. *See* Court-Appointed Monitor's 15th Monitoring Report, ECF No. 101 at 90–108 (Nov. 24, 2021).

Since entry of the Consent Decree, Henley-Young has never met the requirements of the Consent Decree or federal law, and Defendants had promised to take additional action. *See, e.g.*, Stipulated Order, ECF No. 60-1, Section V (setting forth additional provisions related to hiring of appropriate personnel and programming for youthful detainees). The United States and the Court-appointed Monitor reported serious violations at Henley-Young, including inadequate staffing and supervision, staff training, mental health and behavioral services, classification, and educational programs. *See* 15th Monitoring Report, ECF No. 101 at 90–108; *see also* Stipulated Order, ECF No. 60-1. Indeed, even while terminating Section K of the Consent Decree, the Court found that Defendants have failed to reach compliance with Section K, and that the conditions for youthful detainees remain inadequate. *See* Order, ECF No. 168 at 65, 110.

Despite this record, the Court terminated the "entire section" of the Consent Decree governing conditions for youthful detainees. Order, ECF No. 168 at 110. The Court's Order did so seemingly based on two findings. First, the Court noted that Defendants were in compliance with one provision, requiring sight-and-sound separation of youthful detainees from adult detainees. *Id.* ("The original sin leading to these sections of the Consent Decree was the placement of youth at RDC prior to 2016. There have been no youth placed at the RDC since February 2019."). Second, the Court found that "[t]hough the County is only in partial compliance with paragraphs 78, 79, 81, 82, 83, and 84, there is a separate Consent Decree governing the County's detention center for Youthful Prisoners, Henley-Young." *Id.* The Court terminated Section K in its entirety, "to avoid interference" with the *J.H.* consent decree. *Id.* The Court advised that, going forward, "concerns about Henley-Young" should be submitted to the judge presiding over the *J.H.* case.[4]

At the time of this Court's ruling, there was a pending motion to terminate the *J.H.* decree. *J.H.*, No. 3:11-CV-327-DPJ-FKB, Motion to Terminate, or, Alternatively, Modify Consent Decree, ECF No. 173 (Mar. 18, 2022).[5] The decree in *J.H.* was stayed as of April 17,

---

[4] The United States, however, was not a party to the *J.H.* consent decree and did not have authority to seek to enforce its terms. It is well established that, where Congress has created a public enforcement scheme to complement private enforcement, "the Government's right and duty to seek an injunction to protect the public interest exist without regard to any private suit or decree." *United States v. Borden Co.*, 347 U.S. 514, 519 (1954); *see also United States v. East Baton Rouge Parish Sch. Bd.*, 594 F.2d 56, 58 (5th Cir.1979) (holding that private plaintiffs' prior suit to enforce the Voting Rights Act does not preclude a similar challenge by the United States).

[5] Defendants and their counsel did not suggest, during the evidentiary hearing before this Court or at any other time, that they would soon be seeking termination of the *J.H.* decree. Indeed, defense counsel cited the *J.H.* decree as a reason this Court should not oversee conditions at Henley-Young in this case. *See* Transcript, Vol. 1, Feb. 14, 2022, 43:20–22 ("Henley-Young at the time [the Consent Decree was entered into] was under a separate decree. It still is. We have dueling decrees dealing with Henley-Young. We don't need that."). Yet just over a month later Defendants—the same party, represented by the same counsel as in this case—moved to terminate that separate decree. *Cf.* Fed. R. Civ. P. 60(b)(3) (court may grant relief if it is warranted due to "misrepresentation . . . by an opposing party").

2022, pursuant to the PLRA's automatic stay provision, 18 U.S.C. § 3626(e)(2). *See J.H.*, No. 3:11-CV-327-DPJ-FKB, ECF No. 183 (S.D. Miss. Apr. 26, 2022). Then, on October 13, 2022, the *J.H.* court issued an order terminating the consent decree in that case. *See* Exh. A. Therefore, youth charged as adults, who never were the focus of the *J.H.* decree to begin with, no longer are under the protection of the *J.H.* orders. Nor is reinstatement of the *J.H.* decree likely, as it was terminated by the court on Defendants' motion and with plaintiffs' consent. *See id.*

In terminating Section K, the Court did not find that there were no ongoing violations or apply the PLRA's requisite "need-narrowness-intrusiveness" analysis. 18 U.S.C. § 3626; *see also Brown v. Plata*, 563 U.S. 493, 539, 541 (2011) (explaining that the PLRA requires that an injunction's terms be narrowly tailored to achieve an "efficacious remedy" for unlawful conditions of confinement). Yet, the record contained extensive evidence of ongoing constitutional violations at Henley-Young. It is true, as the Court found, that Defendants do not currently house any youth at the adult jail. However, the Court also correctly found that Defendants never have achieved compliance with Consent Decree paragraphs 78, 79, 81, 82, 83, and 84. *See* Order, ECF No. 168 at 110. The record before the Court demonstrated that these provisions remain necessary to correct ongoing constitutional violations.

The Court found that Defendants' failure to comply with Consent Decree requirements as to staffing and staff training continues to place youthful detainees at unacceptable risk of harm. *See* Order, ECF No. 168 at 65–66 (citing Transcript, Vol. 5 at 901, 904, 907; PX-75 at 1 (email from Henley-Young Interim Director Crisler admitting that the staff member who used inappropriate force on youth "had NOT received proper training," and had not received "ANY formal training")). Additional examples of this harm and risk of harm are evidenced in the record. *See, e.g.*, United States' Proposed Findings of Fact and Conclusions of Law Re:

February 14, 2022, Evidentiary Hearing, ECF No. 138 at ¶¶ 149-54 (Feb. 11, 2022) (FOF). Therefore, the Court should reconsider its termination of paragraph 82, imposing staff training requirements.

While the Court's order discussed how failure to adequately train Henley-Young staff resulted in one alarming use-of-force incident in particular, *see* Order, ECF No. 168, at 65–66, that incident constitutes only one example of how extreme staffing deficiencies at Henley-Young, and the Defendants' failure to address them and to implement the training, housing and classification, programming, and other requirements of the Consent Decree place youth at unacceptable risk of harm, amounting to ongoing constitutional violations. The Court should reconsider its termination of paragraphs 78, 79, 81, and 84, which govern classification, housing, education, and behavioral and mental health programming, all of which are necessary to correct ongoing violations of youth's rights. The record before the Court showed that Defendants have failed to make meaningful progress in these areas, largely due to low staffing and high staff turnover, and supervision of youth remains inadequate to ensure safety and necessary programming. *See, e.g.*, FOF, ECF No. 138 at ¶ 147 (citing Monitor's 15th Report, ECF No. 101, PX-041, at 5–6, 94–102; Frazier's Letter, PX-012); Transcript, Vol. 5 at 890:01–900:15 (Mr. Moeser discussing failures to increase staff salaries and ensure appropriate staff coverage at Henley-Young, and discussing the demanding and challenging nature of the job of staff supervising detained youth). Despite the Monitors' repeated identification of this problem and provision of technical assistance, the youth at Henley-Young continue to suffer due to inadequate staffing, poor supervision, and the programming failures that result. *See* FOF, ECF No. 138 at ¶ 147 (citing Monitor's 14th Report, PX-036, at 93; Monitor's 13th Report, PX-038, at 88; Monitor's 12th Report, PX-037, at 87; Monitor's 11th Report, PX-036, at 7, 88; Monitor's 10th

Report, PX-035, at 91–92; Monitor's 9th Report, PX-034, at 71–72); FOF, ECF No. 138 at ¶ 155 (describing inadequate mental health and behavioral programming and citing Monitor's 15th Report, ECF No. 101, PX-041, at 97, 58, 98, 104-05); FOF, ECF No. 138 at 156–57 (describing inadequate education and citing Monitor's 15th Report, ECF No. 101, PX-041, at 100, and PX-046, an incident report documenting a physical fight among multiple youth during what should have been school time); Transcript, Vol. 5 at 941:22–942:06, 944:24–945:07 (Mr. Moeser testifying that youth at Henley-Young are at risk of suicide and self-harm, and that suicide attempts and self-harm incidents constitute approximately 25 percent of the incident reports he receives, and describing risk of suicide and other mental health risks related to short staffing); Transcript, Vol. 5 at 951:22–953:05 (Mr. Moeser describing assault of a youth by other youthful detainees while youth were "doing schoolwork on the unit" and were able to "mill[] around" and go in and out of rooms).

Since the Court issued its Order Amending Consent Decree, Defendants still are no nearer compliance with their legal obligations to youthful detainees. The Court may take judicial notice, *see* Fed. R. Evid. 201, of recent reports in the press suggesting ongoing dangerous, unconstitutional conditions at Henley-Young. For example, during a weekend night shift in late August 2022, a serious incident reportedly occurred in which multiple youth rushed an officer, took her keys and radio, unlocked several doors, and physically fought; one youth was transported by ambulance to receive medical treatment for his injuries. *See* Anthony Warren, *Teen Injured During "Skirmish" at Henley-Young-Patton Juvenile Justice Center*, WLBT (Aug. 29, 2022), https://www.wlbt.com/2022/08/29/teen-injured-during-skirmish-henley-young-patton-juvenile-justice-center/ (quoting County Administrator Kenny Wayne Jones describing details of the incident). In May, a youth reportedly escaped from the facility. *See* Anthony Warren,

13

"Extraordinary Escape": More Details Emerge on Teen's Escape from Henley-Young, WLBT (May 18, 2022), https://www.wlbt.com/2022/05/19/extraordinary-escape-more-details-emerge-teens-escape-henley-young/ (quoting County Administrator Jones describing the incident). And, as the Court is well aware, perennial physical plant problems at Henley-Young, including low water pressure, often result in a lack of running water at the facility, requiring youth to be transported to the Raymond Detention Center to take showers; these water problems have been exacerbated by the most recent water crisis in Jackson. *See, e.g.*, Mina Corpuz, *Juvenile Detention Facility not Severely Impacted by Water Crisis, Officials Say*, MISSISSIPPI TODAY (Aug. 31, 2022), https://mississippitoday.org/2022/08/31/juvenile-detention-facility-not-severely-impacted-by-water-crisis-officials-say/ (noting, despite headline, that water had to be brought in to Henley-Young to allow residents to flush toilets); *cf.* Transcript, Vol. 6, 1042:02–1043:03 (Feb. 22, 2022) (Monitor's expert Jim Moeser testifying that Henley-Young is without running water "several times a year," and that when the water is out the youth are transported to Raymond for showers).

Given the termination of the *J.H.* decree, and the serious ongoing violations at Henley-Young, the equities weigh strongly in favor of restoring Section K to the Consent Decree in this case. Under the "flexible" standard for assessing a Rule 60(b) motion, the Court should consider the equities and avoid perpetuating constitutional violations. *LULAC*, 659 F.3d at 439. Here, termination of the Consent Decree's protections for youthful detainees is not equitable when the legal justification for deferring to another court no longer exists, and this Court's expectation that concerns about Henley-Young be directed to the court overseeing *J.H.* cannot be fulfilled.

## CONCLUSION

For the foregoing reasons, the Court should issue an indicative ruling pursuant to Federal Rules of Civil Procedure 60(b) and 62.1.  In its ruling, the Court should determine that the provisions of Section K of the Consent Decree are necessary to correct ongoing constitutional violations as to youth charged as adults, and are narrowly tailored and the least intrusive means of achieving constitutional conditions, as required under the PLRA, 18 U.S.C. § 3626.  In addition, the Court should indicate that it will, upon remand, restore all Section K provisions except the sight and sound provision (provisions 78, 79, 81, 82, 83, and 84); incorporate the remedies into the New Injunction, ECF No. 169; retain jurisdiction over conditions at the Henley-Young (or whatever facility or facilities the Defendants use to house youth charged as adults); and grant any other necessary relief.

**FOR THE UNITED STATES:**

| | |
|---|---|
| DARREN J. LaMARCA<br>United States Attorney<br>Southern District of Mississippi | KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
| | STEVEN H. ROSENBAUM<br>Chief<br>Civil Rights Division<br>Special Litigation Section |
| MITZI DEASE PAIGE (MS #6014)<br>Assistant U.S. Attorneys<br>U.S. Attorney's Office<br>Southern District of Mississippi<br>501 E. Court Street – Ste. 4.430<br>Jackson, MS 39201<br>mitzi.paige@usdoj.gov<br>(601) 973-2840<br>(601) 965-4409 (fax) | LAURA L. COWALL (DC #481379)<br>Deputy Chief<br>laura.cowall@usdoj.gov<br>(202) 514-1089<br>(202) 514-0212 (fax) |

/s/ Helen Vera
HELEN VERA (DC #1025735)
Trial Attorney
helen.vera@usdoj.gov
(202) 305-0132
(202) 514-0212 (fax)

CHRISTOPHER N. CHENG (PA #69066)
christopher.cheng@usdoj.gov
Trial Attorney
United States Department of Justice
Civil Rights Division
Special Litigation Section
150 M St., N.E.
Washington, DC  20002


DATED:       November 2, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2022, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

*/s/ Helen Vera*
Attorney for the United States
United States Department of Justice
Civil Rights Division, Special Litigation Section
950 Pennsylvania Avenue, NW
Washington, DC 20530