IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA                                        PLAINTIFF

VS.                              CIVIL ACTION NO. 3:16-CV-489-CWR-RHWR

HINDS COUNTY, ET AL.                                           DEFENDANTS

## MEMORANDUM IN SUPPORT OF URGENT AND NECESSITOUS MOTION TO STAY RECEIVER ORDERS PENDING APPEAL

Defendants Hinds County, Mississippi, and Sheriff Tyree Jones, in his official capacity (collectively, "the County"), respectfully submit this Memorandum in support of their Motion to Stay Receiver Orders Pending Appeal (ECF 227).

### INTRODUCTION

On October 31, 2022, the Court entered an Order Appointing Receiver (ECF 215) and an Order outlining the Receiver's duties (ECF 216) ("Receiver Orders"). On November 1, 2022, the County filed Notices of Appeal of the Receiver Orders. The Receiver Orders should be stayed pending appeal because, as explained below, the four factors the Court must analyze to determine whether to grant a stay pending review on appeal militate in favor of a stay. First, the County is likely to succeed on the merits regarding whether the Receiver Orders exceed the permissible scope of prospective relief under the Prison Litigation Reform Act (PLRA), 18 U.S.C. § 3626. The Receiver Orders are the final sanction for the violation of a Consent Decree that is no longer operative because it exceeded constitutional minimums. Second, the County will be irreparably injured absent a stay because the Receiver Orders completely divest the County of authority over the Raymond Detention Center (RDC) and invest the Receiver with total authority over RDC. Third, a stay will not substantially injure other parties interested in the proceeding.

Fourth, a stay is in the public interest because the Receiver is utterly unaccountable to the voters and taxpayers of Hinds County.

Lastly, because the appeals are proceeding in the Fifth Circuit, receivership costs and actions are beginning, the timelines in the Receiver Orders have commenced, and the Receiver completely takes over the day-to-day operation of RDC on January 1, 2023, the County respectfully requests that this Court treat this Motion as urgent and necessitous under L.U.Civ.R. 7(b)(8) and decide it expeditiously.

## BACKGROUND

The Court is quite familiar with the procedural history of this case. On June 23, 2016, the United States of America sued the County under 42 U.S.C. § 1997, alleging the County deprived "prisoners of rights, privileges, or immunities secured and protected by the Constitution of the United States."[1] That same day, a joint motion seeking entry of a consent decree was filed (ECF 2). Less than one month later, a Consent Decree was entered on July 19, 2016 (ECF 8).

On November 23, 2021, the Court *sua sponte* entered an Order to Show Cause, directing the County to show cause as to why it should not be found in contempt and a receiver appointed to operate the RDC (ECF 100). On January 21, 2022, the County filed its Motion to Terminate the Consent Decree under the PLRA (ECF 111). The Court did not like this: "Rather than work to remedy the situation … the County moved to terminate or modify the Consent Decree under the [PLRA]" (ECF 204 at 2). Working to remedy the situation and moving to terminate or modify the Consent Decree, which the Court granted in part, are not mutually exclusive. The County incontrovertibly worked to remedy the situation. Although the Court wrote that not "enter[ing]

---

[1] ECF 1, Complaint, ¶ 1.

into the Consent Decree would have been ill-advised" (ECF 204 at 21, n. 16), it subsequently found that the Consent Decree exceeded constitutional minimums (ECF 168).

On February 4, 2022, before holding a hearing on the Order to Show Cause and the County's Motion to Terminate, the Court issued its First Order of Contempt (ECF 126). The Court subsequently held a hearing from February 14 to March 1, 2022. On April 13, 2022, the Court entered its Order Amending Consent Decree (ECF 168) and the New Injunction (ECF 169). Both the County and the United States timely appealed those orders (ECF 185, 186).

The Court issued a Second Order of Contempt on March 23, 2022 (ECF 165). The County sought reconsideration of that contempt Order (ECF 171). The Court issued an Order Denying the Motion for Reconsideration and Imposing Sanctions for Contempt (ECF 204). The County timely appealed that Order (ECF 212). On July 5, 2022, the County filed a Motion to Stay Proceedings Pending Appeal (ECF 191), which sought a stay of the New Injunction. The Court denied that Motion to Stay (ECF 211).

On October 31, 2022, the Court entered an Order Appointing Receiver (ECF 215) and an Order outlining the Receiver's duties (ECF 216). On November 1, 2022, the County timely appealed the Receiver Orders (ECF 217 and 218). The County now seeks a stay of the Receiver Orders pending the outcome of the appeals.

**ARGUMENT & AUTHORITIES**

**I.     The Receiver Orders Should Be Stayed.**

Courts weigh four factors to determine whether to grant a stay pending appeal: (1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will

substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

> A.  **The County is likely to succeed on the merits regarding whether the Receiver Orders exceed the permissible scope of prospective relief under the PLRA.**

The PLRA provides that "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1)(A). Under the PLRA, the term "prospective relief" means all relief other than compensatory monetary damages. 18 U.S.C. § 3626(g)(7). Because the Receiver Orders are not orders to pay monetary damages, they constitute prospective relief under the PLRA.

The PLRA prohibits courts from granting or approving "any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). This is the need-narrowness-intrusiveness analysis. The Receiver Orders do not survive that analysis.

On July 29, 2022, the Court entered an Order stating that it "will appoint a federal receiver to oversee operations at RDC" (ECF 204 at 26). The Court made clear that its "Order is intended to serve as the final sanction for the Court's two Orders of Contempt" (ECF 204 at 26). The Court's two Orders of Contempt (ECF 126, 165) found the County in contempt of the Consent Decree (ECF 8-1). But the Court has terminated vast portions of the Consent Decree (ECF 168) and entered a New Injunction (ECF 169). As of April 13, 2022, the Consent Decree no longer governed the operation of the RDC (see ECF 168). The Court replaced the Consent Decree with the New Injunction, finding that because the Consent Decree exceeded constitutional minimums,

it had "to be dramatically scaled back" (see ECF 168 at 2).  The Court has not found the County in contempt of the New Injunction.

The Receiver Orders necessarily exceed the need-narrowness-intrusiveness standard because they are the remedy for the violation of a decree that exceeded constitutional minimums, that was superseded by the New Injunction, and that is no longer operative.  Entering the Receiver Orders to remedy what the Court found to be violations of the Consent Decree is hardly narrowly drawn prospective relief because the Consent Decree is gone.  This factor weighs in favor of a stay for these reasons alone.

The County nonetheless notes that, in seeking a stay, a movant "need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay.  [I]f the balance of equities (i.e. consideration of the other three factors) is not heavily tilted in the movant's favor, the movant must then make a more substantial showing of likelihood of success on the merits in order to obtain a stay pending appeal."  *Brown v. Mid-Am. Apartments, LP*, No. 1:17-CV-307-RP, 2018 WL 9815614, at *2 (W.D. Tex. Oct. 22, 2018), (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565-66 (5th Cir. 1981)).  In this case, as shown below, the balance of the equities weighs heavily in favor of granting a stay. Therefore, the County "need only present a substantial case on the merits [involving] a serious legal question."  *Id*.  Whether the Receiver Orders exceed the permissible scope of prospective relief under the PLRA presents a substantial case on the merits that involves a serious legal question.  This is an additional and independent reason why this factor weighs in favor of a stay.

5

Moreover, the Court's analysis of the *Plata* factors in determining whether to appoint a Receiver was flawed.[2] The Court's analysis of the risk of harm is backward-looking in its focus on the Consent Decree which is no longer operative. "[A] current and ongoing violation is one that exists at the time the district court conducts the § 3626(b)(3) inquiry." *Castillo v. Seckinger*, 238 F.3d 339, 353 (5th Cir. 2001)  To the extent the Court mentioned matters that occurred after April 13, 2022, the date of the entry of the New Injunction, the Court's analysis is one-sided. The Court faulted the County for "abandoning" plans to open a dedicated mental health unit (ECF 204 at 10), but the New Injunction does not require one. The Court noted that David Parrish testified that "it is getting worse" in A-Pod (ECF 2014 at 13), but there have been no deaths, suicides, or overdoses at RDC since November 2021.[3]

The Court states that "less intrusive means" have failed (ECF 204 at 14-17), but it did not focus its analysis on the County's compliance with the New Injunction. Only 107 days elapsed between when the Court entered the New Injunction (ECF 169) and when the Court decided to appoint a Receiver (ECF 204 at 26). By focusing on events that occurred when the Consent Decree (ECF 8-1) was operative, the Court necessarily analyzed the County's compliance with a decree that, as the Court found, exceeded constitutional minimums. The Court selectively noted deficiencies in the physical plant of RDC (ECF 204 at 14-15) but did not mention that substantial improvements have undeniably been made to RDC's physical plant.[4]

---

[2] The Court identified the following as the "*Plata* factors:" "(1) Whether there is a grave and immediate threat or actuality of harm . . . ; (2) Whether the use of less extreme measures of remediation have been exhausted or prove futile; (3) Whether continued insistence [upon] compliance with the Court's orders would lead only to confrontation and delay; (4) Whether there is a lack of leadership to turn the tide within a reasonable period of time; (5) Whether there was bad faith; (6) Whether resources are being wasted; and (7) Whether a receiver is likely to provide a relatively quick and efficient remedy." Order at 5 (ECF 2014).

[3] July 19, 2022, Trail Tr. at 159:20-160:5.

[4] Feb. 24, 2022, Trial Tr., Vol. 8, at 1456-798; 1570-61.

In analyzing the risk of confrontation and delay, the Court stated that the County has a culture of inertia (ECF 204 at 18), but the County respectfully disagrees. The Court stated that the Monitor has shouldered the burden of financing and spearheading essential initiatives by hiring a policy development coordinator and a human resources consultant (ECF 204 at 17-18). The Monitor testified that Karen Albert, the policy development coordinator, was "already on my team" when the Monitor hired her to do policy development work.[5] The policy development coordinator and the human resources consultant work was performed before the New Injunction was entered. Regardless, the County funded 100% of the Monitor's budget, so the only financial "burden" the Monitor faced hiring a policy development coordinator and a human resources consultant was paying them with the County's money. The Court stated that the County's purported inertia caused the procurement of tables and chairs to remain unaccomplished (ECF 204 at 18), but the tables and chairs have been procured (ECF 204 at 18, n. 14). The Court describes the County's efforts to furnish the Monitor with documents she requested as "brazenness" (ECF 204 at 18), but that was the first site visit document production after the entry of the New Injunction, and it involved a new document coordinator. Although it could have gone better, characterizing it as "brazenness" is excessive. The Court's statement that the County has exhibited a "pattern of obstinance" (ECF 204 at 19) does not square with the Court's decision declining to make a finding that the County has engaged in bad faith (ECF 204 at 23).

The Court's analysis of wasted resources (ECF 204 at 19-21) is deficient. The Court stated that "[t]here is no sense in granting the County more time to do nothing" (ECF 204 at 17, n. 13), but recognized, as it must, that the County has spent millions of dollars improving the physical plant at RDC. That damage has occurred to some of the improvements that have been made does

---

[5] Feb. 23, 2022, Trial Tr., Vol. 7, at 1225:1-13; 1228:16.

PD.40305774.1

not mean the efforts were wasted, especially since the efforts were undertaken in compliance with the Consent Decree.

The Court's analysis of leadership is based on the Court's belief that "[t]he Hinds County Board of Supervisors is dysfunctional" (ECF 204 at 21).  It should go without saying that heated exchanges among members of public bodies are not unique to Hinds County.  Relevant to this action, it is undisputed that since January 2021, the Board has unanimously approved every matter that has come before it for a vote regarding detention services.[6]

The Court did not analyze the likelihood that a receivership will be quick, efficient, or successful.  It certainly will not be inexpensive.  There is no evidence in the record regarding how fast, if at all, the Receiver will improve conditions at RDC.  When the Monitor was asked about this during the prior evidentiary hearing, she testified as follows:

> Q. On the issue of remedy, do you have any facts which would indicate what the rate of progress would be under a receiver?
>
> A. No.[7]

Thus, the *Plata* factors further show that the County is likely to succeed on the merits.

### B. The County will be irreparably harmed absent a stay.

A receivership is the federal government's most invasive and powerful remedial tactic.[8] That tactic is not warranted here because the Order outlining the duties of the Receiver ("Scope of Receivership Order") (ECF 216) takes away all the County's authority and fiscal control over RDC and vests it in the Receiver.  The Scope of Receivership Order specifically divests the County of "all powers, authorities, rights, and privileges" it now possesses relating to RDC, and gives it all

---

[6] February 25, 2022 Trial Tr. vol. 9 at 1596, 1608-09.
[7] Feb. 24, 2022 Trial Tr., Vol. 8, at 1446:13-15.
[8] March 1, 2022 Trial Tr., Vol. 11, at 2179:22-24.

to the Receiver (ECF 216, § I, p. 2).  The bottom line is that the Receiver has complete authority over RDC, and the County's authority is nil.

The scope of the Receiver's authority over RDC is as complete as it is total.  The Receiver has complete authority over "all administrative, personnel, financial, accounting, contractual, and other operational functions for RDC" (ECF 216, § I, ¶ 4, p. 2). The Receiver is also authorized to "determine the annual RDC budget, including for staff salaries and benefits, medical and mental health services (including the medical provider contract), physical plant improvements, fire safety, and any other remedies needed to address the constitutional deficiencies documented in this case" (ECF 216, § II, ¶ 7, p. 5).

The County's budget is a zero-sum game.  More money for RDC means less money for other services, such as roads, bridges, and schools.  "Federalism concerns are heightened when … a federal court decree has the effect of dictating state or local budget priorities.  States and local governments have limited funds.  When a federal court orders that money be appropriated for one program, the effect is often to take funds away from other important programs." *Horne v. Flores*, 557 U.S. 433, 448 (2009).  By placing no meaningful check on the Receiver's authority to treat the County's budget as though RDC is the only item that the County legitimately must fund, the Receiver Order empowers the Receiver to take funds away from other important programs.  The Receiver's staggering budgetary authority could bankrupt the County, force the County to defund other legitimate funding needs, or raise taxes.  This kind of back-door order to raise taxes exceeds the permissible scope of prospective relief under the PLRA.  Nothing in the PLRA "shall be construed to authorize the courts, in exercising their remedial powers, to order … the raising of taxes."  18 U.S.C. § 3626(a)(1)(C).  The Receiver Order allows the Receiver to do through the back door (raise taxes) what the Court cannot do through the front door.

9

The Scope of Receivership Order appears to require the County to indemnify the Receiver even for the Receiver's intentional misconduct (ECF 216, § III, ¶ 6, p. 7). It gives the Receiver sweeping authority to hire staff, set their compensation, set their terms of service, and enter into contracts with them (ECF 216, § IV, ¶¶ 2 and 9, pp. 8, 10). In addition to giving the Receiver complete authority to set RDC's budget, the Receiver Order requires the County to pay all costs of the Receiver and his staff, and to fund "an initial operating fund" and a "Receiver's Fund Account" (ECF 216, § IV, ¶¶ 11, 13, 15 and 16, pp. 10-11).

The Scope of Receivership Order does not have a finite end date or objective standards for termination. Rather, "[t]he Receivership will end as soon as the Court finds that Defendants have remediated RDC's unconstitutional conditions and achieved substantial compliance with the Court's Orders" (ECF 216, § IV, ¶ 17, p. 11). This is a curious provision. The Receiver Order elsewhere states that the Receiver is "in day-to-day charge of RDC operations" (ECF 216, § I, ¶ 2, p. 2), the Receiver (not the County) "shall remedy the unconstitutional conditions at RDC," and the Receiver (not the County) shall implement the New Injunction and any other remedial orders that the Court may enter (ECF 216, § I, ¶ 3, p. 2). The termination of the Scope of Receivership Order is dependent on the Court finding that "Defendants have remediated RDC's unconstitutional conditions and achieved substantial compliance with the Court's Orders," even though the County has <u>no</u> authority over RDC going forward.

For these reasons, the County will be irreparably harmed absent a stay. This factor weighs in favor of a stay.

      **C.**    **A stay will not substantially injure other parties interested in the proceeding.**

This case is not a class action, nor are there any individual plaintiffs, so individualized relief is not at issue here, and the United States is the only plaintiff. It cannot credibly be

maintained that a stay will somehow injure the United States. In addition, no evidence was adduced at the evidentiary hearing that the Consent Decree was helpful in improving conditions at the RDC.[9] Even were this not so, the Court never meaningfully allowed the County's operation of RDC to be assessed as against the New Injunction and, naturally, made no findings that the County is in contempt of the New Injunction. Indeed, as noted above, the Receiver Orders are the remedy for the Court's finding that the County violated the now inoperative Consent Decree. This factor weighs in favor of a stay.

      **D.     A stay is in the public interest.**

A receivership is the "nuclear option."[10] A stay of the nuclear option is in the public interest because the Receiver has carte blanche authority over RDC but is not accountable in any way to the people of Hinds County. The Monitor conceded that a receiver is not directly accountable to the voters.[11] That is bad for democracy, bad for the voters of Hinds County specifically, and bad public policy. It also violates the core precepts of federalism: "it is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Woodford v. Ngo*, 548 U.S. 81, 94 (2006) (citation omitted). This factor weighs in favor of a stay.

## RELIEF REQUESTED

The Court should grant Defendants' Motion to Stay the Receiver Orders (ECF 227) pending resolution of the parties' consolidated appeal.

Dated: November 10, 2022.

                                                                Respectfully submitted,

---

[9] Feb. 17, Trial Tr., Vol. 4, at 683:14-19.
[10] March 1, 2022, Trail Tr., Vol. 11, at 2160:3-4.
[11] Feb. 23, 2022 Trial Tr., Vol. 8, at 1304:10-12.

11

**PHELPS DUNBAR, LLP**

BY:  */s/ James W. Shelson*
Reuben V. Anderson, MB #1587
W. Thomas Siler, Jr., MB #6791
James W. Shelson, MB #9693
Nicholas F. Morisani, MB #104970
Loden P. Walker, MB#105996
4270 I-55 North
Jackson, Mississippi 39211-6391
Post Office Box 16114
Jackson, Mississippi  39236-6114
Telephone: 601-352-2300
Telecopier: 601-360-9777
Email:  reuben.anderson@phelps.com
 tommy.siler@phelps.com
 jim.shelson@phelps.com
 nick.morisani@phelps.com
 loden.walker@phelps.com

**ATTORNEYS FOR DEFENDANTS**

12

## CERTIFICATE OF SERVICE

I certify that on November 10, 2022, I had this Memorandum electronically filed with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to all counsel of record in this matter.

*/s/ James W. Shelson*
JAMES W. SHELSON
