IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**UNITED STATES OF AMERICA**                                                              **PLAINTIFF**

**VS.**                                                                    **NO. 3:16-CV-489-CWR-RHWR**

**HINDS COUNTY, ET AL.**                                                             **DEFENDANTS**

## RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION

Defendants Hinds County, Mississippi, and Sheriff Tyree Jones, in his official capacity (collectively, "the County"), respectfully submit that Plaintiff's Motion for Reconsideration [219] should be denied.

### Introduction

The United States' [219] Motion for Reconsideration should be denied for numerous reasons, First, the request to re-institute now-terminated provisions related to Henley Young is impermissible judge shopping. Second, in *J.H. v. Hinds County*,[1] the *J.H.* Court's decision to terminate the *J.H.* consent decree was with prejudice as to any acts or omissions occurring prior to the October 13, 2022 order granting the County's motion to terminate the *J.H.* consent decree, all of which are the very same alleged acts or omissions forming the basis of Plaintiff's effort to avoid termination of Section K of the [8-1] Consent Decree in this case. Third, Plaintiff's ill-advised request for reconsideration runs aground when assessed through the lens of the PLRA's requirements. Lastly, neither Rule 60(b)(5) nor 60(b)(6) afford Plaintiff the remedy it seeks, which is relitigation of the issues related to Henley Young.

---

[1] Case No. 3:11cv327-DPJ-FKB.

**Relevant Background**

***Proceedings Before Judge Reeves.*** On June 23, 2016, the United States of America sued the County under 42 U.S.C. § 1997, alleging the County deprived "prisoners of rights, privileges, or immunities secured and protected by the Constitution of the United States."[2] [1] Complaint, ¶ 1. That same day, a joint motion seeking entry of a consent decree was filed, *see* [2] Joint Motion for Entry of Settlement Agreement. Less than one month later, the [8-1] Consent Decree was entered on July 19, 2016.

A sprawling, 64-page document, the [8-1] Consent Decree included 167 requirements (excluding subparts and sub-subparts) governing virtually every aspect of life at the County's four detention facilities: (1) Raymond Detention Center ("RDC"), (2) Work Center (WC), (3) Jackson Detention Center (JDC),[3] and (4) Henley-Young Juvenile Justice Center (Henley Young). Most pertinent here, Section K of the [8-1] Consent Decree related to "Youthful Offenders," and related exclusively to operations at Henley Young, the facility where the County detains juveniles charged with particularly violent or otherwise dangerous crimes against citizens of Hinds County, such that those juveniles are charged as adults. In 2011, Henley Young became subject to a consent decree overseen by Chief Judge Daniel P. Jordan in the case styled "*J.H. v. Hinds County*," pending in this Court under case number 3:11cv327-DPJ-FKB.

On December 18, 2017, the *J.H.* plaintiffs sought status as "interested parties" in this case. *See* [20] Mot. Status Interested Parties. The *J.H.* plaintiffs argued that juveniles charged as adults who are detained at Henley Young were "members of the class" in this case as well as the class in *J.H. Id.* at 1. Counsel for *J.H.* plaintiffs attended exit meetings held related to monitoring in this

---

[2] This case involves the Government's efforts to force what it perceives to be a set of jail reforms at the RDC. As such, this case is controlled by the Prison Litigation Reform Act, 18 U.S.C. § 3626 et seq. ("PLRA").

[3] The JDC closed in 2020.

case, *see id.* at 2, and sought to be added as interested parties in this case "[d]ue to the overlap between the two court-monitored agreements" and to be "made aware of further developments in" this case regarding juveniles charged as adults. *See id.* at 3. The Court granted the J.H. plaintiffs' motion on December 29, 2017. *See* [21] Order.

Notwithstanding an undisputedly upward trend in operations at the RDC,[4] the Court entered an order *sua sponte* on November 23, 2021 requiring the County to show cause "to determine whether Hinds County should be held in civil contempt and RDC placed into federal receivership" predicated on what the Court viewed as the County's noncompliance with the [8-1] Consent Decree and a subsequently entered [60-1] Stipulated Order. Show Cause Order [100] at 2. The County promptly responded to the Court's Show Cause Order on December 14, 2021, Resp. to Show Cause Order [105], and an evidentiary hearing was set for January 24, 2022, [107] Scheduling Order at 2. During a January 18, 2022 telephonic status conference regarding the County's subsequently filed [108] Emergency Motion to Continue the evidentiary hearing, the County informed the Court that while it originally had not intended to pursue termination of the [8-1] Consent Decree, it believed the Court's decision to move forward with a hearing on its Order to Show Cause left the County with no choice but to seek immediate termination of the consent decree, which the County did on January 21, 2022. *See* [111] Motion to Terminate.

The Court ultimately rescheduled the evidentiary hearing for February 14, 2022, and a two-week hearing was held on both the Court's [100] Show Cause Order as well as the County's [111] Motion to Terminate. *Compare* 02/14/2022 Minute Entry *with* 03/01/2022 Minute Entry.[5] On February 17, 2022, the *J.H.* plaintiffs successfully sought and obtained access to certain exhibits

---

[4] *See* [112] Mem. in Supp. Mot. Terminate at 4-6 and accompanying exhibits.
[5] Pursuant to the PLRA's automatic stay provision, 18 U.S.C. § 3626(e), the Court had to resolve the County's [111] Motion to Terminate within a set period of time—90 days in this case—or the [8-1] Consent Decree would have been automatically stayed.

3

and transcripts related to this hearing. *See* [147] Motion *and* 2/18/2022 Text Only Order. On April 13, 2022, the Court issued its Order granting in part and denying in part the County's [111] Motion to Terminate. *See* [168] Order.

Among the various provisions of the [8-1] Consent Decree terminated by the Court, Section K was terminated in its entirety. *See* [168] Order at 106-110. The Court reasoned:

> The original sin leading to these sections of the Consent Decree was the placement of youth at RDC prior to 2016. There have been no youth placed at the RDC since February 2019. Fifteenth Monitoring Report at 91. Accordingly, the County is in sustained compliance with paragraphs 77 and 80 of the Consent Decree.
>
> Though the County is only in partial compliance with paragraphs 78, 79, 81, 82, 83, and 84, there is a separate Consent Decree governing the County's detention center for Youthful Prisoners, Henley-Young. The Court wishes to avoid interference with that Consent Decree. On a going-forward basis, therefore, concerns about Henley-Young are best submitted ***to the discretion*** and ***sound judgment*** of the ***Presiding Judge in that case***. *See J.H. v. Hinds County*, No. 3:11-CV-327-DPJ-FKB (S.D. Miss. filed June 1, 2011).
>
> Accordingly, this entire section is deleted.

[168] Order at 110 (emphasis added).

***Proceedings before Chief Judge Jordan.*** At same time the Court terminated Section K of the [8-1] Consent Decree, *J.H. v. Hinds County* was in the midst of termination and contempt proceedings related to the consent decree in that case. On March 18, 2022, the *J.H.* plaintiffs filed a motion seeking an order requiring the County to show cause as to why it was not in contempt of the *J.H.* consent decree. *See* [170] Mot. Order Show Cause (Case No. 3:11cv327-DPJ-FKB). That same day, the County filed its motion to terminate the *J.H.* consent decree. *See* [173] Mot. Terminate (Case No. 3:11cv372-DPJ-FKB).

The Government's reference to the County's motion to terminate the *J.H.* consent decree as "unopposed" misrepresents the *J.H. v. Hinds County* record. On April 6, 2022 (seven days before the Court's Order terminating Section K), the *J.H.* plaintiffs sought clarification as to

whether provisions of the *J.H.* consent decree remained in effect and thus enforceable against the County. *See* [175] Motion for Clarification 3-5 (Case No. 3:11cv327-DPJ-FKB). On April 18, 2022, the *J.H.* plaintiffs filed a 29-page **opposition brief**, claiming the consent decree in that case "[r]emain[ed] necessary to [r]emedy [o]ngoing [c]onstitutional [v]iolations" and, of course, opposing termination. *See* [177] Mem. at 14 (Case No. 3:11cv327-DPJ-FKB). After they allowed the PLRA's automatic stay to go into effect on April 17, 2022, thereby staying the *J.H.* consent decree, the *J.H.* plaintiffs filed an emergency motion seeking to retroactively postpone the automatic stay to keep the consent decree in force. *See* [179] Urgent and Necessitous Motion to Postpone Stay (Case No. 3:11cv327-DPJ-FKB). On April 26, 2022, the motion seeking to postpone the automatic stay was denied, making clear to the world that the *J.H.* consent decree was stayed effective April 17, 2022. *See* [183] Order 2 (Case No. 3:11cv327-DPJ-FKB).

On May 16, 2022, the County filed a motion seeking leave to conduct discovery related to its motion to terminate to bolster its record prior to the anticipated pre-termination hearing in *J.H.*, and, opposing that motion, the *J.H.* plaintiffs made clear their intent to conduct discovery of their own in preparation for the pre-termination hearing they, too, anticipated. *See* [189] Response (Case No. 3:11cv327-DPJ-FKB). For example, the *J.H.* plaintiffs argued

> regardless of the scope of the anticipated hearing, Henley-Young Plaintiffs intend to seek leave for extensive discovery, including, but not limited to, interrogatories, production of documents, site visits, and depositions to fully evaluate what constitutional violations continue to exist and determine appropriate remedies pursuant to 18 U.S.C. § 3626(a)(1). Without the benefit of extensive discovery, Henley Young Plaintiffs respectfully contend that their ability to prepare for the anticipated hearing will be significantly prejudiced . . . .

[189] Resp. 4-5 (Case No. 3:11cv327-DPJ-FKB). That was not all. The *J.H.* plaintiffs added:

> Furthermore, given the Court's April 26, 2022, Order that the Consent Decree is stayed pending "'a final order ruling on Hinds County's motion to terminate or modify," ECF No. 183 at 3, Henley-Young Plaintiffs recognize circumstances continue to remain dire. Henley-Young Plaintiffs respectfully ***continue their***

***request to promptly address the current and ongoing violations of the federal rights of vulnerable and disabled children detained at the Facility***.

[189] Resp. 9 (emphasis added) (Case No. 3:11cv327-DPJ-FKB).

On August 1, 2022, the County's request for discovery in *J.H.* was granted, and the parties were directed to confer with the Magistrate Judge to plan discovery. *See* [194] Order (Case No. 3:11cv327-DPJ-FKB). A teleconference took place on September 21, 2022, at which the *J.H.* plaintiffs suddenly changed course, announcing they intended to consent to the County's motion to terminate, thus precluding the need for discovery or the "anticipated hearing." The County attempted to move forward with the discovery conference, but the *J.H.* Court was not inclined to do so given the new position expressed by the *J.H.* plaintiffs. The County requested time to consider the *J.H.* plaintiffs' new position, and a follow-up teleconference took place on September 29, at which the County announced it would prepare a proposed order granting the County's motion to terminate. The parties negotiated a proposed order, submitted it to Chief Judge Jordan, and the order was entered on October 13, 2022.

In the Order, the *J.H.* Court observed that the *J.H.* plaintiffs "now consent to termination of the Consent Decree." [196] Order 1 (Case No. 3:11cv327-DPJ-FKB). The *J.H.* Court then granted the County's motion to terminate and held that "the Extended Third Amended Consent Decree [161-1] is terminated." The *J.H.* Court specifically added the following: "The termination of the Extended Third Amended Consent Decree [161-1] is without prejudice to any future claims that detainees at Henley Young may have against the County related to their detention at Henley Young that are based on acts or omissions that occur after the date this order is entered by the Court." [196] Order 1 (Case No. 3:11cv327-DPJ-FKB).

**Argument and Authorities**

*A. Plaintiff's Motion is impermissible judge-shopping.*

The *J.H.* plaintiffs viewed themselves as equal plaintiffs in both *J.H. v. Hinds County* and this case. The *J.H.* plaintiffs relied on the monitor's reports from this case multiple times when seeking to extend or enforce the consent decree in *J.H. v. Hinds County*. The *J.H.* plaintiffs made clear their intense opposition to the County's motion to terminate in *J.H.*, going so far as to file a lengthy opposition to the County's motion, filing a motion seeking an order requiring the County to show cause as to why it was not in contempt of the *J.H.* consent decree, seeking to retroactively postpone the automatic stay of the *J.H.* consent decree, claiming a need for "extensive discovery" to oppose the County's motion to terminate, and repeatedly referring to the "anticipated hearing" on their motion for an order to show cause and the County's motion to terminate. Then, at the discovery conference scheduled to outline the parties' discovery needs leading up to the anticipated hearing, the *J.H.* plaintiffs announced they were simply consenting to the County's motion to terminate.

Of course, Plaintiff could have sought to intervene in *J.H. v. Hinds County* at numerous points in time. *See* [220] Mem. at 10 n.4 (boasting of Plaintiff's purported "right and duty" to seek injunctions "without regard to any private suit or decree"). These included on January 20, 2022, when it became clear the County was going to seek modification of the *J.H.* consent decree,[6] on March 18, 2022, when the County filed its motion to terminate or, alternatively, modify the *J.H.* consent decree,[7] on April 17, 2022, when the *J.H.* plaintiffs simply allowed the *J.H.* consent decree to be automatically stayed,[8] on April 26, 2022, when the *J.H.* Court made clear the *J.H.* consent

---

[6] *See* 1/20/2022 Text Only Order (Case No. 3:11cv327-DPJ-FKB).
[7] *See* [173] Motion to Terminate (Case No. 3:11cv327-DPJ-FKB).
[8] *See* 18 U.S.C. § 3626(e)(2)(A)(i).

decree was stayed,[9] on May 16, 2022, when the County stated its intent to seek discovery to support its motion to terminate,[10] on August 1, 2022, when the *J.H.* Court granted the County's motion for discovery and set a teleconference to discuss the scope of discovery,[11] or on October 13, 2022, when the Court granted the County's motion to terminate and terminated the *J.H.* consent decree with prejudice as to any acts or omissions predating the order.[12] All of this information was filed in the public record, and Plaintiff is charged with knowledge of such information. Rather than seek to intervene at any of these points in time to protect the *J.H.* consent decree it now belatedly argues was so critical to protecting the rights of juveniles charged as adults, Plaintiff claims the *J.H.* consent decree's termination has created an "inequitable" result mandating extraordinary relief in this Court.

As this Court has keenly observed in similar circumstances, these "developments" suggest a primary reason why Plaintiff's [219] Motion should be denied outright. *See Hearn v. Bd. of Supervisors of Hinds Cnty., Miss.*, No. 3:12cv417-CWR-FKB, 2013 WL 1305586, at *2 (S.D. Miss. Mar. 27, 2013) (Reeves, J.), aff'd (July 8, 2014) (considering second lawsuit filed by same litigant who was also prosecuting an appeal of unfavorable rulings by another District Judge in this District to be "developments suggest[ing] [an alternative] reason for finding [second] case could not proceed before the undersigned judge"). Just as in *Hearn*, the *J.H.* plaintiffs' sudden change of course followed closely by Plaintiff's request to modify the New Injunction to include Henley Young, "effectively [seeks] to replace Judge Jordan with another jurist [they] may believe to be more receptive to" claims related to Henley Young. *Id.* at *2. As this Court has made clear,

---

[9] *See* [183] Order 2 (Case No. 3:11cv327-DPJ-FKB).
[10] [186] Motion (Case No. 3:11cv327-DPJ-FKB).
[11] [194] Order (Case No. 3:11cv327-DPJ-FKB).
[12] [196] Order (Case No. 3:11cv327-DPJ-FKB).

however, "[t]hat is problematic because parties are not entitled to forum-shop their way to new Judges." *Id.*

Similar to the result in *Hearn*, the Court should reject Plaintiff's motion outright given these developments and the obvious detriment to the integrity of this Court if such judge-shopping were permitted, especially since Plaintiff "slept on its rights" by not seeking to intervene in *J.H.* If Plaintiff wants relief as to Henley Young, it must seek relief before Chief Judge Jordan in *J.H.*

### B. The **J.H.** Court terminated the **J.H.** consent decree with prejudice.

The *J.H.* Court terminated the consent decree with prejudice as to any acts or omissions prior to or on October 13, 2022. When, as here, a dismissal is silent as to prejudice, it is presumed to be ***with prejudice***. *See, e.g., Nyabwa v. United States Dep't of Def.*, 851 F. App'x 490, 491 (5th Cir. 2021) ("When, as here, the dismissal is silent as to prejudice, it is presumed to be with prejudice.") (citing *Nationwide Mut. Ins. Co. v. Unauthorized Prac. of L. Comm.*, 283 F.3d 650, 655 n.26 (5th Cir. 2002)); *Coleman v. Gillespie*, 424 F. App'x 267, 270 (5th Cir. 2011) (observing "the final judgment was silent in this regard and hence with prejudice") (citing cases). Here, the *J.H.* Court's order is silent as to whether the termination of the consent decree is with or without prejudice to Plaintiff's ability to advance claims on the facts and circumstances taking place ***prior to or on*** the date of the Court's order terminating the consent decree at issue. As a result, the general rule requires that the *J.H.* Court's termination of the consent decree was ***with prejudice*** as to any facts and circumstances taking place ***prior to or on*** the date of the Court's October 13, 2022 Order, which are precisely the same facts and circumstances made the basis of Plaintiff's ill-advised [219] Motion. *See, e.g., Nyabwa*, 851 F. App'x at 491 (citation omitted).

This Court, however, need not rely on the general rule that a dismissal is with prejudice unless stated otherwise because the *J.H.* Court took an additional step to remove any doubt. The

9

PD.40389716.1

*J.H.* Court's order explicitly excludes from its purview any claims based on future acts or omissions:

> The termination of the Extended Third Amended Consent Decree [161-1] is *without prejudice* to any future claims that detainees at Henley Young may have against the County related to their detention at Henley Young that are *based on acts or omissions that occur after the date this order* is entered by the Court.

[196] Order 1 (emphasis added) (Case No. 3:11cv327-DPJ-FKB). Thus, by specifically carving out future claims based on acts or omissions occurring after the date the order is entered, the *J.H.* Court removed any doubt that its termination of the consent decree was *with prejudice* to any claims based on acts or omissions leading up to the date of its order terminating the consent decree. *See, e.g., Nyabwa*, 851 F. App'x at 491 (citation omitted).

For all its failings, Plaintiff's request for reconsideration gets one thing correct: this Court stated that "concerns about Henley[]Young are best submitted to the discretion and sound judgment of" Chief Judge Jordan. Because Plaintiff disagrees with how the Chief Judge exercised his discretion and sound judgment, Plaintiff now asks this Court to reverse itself, put itself at odds with the Chief Judge, resurrect the [8-1] Consent Decree's provisions related to Henley Young, add those provisions to the "New Injunction[,]" and without reconciling with the fact that the *J.H.* Court's termination of the consent decree was with prejudice to any acts or omissions occurring prior to the date of its order. The Court should reject Plaintiff's attempt to ignore the plain effect of the *J.H.* Court's order terminating the *J.H.* consent decree.

The *J.H.* consent decree's termination with prejudice to any acts or omissions occurring on or before the October 13, 2022 termination order means Plaintiff is collaterally estopped from litigating issues encompassed by the *J.H.* Court's termination order. "Collateral estoppel encompasses three elements: (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination

PD.40389716.1

of the issue in the prior action must have been a necessary part of the judgment in that earlier action." *Flores v. Powell*, 32 F. App'x 128, 2002 WL 334931, at *1 (5th Cir. Feb. 20, 2002) (citing *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir. 1995) (overruled on other grounds as recognized by *In re Ritz*, 832 F.3d 560, n.3 (5th Cir. 2016))). Here, Plaintiff's [219] Motion for Reconsideration seeks to litigate whether there were current and ongoing violations of federal rights at Henley Young. Yet, whether there were current and ongoing federal rights violations at Henley Young prior to the October 13, 2022 termination order was the central issue in *J.H.*, it was actually litigated in *J.H.* as borne out by the competing briefs and positions taken by the parties in that case,[13] and resolution of that issue was necessary to the *J.H.* Court's termination order as made plain by the fact that the *J.H.* consent decree was terminated with prejudice as to any acts or omissions occurring on or before October 13, 2022. Thus, Plaintiff should be collaterally estopped from litigating whether there were current and ongoing federal rights violations at Henley Young prior to the *J.H.* Court's October 13, 2022 termination order.[14]

---

[13] That the County's motion to terminate in the *J.H.* case ultimately resulted in the *J.H.* plaintiffs simply giving up does not prevent collateral estoppel from operating here because the *J.H.* Court's termination order is with prejudice as to any acts or omissions at issue in the *J.H.* parties' briefing. *See Klingman v. Levinson*, 66 B.R. 548, 552 (N.D. Ill. 1986), aff'd, 831 F.2d 1292 (7th Cir. 1987) ("Collateral estoppel may be predicated on a consent judgment when the record of the prior proceeding shows that the parties intended the judgment to preclude relitigation of the issue in question.") (citing *Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.*, 575 F.2d 530, 538–39 (5th Cir. 1978))).

[14] In addition to collateral estoppel, res judicata similarly forecloses Plaintiff's attempt to relitigate the conditions of confinement at Henley Young. "The test for res judicata has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Murchison Cap. Partners, L.P. v. Nuance Commc'ns, Inc.*, 625 F. App'x 617, 621 (5th Cir. 2015) (citation omitted). Here, the record leaves no doubt Plaintiff is, at a minimum, in privity with the *J.H.* plaintiffs: Plaintiff purports to seek to protect the interests of juveniles charged as adults and the *J.H.* plaintiffs successfully obtained status as "interested parties" in this case on claims that juveniles charged as adults who are detained at Henley Young were "members of the class" in this case as well as the class in *J.H.* and "[d]ue to the overlap between the two court-monitored agreements . . . ." *See* [20] Mot. Status Interested Parties 1, 3; [21] Order. The remaining elements fall into place nicely, as there is no contention the *J.H.* Court lacked competent jurisdiction, the *J.H.* Court terminated the *J.H.* consent decree on the merits after significant briefing by the parties, and the same claim Plaintiff

### C. *The PLRA precludes Plaintiff's request for prospective relief.*

Plaintiff relies entirely on authority modifying injunctive relief through Rule 60(b)(5) and 60(b)(6) to judge-shop and very belatedly modify the New Injunction with additional prospective relief related to Henley Young. This reliance is misplaced. Section "3626(b) . . . establish[es] new standards for prospective relief . . . ." *Miller v. French*, 530 U.S. 327, 346 (2000). "By establishing new standards for the enforcement of prospective relief in § 3626(b), Congress altered the relevant underlying law. The PLRA restricted courts' authority to issue and enforce prospective relief concerning prison conditions, requiring that such relief be supported by findings and precisely tailored to what is needed to remedy the violation of a federal right." *Id.* at 347. Plaintiff wholly ignores these requirements for the prospective relief it seeks, and their "hail Mary" attempt to obtain prospective relief without satisfying the PLRA's controlling requirements should be rejected.

Applying the PLRA's requirements to Plaintiff's request brings the point home. For starters, the very nature of the relief Plaintiff seeks is self-defeating with respect to Plaintiff's burden to first establish a current and ongoing violation of federal rights at Henley Young. If that were not enough, there is no argument or evidence presented that the prospective relief Plaintiff seeks satisfies the PLRA's need-narrowness-intrusiveness analysis.

### 1. *The self-defeating nature of the relief Plaintiff seeks requires denial of the [219] Motion.*

Put simply, to avoid termination of the [8-1] Consent Decree's provisions related to Henley Young, Plaintiff must first demonstrate "current and ongoing" federal rights violations at Henley Young. *See* 18 U.S.C. § 3626(b)(3) ("Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current

---

attempts to relitigate here—the constitutionality of conditions of confinement at Henley Young—was at the heart of *J.H. v. Hinds County*.

and ongoing violation of the Federal right[] . . . ."). Plaintiff concedes this point. *See* [219] Motion 2 (urging the Court to "determine that the provisions of Section K of the Consent Decree are necessary to correct ongoing constitutional violations" as to juveniles charged as adults). Here, the Court did not find evidence of a current and ongoing federal rights violation at Henley Young when it terminated the relevant [8-1] Consent Decree provisions. *See* [168] Order at 110 (acknowledging the County corrected the "original sin" leading to the sections of the [8-1] Consent Decree related to Henley Young and that the County was in "partial compliance" with the remaining relevant sections). Plaintiff, of course, does not now cite any new or different evidence to change that result. Nevertheless, seeking to prevent termination of those provisions, Plaintiff asks the Court to rely on evidence dating back nearly one year to make the requisite finding of a "current and ongoing" federal rights violation.

This reveals the self-defeating nature of Plaintiff's request. Under the PLRA, the focus of courts is not on "conditions that existed in the past or [on] conditions that may possibly occur in the future" but on conditions "at the time termination is sought." *Castillo v. Cameron County*, 238 F.3d 339, 353 (5th Cir. 2001). Here, the Court looked carefully at conditions at the time termination was sought and did not find a federal rights violation at Henley Young. At this point, Plaintiff offers utterly speculative claims of "current and ongoing" federal rights violations at Henley Young extrapolated from evidence dating back to 2021 to convince this Court to simply resurrect (today) prospective relief that was ***terminated 203 days prior to*** their [219] Motion. The PLRA, however, precludes the Court from binding the County to additional prospective relief on speculative claims of harm based entirely on stale, outdated evidence of ***purported*** constitutional rights violations. *See Inmates of Suffolk Cnty. Jail v. Rouse*, 129 F.3d 649, 657 (1st Cir. 1997)

(observing the PLRA reflects "Congress's decision to divest district courts of the ability to construct or perpetuate prospective relief when no violation of a federal right exists").

Making matters worse for Plaintiff, that the County sought to terminate the *J.H.* consent decree was publicly available information, **but Plaintiff did nothing**. When this Court terminated Section K of the [8-1] Consent Decree, Plaintiff had no basis to assume that *J.H.* would continue indefinitely. Nor did it make good sense for Plaintiff to make such a rash assumption considering the County's robust opposition to the [8-1] Consent Decree. If it wanted litigation related to Henley Young to continue in the manner it now asks this Court to resurrect, it should have sought relief in *J.H.* before Chief Judge Jordan terminated that case, but Plaintiff apparently was asleep at the wheel. Having failed to seek relief in *J.H.*, Plaintiff is now precluded from asking this Court for relief that it was required to seek in *J.H.* through intervention or otherwise.

   2. *Plaintiff's request for prospective relief does not satisfy the PLRA's need-narrowness-intrusiveness analysis.*

Aside from the obvious lack of evidence demonstrating the requisite "current and ongoing" federal rights violation, Plaintiff has not and cannot show that each provision of prospective relief it seeks to resurrect at this point satisfies the need-narrowness-intrusiveness criteria. Put simply, Plaintiff now seeks to modify the New Injunction in the face of the County's [111] Motion to Terminate by using Rule 60 to "impos[e] a new and more effective remedy" through "modification" of the New Injunction in the form of adding various terminated provisions from the [8-1] Consent Decree to the New Injunction. *See* [220] Memorandum at 6. This constitutes a request to restore "prospective relief" under the PLRA. *See* 18 U.S.C. § 3626(g)(7) ("the term 'prospective relief' means all relief other than compensatory monetary damages").

This request for prospective relief seeking to modify the New Injunction notwithstanding the County's [111] Motion to Terminate triggers the PLRA's need-narrowness-intrusiveness

14

PD.40389716.1

analysis. *See* 18 U.S.C. § 3626(a)(1)(A) (requiring that the Court find prospective relief sought "is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."). Plaintiff blithely ignores this reality and the fact that it (as the movant seeking modification of the Court's decision on the County's [111] Motion to Terminate) must demonstrate that ***each*** form of additional prospective relief satisfies the need-narrowness-intrusiveness analysis. *Ruiz v. United States*, 243 F.3d 941, 950 (5th Cir. 2001) (observing that, when faced with a motion to terminate a consent decree, the court must make "particularized findings, on a provision-by-provision basis, that each requirement imposed by the consent decree [] satisfies the need-narrowness-intrusiveness criteria, given the nature of the current and ongoing violation"); *see also Inmates of Suffolk Cnty. Jail v. Rouse*, 129 F.3d 649, 658 (1st Cir. 1997) ("[T]he PLRA has altered the standard by which courts can continue forward-looking relief[.]").

By making no attempt to show each form of prospective relief it seeks to add into the New Injunction satisfies the need-narrowness-intrusiveness test, Plaintiff has conceded the point. *See Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F. 3d 256, 260 n. 9 (5th Cir. 1995) (explaining that failure to provide any legal or factual analysis of an issue results in waiver of that issue).

But the County is correct on the merits, for by its very nature any effort by Plaintiff to address the need-narrowness-intrusiveness analysis would suffer the same fatal flaw as Plaintiff's effort to establish current and ongoing federal rights violations at this stage. When determining whether to terminate a consent decree providing prospective relief in the jail context, a court must make "particularized findings, on a provision-by-provision basis, that each requirement imposed by the consent decree [] satisfies the need-narrowness-intrusiveness criteria, ***given the nature of the current and ongoing violation***." *Ruiz*, 243 F.3d at 950 (quoting *Cason v. Seckinger*, 231 F.3d

777, 785 (11th Cir. 2000)). Here, because Plaintiff has no current and ongoing federal rights violation[15] by which it can demonstrate that the need-narrowness-intrusiveness criteria are satisfied, Plaintiff is precluded from satisfying those criteria on this record.

\* \* \* \*

Consequently, Plaintiff has failed to satisfy the requirements of the PLRA and her [219] Motion should be denied.

### D. *Plaintiff's resort to Rule 60(b) fails*.

Plaintiff's Rule 60 Motion is predicated exclusively on Rules 60(b)(5) and 60(b)(6). Neither Rule gets Plaintiff where its want to go.

It is well-settled that "[Rule 60(b)(5)] does not allow relitigation of issues that have been resolved by the judgment." *United States v. Davison*, 509 F. App'x 330, 332 (5th Cir. 2013) (citation omitted). Plaintiff nevertheless shamelessly asks this Court to relitigate the issues related to Henley Young, citing evidence previously presented to and considered by the Court. *See* [220] Mem. 8-13. Any doubt that Plaintiff's "Rule 60(b)(5)" motion is nothing more than an attempt to judge-shop and relitigate issues related to Henley Young is removed when Plaintiff—in a desperate effort to buttress the record related to conditions at Henley Young—invites the Court to take judicial notice of "reported[]" incidents from three isolated news articles, even going so far as asking the Court to disregard the headline of one article. At bottom, nothing about the Court's [168] Order granting in part and denying in part the County's [111] Motion to Terminate indicates that the Court reached the legal conclusion that federal rights violations were current and ongoing at the time the County sought termination of the [8-1] Consent Decree, and Plaintiff cannot now

---

[15] Acknowledging this reality, Plaintiff now attempts to use Rule 60(b) to relitigate this very issue despite having already done so during the two-week hearing in February 2022, *see* [220] Mem. at 8-13, but that's a misguided strategy, too. *See infra* Section D.

use Rule 60(b)(5) to relitigate that conclusion to obtain the result it prefers. And, if Plaintiff believed there were current and ongoing violations as of April 13, 2022, it should have filed a motion for reconsideration in this Court under Rule 59(e), or sought to intervene in *J.H.* Instead, Plaintiff opted to "go low," and they should not be rewarded for doing so.

Plaintiff's resort to Rule 60(b)(6) is no better.[16] "[R]elief under 60(b)(6) is warranted only upon a showing of extraordinary circumstances that create a substantial danger that the underlying judgment was unjust." *Margoles v. Johns*, 798 F.2d 1069, 1073 (7th Cir. 1986) (citing cases). For starters, Plaintiff has not shown extraordinary circumstances warranting resort to Rule 60(b)(6): the County made clear its intent, at a minimum, to modify the *J.H.* consent decree as early as January 2022, the *J.H.* consent decree was stayed effective April 17, 2022, a mere four days after the Court's April 13, 2022 Order terminating Section K of the [8-1] Consent Decree,[17] and Plaintiff sat idle while the *J.H.* consent decree remained stayed and only acted when Plaintiff believed it could judge shop and have issues related to Henley Young brought back before this Court as opposed to intervening in *J.H.* and seeking to avoid termination of the consent decree in that case. The bottom line is that Plaintiff failed to diligently or timely pursue a claim that it now asks this Court to resurrect in contravention of Chief Judge Jordan's order dismissing *J.H.* Plaintiff's resort to Rule 60(b)(6) to judge-shop the Henley Young litigation from *J.H.* to this Court falls far short of Rule 60(b)(6)'s purpose and spirit of securing justice for litigants, and so Rule 60(b)(6) has no application here.

---

[16] Plaintiff's resort Rule 60(b)(6) on the heels of their arguments related to Rule 60(b)(5) reveal the weakness of their Rule 60(b) arguments. *See Margoles*, 798 F.2d at 1073 n.6 (7th Cir. 1986) ("[R]elief under Rule 60(b)(6) is appropriate *only if* the grounds asserted for relief do not fit under any of the other subsections of Rule 60(b).") (citations omitted).

[17] Again, all of this is publicly available information.

PD.40389716.1

## Conclusion

The County respectfully requests that the Court deny Plaintiff's [219] Motion for Reconsideration

Dated: November 16, 2022.

                                    Respectfully submitted,

                                    **PHELPS DUNBAR, LLP**

BY: /s/ *Nicholas F. Morisani*
       Reuben V. Anderson, MB #1587
       W. Thomas Siler, Jr., MB #6791
       James W. Shelson, MB #9693
       Nicholas F. Morisani, MB #104970
       Loden P. Walker, MB#105996
       4270 I-55 North
       Jackson, Mississippi 39211-6391
       Post Office Box 16114
       Jackson, Mississippi 39236-6114
       Telephone: 601-352-2300
       Telecopier: 601-360-9777
       Email: reuben.anderson@phelps.com
               tommy.siler@phelps.com
               jim.shelson@phelps.com
               nick.morisani@phelps.com
               loden.walker@phelps.com

       **ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that on November 16, 2022, I had this Response electronically filed with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to all counsel of record in this matter.

/s/ *Nicholas F. Morisani*
Nicholas F. Morisani

PD.40389716.1