IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>v.<br><br>HINDS COUNTY, ET AL.,<br><br>DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.: 3:16-cv-00489-CWR-RHWR<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF UNITED STATES' OPPOSITION TO
DEFENDANTS' URGENT AND NECESSITOUS MOTION TO STAY RECEIVER
ORDERS PENDING APPEAL**

The United States opposes Defendants' Urgent and Necessitous Motion to Stay Receiver

Orders Pending Appeal, ECF No. 227 (Nov. 10, 2022) ("Motion"); *see* Order Appointing

Receiver, ECF No. 215 (Oct. 31, 2022); Order Outlining Receiver's Duties and Responsibilities,

ECF No. 216 (Oct. 31, 2022).  Defendants have not met their burden to show that the Court

should stay the orders appointing a receiver and establishing the scope of the receivership

(collectively, the "Receiver Orders").  Specifically, Defendants fail to establish that they are

likely to succeed on the merits, that the County will be irreparably injured absent a stay, that

issuance of the stay will not substantially injure other parties, or that the public interest favors a

stay.  *See Nken v. Holder*, 556 U.S. 418, 434 (2009) (setting forth four factors the Court should

weigh in determining whether to grant a stay pending appeal).  Accordingly, the Court should

deny Defendants' Motion.

# I.    BACKGROUND

On June 23, 2016, the United States filed this lawsuit alleging that Defendants were engaging in a pattern or practice of Eighth and Fourteenth Amendment violations in the Hinds County Jail related to detainee-on-detainee violence, staff use of excessive force, dangerously low staffing levels, jail policies and procedures, housing and classification systems, the physical plant, internal investigations, detention of persons who should have been released, and the treatment of juvenile and suicidal detainees.  Compl. 3–5, ECF No. 1.

The same day, the Parties moved this Court to enter a negotiated Consent Decree to resolve the Complaint and achieve constitutional conditions at the Jail.  Joint Mot., ECF No. 2; Joint Mem. in Supp., ECF No. 3.  Defendants expressly agreed that the entire Consent Decree that they negotiated complied with the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626, and was "narrowly drawn, extends no further than necessary to correct the violations of federal rights," and "is the least intrusive means necessary to correct [the] violations."  Consent Decree ¶¶ 166–67; *see also* Joint Mem. in Supp. 5, ECF No. 3.  The Court approved and entered the Consent Decree as a court order with an "Effective Date" of July 19, 2016.  Order, ECF No. 8; Consent Decree ¶ 10, ECF No. 8-1.

Subsequently, when Defendants failed to comply with the Consent Decree, the United States moved for contempt in June 2019.  U.S. Mot. for Order to Show Cause, ECF No. 30.  The Parties settled that motion through a Stipulated Order with more specific requirements and timeframes, which the Court entered on January 16, 2020.  Order Granting Mot. for Settlement, ECF No. 60; Stipulated Order, ECF No. 60-1.[1]  In adopting it, the Court noted that "a finding of

---

[1]  The Stipulated Order granted "more specific remedial relief" to supplement the Consent Decree. Stipulated Order 1–2, ECF No. 60-1.  That Order provided more specific requirements and timeframes to assist Defendants in achieving compliance with Consent Decree requirements regarding the Jail's physical plant, staffing, policies and procedures, population management, and youthful detainees.  *See generally* Stipulated Order, ECF No.

contempt is warranted."  Order 11, ECF No. 60.  Nevertheless, the "Court grudgingly approved [the Stipulated Order] even though the County had reached sustained compliance 'in only one of the 92 requirements of the Consent Decree.'"  Order to Show Cause 9, ECF No. 100 (citing Order 7, ECF No. 60).  The Stipulated Order met the PLRA's need-narrowness-intrusiveness requirements.  Stipulated Order, ECF No 60-1 (citing 18 U.S.C. § 3626(a)).

Despite the Stipulated Order, Defendants continued in their pattern or practice of constitutional violations, and continued their widespread non-compliance with the Consent Decree and Stipulated Order.  Indeed, the Monitor's fifteenth compliance report of November 24, 2021 concluded Defendants were in sustained or substantial compliance with only three of the Decree's 92 substantive provisions.  *See* Monitor's Fifteenth Report 22–23, ECF No. 101 (Nov. 24, 2021).

After several deaths in the Jail in 2021, status conferences, and a series of reports from the Monitor and the Parties, the Court entered a 28-page Order to Show Cause on November 23, 2021.  *See* ECF No. 100.  That Order directed Defendants to "show cause and explain why [they] should not be held in civil contempt and why a receivership should not be created to operate" the Jail.  Order 28, ECF No. 100.  The Court explained that its order was necessary because, due to Defendants' noncompliance with the Court's orders, "[t]he unconstitutional conditions [at RDC] have not been remediated—they have no end in sight."  Order 1, ECF No. 100; *see also* Order 28, ECF No. 100 (concluding that the record supports a receivership because constitutional violations have persisted for years and remain uncorrected) (citing *Brown v. Plata*, 563 U.S. 493, 499 (2011)).  Defendants filed a response on December 14, 2021.  Defs.' Resp. Order to Show

---

60-1.  Like the Consent Decree, Defendants negotiated the Stipulated Order's provisions and stipulated that its remedial relief complied with the PLRA.  Stipulated Order 2, ECF No. 60-1; *see also* Joint Mem. in Supp. Entry of Stipulated Order 1–2, ECF No. 54.

Cause, ECF No. 105.  On February 4, 2022, based on admissions in Defendants' response, the Court issued its First Order of Contempt, ECF No. 126, which found Defendants in contempt of more than two dozen Consent Decree provisions and withheld a remedy and potential finding of contempt on other provisions pending further proceedings.

On January 21, 2022, Defendants filed a PLRA-based Motion to Terminate, or, Alternatively, Modify Consent Decree ("PLRA Motion"), ECF No. 111; *see also* Defs.' Mem. in Supp., ECF No. 112.  From February 14 to March 1, 2022, the Court held an evidentiary hearing to address Defendants' potential further contempt, contempt remedies, and Defendants' PLRA Motion.  After considering all of the evidence presented at the hearing and in the record, the Court entered the Second Contempt Order, ECF No. 165, on March 23, 2022.[2]  The Second Contempt Order specifically found Defendants in contempt of "the Consent Decree and Stipulated Order as they pertain to [the Jail's] A-Pod," and reserved the issue of an appropriate sanction pending resolution of the PLRA termination motion.  Second Contempt Order 18, ECF No. 165.

The Court resolved Defendants' PLRA termination Motion on April 13, 2022, finding that the Defendants were engaging in current and ongoing violations of the rights of individuals confined in the Raymond Detention Center ("RDC"), and tying Defendants' noncompliance with court orders to their inability to bring the Jail up to minimum constitutional standards.  *See generally* Order Amending Consent Decree, ECF No. 168 (April 13, 2022).[3]  The Court found

---

[2]  The Monitor's seventeenth compliance report of August 11, 2022, like the previous fifteenth and sixteenth reports, concluded that Defendants are in substantial or sustained compliance with only three of the Decree's 92 substantive provisions; the report also concluded that Defendants are in substantial or sustained compliance with none of the New Injunction's 32 provisions.  *See* Monitor's Seventeenth Report 6, (Aug. 11, 2022), ECF No. 207.

[3]  Defendants' PLRA motion did not seek termination of the Stipulated Order, and the Court's Order Amending the Consent Decree accordingly did not terminate or modify that Order.  The Stipulated Order thus remains in effect after the Court's Order Amending Consent Decree.

an array of dangerous conditions and a substantial risk of harm at RDC.  The Court, however, "dramatically scaled back" the Consent Decree.  Order Amending Consent Decree 2, ECF No. 168.  The same day as the Order Amending the Consent Decree, the Court entered the New Injunction, ECF No. 169, which largely sets out the Consent Decree provisions the Court retained and modified.

On June 9, 2022, Defendants appealed both the New Injunction and the Order Amending the Consent Decree.  Defs.' Notice of Interlocutory Appeal, ECF No. 185.  The United States appealed these same two orders the next day.  U.S. Notice of Appeal, ECF No. 186.  Defendants also appealed the First and Second Orders of Contempt.  *See* ECF Nos. 166, 181.

Defendants filed a Motion for Reconsideration, ECF No. 171, of the Second Order of Contempt, which the United States opposed.  Opp'n to Defs.' Mot. for Recons., ECF No. 175.  The Court held an evidentiary hearing on that motion on July 19, 2022, and subsequently denied Defendants' Motion for Reconsideration.  *See* Order, ECF No. 204 (July 29, 2022).  In its Order, the Court analyzed the ongoing constitutional violations at the Jail in light of relevant case law, and found that a receivership was necessary.  Order 7–25, ECF No. 204.  The Court explained that, "regretfully, the County is incapable, or unwilling, to handle its affairs," and therefore that "[i]t is time to appoint a receiver."  Order 4, ECF No. 204.  In doing so, the Court explained that Defendants' repeated failure to satisfy constitutional standards, despite court oversight and remedial orders to which Defendants agreed, justified the receivership.  *See, e.g.*, Order 2–5, ECF No. 204 (recounting procedural history, including the County's repeated "promises," and noting that receivership is appropriate "to remedy otherwise uncorrectable violations of the Constitution or laws") (quoting *Plata v. Schwarzenegger*, 603 F. 3d 1088, 1093–94 (9th Cir.

2010)).  The Order stated that the receiver would be appointed and begin work "as soon as possible, but no later than November 1, 2022.  Order 26, ECF No. 204.

On July 5, 2022, Defendants moved to stay the New Injunction.  Defs.' Mot. to Stay, ECF No. 191; Defs.' Mem. In Supp., ECF No. 192.  The United States opposed, ECF No. 197, and the Court denied the motion to stay, finding that conditions at RDC remained unconstitutional and dangerous, and that the Defendants had "reneged on . . . promises made to the Court," for example, by continuing to house detainees in RDC's notoriously dangerous, inadequately supervised, and dilapidated A-Pod.  Order Den. Mot. to Stay Proceedings 7, ECF No. 211.[4]

On October 31, 2022, the Court issued the Receiver Orders, appointing a well-qualified candidate to the position of receiver, outlining the scope of the receiver's duties, and ordering that he take operational control over RDC on January 1, 2023.  ECF Nos. 215, 216.  The Court ordered the receiver to "begin his transition into the receivership" the next day.  ECF No. 216 at 4.  In doing so, the Court reiterated its finding that a receiver was necessary to operate RDC. ECF No. 216 at 1 (summarizing finding from the Court's July 29, 2022 order).  On Nov. 10, 2022, Defendants moved to stay the Receiver Orders.  ECF No. 227.  Defendants do not seek a stay of the Court's July 29, 2022 Order, ECF No. 204, which first imposed receivership as a contempt sanction.

---

[4] On November 2, 2022, the United States filed a Motion for Reconsideration, asking the Court to reinstate the provisions of the Consent Decree addressing conditions of detention for youth charged as adults.  Mot. for Recons., ECF No. 219.  On the same day, the United States also filed a motion asking the Court to clarify that the Receiver Orders incorporate certain findings required under the Prison Litigation Reform Act.  Mot. for Clar., ECF No. 221.  Defendants have opposed both motions.  ECF Nos. 229, 230.  Both motions are pending.

## II.    LEGAL STANDARD

A stay pending appeal functions as an "intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant."  *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks and citations omitted); *accord Tex. Dem. Party v. Abbott*, 961 F.3d 389, 397 (5th Cir. 2020).  Whether a stay is appropriate is "left to the court's discretion," and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion."  *Nken*, 556 U.S. at 433–34.

When exercising that discretion, courts look to the four traditional stay factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Id.* (citation omitted); *accord E.T. v. Paxton*, 19 F.4th 760, 764 (5th Cir. 2021) ("The [*Nken*] factors we consider in determining whether to grant a stay are by now axiomatic . . . .").  Even if a party makes a threshold "strong showing" of likely success on the merits, the party will not be entitled to a stay.  The party also must demonstrate that "the balance of equities"—i.e., the other three factors—"weighs heavily in favor of granting the stay." *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23 (5th Cir. 1992).

### III.    DISCUSSION

The stay factors all weigh against granting Defendants' requested stay of the Receiver Orders.

### A. Defendants Fail to Show Any Likelihood of Success on the Merits.

The Court should find that Defendants have failed to show any likelihood of success, much less the required strong showing, on the merits of their appeal challenging the Receiver Orders.[5]

### 1.    Defendants' Argument Misconstrues the PLRA Standard

Defendants contend that the Receiver Orders are "the remedy for the violation of" the 2016 Consent Decree, which "is no longer operative."  Mem. in Supp. Mot. to Stay 5, ECF No. 228; *see also id.* at 6 (claiming, without citing any legal authority, that the appeal of the Receiver Orders will be successful because the Court's analysis of the *Plata* factors in determining whether to appoint a receiver was "flawed" and "backward-looking in its focus on the [2016] Consent Decree").  According to Defendants, this means the Receiver Orders exceed the PLRA's requirement that prospective relief must be "narrowly drawn, extend[] no further than necessary to correct the violation of the Federal rights, and [be] the least intrusive means necessary to correct the violation of the Federal right."  18 U.S.C. § 3626(a)(1)(A).[6]

---

[5] Defendants briefly contend that they need only present a "substantial case on the merits," rather than a "more substantial showing of likelihood of success on the merits," because this case involves a serious legal question and, Defendants contend, the other three factors favor a stay.  Mem. in Supp. Mot. to Stay 5, ECF No. 228 (citing *Brown v. Mid-Am. Apartments, LP*, No. 1:17-CV-307-RP, 2018 WL 9815614, at *2 (W.D. Tex. Oct. 22, 2018) (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565-66 (5th Cir. 1981))).  Defendants fail to explain the difference between these legal standards, and their arguments in support of their case on the merits support neither a "strong showing" nor a lesser "substantial showing" standard.  Defendants also fail to provide any argument or authority in support of their assertion that a "serious legal question" would be under consideration on appeal.  In any case, the equities, as explained in this Memorandum, strongly disfavor granting a stay.

[6] Defendants do not seek a stay of the Court's earlier order, ECF No. 204, which imposed the receivership sanction and set in motion the Receiver Orders.  If the Court were to grant Defendants' motion and stay the Receiver Orders, the order imposing the receivership would remain operative.  That order targeted November 1, 2022, as the start date for the new receiver.  Order 26, ECF No. 204.

Defendants' argument misapplies the PLRA standard, which requires that the remedy meet the need-narrowness-intrusiveness requirement as to constitutional violations, *not* violations of whichever consent decree or other order appears most recently on the docket.  *See* 18 U.S.C. § 3626(a)(1)(A); *see also* Order 23, ECF No. 168 (summarizing PLRA standard as requiring that relief be "necessary, narrowly drawn, and extend no further than necessary to correct ongoing constitutional violations").  The PLRA requires that courts ensure a "'fit' between the [remedy's] ends and the means chosen to accomplish those ends,'" and that remedial orders generally be limited to address prison conditions that violate the Constitution.  *Brown v. Plata*, 563 U.S. 493, 531 (internal quotations and citations omitted); *see also Plata v. Schwarzenegger*, 2005 U.S. Dist. WL 2932252 (N.D. Cal. Oct. 3, 2005) (imposing a receivership to remedy unconstitutional prison conditions permitted to persist by noncompliance with consent decree).  Here, relying appropriately on the entire record, the Court found that ongoing constitutional violations justify receivership.  *See* Order 7–25, ECF No. 204 (July 29, 2022) (discussing ongoing violations, including evidence from as recent as the July 19, 2022 evidentiary hearing).

Defendants also suggest that the Court's findings were based on old facts, although they concede that the Court, in finding receivership was warranted, "mentioned" evidence from as recently as a few months ago.  Mem. in Supp. Mot. to Stay 6, ECF No. 228 at 6.  As set forth above, this argument mischaracterizes the Court's orders, which repeatedly reference current and ongoing constitutional harm.  *See* ECF No. 204 at 7–25.  This argument is also wrong on the law.  The PLRA provides that prospective relief must be "necessary to correct a current and ongoing violation of the Federal right" at stake.  18 U.S.C. § 3626(b)(3); *see Castillo v. Cameron Cty.*, 238 F.3d 339, 353 (5th Cir. 2001) (explaining, in the context of a PLRA termination motion, that

a current and ongoing violation is "one that exists at the time the district court conducts the [PLRA] inquiry") (internal citation and quotations omitted).  This inquiry into whether violations are "current and ongoing," such that relief comports with PLRA requirements, does not operate in a temporal vacuum.  *See Depriest v. Walnut Grove Corr. Auth.*, No. 3:10-CV-663-CWR FKB, 2015 WL 3795020, at *8-9 (S.D. Miss. June 10, 2015) (Reeves, J.).  Past violations provide an "appropriate factual foundation" and "reference point" to help establish "current and ongoing" constitutional violations.  *Id.*; *see also id.* at *12 ("Defendant's knowledge of circumstances posing a substantial risk of serious harm was informed by past events.").  Here, the Court's assessment of the entire record to find that there are current and ongoing constitutional violations was proper, and Defendants' failure to comply with the 2016 Consent Decree, including with provisions retained in the New Injunction, and 2020 Stipulated Order, is both relevant and an appropriate part of the Court's analysis.  *See, e.g.*, Order 2–4, ECF No. 204 (explaining how the Court's contempt orders were based on the County's repeated failures to reach constitutional compliance at RDC).

2.   ***The Court's Findings of Contempt with Prior Orders Apply to Ongoing Violations of Federal Law and the New Injunction.***

Defendants' claim that the Receiver Orders are entirely premised on the 2016 Consent Decree ignores the procedural history of this case.  In actuality, the Receiver Orders were entered as part of a sequence of related events, including the United States' 2019 contempt motion; the Court's 2021 order to show cause why Defendants should not be held in contempt of court; and the Defendants' motion to terminate, or amend, a consent decree.  *See* Mot. for Contempt, ECF No. 30; Order to Show Cause, ECF No. 100; Defs.' Mot. to Terminate, or Alternatively, Modify Consent Decree, ECF No. 111.  The Court repeatedly cross-referenced the various orders and

proceedings as the Court sought an appropriate resolution of the parties' dispute.  *See, e.g.*, Order 7, 11, 12, 14–15, 16, 21–24, ECF No. 204 (citing the Court's previous orders and testimony from evidentiary hearings).

Furthermore, the New Injunction is an amended version of the 2016 Consent Decree; it maintains provisions of the 2016 Consent Decree in which the Court found Defendants in contempt.  *See generally* Order Amending Consent Decree, ECF No. 168 (reproducing provisions from the 2016 Consent Decree, discussing them in turn, and explaining which the Court will maintain, modify slightly, or terminate); New Injunction, ECF No. 169 (listing provisions of the 2016 Consent Decree by their original numbers, omitting the terminated numbered paragraphs).  The Court also found the relief in the New Injunction PLRA-compliant. Order 23, ECF No. 168.  Thus, on its face, the New Injunction is an amended, more limited version of earlier orders tied to the Court's assessment of the constitutionality of conditions at the Raymond Detention Center.  New Injunction, ECF No. 169.  Defendants are not, therefore, likely to prevail on their argument that the Receiver Orders are tied solely to what they claim is a now-terminated order.

### 3. *The Court Correctly Applied the Receivership Factors to Defendants' Constitutional Violations.*

Defendants do not even attempt to claim that conditions at RDC are constitutional. Instead, they seek to relitigate the factual record and complain that the Court's analysis of the *Plata* factors for appointment of a receiver was "flawed."  Mem. in Supp. Mot. to Stay 6, ECF No. 228.  But Defendants' arguments amount to nothing more than a hodge-podge of examples of minor actions they have taken to try to improve RDC—the same piecemeal excuses the

County has made time and again over the life of this case. *See, e.g.*, Order 25, ECF No. 204 ("The County refuses to take responsibility. Instead, it offers a litany of excuses.").

In fact, and as the Court found, conditions at RDC remain unconstitutional. Given these ongoing constitutional violations, the Court appropriately considered each of the *Plata* factors for appointment of a receiver and applied the factors to the record. *See* Order 7–25, ECF No. 204 (applying the factors—risk of harm, failure of less intrusive means, risk of confrontation and delay, wasted resources, leadership, bad faith, likelihood of a quick and efficient remedy—to the record and finding that ongoing constitutional violations justified receivership). The Court's *Plata* analysis considered the evidentiary record, Defendants' long history of violating both court orders and constitutional standards, and Defendants' PLRA objections. Order 7, ECF No. 204 (citing the Court's "extensive" discussion in its previous Orders, ECF Nos. 100 and 168, of unconstitutional conditions at RDC); Order 23, ECF No. 204 ("Unfortunately, the record demonstrates that the County is either unable or unwilling to exhibit the leadership 'necessary to protect the lives of [detainees].'" (quoting *Plata*, 2005 WL 2932253 at *29)).

As to risk of harm, the Court discussed at length the cumulative evidence in the record that demonstrates, beyond any doubt, that RDC remains extremely dangerous.[7] Defendants acknowledge that the Court's analysis included ongoing risk of harm and other constitutional deficiencies at RDC based on recent evidence in the record. Mem. in Supp. Mot. to Stay 6, ECF No. 228 (referencing the Court's discussion of Defendants' failure to take required steps to

---

[7] Defendants assert that no one has died recently at the Jail as an example of improving safety. This is hardly compelling evidence of their likelihood of success on the merits. The Court is well aware that detainees have been harmed and placed at serious risk of harm for the entire history of this case, right up to the present. *See, e.g.*, Monitor's Seventeenth Report 9–10, ECF No. 207 (Aug. 11, 2022) (describing violent assaults due to extremely low custody staffing and other serious deficiencies in detainee supervision, and risk of harm to suicidal detainees due to inadequate supervision). Defendants also omit the fact that a detainee escaped from RDC just days before they filed their motion to stay. Madeline Nolan, *Detainee Who Escaped from Raymond Detention Center back in Custody* (Nov. 10, 2022, 11:13 a.m. CST), https://www.wapt.com/article/detainee-who-escaped-from-raymond-detention-center-back-in-custody/41921755.

address mental health needs at the Jail, to maintain the decrepit physical plant, and to address the dangerous conditions in A-Pod.  Beyond these examples, however, Defendants' description of the factual record seriously understates just how dangerous the conditions are in the Jail, and how little the Defendants have done to implement court orders and other efforts to bring them into constitutional compliance.  *See* Order 8, 10, 12 n.8, 13, 20, ECF No. 204 (highlighting testimony and evidence from July 19, 2022 evidentiary hearing as examples of ongoing compliance shortcomings); *see generally* Tr. of Evidentiary Hr'g (Jul. 19, 2022); Monitor's Seventeenth Report 6, ECF No. 207 (Aug. 11, 2022).

Nor does the fact that the Defendants have made some small steps toward progress, in the context of longstanding, gross constitutional violations, absolve or negate their deliberate indifference.  *See Depriest*, 2015 WL 3795020 at *12 (finding "failure to *fully* comply with directives aimed at improving inmate safety implies indifference on the part of Defendant[s]" and dismissing contention "that some affirmative steps taken by them negate a finding of deliberate indifference" (emphasis added)); *see also Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 397–98 (5th Cir. 2000) (observing that a jailer has a "duty to not act with subjective deliberate indifference to a known substantial risk" and accordingly cannot "disregard . . . precautions he kn[ows] should be taken . . . .").

In its analysis of each of the other *Plata* factors, the Court explained, in detail, why receivership is the appropriate remedy.  The Court found that less intrusive means failed to remedy the unconstitutional conditions, noting that, despite years of Court oversight and technical assistance from the monitor, Defendants were no closer to compliance and the Jail was still dangerous and ill maintained.  Order 14–15, ECF No. 204.  The Court found that the risk of confrontation and delay, absent a receiver, would continue, pointing to examples of the County's

"culture of inertia" and "institutional lag" that has prevented progress at the Jail and continues to stymie basic tasks, such as providing documents to the monitor.  Order 18–19, ECF No. 204.  The Court found that a receiver would stop the County's long history of wasted resources in managing the Jail, including by imposing order and supervision that will allow the physical plant to be properly maintained, and explaining how various changes in management and leadership have led to wasted resources.  Order 19–20, ECF No. 204.  The Court also reasoned that large-scale new projects, including the planned new jail, could lead to additional wasted resources without appropriate leadership to install adequate supervision and processes at the new jail.  Order 19–20, ECF No. 204.  As to leadership, the Court cited several examples of how problematic leadership at the County level, and blame-passing among Jail leadership, supports installing a receiver.  Order 21–23, ECF No. 204.[8]  And the Court explained that a receiver was likely to lead to constitutional compliance more quickly and efficiently than the Defendants have been able to do heretofore.  Order 23–24, ECF No. 204.[9]

For the foregoing reasons, Defendants are not likely to prevail in either their claim that the Court erred in applying the *Plata* factors to find that a receiver is necessary to remedy current and ongoing constitutional violations, or their argument that a receivership is based on an old order and does not comply with the PLRA.  Order 2–4, ECF No. 204 (discussing the necessity of

---

[8] Defendants contend that "heated exchanges" are natural in local politics.  ECF 228 at 8.  In Hinds County, the "heated exchanges" led to the arrest of one of the Defendants.  *See* Order, ECF No. 204 at 21–22.  The Board's repeated failure to approve both large and minor provisions of the Court's orders indicate a level of dysfunction that the Court properly considered to be excessive.  *See id.* at 21–23.  While the Board's power struggles make for a distracting sideshow, the bottom line is that the County has failed to consistently prioritize constitutional compliance at the Jail; repeatedly has been driven off-course by frequent changes in leadership at the Board, Sheriff, Jail Administrator, and other levels; and has failed to support solid leaders during their tenure.  *See* Orders, ECF Nos. 204 at 21–23; 168 at 17–19.

[9] The Court declined to find bad faith on the part of Defendants.  ECF No. 204 at 23.

receivership and consistency with the PLRA); Order Amending Consent Decree, ECF No. 168

(retaining or conforming consent decree provisions into New Injunction to comply with PLRA).

**B. Defendants Will Suffer No Irreparable Harm.**

Defendants have failed to show they will suffer irreparable harm if the receiver begins

work at the Jail.  The thrust of Defendants' irreparable harm argument is that receivership is an

extraordinary remedy and will vest control over RDC with the receiver, and away from the

County.  *See* Mot. to Stay 8–10, ECF No. 228.  Specifically, Defendants complain that they will

be irreparably harmed because the receiver will have "complete authority" over RDC, and will

be able to impose financial burdens on the County.  Mem. in Supp. Mot. to Stay 9, ECF No. 228.

Defendants argue that, given limited County funds, the receiver will be "empower[ed] . . . to take

funds away from other important programs," such as "roads, bridges, and schools," and that the

receiver's expenditures therefore could "force the County to defund other legitimate funding

needs, or raise taxes."  Mem. in Supp. Mot. to Stay 9, ECF No. 228.  Defendants contend further

that the receiver's "staggering budgetary authority could bankrupt the County."  Mem. in Supp.

Mot. to Stay 9, ECF No. 228.

These speculative, theoretical worries about costs are not supported by the record, and

fail to make the requisite showing of irreparable harm if the receiver begins work as the Court

has ordered.  Indeed, the actual record suggests that many of the Jail's problems reflect lack of

professionalism, leadership, strategic planning, and other factors that are not primarily financial

in nature.  Order 17, ECF No. 204 (perennial power struggles and institutional lag).  Defendants

squandered repeated opportunities to correct constitutional deficiencies with their own selected

administrators, and repeatedly failed to implement or offer alternatives to the many technical

assistance recommendations from the Monitor and the Jail staff.  Order 14–15, ECF No. 204

(describing attempts by the monitor to provide technical assistance); Order Amending Consent

Decree 18–19, ECF No. 168 (describing lack of support for former Jail Administrator and inability to make significant progress during her tenure).

Moreover, the Receiver Orders narrowly intrude on the County's authority over its affairs, and only to the extent necessary. The Court considered and rejected more intrusive remedies than receivership. *See, e.g.*, Order 15–17, ECF No. 204 (considering alternatives including monetary sanctions, detainee release orders, and other measures). The New Injunction is a drastically scaled-back version of the Consent Decree it replaced, and the Court limited the receiver's authority to conditions at RDC.[10] The Receiver Orders include various mechanisms to give Defendants continued input into Jail budgets, management, and operation, as well as safeguards to limit the powers of the receiver, and a mechanism for the Defendants to obtain appropriate relief in the event of a dispute with the receiver. Order, ECF No. 216. While the receiver must necessarily stand in place of Defendants in order to run RDC, this authority is ultimately temporary. Unlike a corporate receivership, Defendants have not been terminated or permanently replaced. The receivership includes a process to return RDC to Defendants' formal control once the facility comes into compliance with constitutional standards. Order 11, ECF No. 216.[11] The Court anticipated that the duration of the receivership would be only a few years. *See* Order 23 n.17, ECF No. 204.

---

[10] The United States has moved this Court to reconsider its termination of provisions of the Consent Decree governing conditions for youthful detainees and to issue an indicative ruling that it will reinstate those provisions upon remand from the Court of Appeals. *See* Mot. for Recons., ECF No. 219.

[11] Defendants' confusion over how they can be liable for conditions in a jail run by the receiver reflects their misunderstanding of the remedy. Mem. in Supp. Mot. to Stay 10, ECF No. 228. The receiver is to run the Jail with all the powers that the Defendants themselves exercise, but with the added authority of the federal court. This is a temporary transfer of powers, not the permanent replacement of local officials. *See, e.g.*, Order 11, ECF No. 216 (providing for process to bring receivership to an end and return RDC to Defendants' control); Order 23 n.17, ECF No. 204 (suggesting that, if the County follows through on its plans to open a new jail by 2025, that "constrains the potential scope of the Receivership" by imposing a "natural projected end-date"). Moreover, it is incorrect to say the Defendants have no authority over the Jail at all. The Receiver Orders clearly give them a continued role in implementing the New Injunction. *See, e.g.*, Order ¶ I.5, ECF No. 216 ("The Defendants shall work closely with the Receiver to facilitate the accomplishment of the Receiver's duties under this Order."); ¶¶ II.2, II.9, (providing for

The Court also gave due weight to any impact of the receiver on the Defendants, properly concluding that the need for relief justifies the receivership. *See* ECF No. 204 at 14–17.  The Court's analysis appropriately balanced the goal of "not micromanag[ing] state prisons," *Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004), with the Court's "duty to protect constitutional rights" "[w]hen a prison regulation or practice offends a fundamental constitutional guarantee," *Turner v. Safley*, 482 U.S. 78, 84 (1987) (quoting *Procunier v. Martinez*, 416 U.S. 396, 405–06 (1974), *overruled in non-relevant part by Thornburgh v. Abbott*, 490 U.S. 401 (1989)); *see also Turner*, 482 U.S. at 84 ("Prison walls do not form a barrier separating prison inmates from the protections of the Constitution.").  Moreover, Defendants' concerns about federalism or budgetary burdens, *see* ECF No. 228 at 9 (citing *Horne v. Flores*, 557 U.S. 433, 448 (2009)), must give way to the Court's duty to protect constitutional rights where, as here, conditions of confinement "offend[] a fundamental constitutional guarantee." *Turner*, 482 U.S. at 84; *see also Horne*, 557 U.S. at 450 ("It goes without saying that federal courts must vigilantly enforce federal law and must not hesitate in awarding necessary relief.").  The Court analyzed at length the failure of less intrusive remedies and found that a receivership was warranted to remedy unlawful conditions of confinement that Defendants have failed, repeatedly, to fix.  *See* Order 17, ECF No. 204 ("The troubling record in this case . . . demonstrates that a receivership is a remedy proportionate to the constitutional violations and gravity of harm faced by detainees at RDC.").  Defendants have, accordingly, failed to establish that they will be irreparably harmed if the receiver starts work.

---

notification of and comment by the parties in various aspects of the receiver's duties and powers); ¶ II.10 (providing process for receiver to seek additional funds by proposing budget modifications to the Hinds County Board of Supervisors); ¶ III.8 (providing process for receiver to address possible barriers posed by state or local law, and providing for consultation with the parties).

The Court should find that Defendants would not be irreparably harmed if the Receiver Orders take effect and the receiver begins work.

**C.  A Stay Would Substantially Injure the United States, the Public Interest, and the Rights of Detainees.**

Defendants' arguments on the last two stay factors, "(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies," *Nken*, 556 U.S. at 433-34, miss the mark and ignore the law.[12]

As for substantial injury to the other party in this proceeding, Defendants ignore that the United States represents the public interest and the serious harm to incarcerated persons that would flow from delaying commencement of the receivership.  *See* Mem. in Supp. Mot. to Stay 10–11, ECF No. 228.  They also make the incongruous point that "no evidence was adduced at the evidentiary hearing that the Consent Decree was helpful in improving conditions at the RDC," Mem. in Supp. Mot. to Stay 11, ECF No. 228, which completely ignores the fact that Defendants never made substantial or effective efforts to comply with it.  *See, e.g.*, First Order of Contempt, ECF No. 126.  Nor did Defendants ever make sufficient efforts to comply even with the New Injunction, despite second (and repeated) chances by the Court.  *See, e.g.*, Order 4, ECF No. 204 ("Having given the County until July 1, 2022 to purge itself of contempt, per the County's request, the Court held a final mitigation hearing on July 19, 2022. . . . After ample time and opportunity, regretfully, it is clear that the County is incapable, or unwilling, to handle its affairs.").  This failure is what the Court's Receiver Orders seek to correct.

The fact remains that Defendants continue to violate the constitutional rights of incarcerated persons to such a magnitude that the Court found that Defendants are subjecting

_____

[12] The third and fourth factors merge when the federal government is the party opposing the stay.  *Nken*, 556 U.S. at 435.

detainees to unconstitutional conditions where "terror reigns."  *See, e.g.*, Order 7, ECF No. 204

(quoting *Alberti v. Klevenhagen*, 790 F.2d 1220, 1226 (5th Cir. 1986) (citing *Jones v. Diamond*,

636 F.2d 1373 (5th Cir. 1981))).  Such violations necessarily constitute irreparable injury.

*See Elrod v. Burns,* 427 U.S. 347, 373 (1976) (plurality) (finding loss of constitutional

"freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury");

*accord BST Holdings, L.L.C. v. Occupational Safety & Health Admin., U.S. Dep't of Lab.*, 17

F.4th 604, 618 (5th Cir. 2021); *see also Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir.

2012) ("When constitutional rights are threatened or impaired, irreparable injury is presumed.").

As for the public interest, Defendants repeat prior arguments about federalism and that

states have a strong interest in administration of prisons.  *See* Mem. in Supp. Mot. to Stay 11,

ECF No. 228.  But the public has a significant interest in compliance with the Constitution.

Furthermore, federalism concerns give way to this Court's "duty to protect constitutional rights"

"[w]hen a prison regulation or practice offends a fundamental constitutional guarantee," *Turner*,

482 U.S. at 84.  Defendants also casually dismiss the United States' interest, because this is not a

class action and ". . . the United States is the only plaintiff."  Mem. in Supp. Mot. to Stay 10,

ECF No. 228.  But the United States maintains a significant federal interest in upholding the

Constitution and remedying its violations.  *See, e.g.*, *Nken*, 556 U.S. at 436 (cautioning against

ignoring the public interest in the streamlined enforcement of federal law, as well as the injury

caused by prolonged violations of law).  Injunctive remedies "designed to end a continuing

violation of federal law," like the Receiver Orders here, are "necessary to vindicate the federal

interest in assuring the supremacy of that law."  *Green v. Mansour*, 474 U.S. 64, 68 (1985); *see*

*also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest

concerns are implicated when a constitutional right has been violated, because all citizens have a

stake in upholding the Constitution."); Civil Rights of Institutionalized Persons Act, 42 U.S.C.

§ 1997b (requiring Attorney General to certify belief that civil "action by the United States is of

general public importance and will materially further the vindication of rights, privileges, or

immunities secured or protected by the Constitution").

The public interest and the United States' interest in protecting detainees' rights weigh

heavily in favor of immediate implementation of the Receiver Orders.  The Jail remains

dangerous and needs a stronger leadership structure as soon as possible.  Any delay in

implementing the Receiver Orders would delay fixing serious, systemic constitutional violations.

If conditions do not improve, detainees will continue to face serious harm.  The longer the delay

of the remedy, the greater the harm to the United States' compelling interest in protecting

detainees from constitutional violations.

In sum, the Defendants have a weak case on the merits, and they will not be irreparably

harmed absent a stay.  The harm to detainees, the United States' interests, and the public interest

greatly outweigh Defendants' unavailing arguments.  The Court, accordingly, should find that

Defendants have not carried their burden on any of the four stay factors.

## IV.    CONCLUSION

For the reasons given above, the Court should deny in its entirety Defendants' Motion to

stay the Receiver Orders.


Respectfully submitted,


DARREN J. LaMARCA                    KRISTEN CLARKE
United States Attorney               Assistant Attorney General
Southern District of Mississippi     Civil Rights Division

20

STEVEN H. ROSENBAUM
Chief
Civil Rights Division
Special Litigation Section

MITZI DEASE PAIGE (MS #6014)          LAURA L. COWALL (DC #481379)
Assistant U.S. Attorneys               Deputy Chief
U.S. Attorney's Office                  laura.cowall@usdoj.gov
Southern District of Mississippi        (202) 514-1089
501 E. Court Street – Ste. 4.430        (202) 514-0212 (fax)
Jackson, MS 39201
Mitzi.Paige@usdoj.gov
(601) 973-2840
(601) 965-4409 (fax)


                                        /s/ Christopher N. Cheng
                                        CHRISTOPHER N. CHENG (PA #69066)
                                        Trial Attorney
                                        christopher.cheng@usdoj.gov
                                        (202) 514-8892
                                        (202) 514-0212 (fax)

                                        HELEN VERA (DC #1025735)
                                        Trial Attorney
                                        helen.vera@usdoj.gov
                                        United States Department of Justice
                                        Civil Rights Division
                                        Special Litigation Section
                                        4 Constitution Square
                                        150 M St., N.E.
                                        Washington, DC  20002

DATED:  November 18, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 18, 2022, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

*/s/ Christopher N. Cheng*
CHRISTOPHER N. CHENG
Attorney for the United States
United States Department of Justice
Civil Rights Division, Special Litigation Section
4 Constitution Square
150 M. Street, NE
Washington, DC 20530