IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA                                        PLAINTIFF

VS.                                 CIVIL ACTION NO. 3:16-CV-489-CWR-BWR

HINDS COUNTY, ET AL.                                           DEFENDANTS

### REBUTTAL MEMORANDUM IN SUPPORT OF URGENT AND NECESSITOUS MOTION TO STAY RECEIVER ORDERS PENDING APPEAL

Defendants Hinds County, Mississippi, and Sheriff Tyree Jones, in his official capacity (collectively, "the County"), respectfully submit this Rebuttal Memorandum in support of their Motion to Stay Receiver Orders Pending Appeal (ECF 227).

> "'It was a bright cold day in April, and the clocks were striking thirteen,' and the powers in charge of Florida's public university system have declared the State has unfettered authority to muzzle its professors in the name of 'freedom.'"[1]

Similarly, the federal government argues that imposing a receivership as a sanction for violating a decree that the Court did away with because it exceeded constitutional minimums is perfectly fine, that giving a receiver total authority over RDC, its budget, and its personnel somehow will not irreparably injure the County, and that the debilitating effects of a receivership on democracy, the principles of federalism, and Hinds County's interests in administering its jail are inconsequential. In the federal government's view, the clocks are indeed striking thirteen. The federal government has lost its way in this case. All four factors the Court must consider in determining whether to grant the County's request for a stay favor a stay.

*__The County has a substantial likelihood of success on the merits__*. The United States asserts that the County does not have a substantial likelihood of prevailing on the merits regarding

---

[1] *Pernell v. Florida Bd. of Governors of State Univ. Sys.*, Case Nos.: 4:22cv304-MW/MAF, 4:22cv324-MW/MAF, 2022 WL 16985720 at *1 (N.D. Fla. Nov. 17, 2022).

whether the Receiver Orders exceed the permissible scope of prospective relief under the Prison Litigation Reform Act (PLRA), 18 U.S.C. § 3626. The United States alleges that the County's claim "that the Receiver Orders are entirely premised on the 2016 Consent Decree ignores the procedural history of the case."[2] Wrong. The County is not merely claiming that the Receiver Orders are entirely premised on the 2016 Consent Decree. Instead, the Court affirmatively declared that its decision to appoint a receiver "is intended to serve as the final sanction for the Court's two Orders of Contempt" (ECF 204 at 26). The First Order of Contempt (issued on February 4, 2022) found the County in "non-compliance" with 30 paragraphs of the Consent Decree (ECF 126 at 20-26). 20 of the 30 "non-compliance" paragraphs (67%) are gone – they are not in the New Injunction (ECF 169). There are a total of 34 paragraphs in the New Injunction exclusive of the monitoring provisions. At the time the New Injunction was issued, the County was complying, to some degree, with 28 of its 34 paragraphs (82%). The Second Order of Contempt found only that the County "failed to comply with the Consent Decree and Stipulated Order as they pertain to A-Pod" (ECF 165 at 18).

The Court did not subject the Receiver Orders to the need-narrowness-intrusiveness analysis, nor do the Receiver Orders satisfy any other factors the Court considered (see ECF 204 at 5). There is no mistaking that the appointment of a receiver "serve[s] as the final sanction for the Court's two Orders of Contempt." There is no mistaking that the Court's two Orders of Contempt found the County in contempt of the Consent Decree. There is no mistaking that Consent Decree is no longer operative. There is no mistaking that the reason why the Consent Decree is no longer operative is because the Court affirmatively found that it exceeded constitutional minimums (ECF 168 at 55, 130, 132).

---

[2] ECF 232, Memorandum in Support of United States' Opposition at 10.

PD.40465877.1

The United States is having a hard time letting the Consent Decree go. On the one hand, the United States alleges that "Defendants are not … likely to prevail on their argument that the Receiver Orders are tied solely to what they claim is a now terminated order" – *i.e.*, the Consent Decree.[3] On the other hand, the United States says that "[t]he New Injunction is a drastically scaled-back version of the Consent Decree it replaced."[4] It is self-evident that a decree that has been "replaced" is "a now terminated order" that is no longer operative.

Plainly, the imposition of the extreme remedy of a receiver for the violation of a decree that exceeded constitutional minimums and is no longer operative is problematic. The County has a substantial likelihood of prevailing on the merits regarding whether the Receiver Orders exceed the permissible scope of prospective relief under the PLRA.

*The County will be irreparably injured absent a stay of the Receiver Orders*. The United States alleges that the County will not be irreparably injured absent a stay of the Receiver Orders because any concerns about a receivership are merely "speculative, theoretical worries."[5] "This is positively dystopian." *See Pernell*, 2022 WL 16985720 at *1. The United States' casual dismissal of the staggering implications of effectively replacing democratically elected public officials with its hand-picked former consultant is alarming. But the United States doubles down, alleging that the RDC "repeatedly has been driven off-course by frequent changes in leadership at the Board, Sheriff, Jail Administrator, and other levels."[6] There is a word for changes in Boards and Sheriffs. That word is "elections." Every four years the voters go to the polls with the ability to change county government and elect a new sheriff.[7]

---

[3] ECF 232, Memorandum in Support of United States' Opposition at 11.
[4] ECF 232, Memorandum in Support of United States' Opposition at 16.
[5] ECF 232, Memorandum in Support of United States' Opposition at 10.
[6] ECF 232, Memorandum in Support of United States' Opposition at 14 n. 8.
[7] These elections and the resulting change in County administration also create significant doubts that the original Consent Decree was enforceable against the County once the current Board of Supervisors was elected. *See, e.g.*, *In re Mun. Boundaries of City of Southaven*, 864 So. 2d 912, 917 (Miss. 2003) (citing cases) (holding that where a county

Unmoved by the pesky burdens of democracy, the United States asserts that the "transfer of powers" to the Receiver is temporary, "not the permanent replacement of local officials," and that the transfer will last "only a few years." It is cold comfort that completely stripping the County of authority over every facet of operations and control related to RDC and passing total authority to the Receiver is (allegedly) for "only a few years." It is disingenuous to say that doing so does not harm the County (and its voters and taxpayers). There is no escaping that the imposition of a receiver is a "debilitation of the democratic process." *Plata v. Schwarzenegger*, 2005 WL 2932253 at \*31 (N.D. Cal. Oct. 3, 2005). Unfortunately, the United States sees no harm in that.

In claiming that the receivership presents no harm to the County, the United States does not stop with its disorienting disregard for the democratic process. The United States' position that the harms of the receivership to the County are merely theoretical is wishful thinking and wrong. That the Receiver has total authority over RDC is not theoretical. It is the Court's order. That the Receiver has complete authority over "all administrative, personnel, financial, accounting, contractual, and other operational functions for RDC" (ECF 216, § I, ¶ 4, p. 2) is not theoretical. It is the Court's order. That the Receiver is authorized to "determine the annual RDC budget, including for staff salaries and benefits, medical and mental health services (including the medical provider contract), physical plant improvements, fire safety, and any other remedies needed to address the constitutional deficiencies documented in this case" (ECF 216, § II, ¶ 7, p. 5) is not theoretical. It is the Court's order. Effectively giving the Receiver the power to tax and spend is not theoretical. It is the Court's order. That the Receiver has sweeping authority to hire staff, set

---

board uses its discretionary authority to contract, that board "cannot bind succeeding [county] administrations"); *see also* Miss. Code 19-3-40(1) (providing the "board of supervisors of any county shall have the power to adopt any orders, resolutions or ordinances with respect to county affairs, property and finances"). Under Mississippi law, the County's prior board of supervisors had no authority under Mississippi law to bind the current board to the Consent Decree or its terms.

PD.40465877.1

their compensation, set their terms of service, and enter into contracts with them (ECF 216, § IV, ¶¶ 2 and 9, pp. 8, 10) is not theoretical.  It is the Court's order.  That the County is required to pay all costs of the Receiver and his staff, and to fund "an initial operating fund" and a "Receiver's Fund Account" (ECF 216, § IV, ¶¶ 11, 13, 15 and 16, pp. 10-11) is not theoretical.  It is the Court's order.  That the County's budget is a zero-sum game is not theoretical.  It is a fact.  *See* Feb. 25., 2022 Trial Tr. at 1720:3-5.  That more money for RDC means less money for other services, such as roads, bridges, and schools (not to mention, a new jail) is not theoretical.  It is a fact.  Feb. 25., 2022 Trial Tr. at 1732:6-1734:5, 1761:14-21.

Just as the Constitution does not "charge[ ] federal judges ... with running state prisons," *Valentine v. Collier*, 978 F.3d 154, 165 (5th Cir. 2020), it does not charge federal judges with running local jails through a receiver.  "Principles of federalism and separation of powers dictate that exclusive responsibility for administering state prisons resides with the State and its officials." *Id*. at 166 (citation omitted).  Those same principles dictate that the responsibility for administering RDC should reside with the County and its officials.  After incorrectly accusing the County of misunderstanding the remedy of the receivership, the United States stumbles regarding these principles:  "The receiver is to run the Jail with all the powers the Defendants themselves exercise [in actuality, <u>formerly</u> exercised], but with the added authority of the federal court."[8]  The United States recognizes that the Receiver, who was a paid consultant of the Department of Justice for 11 years,[9] has "all the powers" over RDC that the County previously had <u>plus</u> "the added authority of the federal court."  That captures the irreparable harm to the County in a nutshell.

***A stay will not substantially injure the parties interested in this proceeding***.  In claiming that a stay will substantially injure other parties interested in this proceeding, the United States

---

[8] ECF 232, Memorandum in Support of United States' Opposition at 16 n. 11.
[9] *See* Resume of Wendell M. France, Sr. at 2, attached as **Exhibit** "**A**".

"cherry-pick[s] language, devoid of context," from several cases.[10] *See Pernell*, 2022 WL 16985720 at *8. The United States argues that it "maintains a significant federal interest in upholding the Constitution and remedying its violations,"[11] but the United States cannot see the forest for the trees. The claimed violations are violations of the Consent Decree. Worse, as shown above, it is claimed violations of a Consent Decree that is no longer operative because the Court ruled it exceeded constitutional minimums. Not imposing a receivership as a sanction for the violation of a decree that is no longer operative does not constitute an injury to the United States or other parties interested in the proceeding. To the contrary, imposing a receivership as a sanction for violating a Consent Decree that exceeded constitutional minimums and is no longer operative substantially harms the County and its taxpayers. Nonetheless, that is what has occurred here.

***A stay of the Receiver Orders is in the public interest***. The United States' denying that a stay is in the public interest because the Receiver is utterly unaccountable to the voters and taxpayers of Hinds County is akin to advocating that the clocks are striking thirteen. The Receiver Orders are noticeably clear that the Receiver is utterly unaccountable to the voters and taxpayers of Hinds County. Denying that is denying the undeniable.

---

[10] ECF 232, Memorandum in Support of United States' Opposition at 18-19. For example, the United States cites *Elrod v. Burns* for the broad proposition that "loss of constitutional 'freedoms, for even minimal periods of time" constitutes irreparable injury, yet *Elrod* is a First Amendment case and, additionally, the Court's statement is limited to "First Amendment freedoms" not, the broader proposition for which the United States cites the case. *See* 427 U.S. 347, 373-74 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). The United States' reliance on *Obama for America v. Husted* is no better, as that is a voting rights case concerning the fundamental right to vote. *See* 697 F.3d 423, 436 (6th Cir. 2012) ("A restriction on the fundamental right to vote therefore constitutes irreparable injury.") (citation omitted). Worse, the lone Fifth Circuit case the United States cites actually ***supports*** the County's position that it stands to suffer irreparable injury if the Receiver Orders are not stayed. *See BST Holdings, L.L.C. v. O.S.H.A.*, 17 F.4th 604, 618 (5th Cir. 2021) (finding companies seeking stay of OSHA's workplace vaccine mandate "will also suffer irreparable harm" if the mandate was not stayed because of "***business and financial effects*** of a lost or suspended employee, ***compliance and monitoring costs*** associated with the Mandate, [or] the ***diversion of resources necessitated*** by the Mandate[] . . . . The Mandate places an immediate and irreversible imprint on all covered employers in America, and "***complying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs***.") (citation omitted) (emphasis added).

[11] ECF 232, Memorandum in Support of United States' Opposition at 19.

In reality, the unrestrained costs allowed by the Receiver Orders ultimately will be borne by the County's taxpayers, yet those costs may be unnecessary. To be sure, the public's tax dollars comprise the County's financial resources, and those same resources are the sole source of the Receiver's operating funds. In fact, the Monitor has already signaled these costs will be exacerbated, claiming that the Receiver apparently has already decided that the monitoring team—which the County's taxpayers also fully fund—will remain in place despite the clear and unmistakable breakdown between the Monitor and the County. *See* Nov. 20, 2022, E-mail from L. Simpson to Counsel, attached as **Exhibit** "**B**". If this were not enough, failure to grant a stay will impede the County's democratically elected leaders from realizing maximum value of taxpayers' funds for carrying out the County's other responsibilities, which include but are not limited to, the funding of education, infrastructure, and public safety. Yet, these costs may be ***wholly unnecessary*** if the Fifth Circuit reverses the Receiver Orders, and, as this Court has recognized in a similar context, "it does not serve the public interest" for a public body "to incur costs" where "those expenditures may be unnecessary." *Wansley v. Mississippi Dep't of Corr.*, No. 4:10cv149-CWR-FKB, 2013 WL 3168261, at *2 (S.D. Miss. June 20, 2013) (Reeves, J.). The public interest factor militates heavily in favor of a stay.

## RELIEF REQUESTED

The Court should grant Defendants' Motion to Stay the Receiver Orders (ECF 227) pending resolution of the parties' consolidated appeal.

Dated: November 22, 2022.

                                          Respectfully submitted,

                                          **PHELPS DUNBAR, LLP**

                                          BY: */s/ James W. Shelson*

7

>Reuben V. Anderson, MB #1587
>W. Thomas Siler, Jr., MB #6791
>James W. Shelson, MB #9693
>Nicholas F. Morisani, MB #104970
>Loden P. Walker, MB#105996
>4270 I-55 North
>Jackson, Mississippi 39211-6391
>Post Office Box 16114
>Jackson, Mississippi  39236-6114
>Telephone: 601-352-2300
>Telecopier: 601-360-9777
>Email:  reuben.anderson@phelps.com
>            tommy.siler@phelps.com
>            jim.shelson@phelps.com
>            nick.morisani@phelps.com
>            loden.walker@phelps.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that on November 22, 2022, I had this Memorandum electronically filed with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to all counsel of record in this matter.

>*/s/ James W. Shelson*
>JAMES W. SHELSON

8