IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> PLAINTIFF, ) <br> ) <br> v. ) <br> ) <br> HINDS COUNTY, ET AL., ) <br> ) <br> DEFENDANTS. ) | Case No.: 3:16-cv-00489-CWR-BWR |

**UNITED STATES' REBUTTAL MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR RECONSIDERATION**

Facts have changed, warranting reconsideration of the Court's decision to terminate consent decree provisions related to Hinds County's care of youthful detainees. The United States properly sought reconsideration as permitted by the Federal Rules of Civil Procedure. U.S. Mot. for Recons. ("United States' Motion"), ECF No. 219, Nov. 2, 2022. In response, Defendants incorrectly claim that relief is barred by a case in which the United States is not a party and which addresses related but distinct issues. Resp. in Opp'n to Pl.'s Mot. for Recons. ("Defendants' Response"), ECF No. 229, Nov. 16, 2022; *see J.H. v. Hinds Cnty*, Civ. No. 3:11-cv-327 (S.D. Miss.). Now that the basis for the Court's termination of this case's youthful detainee provisions has been eliminated, the Court should grant the United States' Motion and issue an indicative ruling that, upon remand, it would restore all youthful detainee provisions necessary to correct the current and ongoing federal law violations; retain jurisdiction over conditions for youthful detainees; and grant any other necessary relief.

I. **The United States' Authority to Address Unconstitutional Conditions of Confinement for Youth is not Limited to Intervening in Private Lawsuits.**

In their opposition, Defendants suggest that the United States' only option after issuance of the New Injunction, ECF. No. 169, April 13, 2022, was to intervene in the *J.H.* case. Resp. in Opp'n, ECF No. 229 at 4, 7 (Defs. Resp.). That the United States has the right to seek intervention in private litigation does not preclude the United States from seeking reconsideration of an order that was premised on the ongoing implementation and enforcement of the *J.H.* order. Defendant's argument conflicts with the fundamental principle that where Congress has created a public enforcement scheme to complement private enforcement, "the Government's right and duty to seek an injunction to protect the public interest exist without regard to any private suit or decree." *United States* v. *Borden Co.*, 347 U.S. 514, 519 (1954). In *Borden*, the Supreme Court held that the district court abused its discretion when it declined to enter an injunction that the United States sought to remedy proven violations of the Clayton Act, "solely because of the existence of the prior decree entered against defendants in the course of a private action." *Id.* at 518. *Borden* described the "cumulative, not mutually exclusive" private and public mechanisms that Congress created for antitrust law enforcement and explained that to deny the United States relief would "ignore the prime object of civil decrees secured by the Government—the continuing protection of the public, by means of contempt proceedings," against recurring violations. *Id.* at 518-19.

Similarly, the Fifth Circuit has held that private plaintiffs' prior suit to enforce the Voting Rights Act does not preclude a similar challenge by the United States, because "the United States has an interest in enforcing federal law that is independent of any claims of private citizens." *United States* v. *East Baton Rouge Parish Sch. Bd.*, 594 F.2d 56, 58 (5th Cir. 1979) (citing *United States* v. *Raines*, 362 U.S. 17, 27 (1960)). *Cf. Sec'y of Labor* v. *Fitzsimmons*, 805 F.2d

682, 692-93 (7th Cir. 1986) ("The Government is not barred by the doctrine of *res judicata* from maintaining independent actions asking courts to enforce federal statutes implicating both public and private interests merely because independent private litigation has also been commenced or concluded.") (collecting cases).

The same principles apply here. Congress enacted CRIPA to create a mechanism for the federal government to enforce of the rights of institutionalized persons, 42 U.S.C. § 1997a, independent from the federal government's ability to intervene in a private suit, 42 U.S.C. § 1997c. *See also* 42 U.S.C. § 1997j (providing that CRIPA "shall in no way expand or restrict the authority of" private parties to enforce existing law). The United States has exercised its "right and duty to seek an injunction to protect the public interest," *Borden*, 347 U.S. at 519, with respect to youthful detainees in Hinds County, and so too have private parties. These enforcement actions have operated independently and simultaneously, and for good reason: the United States is not a party to the *J.H.* litigation and cannot enforce the County's compliance with the decree—and thus protection of the public interest—in that case.[1] The United States has instead exercised its authority to proceed separately from the *J.H.* case.[2]

---

[1] Defendants' allegations of "judge shopping" are curious, given that the United States has taken no action in an effort to seek the opportunity to litigate its youthful detainee claims before any judge other than the one to whom it was assigned. To the contrary, intervening in a separate class action as Defendants suggest would seem more likely to draw allegations of judge shopping.

[2] This court did expressly state that it was leaving Henley-Young matters to the "discretion and sound judgement" of the *J.H.* court. The language in question appears to be dicta rather than a suggestion that the United States intervene in *J.H.* Indeed, intervention would not be guaranteed when a party seeks to intervene in a case years after filing. Fed. R. Civ. Proc. 24 (requiring "timely" intervention motion).

## II.     The United States is not Bound by Res Judicata or Collateral Estoppel to a Decision in a Separate Case in which it is not a Party.

The United States is not barred by collateral estoppel or res judicata based on decisions in the *J.H.* case because that is a completely separate lawsuit, not involving the United States as a party. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (citations omitted). "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Id.* at 892. A final judgment precludes relitigating the same claim, while issue preclusion bars relitigating the same issues of fact or law that the parties had a "full and fair opportunity to litigate." *Id.* at 892-93. Claim and issue preclusion, however, generally do not apply to a non-party, because this would violate due process principles. *Id.*

Defendants cannot of course claim that the United States is a party in the *J.H.* case. Private attorneys brought *J.H.* on behalf of youth detained at the Henley-Young Juvenile Justice Center. In 2011, Hinds County entered into the first version of a consent decree with the private plaintiff class. The decree was designed to improve their conditions.[3] Defs. Resp. 2. In contrast, the United States' CRIPA case protects the interests of the United States in its sovereign capacity. The United States has never been a party to the *J.H.* case or the *J.H.* Henley-Young consent decrees, the first of which predated the United States' jail consent decree by about five years. Therefore, the United States is not bound by the *J.H.* dismissal under collateral estoppel or res judicata, because the United States is not a party to the *J.H.* case.[4]

---

[3] At the time of the jail settlement, the jail housed youth charged as adults, whereas Henley-Young held youth under the Hinds County Youth Court's jurisdiction. *See generally* Monitor's Thirteenth Monitoring Report 5, ECF No. 83, April 2, 2021 (noting youth court judge's concerns with continued viability of holding juveniles charged as adults in a facility housing short-term youth not charged as adults).

[4] The case law also does not support Defendants' assertion that the United States is "charged with knowing" any information filed in a public record and acting in response. ECF 229 at 8. Service of process and participation as a party matter. "A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate'" the claims and issues settled in that suit. The application of claim and issue preclusion to nonparties thus runs up

Defendants attempt to circumvent the general rule against applying claim and issue preclusion to non-parties by making vague, conclusory, allegations about "privity" between the *J.H.* plaintiffs and the United States. *See* ECF 229 at 11, n.14 (citing *Murchison Cap. Partners, L.P. v. Nuance Commc 'ns, Inc.,* 625 F. App'x 617, 621 (5th Cir. 2015)).  As Defendants note, this circuit has held that "[t]he test for res judicata has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Id*.  Under their theory, res judicata apparently applies because the United States and the *J.H.* plaintiffs were in privity.[5]  Defendants offer no applicable case law or even a plausible argument about why the United States and a class of youth could be considered identical or in legal privity.  Instead, they claim that privity exists because of some shared interests between the *J.H.* plaintiffs and the United States.  By their loose reasoning, any two parties that may have a shared interest in protecting youth are in privity, such as the County and the United States.  The U.S. Supreme Court and Fifth Circuit have rejected this type of reasoning.  *Taylor*, 553 U.S. at 893; *Freeman v. Lester Coggins Trucking Inc.,* 771 F.2d 860, 862-66 (5th Cir. 1985) (judgment cannot bind party who was not heard, and "parallel interests" alone do not create privity).

As to the first element, identical parties or privity, the only exceptions to the general rule against res judicata binding non-parties all involve a special relationship between the non-party

---

against the "deep-rooted historic tradition that everyone should have his own day in court." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (citing *Richards v. Jefferson County, Ala*, 517 U.S. 793, 798 (1996)).

[5] Oddly, Defendants also claim the United States should have intervened in the *J.H.* case.  This argument is inconsistent with their res judicata argument, because the United would have no need to intervene if it were a *J.H.* party or in privity with *the J.H.* plaintiffs.  In any case, the United States is neither required to participate in nor bound by litigation in which it is not a party.

5

and the party losing a judgment.[6] More specifically, the exceptions include parties that agree to be bound by a determination (*e.g.* parties stipulating to a "test case"), parties in a pre-existing "substantive legal relationship" (*e.g.* a property-law relationship such as bailor and bailee), representative suits (*e.g.* class actions), parties that took over litigation, a party that relitigates through a proxy or agent, and certain statutory schemes if those schemes comply with due process (*e.g.* bankruptcy proceedings). *Taylor*, 553 U.S. at 893-95. None of those exceptions applies here. *Id*. at 893.

Even if privity existed, the Defendants still cannot meet two of the other three elements for res judicata. The *J.H.* court is a court of competent jurisdiction, but it dismissed the case based on plaintiffs' non-opposition to defendants' motion to terminate. A dismissal in such circumstances, without any evidentiary record or findings, is not a final determination on the merits. Defendants also cannot meet the fourth element, because a claim brought under CRIPA is not the same as a private claim. No private party can bring a CRIPA action. Only the United States may do so.

Defendants' argument about collateral estoppel, or issue preclusion, is similarly unavailing. Defs.' Resp. 10-11. Collateral estoppel "preclude[s] relitigation of the same issue already litigated *against the same party* in another case involving virtually identical facts." *United States v. Hankton*, 51 F.4th 578, 606 (5th Cir. 2022) (emphasis added) (internal quotation omitted). Nor are the other elements of the three-part test cited by Defendants met. Defs.' Resp. 10-11 (citing three factors for collateral estoppel: (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior

---

[6] *Taylor*, 553 U.S. at 893-898, also limited the "virtual representation" theory, which some courts used to apply res judicata to a party if it had effectively had its day in court. The United States has never had its day in the *J.H.* court.

6

action; and (3) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action). The United States' claims in this case and the ones in *J.H.* involve different statutes, different plaintiffs, different facilities (Hinds County Jail vs Henley-Young) and different areas of focus. In particular, the United States' case focuses on youth charged as adults, who are generally longer-term detainees facing serious charges. The *J.H.* case focused on children under the Youth Court's jurisdiction, who are generally short-term detainees held for minor offenses or protection. *See* ECF No. 83 at 5. These different target populations have different needs for treatment, education, and protection from harm. Significantly, the *J.H.* termination was not opposed by the plaintiff class; the parties did not litigate and the court did not decide whether there were ongoing constitutional violations at Henley-Young. Thus, Defendants cannot establish that res judicata or collateral estoppel prohibit the relief the United States seeks.

    **III.**    **The Court has not yet Evaluated the Necessity of this Case's Youthful Detainee Provisions but Should Now Do So in Light of the *J.H.* Dismissal.**

Defendants argue that the PLRA precludes the relief sought by the United States, claiming incorrectly that this Court found no violation of federal rights as to youthful detainees. Defs. Resp. at 13, ECF No. 229.

Although Defendants make much of the number of days that have elapsed since the Court terminated the youthful detainee provisions, Defs.' Resp. 13, the "current and ongoing" PLRA inquiry for constitutional violations does not operate in a temporal vacuum. *Depriest v. Walnut Grove Corr. Auth.*, No. 3:10-CV-663-CWR-FKB, 2015 WL 3795020, at *8-9 (S.D. Miss. June 10, 2015). Past violations can provide an "appropriate factual foundation" and "reference point" to help establish "current and ongoing" constitutional violations. *Id.* Defendants also cite *Castillo*, which holds that "in order to make the required finding of a current and ongoing

7

violation of a Federal right required by § 3626(b)(3), a court must look at the conditions in the jail *at the time termination is sought . . . .*" *Castillo v. Cameron Cnty*, 238 F.3d 339, 353 (5th Cir. 2001) (emphasis added). Defendants moved for termination on January 1, 2022. Defs.' Mot. to Terminate, ECF No. 111, Jan. 1, 2022. Thus, the relevant inquiry is whether there were ongoing constitutional violations as of that date. The Court held two evidentiary hearings, considered all evidence in the record, and found Defendants in contempt twice before terminating the youthful prisoner provisions of the settlement. The full record contains ample evidence of continued and serious violations of juvenile detainees' rights based on the evidence at the time Defendants sought termination. This record cannot be considered "stale" for PLRA purposes, as Defendants assert. If the Court wishes to reconsider its decision to terminate relief, it has more than ample contemporary evidence of Defendants' current and ongoing constitutional violations, and the need to restore judicial protections for youthful detainees.

But although the record contains ample evidence to find ongoing federal rights violations of youth and PLRA compliant relief, the Court never made express findings about whether the Defendants met the PLRA standard for termination of the youthful prisoner relief. *See* ECF 168 at 110 (defendants only in "partial compliance" with only 6 settlement provisions related to youth). Instead, the Court terminated this case's youthful detainee provisions in order "to avoid interference" with ongoing litigation in the *J.H.* case. *Id*. The *J.H.* litigation ended abruptly afterwards, which eliminates the possibility of interference, as well as the basis for the Court's termination of the youthful detainee provisions. The Court should therefore reconsider its termination of the youthful detainee provisions in this case.

Rule 60 is an appropriate vehicle for the Court to evaluate the record and issue findings regarding ongoing constitutional violations and the necessity of this case's youthful detainee

provisions in light of the dismissal of *J.H.* -- a significant change in fact since the Court issued the new injunction.

### IV.     Conclusion

For the foregoing reasons, the Court should grant the United States' Motion for Reconsideration.  In light of changed facts, the Court should find that incarcerated Hinds County youth charged as adults are exposed to conditions that violate their constitutional rights and that the youthful prisoner provisions of the parties' consent decree are necessary to vindicate those rights.  It should therefore issue an indicative ruling that it would, upon remand, restore all Section K provisions necessary to remedy the ongoing federal rights violations; incorporate the remedies into the New Injunction, ECF No. 169; retain jurisdiction over conditions at the Henley-Young (or whatever facility or facilities the Defendants use to house youth charged as adults); and grant any other necessary relief.

Respectfully submitted,

| | |
|---|---|
| DARREN J. LaMARCA<br>United States Attorney<br>Southern District of Mississippi | KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
| | STEVEN H. ROSENBAUM<br>Chief<br>Civil Rights Division<br>Special Litigation Section |
| MITZI DEASE PAIGE (MS #6014)<br>Assistant U.S. Attorneys<br>U.S. Attorney's Office<br>Southern District of Mississippi<br>501 E. Court Street – Ste. 4.430 | LAURA L. COWALL (DC #481379)<br>Deputy Chief<br>laura.cowall@usdoj.gov<br>(202) 514-1089<br>(202) 514-0212 (fax) |

Jackson, MS 39201
Mitzi.Paige@usdoj.gov
(601) 973-2840
(601) 965-4409 (fax)

/s/ Christopher N. Cheng
CHRISTOPHER N. CHENG (PA #69066)
Trial Attorney
christopher.cheng@usdoj.gov
(202) 514-8892
(202) 514-0212 (fax)

HELEN VERA (DC #1025735)
Trial Attorney
helen.vera@usdoj.gov
United States Department of Justice
Civil Rights Division
Special Litigation Section
4 Constitution Square
150 M St., N.E.
Washington, DC  20002

DATED:  November 22, 2022

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 22, 2022, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

                                          */s/ Christopher N. Cheng*
                                          CHRISTOPHER N. CHENG
                                          Attorney for the United States
                                          United States Department of Justice
                                          Civil Rights Division, Special Litigation Section
                                          4 Constitution Square
                                          150 M. Street, NE
                                          Washington, DC 20530