# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | **PLAINTIFF** |
| | § | |
| **VS**. | § | **NO. 3:16-CV-489-CWR-BWR** |
| | § | |
| **HINDS COUNTY**, **ET AL**. | § | **DEFENDANTS** |

## MEMORANDUM IN SUPPORT OF MOTION
## TO REPLACE COURT-APPOINTED MONITORS

Defendants Hinds County, Mississippi, and Sheriff Tyree Jones, in his official capacity (collectively, "the County"), respectfully submit this Memorandum in support of their Motion to Replace Court-Appointed Monitors.

## Introduction

The County requests that the Court replace the former court-appointed monitor should the Court decide to reinstall monitoring at the County's jail facility relative to the [169] New Injunction. As an initial matter, the law of the case doctrine precludes simply reinstating the previous court-appointed monitor in light of the Court's subsequent order finding that a receiver should be appointed to operate the County's jail facility. Moreover, where (as here) the court-appointed monitor's actions make clear that monitoring has come to an end, simply reinstating a monitor conflicts with the Prison Litigation Reform Act, 18 U.S.C. § 3626 ("PLRA"), and must first satisfy the PLRA's need-narrowness-intrusiveness analysis, a showing that cannot be made at this time. Even if the Court overlooks these two fundamental flaws, the County contends it would be wholly unreasonable to reinstall the former monitor under the unique facts and circumstances here, and the County requests that the Court replace the former court-appointed monitor should the Court reinstall monitoring.

## Relevant Background

In 2016, the County and Government entered into a consent decree controlling every aspect of operations at the County's jail, the Raymond Detention Center ("RDC").[1] As part of the consent decree, the County and Government proposed that Elizabeth Simpson serve as the court-appointed monitor, and she was approved for this role.[2] The Consent Decree gave Simpson unilateral authority to hire "subject matter experts."[3] Simpson obliged and brought in David Parrish, Jim Moeser, and Dr. Richard Dudley.[4]

Since that time, the County spent more than $3,000,000 attempting to comply with the [8-1] Consent Decree.[5] The County spent another $1,200,000 on the Monitor.[6] The County also is in the process of constructing a new, state-of-the-art jail facility to replace the RDC at a cost of more than $130,000,000.[7] And the County soon must begin paying a receiver $16,000 per month.[8]

The drain on the County's resources occasioned by the [8-1] Consent Decree and the Monitor came to an end in 2022. On April 13, 2022, the Court replaced the [8-1] Consent Decree with its [169] New Injunction. On October 31, 2022, the Court appointed a Receiver to take control of RDC.[9] In pertinent part, the [249-1] Order provided:

> The Receiver can, in his . . . discretion, determine whether the Monitor and her team members remain necessary in some capacity to ensure that RDC abides by the

---

[1] [8-1] Consent Decree.
[2] [11] Order.
[3] [8-1] Consent Decree at 55.
[4] The County uses the term "Monitor," because there was only one court-appointed monitor in this case, Simpson, but the County's use of that term is intended to refer to Simpson and her subject matter experts collectively.
[5] Tr. vol. 8 at 1486.
[6] Tr. vol. 9 at 1465.
[7] Tr. vol. 8 at 1559.
[8] [249-1] Order at 3, n.3.
[9] [204] Order. This Order was clarified by the Court on January 30, 2023, but the relevant provisions here were not altered in any way. See [249-1] Order. For clarity, the County will cite to the [249-1] Order.

> Constitution. After the Court appoints the Receiver, the Monitor and her team should cease their operations as set forth in this Court's prior orders. Specifically, within 30 days of appointment of the Receiver, the Monitor and her team shall submit a final report and accounting. Upon receipt of the final report and accounting, the Court will be prepared to discharge Ms. Simpson as Monitor unless the Receiver determines her services remain necessary.[10]

Consistent with this [249-1] Order, the Monitor conducted her final inspection of RDC nearly two-and-a-half years ago, from October 18-20, 2022,[11] her "final 18th Monitoring Report" was filed on December 12, 2022,[12] and the Monitor has not stepped foot in the facility since October 20, 2022.

The County appealed the Court's [249-1] Order Appointing Receiver, among other orders.[13] This case was stayed pending the County's appeals.[14] The County challenged the [249-1] Order Appointing Receiver on appeal, but the Fifth Circuit upheld the Court's order.[15]

The Fifth Circuit's mandate issued on February 20, 2025,[16] and the Court held a status conference last Friday, February 28, 2025.[17] During the status conference, the Government insisted that the Monitor "get . . . back into" the RDC, but the County objected. The Court afforded the County until March 6, 2025, to file any motion seeking to have the Monitor replaced.

## Argument and Authorities

**A**. **The Monitors have already been relieved of duty by the Court**.

As a threshold matter, the law of the case doctrine precludes simply reinstating the Monitors given the Court's [249-1] Order appointing a Receiver was upheld on appeal. "[G]enerally, under the law of the case doctrine, courts show deference to decisions already made

---

[10] [249-1] Order at 25.
[11] [242] Eighteenth Monitoring Report at 2-3.
[12] *Id.* at 2.
[13] *See* [212] Notice of Appeal.
[14] *See* [247] Order.
[15] *See* [262] Copy of Op. at 25-29.
[16] [263] Mandate.
[17] *See* 02/28/2025 Minute Entry.

in the case they are presiding over." *Moore v. Felger*, 51 F.3d 1043, 1995 WL 153040 at *1 (5th Cir. March 22, 1995) (quoting *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1150 (5th Cir. 1993)). "If an issue was decided on appeal—either expressly or by necessary implication—the determination will be binding on remand and on any subsequent appeal ." *Id*. (quoting *Traillour Oil*, 987 F.2d at 1150).

The County challenged the Court's order imposing a receiver on appeal. The Fifth Circuit considered the County's challenge but affirmed this Court's decision to impose a receiver.

On these facts, the Court's [204] Order is the law of the case. The Monitor was directed to "cease . . . operations[,]" the Monitor has done so, and it remains for the Receiver to "determine[ whether the Monitor's] services remain necessary." [204] Order at 25. Thus, reinstating the Monitor is precluded by the law of the case.

### B. Allowing the Monitor back into RDC on the current record conflicts with the PLRA.

Reinstating and allowing the Monitor back into RDC on the current record conflicts with the PLRA—the governing statute in this context—in two primary ways. First, simply reinstating the Monitor conflicts with the purpose and spirit of the PLRA. Second, the PLRA requires any such reinstatement to satisfy the "need-narrowness-intrusiveness" requirements, a showing that cannot be made on the current record.

Both the Court's [249-1] Order and the Monitor's "final 18th Monitoring Report" make clear that the Monitor's time in Hinds County came to an end in 2022, absent the Receiver determining that Monitor's services remain necessary. No such determination has been made by the Receiver to date. To simply reinstate the Monitor under these facts wholly disregards the PLRA's purpose and spirit: to minimize federal courts' management of state and local prisons and jails. *See, e.g.*, *Valentine v. Collier*, 956 F.3d 797, 806 (5th Cir. 2020) (observing that

4

"micromanagement" of prisons is discouraged by the PLRA); *Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004) ("While federal courts can certainly enter injunctions to prevent Eighth Amendment violations, they are not to micromanage state prisons.") (citation omitted); *Imprisoned Citizens Union v. Ridge*, 169 F.3d 178, 189 (3d Cir. 1999) (noting that a purpose of the PLRA is to "minimize prison micro-management by federal courts and to conserve judicial resources"); *James v. Lash*, 965 F. Supp. 1190, 1197 (N.D. Ind. 1997) ("Congress intended the PLRA to 'curtail interference by the Federal courts themselves in the orderly administration of our prisons'") (quoting 141 Cong. Rec. S. 14316-17 (daily ed. Sept. 26, 1995) (statement of Sen. Abraham)).

In any event, the PLRA precludes the Court from changing course and reinstating the Monitor at this point absent the Court making the requisite findings. The PLRA defines "'prospective relief' [as] all relief other than compensatory monetary damages[] . . . ."18 U.S.C. § 3626(g)(7). The PLRA further defines "relief[,]" in pertinent part, as "all relief in any form that may be granted or approved by the court." *Id*. § 3626(g)(9).; *see also United States v. Territory of the Virgin Islands*, 884 F. Supp. 2d 399, 408 (D.V.I. 2012) ("The relief previously issued in this matter did not include compensatory monetary damages and consequently falls within the Act's broad definition of prospective relief."). Thus, reinstating the Monitor notwithstanding the [249-1] Order establishing the receivership amounts to prospective relief and thus triggers the PLRA's need-narrowness-intrusiveness requirements. *See* 18 U.S.C. § 3626(a)(1). There is no evidence that—in addition to a court-appointed receiver—reinstatement of the Monitor would "extend[] no further than necessary to correct the violation of the Federal right, and [be] the least intrusive means necessary to correct the violation of the Federal right." *Id*. The PLRA thus precludes simply reinstating the Monitor on the current record.

5

**C. If the goal is to help the County improve conditions at RDC, reinstating this particular Monitor does nothing to further that goal.**

Even if the Court believes that having continued monitoring would help the County improve conditions at RDC pending completion of the County's new jail facility, reinstating this particular Monitor as opposed to allowing the parties to propose a new set of monitors will not further the goal of helping the County. As the County has repeatedly made clear, it has lost all trust, confidence, and faith in the Monitor's ability to be objective, independent, or reasonable.[18] Worse, during the life of the [8-1] Consent Decree, the County paid the Monitor more than $1,200,000 for her subject matter "expertise" and "assistance" only to see her "expertise" and "assistance" yield noncompliance ratings year after year despite the fact she and her team were charged with helping the County achieve compliance.[19]

The collapse of the County's trust and confidence in the Monitor makes continuing use of this particular Monitor wholly unreasonable. It is true the Monitor was first installed in 2016, but this fact does not carry much weight in the current posture: nearly two-and-a-half years have passed since the Monitor has stepped foot inside RDC or otherwise observed the status of RDC. During that same time, the County has since closed A-pod, a significant achievement accomplished without a shred of "expertise" or "assistance" from the Monitor.

At bottom, courts make clear that judicial proceedings should be guided by notions of fairness. *See, e.g.*, *United States v. Urbina-Fuentes*, 900 F.3d 687, 691-92 (5th Cir. 2018)

---

[18] *See, e.g.*, [135] Mem. at 2-3 (arguing against allowing the Government to designate the Monitor as an expert to testify against the County because allowing the Government to do so calls into question the Monitor's autonomy); [192] Mem. at 12 (arguing the "County should not have to continue to bear these costs for many reasons, including that the monitoring team's own reports make plain the fact their activities have historically been unhelpful to the County's efforts to improve RDC").

[19] Tr. vol. 8 at 1559.

(indicating errors affecting "the fairness" of judicial proceedings may result in a finding of plain error on appeal) (quoted case omitted); *Sutter v. Wells Fargo Bank, N.A.*, No. 4:15-CV-342, 2015 WL 4915669, at *1 (E.D. Tex. Aug. 14, 2015) (explaining that one of the factors in determining whether to remand state law claims is "fairness") (quoting *Enochs v. Lampasas County*, 641 F.3d 155, 158-59 (5th Cir. 2011)). Here, should the Court decide to reinstall monitors into Hinds County to monitor operations at RDC notwithstanding the law of this case or the PLRA, fairness requires that, given both the historical and current posture of this case, the County be afforded the opportunity to work with a new court monitor.

## Conclusion

The County respectfully requests that, should the Court decide to reinstate court-appointed monitors, the former monitor (and her subject matter experts) be removed and replaced with a monitor to be determined after the respective parties are given leave to propose two names each.

Dated: March 6, 2025.

Respectfully submitted,

**PHELPS DUNBAR, LLP**

BY: /s/ *Nicholas F. Morisani*
W. Thomas Siler, Jr., MB #6791
Nicholas F. Morisani, MB #104970
Loden P. Walker, MB#105996
1905 Community Bank Way, Suite 200
Flowood, Mississippi 39232
Telephone: 601-352-2300
Facsimile: 601-360-9777
Email: Tommy.Siler@phelps.com
Nick.Morisani@phelps.com
Loden.Walker@phelps.com

**ATTORNEYS FOR DEFENDANTS**

7

PD.48616082.1