IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> PLAINTIFF, <br><br> v. <br><br> HINDS COUNTY, ET AL., <br><br> DEFENDANTS. | Case No.: 3:16-cv-00489-CWR-RHWR |

**UNITED STATES' RESPONSE TO DEFENDANTS' MOTION TO REPLACE COURT-APPOINTED MONITORS**

The Court of Appeals upheld this Court's New Injunction, Doc. No. 250-1 (Jan. 30, 2023), including the monitoring and access provisions of the original Consent Decree. *See id.* ¶ 16 (ordering that the monitoring paragraphs "are hereby incorporated and remain in force"); Settlement Agreement Between the United States of America and Hinds County, Mississippi Regarding the Hinds County Jail, Doc. 8-1, ¶¶ 136-158, at 54-59 (Consent Decree). This Court has retained the agreed-upon monitoring team until the Receiver begins work and determines whether he will need their assistance. Doc. No. 204 at 25 (July 29, 2022); *see also* Amended Order Appointing Receiver, Doc. No. 249-1 at 25 (Jan. 30, 2023) (retaining the same language regarding the future role of the Monitor). The Receiver cannot begin work until this Court complies with the Court of Appeals' mandate. Therefore, the New Injunction's monitoring provisions remain in place, and any motion to remove the monitor must satisfy the good cause removal provision, which Defendants have not satisfied. Defendants are also incorrect that the

continued work of the monitoring team is prospective relief requiring new findings under the Prison Litigation Reform Act (PLRA), 18 U.S.C. § 3626.

### A. The Monitor Has Not Been Discharged.

Despite Defendants' contentions, the Court of Appeals upheld the New Injunction, and this Court never dismissed the Monitor. Defendants' argument that this Court previously discharged the Monitor misrepresents the procedural status of this case. *See* Doc. No. 266 at 3-4.

Before Defendants lost on appeal, this Court twice found Defendants in contempt, issued a New Injunction, and appointed a receiver. Doc. Nos. 126, 165, 249-1, 250-1. The New Injunction expressly retained the original Consent Decree's Monitoring provisions. Doc. No. 250-1 ¶ 16 (Jan. 30, 2023) (citing Order Amending Consent Decree, Doc. No. 168 ¶¶ 136-158); *cf.* Consent Decree, Doc. No. 8-1 ¶¶ 136-58 (identical Monitoring provisions as retained in the New Injunction).

When the Court issued its order imposing the receivership, it determined that whether to maintain the Monitor for any period of time would be determined by the Receiver, directed the Monitor to prepare a final report on conditions in the Jail, and explained that the Court subsequently would "be prepared to discharge [the Monitor] unless the Receiver determines her services remain necessary." Doc. No. 204 at 25 (July 29, 2022); *see also* Amended Order Appointing Receiver, Doc. No. 249-1 at 25 (Jan. 30, 2023) (retaining the same language regarding the future role of the Monitor); *see also* Doc. No. 266 at 3 (Defendants' concession that the Monitor was still working and issued a report as late as December 12, 2022). Because the Receivership was then stayed pending appeal, the Receiver never made a determination concerning the need for the Monitor, and this Court never dismissed the Monitor. *See* Doc. No.

2

246 (Dec. 28, 2022). Until the Receiver decides whether to retain the Monitor, all the Monitoring provisions remain intact, and the Court can direct the Monitor to continue her work.

As soon as the Court of Appeals stayed the New Injunction and receivership pending appeal, this Court suspended all monitoring and directed the Monitoring Team and Receiver to suspend their work. *See* Doc. No. 247 (Dec. 29, 2022). The order giving effect to the appellate stay therefore left the status quo—with the Monitoring Team still in place—intact until remand.[1]

**B. The PLRA Does Not Preclude the Monitor from Continuing Her Work.**

As the Court has previously determined, retaining a Monitor complies with the Prison Litigation Reform Act, 18 U.S.C. § 3626. Doc. No. 262 at 3 (affirming District Court decision in all respects regarding New Injunction); Doc. No. 250-1 at 11 (retaining monitorship); Doc. 204 at 24-25 (transitioning monitorship to receivership). Without citing any relevant legal support, Defendants assert that retaining the Monitor and her team and allowing them to continue with their duties "conflicts with the purpose and spirit" of the PLRA. Doc. No. 266 at 4-5. Defendants' argument seems to be that the PLRA would require that the Court conduct a "need-narrowness-intrusiveness" analysis to justify reinstating the Monitor, because such an order would be prospective relief subject to the requirements of 18 U.S.C. § 3626(a)(1) ("The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."). But this Court

---

[1] Defendants erroneously describe the record to make their "law of the case" argument. *See* Doc. No. 266, at 3-4. Moreover, the case law Defendants cite further proves this Court should reject their argument because the Fifth Circuit upheld the Monitorship and all related injunctive provisions. *Moore v. Felger*, 51 F.3d 1043, 1995 WL 153040 at *1 (5th Cir. Mar. 22, 1995) ("If an issue was decided on appeal—either expressly or by necessary implication—the determination will be binding on remand and on any subsequent appeal." (quoting *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1150 (5th Cir. 1993))).

3

already made the required findings to retain the monitorship in the New Injunction.[2] Doc. No. 168 at 145-47 (Apr. 13, 2022). Defendants appealed the New Injunction, and the Court of Appeals upheld the New Injunction as complying with the PLRA. *See supra* § A (discussing procedural history and retention of Monitorship at the time of the appeal). No new PLRA analysis is required, because reinstating the Monitor would not be new prospective relief, but rather a continuation of existing relief that was upheld on appeal.

Defendants' PLRA argument simply cites case law that emphasizes certain federalism concerns that underline the "purpose and spirit" of the PLRA; they cite no authority to support their attempt to re-litigate issues that were already decided by this Court and on appeal. Doc. No. 266 at 4-5. Defendants already cited the PLRA to challenge every aspect of the original consent decree (including the monitorship) and lost. *See* Doc. Nos. 249-1, 250-1, 262; *see also* Doc. No. 150 at 17 (Defendants' first argument on appeal was "The District Court Erred In Not Terminating The Consent Decree Entirely"). Neither the spirit nor the letter of the PLRA requires terminating relief that has been upheld as compliant with the PLRA.

### C. Defendants Provide No Basis for Replacing the Monitor.

Under the terms of this Court's affirmed New Injunction, "[t]he Monitor may be terminated only by (i) joint stipulation of the parties; or (ii) for good cause unrelated to the Monitor's findings, as approved by the Court." Doc. No. 168 ¶ 140 at 139; Doc. No. 250-1 ¶ 16 at 11 (incorporating Doc. No. 168, ¶ 136-58). The United States does not stipulate to the removal of the Monitor. And Defendants fail to raise any "good cause unrelated to the Monitor's

---

[2] Alternatively, as this Court has noted, monitoring requirements might not even be subject to the PLRA, as ensuring compliance with active orders is a basic court function. Doc. No. 168 at 144-45 (citing *Braggs v. Dunn*, 383 F. Supp. 3d 1218, 1282-83 (M.D. Ala. 2019)); *see also Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004); *Benjamin v. Fraser*, 343 F.3d 35 (2d Cir. 2003); *United States v. Chromalloy Am. Corp.*, 158 F.3d 345, 349 (5th Cir. 1998); *Pierce v. Vision Invs., Inc.*, 779 F.2d 302, 309 (5th Cir. 1986). Even if the PLRA applied, both this Court and the Court of Appeals ultimately concluded that the monitorship meets PLRA requirements.

4

findings." Therefore, the Monitor should remain in place until the Receiver's scope of duties is amended and the Receiver starts work, which will include determining whether the Monitor's services should be continued during the receivership.

Defendants' argument for replacing the Monitor is grounded in their frustration with the Monitor's findings. This is plainly an impermissible basis to terminate the Monitor. Defendants fault the Monitor for reporting on conditions in the Jail and on Defendants' noncompliance with the Court's orders. Among other things, Defendants allege that the Monitor lost their trust, charged them for her team's services, testified when called as a witness by the United States, and did not help them come into compliance. Doc. No. 266 at 6-7. The fact that the Monitor testified consistent with her obligations under the decree does not provide a basis to remove her. *See* Doc. No. 168 ¶¶ 148-50 (describing Monitor's obligation to regularly report to the Court on Jail conditions and Defendants' compliance with the decree), ¶ 153 (Monitor may testify in this case if called by the Court or one of the Parties). The foundation of Defendants' argument borders on spurious, particularly given the persistent failure to remedy unconstitutional conditions resulting in this Court twice finding Defendants in contempt and appointing a receiver, and should be rejected.

Defendants couch their argument as one of "fairness,"[3] but in doing so, they ignore the relevant standard: a "good cause unrelated to the Monitor's findings." New Injunction, Doc. No. 168 ¶ 140 at 139. Here, the Court previously has found that the Monitor and her team "have ably served as the eyes and ears of the Court." Doc. No. 204 at 24; *see also* Doc. No. 165 (citing repeatedly to monitor reports to find Defendants in contempt). Defendants' alleged mistrust does

---

[3] Defendants cite no authority to support their argument that it would violate principles of fairness to retain the Monitor and her team. The only authorities they cite are one Fifth Circuit case and one district court case that broadly posit that "fairness" is a factor to consider in judicial proceedings. Doc. No. 266 at 6-7.

nothing to prove "good cause unrelated to the Monitor's findings" because it is rooted in Defendants' frustration with the Monitor finding them out of compliance.

In sum, Defendants' complaints about the Monitor are unfounded, and their stated concerns are clearly "related to the Monitor's findings." They offer no credible basis for terminating the Monitor under the Court's existing orders or the applicable legal standards.

For the foregoing reasons, the Court should deny the Defendants' Motion to Replace Court-Appointed Monitors.

                              Respectfully submitted,

PATRICK LEMON  
Acting United States Attorney  
Southern District of Mississippi

MAC WARNER  
Deputy Assistant Attorney General  
Civil Rights Division

REGAN RUSH  
Chief  
Civil Rights Division  
Special Litigation Section

MITZI DEASE PAIGE (MS #6014)  
Assistant U.S. Attorneys  
U.S. Attorney's Office  
Southern District of Mississippi  
501 E. Court Street – Ste. 4.430  
Jackson, MS 39201  
Mitzi.Paige@usdoj.gov  
(601) 973-2840  
(601) 965-4409 (fax)

LAURA L. COWALL (DC #481379)  
Deputy Chief  
laura.cowall@usdoj.gov  
(202) 514-1089  
(202) 514-0212 (fax)

/s/ Christopher N. Cheng  
CHRISTOPHER N. CHENG (PA #69066)  
Trial Attorney  
christopher.cheng@usdoj.gov  
(202) 353-5012  
(202) 514-0212 (fax)

HELEN VERA (DC #1025735)  
Trial Attorney  
helen.vera@usdoj.gov  
United States Department of Justice

6

                                          Civil Rights Division  
                                          Special Litigation Section  
                                          4 Constitution Square  
                                          150 M St., N.E.  
                                          Washington, DC  20002

DATED:  March 12, 2025

**CERTIFICATE OF SERVICE**

  I hereby certify that on March 12, 2025, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

            */s/ Christopher N. Cheng*
            CHRISTOPHER N. CHENG
            Attorney for the United States
            United States Department of Justice
            Civil Rights Division, Special Litigation Section
            4 Constitution Square
            150 M. Street, NE
            Washington, DC 20530