IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | PLAINTIFF |
| | § | |
| VS. | § | NO. 3:16-CV-489-CWR-BWR |
| | § | |
| HINDS COUNTY, ET AL. | § | DEFENDANTS |

**MEMORANDUM IN RESPONSE
TO THE COURT'S FEBRUARY 28, 2025 MINUTE ENTRY**

Defendants Hinds County, Mississippi, and Sheriff Tyree Jones, in his official capacity (collectively, "the County"), respectfully submit this Memorandum in response to the Court's February 28, 2025, minute entry.

**Relevant Background**

In 2016, the County and the Government entered into a consent decree controlling every aspect of operations at the County's jail, the Raymond Detention Center ("RDC").[1] After toiling under the decree for nearly six years, the County, on January 21, 2022, exercised its right under the Prison Litigation Reform Act, 18 U.S.C. § 3626 ("PLRA"), and sought termination of the [8-1] Consent Decree. On April 13, 2022, the Court replaced the [8-1] Consent Decree with a [169] New Injunction. On October 31, 2022, the Court appointed a Receiver to take control of RDC.[2]

The County appealed the Court's [249-1] Order Appointing Receiver, among other orders.[3] The case was stayed pending the County's appeals.[4] The Fifth Circuit ultimately upheld the Court's appointment of a receiver.[5]

---

[1] [8-1] Consent Decree.
[2] [204] Order. This Order was clarified by the Court on January 30, 2023, but the relevant provisions here were not altered in any way. *See* [249-1] Order. For clarity, the County will cite to the [249-1] Order.
[3] *See* [212] Notice of Appeal.
[4] *See* [247] Order.
[5] *See* [262] Copy of Op. at 25-29.

Despite affirming appointment of a receiver, the Fifth Circuit held that two problems with the order setting the scope of the Receiver's duties and responsibilities must be addressed on remand. First, the Fifth Circuit held the Court's order could not hand the Receiver control over the County's funds. [262] Op. at 30 ("The receiver's control over the budget and salaries and benefits for personnel essentially allows the receiver to dictate the state's authority over RDC by controlling the purse strings.") (citing *Valentine v. Collier*, 993 F.3d 270, 294-95 (5th Cir. 2021)). The Fifth Circuit continued, "Giving the receiver power to set RDC's budget, <u>subject to the district court's approval</u>, would allow the receiver to ignore the budgetary constraints that the Hinds County Board of Supervisors has had to deal with in managing RDC. This goes beyond the limitations imposed by the PLRA." [262] Op. at 31 (citing *Guajardo v. Tex. Dep't of Crim. Just.*, 363 F.3d 392, 394 (5th Cir. 2004) (per curiam)) (emphasis added). The Fifth Circuit referred to the "power" that the Court's order gave to the receiver to set RDC's budget, even subject to the Court's approval, as "federal intrusion" into the budget for RDC and was compounded by the fact "the receivership has no end date." *Id*. (citing *Guajardo*, 363 F.3d at 394). The Fifth Circuit thus held that the Court "cannot grant the receiver power over RDC's budget and related financial matters, such as salaries and benefits . . . ." [262] Op. at 32.

Second, the Fifth Circuit held the Court's need-narrowness-intrusiveness analysis underlying the imposition of the Receiver's duties and responsibilities lacked requisite detail and did not include discussion whether it would be feasible to institute a receivership with more limited powers that cover only the scope of the constitutional violations. Because the "Supreme Court 'has rejected remedial orders that unnecessarily reach out to improve prison conditions other than those that violate the Constitution[,]'" the Fifth Circuit instructed the Court

> on remand to reevaluate de novo the scope of the receivership consistent with this opinion. The district court . . . should develop a new description of the receiver's

2

powers after conducting a need-narrowness-intrusiveness analysis and in light of the receiver's loss of control over the budget and salaries.

[262] Op. at 32 (quoting *Brown v. Plata*, 563 U.S. 493, 531 (2011)).

The Fifth Circuit's mandate issued on February 20, 2025,[6] and the Court held a status conference on February 28, 2025.[7] After the status conference, the Court specifically instructed as follows: the "Government has until March 10 to submit their proposal of what the Receiver's duties should include, and Defense reply is due March 12." 02/28/2025 Minute Entry.

On March 10, 2025, the Government filed a document it referred to as its "Submission Regarding the Court's Receivership Order." *See* [268] Status Report *(US Submission of Proposed Revisions to Receivership Order)*. Rather than respond to the Court's directive "to submit their proposal of what the Receiver's duties should include[,]" the Government used this filing to posit that the revised order setting the scope of the receiver's duties and responsibilities affords the receiver "the opportunity to raise concerns with the Court if he believed that the budget adopted by the Board would likely impede the County's ability to comply with Court Orders." [268] Status Report at 3. The Government added that the Court need not update the factual record in order to "reevaluate de novo the scope of the receivership," and requested 30 days to file recommended changes, if any, to the scope of the receiver's duties and responsibilities, "and to highlight evidence of the record relevant to the de novo review and PLRA analysis required by the appellate mandate." *Id*. at 4. The Government also attached an incomplete set of proposed revisions to the receiver's duties and responsibilities.

Although the County's response to the Government's papers was not due until March 12, 2025, *see* 02/28/2025 Minute Entry, the Court apparently granted in part the Government's request

---

[6] [263] Mandate.
[7] *See* 02/28/2025 Minute Entry.

prior to the County filing its response. *See* 03/12/2025 Text Only Order ("TEXT ONLY ORDER granting in part the [Government's] request in 268 . The parties have 21 days to file recommended changes, if any, to the scope of the Receiver's duties, and to highlight the record evidence relevant to the de novo review and PLRA analysis required by the appellate mandate."). The County nevertheless files this response timely.

## Argument and Authorities

There are two issues presented by the Government's [268] Status Report. First, what does the Fifth Circuit's unambiguous preclusion of federal authority over the County's funds mean for the receiver's authority over the budget? Second, what is the meaning of the Fifth Circuit's mandate? Both are addressed in turn.

***The Government's proposed changes to the receiver's duties ignore the Fifth Circuit's holding that neither the Court nor the receiver shall have power over the County's funds***. As set out above, the Fifth Circuit unambiguously precluded federal authority over the County's funds. [262] Op. at 29-32. The Government's response to the Court's 02/28/2025 Minute Entry ignores this fact. [268] Status Report at 2-3. The Government claims its proposed order—which is an incomplete revision that the County opposes and will address in full through its own proposed order to be filed within the next 21 days as required by the Court when it granted in part the Government's request earlier today—"makes clear that the County Board of Supervisors retains control over the budget." *Id*. at 3.

The Government's proposed order, however, does not make clear the County retains "control over" the funds it decides to budget toward RDC. The PLRA precludes giving the receiver power to set the RDC's budget, and this is so even where the receiver's ability to do so is subject to a district court's review. [262] Op. at 31 (citing *Guajardo*, 363 F.3d at 394). This is holding is

4

ignored by the Government, and it simply proposes the same prohibited act but from a different angle: that the County is entitled to set its own budget but only subject to the Court's review. *See* [268] Status Report at 3 ("The Receiver would then have the opportunity to raise concerns with the Court if he believed that the budget adopted by the Board would likely impede the County's ability to comply with Court Orders."). Moreover, the Government's proposal that the County be required to consult with the receiver when setting a budget and negotiating contracts and to inform the receiver "of any RDC budget requests [the County] does not support" ignores the Fifth Circuit's clear restriction that the Court "cannot grant the receiver power over RDC's budget <u>and related financial matters</u> . . . ." [262] Op. at 32 (emphasis added). Thus, the Government's proposed revisions conflict with the Fifth Circuit's decision and should be rejected.

***Conducting a need-narrowness-intrusiveness analysis addressing the receiver's duties and responsibilities without updated evidence conflicts with PLRA***. In affirming the Court's decision to appoint a receiver, the Fifth Circuit found that this Court did not abuse its discretion in holding "that a receivership was necessary to remedy current and ongoing constitutional violations . . . ." [262] Op. at 28. The Fifth Circuit, however, mandated on remand that this Court "reevaluate de novo" the Receiver's duties and responsibilities in light of both the lack of control over the County's funds and the constitutional violations established. *See* Op. at 32.

This mandate must be read in the proper legal context. "The PLRA strongly disfavors continuing relief through the federal courts . . . ." *Brown v. Collier*, 929 F.3d 218, 228 (5th Cir. 2019), as revised (July 5, 2019). This is largely because a fundamental purpose of the PLRA is not to deepen courts' involvement in the management of prisons but to extricate courts from the business of prison management. *Id.*; *see also Guajardo*, 363 F.3d at 394. "Under the PLRA,

5

plaintiffs are not entitled to the most effective available remedy; they are entitled to a remedy that eliminates the constitutional injury." *Ball v. LeBlanc*, 792 F.3d 584, 599 (5th Cir. 2015).

Against this backdrop, the Fifth Circuit's decision requiring the scope of the receiver's duties and responsibilities to be reevaluated "de novo[,]" including "develop[ing] a new description of the receiver's powers after conducting [the PLRA's] need-narrowness-intrusiveness analysis" must be read to mandate that this Court first identify what constitutional violations presently exist at RDC, if any, and then analyze whether the receiver's duties and responsibilities satisfy the PLRA's need-narrowness-intrusiveness criteria with respect to those violations. Any other reading—particularly one that is predicated on constitutional violations based on evidence that is no less than three years old and where the most problematic unit at RDC has been completely shut down—would result in a "remedial order[] that unnecessarily reach[es] out to improve prison conditions other than those that violate the Constitution." *Brown,* 563 U.S. at 531. Thus, the Fifth Circuit's mandate to "to reevaluate de novo the scope of the receivership consistent with [its] opinion[,]" Op. at 32, requires the Court to take a fresh look at what constitutional violations currently exist at RDC before the Court can evaluate whether the receiver's duties and responsibilities are narrowly drawn, extend no further than necessary to correct the constitutional violations, and are the least intrusive means necessary to correct those violations. 18 U.S.C. § 3626(a)(1)(A).

In the face of the Fifth Circuit's decision, the Government inexplicably appears to have no interest in focusing on what's actually happening at RDC today or in working to narrow the scope of corrective action to what actually may be constitutionally deficient today. Rather, the Government spins off into an argument attempting to distinguish what the PLRA requires to impose prospective relief in the first instance under 18 U.S.C. § 3626(a)(1) versus what the PLRA

6

requires to maintain prospective relief during termination proceedings under 18 U.S.C. § 3626(b)(3), treating the issue as settled among the circuits to have considered it. The County need only briefly respond to this unsolicited, unpersuasive argument.

The PLRA's plain language restricts injunctions to cases in which prospective relief is necessary to correct an existing violation of federal law. Under the PLRA, no injunction may be issued unless it is "necessary to correct *the violation* of the Federal right":

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

18 U.S.C. § 3626(a)(1)(A). Relatedly, the PLRA provides that an injunction will be terminated if no longer "necessary to correct a current and ongoing violation of the Federal right . . . ." 18 U.S.C. § 3626(b)(3). As the Ninth Circuit explained, the "standard for termination does not differ materially from the standard to be applied in deciding whether prospective relief is proper." *Hallett v. Morgan*, 296 F.3d 732, 743 (9th Cir. 2002);[8] *see also Hadix v. Caruso*, 420 F. App'x 480, 483 (6th Cir. 2011) (noting the PLRA requires "the existence of a violation of a federal right before a district court may grant injunctive relief in a conditions-of-confinement case"). Put simply, the proper focus of the need-narrowness-intrusiveness analysis required on remand is on whether there are existing constitutional violations at RDC.

---

[8] Not surprisingly, the Government avoids *Hallett* altogether and certainly does not acknowledge that the Fifth Circuit cited *Hallett* with approval in *Guajardo*, 363 F.3d at 395.

**Conclusion**

Consistent with the Court's order granting in part the Government's request, the County will, within the next 21 days, "file recommended changes, if any, to the scope of the Receiver's duties[ and] highlight the record evidence relevant to the de novo review and PLRA analysis required by the appellate mandate."

Dated:  March 12, 2025.

                                                           Respectfully submitted,

                                                           **PHELPS DUNBAR, LLP**

                                          BY:   /s/ *Nicholas F. Morisani*
                                                  W. Thomas Siler, Jr., MB #6791
                                                  Nicholas F. Morisani, MB #104970
                                                  Loden P. Walker, MB#105996
                                                  1905 Community Bank Way, Suite 200
                                                  Flowood, Mississippi 39232
                                                  Telephone: 601-352-2300
                                                  Facsimile: 601-360-9777
                                                  Email:  Tommy.Siler@phelps.com
                                                                     Nick.Morisani@phelps.com
                                                                     Loden.Walker@phelps.com

                                          **ATTORNEYS FOR DEFENDANTS**