# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | PLAINTIFF |
| | § | |
| VS. | § | NO. 3:16-CV-489-CWR-BWR |
| | § | |
| HINDS COUNTY, ET AL. | § | DEFENDANTS |

### DEFENDANTS' REBUTTAL IN SUPPORT OF
### [267] MOTION TO REPLACE COURT-APPOINTED MONITORS

The Government urges this Court—with no factual or legal basis—to overturn the status quo and supersede the Receiver before he has had any chance to assess the task before him. Based on this Court's latest findings, this Court's latest decisions, and the Fifth Circuit's determination, any reappointment of the Monitor cannot be *pro forma*. As this case is currently postured, there is no basis to support the reinstitution of a monitor.

**I.     THIS MOTION RELIES ON THIS COURT'S FINDINGS AND ORDERS**

The last substantive orders entered by this Court were filed on January 30, 2023. *See* [249-1], [250-1]. One was the Amended Order and the second was the New Injunction. In the Amended Order, this Court held that:

> After the Court appoints the Receiver, the Monitor and her team should cease their operations as set forth in this Court's prior orders. Specifically, within 30 days of appointment of the Receiver, the Monitor and her team shall submit a final report and accounting. Upon receipt of the final report and accounting, the Court will be prepared to discharge Ms. Simpson as Monitor unless the Receiver determines her services remain necessary. Moving forward, the Receiver may communicate with the Monitor and her team as needed to effectuate a smooth transition.

[249-1], p. 25. In the New Injunction, this Court incorporated the prior provisions related to a monitor from the Order Amending Consent Decree [168]. [250-1], p. 11. Those provisions state

that that the consent agreement must be monitored, the procedure for appointing a monitor, a monitor's responsibilities, and various findings by the Court regarding how a monitor will interact with state and local laws and officials. [168], pp. 138-44. As the Government identifies, those prior provisions include a basis for terminating a monitor. [168], p. 139 ("The Monitor may be terminated only by (i) join stipulation of the parties; or (ii) for good cause unrelated to the Monitor's findings, as approved by the Court."). But this Court's subsequent holding in the Amended Order clearly supplements and supersedes those provisions since this Court provided an explicit mechanism to remove the Monitor based on the then-existing facts of the case.

This Court previously appointed a receiver on October 31, 2022. [215]. The Monitor then filed what she called her "final 18th Monitoring Report" on December 12, 2022. [242]. So, under this Court's orders—and the Monitor's own understanding—as of December 12, 2022, the Monitor was to be discharged unless the Receiver determined that her services remained necessary. [249-1]. The Government has never challenged this provision. Further, this Court reflected that understanding in its order directing the Monitor *and the Receiver* to suspend any work pending the appeal. [247].

The County filed an appeal, [251], [252], and the Fifth Circuit subsequently reviewed the Amended Order and the New Injunction. [262], pp. 7-8. Notably, the Fifth Circuit did not reverse this Court's supplementation of the monitor removal provisions, and the Government did not challenge these provisions on appeal.

Simply put, these conditions control the case. Whether or not a monitor is necessary—and whether or not that monitor should be Elizabeth Simpson—is a matter that this Court has deferred to the Receiver. The Government may not want to wait on this process, but that is the procedure this Court has instituted in this case and which the Fifth Circuit has affirmed. That is the law of this case, and absent some rationale to the contrary, that is how this case should proceed. *See*

2

*United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, Civil No. 1:06-cv-433, 2012 WL 12546886, *2 (S.D. Miss. June 15, 2012).

With no findings to the contrary, and no motion pending before this Court to reexamine those prior findings and prior orders, it would be inappropriate to summarily order the County to begin supporting a monitor. This Court is examining what the scope of the receivership should be. This Court should affirm that oversight, governance, and appointment of monitors is within the Receiver's authority subject to the approval of this Court.

## II.    ANY FURTHER MONITORING IS PROSPECTIVE RELIEF

The County contends that appointment of a monitor will be prospective relief; the Government's only response is that it is "a continuation of existing relief that was upheld on appeal." [269], p. 4. But as shown above that is not correct. The orders before the Fifth Circuit—which the Government did not contest—clearly laid out the conclusion of the Monitor's role in these proceedings. The Fifth Circuit did not bless open-ended monitoring by Elizabeth Simpson. Instead, it endorsed the appointment of a receiver and asked this Court to re-delineate the Receiver's responsibilities and scope. Part and parcel of the appointment of that receiver was the conclusion of monitoring subject to the Receiver's determination that a monitor was necessary.

Given that this Court has appointed a receiver who will have effectively total control over the Raymond Detention Center, it is unclear what role a monitor would serve anyway beyond providing another layer of federal bureaucracy that the County is mandated to support[1] and this

---

[1] As noted in the County's opening [266] Memorandum, the County has already paid the Monitor and her team of consultants a total exceeding $1,200,000 to date. The County also must now pay the Receiver $16,000 per month. The Government does not meaningfully address these facts. Not surprisingly, the Government also does not attempt to reconcile its white-knuckle grip on bringing the Monitor and her consultants back into RDC at the County's expense with the simple fact that the County's financial resources would be put to better use (a) paying the Receiver what he is due and (b) making funds that would otherwise be set aside to pay the Monitor and her consultants available to support the RDC's physical structure until the new jail is completed.

3

Court must provide oversight of. Implementing a program where this Court oversees both a receiver and monitors will change the procedure currently put in place by this Court, and the Government has provided no basis to support this.

### III. **CONCLUSION**

The County is asking this Court to maintain the status quo. This Court has determined a receiver is necessary to resolve the issues at the Raymond Detention Center. That determination has been affirmed by the Fifth Circuit. But the Government has unilaterally decided changes are necessary before the receivership has even been fully implemented. The County respectfully requests that this Court deny any such amendment until the Receiver has established himself at the facility and can advise this Court regarding what he believes is necessary to remedy any issues that are outstanding.

Respectfully submitted this the 14th day of March 2025.

>  Respectfully submitted,
>
> **PHELPS DUNBAR LLP**
>
> BY:   s/ *Nicholas F. Morsani*
> W. Thomas Siler, Jr. MB #6791
> Nicholas F. Morisani MB #104970
> Loden P. Walker MB #105996
> 1905 Community Bank Way
> Suite 200
> Flowood, Mississippi 39232
> Telephone: 601 352 2300
> Facsimile: 601 360 9777
> Email: silert@phelps.com
> Email: nick.morisani@phelps.com
> Email: loden.walker@phelps.com
>
> **ATTORNEYS FOR DEFENDANTS**

PD.48707502.1