IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO.: 3:16-CV-00489-CWR-RHWR |
| | ) | |
| HINDS COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF
PROPOSED REVISED RECEIVERSHIP ORDER**

The United States submits this Memorandum in Support of Attachment 1, the United States' Proposed Revisions to the Court's Order on the Scope of the Hinds County Jail Receivership (Proposed Revised Receivership Order).

## I.    BACKGROUND

After finding Defendants in contempt twice, this Court appointed a Receiver to implement a New Injunction designed to bring the Raymond Detention Center (RDC) into compliance with constitutional standards. Doc. No. 249-1 at 1 (Jan. 30, 2023) (Amended Order), Doc. No. 249-1 at 27 (Appointment Order), Doc. No. 249-1 at 31 (Receivership Order); Doc. No. 250-1 (Jan. 30, 2023) (New Injunction). Defendants appealed and challenged this Court's Orders, citing the Prison Litigation Reform Act, 18 U.S.C. § 3626 (PLRA). Doc. No. 150 at 4 (June 23, 2023). On appeal, the Fifth Circuit upheld the Receivership and all but one section of

1

the New Injunction.[1] Doc. No. 262 (Feb. 20, 2025), 263 (Feb. 20, 2025). The Fifth Circuit also remanded to this Court to conduct a de novo review of the scope of the Receivership, further limit the Receiver's authority over RDC's budget and related financial matters, and make additional findings based on a need-narrowness-intrusiveness analysis of the scope of the Receiver's powers. Doc. No. 262 at 20 (remanding to remove sexual misconduct provisions and monitoring accordingly), 29-32 (remanding for additional findings consistent with the PLRA); Doc. No. 263.

In light of the Court of Appeals' mandate, and following a February 28, 2025, status conference, the Court instructed the parties to submit their "proposal(s) on what the Receiver's duties should include." Minute Entry, Civ. No. 3:16-cv-489 (S.D. Miss. Feb. 28, 2025). The United States then filed a Submission Regarding the Court's Receivership Order, Doc. No. 268 (Mar. 10, 2025), and Proposed Revisions to the Court's Order on the Scope of the Jail Receivership, Doc. No. 268-1 (March 10, 2025). The United States' submission focused on the budget powers of the Receiver, which had received specific attention from the Court of Appeals. The United States suggested that the Court give the parties additional time to support or propose amending other provisions of the Receivership Order to address the Court of Appeals' instruction to conduct a more particularized PLRA analysis and a de novo review of the Receiver's duties. The Court accepted the United States' request and gave the parties "21 days to file recommended changes, if any, to the scope of the Receiver's duties, and to highlight the record evidence relevant to the de novo review and PLRA analysis required by the appellate mandate." Order, 3:16-cv-489 (S.D. Miss., Mar. 12, 2025). The United States now files this

---

[1] The excised section covered sexual misconduct. *See* Modified New Injunction, Doc. No. 250-1 at 5.

Memorandum and a Proposed Revised Receivership Order to further assist the Court with its review.

## II.    THE RECORD SUPPORTS THE DUTIES AND POWERS DESCRIBED IN THE UNITED STATES' PROPOSED REVISED RECEIVERSHIP ORDER

On remand, this Court has been instructed to "reevaluate de novo the scope of the receivership" consistent with the Court of Appeals' opinion. Doc. No. 262 at 32. The Court of Appeals explained that "[t]he district court . . . should develop a new description of the receiver's powers after conducting a need-narrowness-intrusiveness analysis in light of the receiver's loss of control over the budget and salaries." Doc. No. 262 at 32. The Court of Appeals explained that such a review is necessary to justify the Receiver's powers, and that this Court's original Receivership Order made the requisite PLRA findings in a "conclusory" manner, without explaining the findings in detail and without "discuss[ing] whether it would be feasible to institute a receivership with more limited powers that cover only the scope of the constitutional violations." Doc. No. 262 at 31-32. The Court of Appeals also noted that the lack of an end date for the Receivership could potentially raise concerns. Doc. No. 262 at 31. Except for certain budget-related powers, the Court of Appeals did not find any particular provision to be in violation of the PLRA, instead noting that this Court had not provided "the necessary explanation and justification" to support the Receiver's powers and duties with more particularized findings. Doc. No. 262 at 32.

Accordingly, the United States proposes further revisions in the Attachment to this Memorandum, and explains in this Memorandum how the existing record supports the United

States' Proposed Revised Receivership Order.[2] With tailored proposed revisions set forth in the attached Proposed Revised Receivership Order, these powers are necessary and the least intrusive means of correcting the constitutional violations that this Court found and the Court of Appeals upheld. The current record supports the proposed Receiver's powers and demonstrates why other more limited remedies are not an adequate substitute.

## A.  This Court Should Review the Existing Record to Conduct the PLRA Review

As the United States explained in prior filings, the Court on remand may and should review the existing record to explain whether and how the Revised Receivership Order satisfies the PLRA's "need-narrowness-intrusiveness" requirement. *See* U.S. Submission Regarding the Court's Receivership Order, Doc. No. 268 (Mar. 10, 2025), U.S. Response to Defendants' Motion to Replace Court-Appointed Monitors, Doc. No. 269 (Mar. 12, 2025).

Defendants contend that the Court should review new evidence in conducting its de novo review. Memorandum in Response to the Court's February 28, 2025 Minute Entry, Doc. No. 270 (Mar. 12, 2025). Adopting the Defendants' position would be contrary to the law, as the Fifth Circuit made clear in its opinion in this case.[3] *See* Doc No. 262, at 11-12, n. 5. (rejecting the Defendants' interpretation of the PLRA's "current and ongoing" requirement). Defendants' preferred interpretation also is not supported by the PLRA's statutory text, which requires proving a "current and ongoing" violation only in the context of termination of relief, not in

---

[2] "[F]or ease of analysis," the Court of Appeals clustered related provisions when analyzing the scope of the original Receivership Order. Doc. No. 262 at 17 n. 7. While this Court's PLRA review must be "sufficiently specific," the Court of Appeals' decision to structure its own analysis this way suggests that this Court may do the same. Doc. No. 262 at 29.

[3] If the Court were to update the record on remand, as Defendants urge, not only would this be contrary to law, it would result in an endless cycle between the District Court and the Court of Appeals if Defendants continued to appeal this Court's Orders and then claim that the record was stale each time the Court of Appeals remanded the case to the District Court.

ordering new prospective relief. *Compare* 18 U.S.C. § 3626(a)(1)(A) (standard for new prospective relief) *with* 3626(b)(1), (b)(3) (standard to retain previously entered prospective relief); *see also* Doc. No. 268 at 4-5. Other court decisions also cast doubt on the Defendants' interpretation. S*ee Thomas v. Bryant*, 614 F.3d 1288, 1319-20 (11th Cir. 2010) ("[T]he 'current and ongoing' requirement is distinct from the standard governing the initial entry of injunctive relief. . . . Additionally, there is no indication in the PLRA, its legislative history, or the case law to suggest that the 'current and ongoing' requirement was intended by Congress to amend the well-established law that injunctive relief is available in the first instance . . . to prevent future harm.") (internal citations omitted)); *Porter v. Clarke*, 923 F.3d 348, 367–68 (4th Cir. 2019), as amended (May 6, 2019) ("Because Congress chose not to use [the "current or ongoing" language in the PLRA's provision governing injunctive relief], we will not construe Section 3626(a)(1) as displacing courts' equitable authority to *initially* impose prospective relief, even when a violation is not 'current and ongoing.'"). Applying the PLRA's "current and ongoing" standard to new prospective relief thus is not supported by the statute itself nor by relevant precedent.

Ignoring the plain language of the PLRA and the Fifth Circuit's decision in this case, the Defendants point to dicta from a Ninth Circuit decision, *Hallett v. Morgan*, to support their argument that this Court must conduct a "current and ongoing" analysis to the Fifth Circuit's remand upholding the Receivership.  Doc. No. 270 at 7 n.8 and accompanying text (citing *Hallett*, 296 F.3d 732, 743 (9th Cir. 2002)); *see also Thomas*, 614 F.3d at 1320 (Eleventh Circuit characterizing this statement from *Hallett* as unpersuasive dicta). Defendants' reliance on *Hallett* is inapposite and unpersuasive. In *Hallett*, the court was not considering whether the "current and ongoing" analysis applies to a receivership order following a contempt finding.  Rather, the Court of Appeals was reviewing a district court's decision to grant a defendant's PLRA motion,

denial of plaintiffs' motion to extend a decree with an expiration date, denial of plaintiffs' motion for discovery, and denial of plaintiffs' motions for contempt.[4] *Hallett*, 296 F.3d at 738-40, 751-52.

Here, the Court of Appeals has affirmed this Court's decision to hold Defendants in contempt, and the only immediate issue on remand is how to structure the approved Receivership.[5] Doc. No. 262 at 20, 32- 33. So the PLRA's provision for entering new prospective relief is the only applicable section of the statute. Notably, the Fifth Circuit has not adopted the *Hallett* dicta, and at least one court in this circuit has indicated that the dicta is likely incorrect. *See Amos v. Cain*, 2021 WL 1080518 at *6 (N.D. Miss. Mar. 19, 2021) (concluding that it "appears likely the Fifth Circuit would *not* require an express finding of an ongoing violation under the PLRA" in ordering injunctive relief, and adopting that approach); *see also Dockery v. Cain*, 7 F.4th 375, 380 n.4 (5th Cir. 2021) (declining to decide the question of whether to apply the interpretation suggested by *Hallett* or the statutorily grounded interpretation from the Fourth and Eleventh Circuits).

**B. Section I: "General Powers & Duties of Receiver"**

Section I of the United States' attached Proposed Revised Receivership Order provides a general description of the Receiver's powers and duties, including contracting, personnel, and managerial powers. The Receiver has authority over the executive and administrative functions that are currently exercised by the Sheriff, jail administrator, and other County designees, in

---

[4] Similarly, the Fifth Circuit's reference to *Hallett* in the *Guajardo* opinion was in the context of assessing a termination motion. *See Guajardo v. Texas Dep't of Crim. Just.*, 363 F.3d 392, 395 (5th Cir. 2004).

[5] The Court may also wish to amend the New Injunction to incorporate the Court of Appeals' decision not to uphold the New Injunction's sexual misconduct provision. The scope of the Receivership is, however, the primary issue currently before the court.

order to bring the RDC into compliance with the Constitution and the Court's Orders. As we describe below, the existing record in this case provides the Court with the evidence needed to assess the necessity of these powers and duties. We propose certain tailored revisions to the Order to address the Court of Appeals' opinion.

      *1. Record Justification*

As this Court found and the Court of Appeals upheld, the County's failure to employ and retain qualified jail administrators, carry out the Court's Orders, develop remedial plans, revise policies, supervise and train staff to comply with constitutional standards, investigate and correct dangerous conditions, and numerous other failures that result in unconstitutional conditions in RDC warranted a Receivership. The provisions in question therefore confer upon the Receiver the authority that is necessary to address the violations—and which the County's own officials failed to exercise when carrying out their legal duties.

As noted in both the United States' statement of the record and this Court's opinions and Orders, the County repeatedly failed to administer the RDC in a manner that met minimum constitutional requirements. *See* First Order of Contempt, Doc. No. 126 at 7-12 (describing history of unsteady leadership and rampant violence); *see generally* United States' Proposed Findings of Fact and Conclusions of Law, Doc. No. 138, Part I Subsection C (proposed findings of fact based on evidence of Defendants' deliberate indifference towards gangs, unsafe living conditions, use of force, and other consent decree issues); Amended Receivership Orders, Doc. No. 249-1 at 2-4, 17-23 (describing bad faith, leadership problems, wasted resources, and broken promises to reform); Second Order of Contempt, Doc. No. 165, Part III (holding County in contempt for RDC violence, broken locks, disrepair).

     In addition to these findings and record evidence supporting the overall need for the

Receiver to have authority over RDC administration and operations, and input into certain budget, contracting, and staffing matters, the record contains extensive evidence supporting more specific, targeted aspects of the general powers and duties of the Receiver as described in Section I of the United States' Proposed Revised Receivership Order. Specifically, in conducting the need-narrowness-intrusiveness analysis for Paragraphs 1-4 of Section I, pertaining to supervision of RDC operations, the Court may point to:

- Defendants' failure to implement the Court's remedial Orders, *see* Order Amending Consent Decree, Doc. No. 168 at 14-15;

- Defendants' failure to properly manage RDC operations, protect detainees from harm incidents, and control contraband and incidents of harm, *see, e.g., id.* at 48-51 (assaults and deaths in RDC), 52-53 ("untenable" contraband situation);

- Defendants' failure to provide adequate staffing and supervision in the RDC, *see id.* at 45-47 (harm caused by severe staffing shortages), 146 n.21 and accompanying text (collecting record evidence regarding failure to reasonably address unacceptably low staffing); and

- Defendants' failure to implement classification and housing policies, *see, e.g.*, *id.* at 48-51 (improper reliance on gang affiliation to determine housing assignments, harm caused by misuse of housing areas).

*See also* U.S. Proposed Findings of Fact, Doc. No. 138 ¶¶ 9, 12-18, 24-25, 30, 46 (describing these failures).

The Court's Revised Receivership Order should tailor the Receiver's powers to those that are necessary to do his job as Receiver; these powers include the ability to supervise staff, obtain County cooperation, and negotiate agreements relevant to RDC operations. *See* Revised

Receivership Order § I ¶¶ 4-11. To justify these duties and authorities, the Court may rely upon the Defendants' history of managerial and leadership failures, failure to cooperate with and support its own leadership, and entrenched systemic managerial problems that led to repeated contempt findings. *See, e.g.*, Order Amending Consent Decree, Doc. No. 168 at 18-19 (describing leadership problems including the lack of support for and resignation of RDC Administrator); *see also* U.S. Proposed Findings of Fact, Doc. No. 138 ¶¶ 70 (interference and failure to cooperate with RDC Administrator), 91-97 (poor planning and entrenched systemic problems resulting in ongoing, untenable maintenance issues); *see also id.* ¶¶ 8, 107, 126, 284 (multiple failures related to contracting, resulting in various harms).

   2.  *Proposed Revisions*

   To comport with the Court of Appeals' directions on remand, based on the record before this Court and on the need-narrowness-intrusiveness analysis described above, the United States proposes tailored revisions, which are set forth in the attached Proposed Revised Receivership Order.[6]

   First, the Court of Appeals explained that this Court's original Receivership Order went too far in allowing the Receiver control over the RDC budget; the United States addressed these concerns with proposed amendments submitted in a previous filing. *See* Doc. No. 268. These proposed edits to the Receiver's budgetary powers are reproduced in the attached Proposed Revised Receivership Order.

   Additionally, the Court of Appeals instructed this Court to "conduct a sufficient need-

---

[6] This Court could retain the original language and still comply with the Fifth Circuit's mandate just by making the required, particularized, PLRA findings. The United States offers the additional revisions, however, to further strengthen the Order's compliance with PLRA requirements.

narrowness-intrusiveness analysis" that addresses with particularity how the Receiver's enumerated powers are necessary and appropriately tailored to the constitutional violations found. *See* Doc. No. 262 at 31-32. Accordingly, the United States proposes clarifying that the Receiver's powers only extend as reasonably necessary to implement constitutional remedies. *See, e.g.*, Proposed Revised Receivership Order, § I ¶¶ 4, 7-9, 11. While the Receiver has authority over day-to-day operational decisions necessary to operate the RDC (e.g., how to staff a shift, ordering repairs, supervising detainees), the County retains its authority to set and approve the facility budget, change salary structures, and fund major infrastructure repairs.

In line with this analysis, the Receiver's authority is greater when it comes to routine RDC operations, and more consultative when it comes to major policy and budgetary matters. This does not mean that the County is completely free to do as it wishes even if its decisions lead to constitutional violations. For instance, to prevent the County from using its budget approval authority to undermine the Receiver, the County must consult with the Receiver regarding budgetary matters such as contract negotiations, and the Receiver may notify the Court if the County's course of action is likely to impede compliance with Court Orders. Proposed Revised Receivership Order § I ¶ 11.  The Court retains ultimate authority to enforce its Orders and constitutional standards. Id. § I ¶ 6.  The United States' Proposed Revised Receivership Order does, however, facilitate enforcement by establishing a clear consultation, planning and reporting process for the Receiver. *Id.* § I. ¶¶ 6, 10, 11; *Id.* § II, ¶¶ 7, 11.

C.  **Section II: "Duty to File Plan of Action, Budget, and Reporting"**

The first five paragraphs of Section II require the Receiver to develop a plan and timeline so the Receiver can begin implementation of the Court's Orders, with the opportunity for the parties to provide input. *See* Proposed Revised Receivership Order § II ¶¶ 1-5.

The remainder of Section II covers the Receiver's duties and powers related to the budget for improvements and operations necessary to bring the RDC into constitutional compliance, including budget-related planning, administration, approval, and reporting. *See* Proposed Revised Receivership Order § II ¶¶ 6-12.[7] As explained in more detail below, we propose revisions to these budget-related provisions as mandated by the Court of Appeals, while still providing for the Receiver to have some input on budget-related matters and access to budget-related information, given their relevancy to RDC administration and operation and in light of the County's history of noncompliance.

   1. *Record Justification*

The planning, budget, and reporting provisions in Section II are essential to any administrative position and in keeping with the Court of Appeals' mandate. Paragraphs 1-5 impose timelines, planning requirements, and structure on the Receivership to ensure efficiency and progress toward compliance with constitutional standards and the Court's Order. Such planning requirements are particularly important here because of the County's repeated failure to develop remedial plans, meet timelines, and appoint teams that could implement remedial measures. Amended Order § II; Doc. No. 126 at 6-12. Similarly, Paragraph 6 requires the Receiver to implement short-term or interim plans to address constitutional violations, before the planning process is fully implemented. Finally, Paragraphs 7-12 ensure that the Receiver may have access to and provide input on the RDC budget and funding requests relevant to implementation of the Court's Orders. Although the Court of Appeals instructed this Court to

---

[7] These budgetary provisions are separate from the provisions addressing the Receiver's own budget, including the Receiver's salary and funding for the Receiver's staff. *See* Revised Receivership Order § IV – Term & Compensation.

limit the Receiver's authority over the budget, the ability to provide input on budget-related matters is critical and goes no further than necessary to address constitutional violations. These provisions are supported by the record, which demonstrates the County's longstanding failure to mitigate constitutional deficiencies with promptness and efficiency—one of the systemic problems that led to this Court's contempt findings and necessitated the Court's appointment of the Receiver. *See, e.g.*, U.S. Proposed Findings of Fact, Doc. No. 138 ¶ 15 (failure to follow through with Stipulated Order requirements including staffing plan), ¶¶ 116-117 (lack of mental health plan), ¶ 140 (lack of a plan to improve youth treatment programs); ¶ 142 (lack of a plan to replace head of youth facility), ¶ 274 (discussing precedent for appointing a receiver to develop remedial plans); Second Order of Contempt, Doc. No. 165 at 2 (County's failure to follow through with renovation and housing plans).

### 2. Proposed Revisions

The United States' proposed revisions further implement the Court of Appeals' directive to qualify and limit the Receiver's budget powers. *See* Proposed Revised Receivership Order § II ¶¶ 7-11; *see also* U.S. Proposed Revisions to Scope of Receivership Order, Doc. No. 268-1. The new proposed language limits the Receiver's powers for major budgetary decisions, such as approval of the RDC's annual budget. While the Receiver may recommend budgets or major expenditures, the County retains its approval authority and responsibility for such matters. In comparison, the more significant receivership powers described in this Section cannot be exercised unilaterally without approval by the County or the Court. This is as limited as a power can be under law, while still ensuring some possibility of an effective constitutional remedy.

The proposed revisions also clarify that the powers in question are intended only to ensure compliance with minimum constitutional standards. *See, e.g.*, Proposed Revised

Receivership Order § II ¶ 6 (proposing revisions to clarify that the Receiver's duties extend only to bringing the RDC into compliance with minimum constitutional standards and the Court's Orders). So while the Receiver should develop and implement remedial plans, the revisions clarify that the ultimate purpose is to achieve constitutional compliance. Moreover, requiring the Receiver to provide remedial plans should provide greater accountability, which is also consistent with the PLRA. *Compare* 18 U.S.C. § 3626(f)(6)(C) (special master role may include developing remedial plans).

### D. Section III: "Access, Immunity, and Interference with Receiver."

Section III describes certain powers that are necessary to allow the Receiver to run operations and administration of the RDC. These include being able to enter the RDC, access records, and speak to employees and detainees. The section also includes provisions describing the scope of the Receiver's legal immunities and protection from unlawful interference.

#### 1. Record Justification

The record in this case shows how Defendants have hindered compliance with Court Orders by failing to support RDC leaders and trying to limit the Monitor and their own staff from getting the information they need to identify and remedy constitutional deficiencies. *See, e.g.*, Order Amending Consent Decree, Doc. No. 168 at 18-19 (describing how the County failed to support and circumvented the decision-making power of the former RDC Administrator, leading to her resignation); Second Order of Contempt, Doc. No. 165 at 10 (under-reporting of serious incidents, poor record-keeping), 13 (inaccurate County reports about remedial efforts), 15 (noting history of broken promises about repairs and need for independent verification of the County's claims), 16-17 (County's broken promise to the Court about furniture), 17 (describing contraband hidden until physical inspection); First Order of Contempt, Doc. No. 126 at 12 (new

jail administrator resigning after lack of support from Sheriff so she could perform her duties),
17 (statements by defense counsel about improved conditions that were not verified), 19
(statements by defense counsel to the Court that indicated a complete reversal in position about
reforms). This record demonstrates the critical importance of the Receiver's access to
information as set forth with appropriate limitations in Section III, Paragraphs 1-10. In order to
assess conditions and take corrective action, the Receiver needs to be able to independently
determine what is happening in the RDC. Thus, the Receiver needs to have access to records,
staff, detainees, and other information to carry out the necessary constitutional reforms.

This record also shows why the Order needs provisions that clearly describe the
Receiver's protections from unlawful interference with carrying out any court-ordered duties.
*See* Proposed Revised Receivership Order § III ¶¶ 6-10. These access and immunity provisions
are necessary because the Receiver is a representative of the Court, charged with implementing
its Orders after Defendants were held in contempt for failing to do so. *See* Order, Doc. No. 204 at
4-6. The United States' Proposed Revised Receivership Order therefore includes provisions that
allow the Receiver to fulfill quasi-judicial and mediation functions, such as reporting
confidentially to the Court and being able to communicate directly with each parties' counsel.
Proposed Revised Receivership Order, §III ¶¶ 5, 8-9.[8]

2. *Proposed Revisions*

The United States' proposed revisions to Section III clarify that the Receiver's access
conforms with the law and, in general, does not exceed the access already possessed by the

---

[8] While the record justifies these provisions, the United States also notes that many of the provisions,
including Section III, Paragraphs 1-5 and Section IV, Paragraphs 3-7, parallel provisions of the original Consent
Decree and the New Injunction, which have been upheld as PLRA-compliant. Other provisions, such as Section III,
Paragraph 6 and Section IV, Paragraph 8, recognize that the Receiver has actual operational responsibilities and is
more than just a monitor or expert witness.

Sheriff, RDC Administrator, or other County officials. *See* Proposed Revised Receivership Order § III ¶¶ 1-2, 4 (clarifying the definition of the Receiver's "access" to tailor it to mirror the access of relevant County and RDC officials and their proper lawful designees).

### E.  Section IV: "Term and Compensation"

Section IV provides for the Receiver's compensation and office budget, including staff and expenses. The Section also puts certain limits on the Receiver's public statements, which are consistent with those upheld for the Monitor and which would apply to anyone in such a sensitive, quasi-judicial, and mediation role. *See* Doc. No. 250-1 at 11 (incorporating original consent decree provisions including restrictions on public statements).

#### 1.  Record Justification

The Receiver's personal compensation and office budget is narrowly tailored to allow the Receiver to address the Defendants' constitutional violations and extends no further than necessary for the Receiver to correct the violations. An order spelling out compensation and budget terms is a necessity given the history and record. *See generally* Doc. No. 138 at 5 (Monitor paid for a consultant out of her own budget after Defendants failed to do so as promised and ordered), 22 (Defendants' failure to meet financial commitments), 23 (Defendants' failure to retain and utilize consultant to help with recruitment and retention despite agreement and Order). The provisions in Section IV also are similar in structure to some of the Monitoring provisions in the New Injunction, which were upheld by the Court of Appeals. *See* Doc. No. 250-1 at 11 (proposed Revised Receivership Order incorporates similar Monitoring budget provision which gives Defendants the initial opportunity to negotiate a budget with the Court acting only if necessary).

#### 2.  Proposed Revisions

The compensation and office budget provisions already include conditions and limitations to ensure compliance with the PLRA, but the United States proposes adding clarifying language to further protect against excessive spending by the Receiver. Compensation is necessary because the Receiver is a highly qualified professional who will need to spend sufficient time and resources to effectuate the Court's Orders, but the Order requires that compensation and expenses must be "reasonable" and subject to the Court's approval. Proposed Revised Receivership Order, § IV ¶¶ 1, 15-16. The Receiver's initial operating fund will be set by agreement of both parties. *Id.* § IV ¶ 11. The Receiver then must submit a proposed operating budget, which is subject to further review, including by the Defendants. *Id.* § IV ¶ 14. The Receiver must also account for funds and develop a transition plan to help return functions back to the Defendants. *Id.* § IV ¶¶ 12, 19-23. To further ensure transparency and efficiency with County funds, the Receiver must submit invoices, and the parties can object to such billing. *Id.* § IV ¶ 16.[9]

**Section V: "Modification"**

Section V includes a provision to allow modifications to the Receivership and a general PLRA finding meant to apply to the entire Receivership Order. Doc. No. 262 at 32.

*1. Record Justification*

This Section ensures that the Receivership continues to comport with the PLRA and is responsive to changes in conditions that are anticipated from the operation of the Receivership. As discussed above, this Court can and should make more specific and individualized PLRA findings for the various provisions of the Receivership Order, including the terms in Section V.

---

[9] The United States also has proposed a provision clarifying that the Receiver's records may be subject to federal and state open records laws. Proposed Revised Receivership Order § IV ¶ 8.

To support Section V, the United States suggests incorporating the other analysis above by cross-reference.

###### 2.  *Proposed Revisions*

Additionally, in light of the remand, the United States proposes additional language to ensure ongoing PLRA compliance.  Specifically, the United States proposes a new mechanism to ensure biannual review of the Receivership. This proactive review gives the parties an opportunity to update the Court as to any factual developments, and whether such developments warrant modifying relief, transferring powers back to the County, or even terminating the Receivership. The Court of Appeals noted that, while not dispositive, the lack of an end date in the original Receivership Order can "compound[]" concerns about "federal intrusion into RDC's budget." Doc. No. 262 at 31. Neither the Court of Appeals' opinion nor the PLRA itself mandates automatic termination of relief necessary to remedy ongoing constitutional violations. Moreover, the PLRA itself contains a mechanism whereby a party may move to terminate relief after two years, but a court may retain relief that meets PLRA requirements. 18 U.S.C. § 3626 (b)(1)(A), (b)(3).[10] The United States' proposal provides an additional means of ensuring that the Receivership remains in place only as long as and to the extent that it is truly necessary and appropriate. *See* Revised Receivership Order §V (proposing new language that would require this Court to conduct a formal reassessment of the Receivership every two years). Other provisions in the Revised Receivership Order also address the Court of Appeals' concern about an open-ended Receivership. These include Proposed Revised Receivership Order, Section IV, paragraphs 17, 18 and 25, which all provide anticipated or potential bases for ending the

---

[10] Of course, in this case, Defendants already sought termination pursuant to the PLRA, the Court partially denied the motion and entered new relief, and the Court of Appeals upheld the new injunction and sanctions.

Receivership.

Respectfully submitted,


**FOR THE UNITED STATES:**


PATRICK LEMON
Acting United States Attorney
Southern District of Mississippi

MAC WARNER
Deputy Assistant Attorney General
Civil Rights Division

REGAN RUSH
Chief
Civil Rights Division
Special Litigation Section

MITZI DEASE PAIGE (MS #6014)
Assistant U.S. Attorney
U.S. Attorney's Office
Southern District of Mississippi
501 E. Court Street – Ste. 4.430
Jackson, MS 39201
mpaige@usdoj.gov
(601) 973-2840
(601) 965-4409 (fax)

LAURA L. COWALL (DC #481379)
Deputy Chief
laura.cowall@usdoj.gov
(202) 514-1089
(202) 514-0212 (fax)

/s/ *Christopher N. Cheng*
CHRISTOPHER N. CHENG (PA #69066)
Trial Attorney
christopher.cheng@usdoj.gov
(202) 353-5012
(202) 514-0212 (fax)


HELEN VERA
Trial Attorney
helen.vera@usdoj.gov
United States Department of Justice
Civil Rights Division
Special Litigation Section
150 M Street, N.E.
Washington, DC 20002


DATED:        April 4, 2025

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on April 4, 2025, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

                                  */s/ Christopher N. Cheng*
                                  CHRISTOPHER N. CHENG (PA #69066)
                                  Attorney for the United States
                                  United States Department of Justice
                                  Civil Rights Division, Special Litigation Section
                                  150 M Street, N.E.
                                  Washington, DC 20002