# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

| UNITED STATES OF AMERICA | § | PLAINTIFF |
|---|---|---|
| | § | |
| VS. | § | NO. 3:16-CV-489-CWR-BWR |
| | § | |
| HINDS COUNTY, ET AL. | § | DEFENDANTS |

## RESPONSE TO MARCH 12, 2025, TEXT ONLY ORDER

Hinds County, Mississippi, and Sheriff Tyree Jones, in his official capacity (collectively, "the County"), respectfully submit this Response to the Court's March 12, 2025, Text Only Order.

## Relevant Background

On February 12, 2025, the Fifth Circuit Court of Appeals issued its revised decision requiring the Court to "reevaluate de novo the scope of the receivership consistent with [the Fifth Circuit's] opinion."[1] The Fifth Circuit added a guiding principle for this de novo review: the Court "cannot grant the receiver power over RDC's budget and related financial matters, such as salaries or benefits."[2]

On March 12, 2025, the Court entered an order directing the "parties . . . to file recommended changes, if any, to the scope of the Receiver's duties . . . ."[3] The Court further provided that, within the same timeframe, the parties were "to highlight the record evidence relevant to the de novo review and PLRA analysis required by the appellate mandate."[4]

## Discussion

As a threshold matter, the County objects to the Court's plan for carrying out the Fifth Circuit's mandate because focusing on the "record evidence" does not provide any indication of

---

[1] Op. (Revised) [262] at 32 (The Fifth Circuit's Revised Opinion will be referred to as "Op.").
[2] *Id.*
[3] 03/12/2025 Text Only Order.
[4] *Id.*

conditions at RDC today and thus the new remedial order providing for the receiver's powers and duties cannot meaningfully be connected to constitutional rights violations that need to be remedied. As for recommended changes to the receiver's powers and duties, the County proposes several changes as reflected in a proposed order (with changes tracked) contemporaneously submitted for the Court's consideration. Lastly, the County highlights evidence relevant to the de novo review that must now be conducted to develop a new set of powers and duties for the receiver.

**A**. **The County objects to the Court's plan for executing the Fifth Circuit's mandate**.

The Fifth Circuit mandate requires a de novo review of the scope of the receiver's duties in light of two facts: (1) the Court "cannot grant the receiver power over RDC's budget and related financial matters, such as a salaries and benefits[,]"[5] and (2) the Court must "reevaluate de novo the scope of the receivership consistent with" the Fifth Circuit's opinion.[6] Faced with this mandate, the Court directed the parties "to file recommended changes, if any, to the scope of the Receiver's duties" and "to highlight the record evidence relevant to the de novo review and PLRA analysis required by the appellate mandate."[7]

The Fifth Circuit held the existing order setting forth the Receiver's duties [209-1] is fatally flawed, in part, because it "summarily concluded that the receiver's duties satisfy the PLRA's need-narrowness-intrusiveness analysis."[8] As a result, this Court was directed to "develop a new description of the receiver's powers."[9]

Developing a new description of the Receiver's powers and duties based on "record evidence" without considering current conditions at RDC is problematic in light of the Fifth

---

[5] Op. at 32.
[6] *Id*.
[7] 03/12/2025 Text Only Order.
[8] Op. at 32.
[9] *Id*.

2

Circuit's decision. This is because the "record evidence" dates back to 2021 and beyond and focusing the "de novo" review on such evidence conflicts with the Fifth Circuit's mandate. The Court's decision to use "record evidence" means the "de novo" review required by the Fifth Circuit will be predicated on stale evidence. As a "remedial order," the resulting product necessarily overlooks a critical point from the Fifth Circuit's mandate: "remedial orders that unnecessarily reach out to improve prison conditions other than those that violate the Constitution" have been rejected by the Supreme Court.[10] Without updating the record with evidence of what constitutional violations (if any) presently exist at RDC, particularly where (as here) significant change has occurred at the facility (including the complete shutdown of A-Pod), the Court's remedial order invariably will target conditions other than those that violate the Constitution. Put simply, there is no evidence in the record showing what the conditions are at RDC today, and thus, the Court cannot "develop a new description of the receiver's powers" and enter a remedial order sufficient under the mandate and existing Fifth Circuit precedent.

The Government does not see it this way and instead argues that the Court need not consider any evidence of conditions at RDC today before "develop[ing] a new description of the receivership consistent with" the Fifth Circuit's opinion. *See* Mem. [275] at 4-6. The Government predicts the Fifth Circuit would hold the PLRA's standard for imposing prospective relief in the first instance found in 18 U.S.C. § 3626(a)(1)(A) differs from the PLRA's standard for terminating prospective relief found in 18 U.S.C. § 3626(b)(3). *Id*. Thus, the prediction goes, there need not be a current and ongoing federal rights violation to impose prospective relief in the first instance. *Id*.

This prediction is as inaccurate as it is irrelevant to carrying out the Fifth Circuit's mandate. For starters, and as explained by the County in its previously filed Memorandum [270] in Response

---

[10] *Id*.

to the Court's Feb. 28, 2025, Minute Entry, the federal circuits are split on this question. As for how the Fifth Circuit views the question, this Court need look no further than the Fifth Circuit's decision in this case to reject the Government's prediction. Namely, the Fifth Circuit made clear that a remedial order in the prison and jail context should "cover only the scope of the constitutional violations[,]" and the "PLRA requires that the scope of the order must be determined *with reference to the constitutional violations established* by the plaintiffs before the court." Op. at 32 (quoting *Brown v. Plata*, 563 U.S. 493, 531 (2011)) (emphasis added). Consequently, the County objects to Court's development of a "new description of the receiver's powers" based on evidence dating to 2021 and beyond, which does not reflect conditions at RDC today.

### B. Numerous changes to the scope of the receiver's duties are required.[11]

The County's proposed changes to the receiver's duties are guided by the Fifth Circuit's mandate. *See* County's Proposed Changes to the Receiver's Duties, attached as **Exhibit 1**. As such, there are two primary areas of the scope of the receiver's duties that must be addressed at this stage: the receiver's lack of authority and control over the County's funds and the absence of the requisite needs-narrowness-intrusiveness analysis linking the receiver's duties to the federal rights violations those duties are intended to remedy.

With respect to the County's funds, several changes are required by the Fifth Circuit's mandate. *See generally* **Exhibit 1**. The Court "cannot grant the receiver power over RDC's budget

---

[11] The order setting forth the receiver's duties is a remedial order, and as the Fifth Circuit made clear on appeal, the "scope of the order must be determined with reference to the constitutional violations established . . . ." Op. at 32. The PLRA's need-narrowness-intrusiveness analysis necessary for such a remedial order is all but precluded on the current record because the constitutional violations found to be current and ongoing in 2022 were described, at most, in general terms. *See, e.g.*, Order on Motion for Miscellaneous Relief [168] at 40-55 (addressing various aspects falling under the broad umbrella of "protection from harm"); 59-61 (addressing "use of force standards"); 63-66 (addressing "use of force training"); 73-74 (addressing "use of force reporting"); 77-81 (addressing "incident reporting and review"); 91-94(addressing "investigations"); 96-98 (addressing "grievance and prisoner information systems"); 102-105 (addressing "restrictions on the use of segregation"); 121-123 (addressing "lawful basis for detention").

4

and related financial matters, such as salaries or benefits . . . ."[12]  Stated another way, any provisions that could give the receiver "authority over the budget and ***related financial matters***" are improper and go beyond permissible limits.[13] The County's proposed revisions to the receiver's powers and duties strike a balance between the receiver's need for the County's funds at RDC with the receiver's lack of authority over those funds.

With respect to the PLRA, the Fifth Circuit expressed "concern applicable to the scope of all the receiver's powers" when it addressed the lack of sufficient need-narrowness-intrusiveness analysis related to the scope of the receiver's duties.[14] Perhaps this is why the Fifth Circuit required this Court to "develop a new description of the receiver's powers."[15] In carrying this out, the Court must ***first*** identify the constitutional violations it finds that need to be remedied at RDC and ***second*** conduct the PLRA's needs-narrowness-intrusiveness analysis as to each of "the different powers [and duties] given to the receiver"[16] to remedy those violations. Stated differently, there must be a tangible connection between the receiver's powers and duties and the constitutional violations to be remedied through the receiver's exercise of those powers and duties, and this connection must be forged through the PLRA's needs-narrowness-intrusiveness analysis establishing that each of the receiver's powers and duties are narrowly drawn and the least intrusive means necessary to remedy a particular constitutional violation at RDC.[17]

---

[12] Op. at 32.
[13] *Id*. at 29 (observing that "providing the receiver authority over the budget and related financial matters was not proper") (emphasis added in text).
[14] *Id*. at 31.
[15] *Id*. at 32.
[16] *Id*. at 29 (providing the "need-narrowness-intrusiveness analysis was not sufficiently specific as to the different powers given to the receiver"").
[17] *See id*. at 32. (observing that the Court "summarily concluded that the receiver's duties satisfy the PLRA's needs narrowness-intrusiveness analysis"); *see also* 18 U.S.C. § 3626(a)(1)(A).

5

C. **Evidence relevant to the de novo review required by the Fifth Circuit**.

The Fifth Circuit affirmed in part and reversed in part this Court's Order [168] granting in part and denying in part the County's motion seeking termination of the consent decree. That order finds then-current and ongoing constitutional violations, and the County "highlights" those findings as being record evidence relevant to the PLRA's need-narrowness-intrusiveness analysis that the Court must now conduct.[18] Specifically, the Fifth Circuit makes clear those then-current and ongoing violations are what shapes the scope of the receiver's powers and duties.[19]

The County was not ignoring the challenges it faced at RDC.[20] The County "highlights" evidence demonstrating the County's efforts in this regard as being record evidence relevant to the PLRA's need-narrowness-intrusiveness analysis that the Court must now conduct. The Receiver's powers and duties should be developed in a way that supplements and augments these and other specific efforts as opposed broadly taking control of and enveloping those efforts.

## Conclusion

Distilled to its simplest form, there are at least three steps required to effectively carry out the Fifth Circuit's mandate underlying the Court's March 12, 2025, Text Only Order:

(1)  the Court "should develop a new description of the receiver's powers[,]"[21]

---

[18] *See supra* n.11.

[19] *See* Op. at 32 (The "scope of the order must be determined with reference to the constitutional violations established by the specific plaintiffs before the court.").

[20] *See, e.g.*, Status Report [101] 15; Decl. of Major Kathryn Bryan [105-1]; Decl. of Gary Chamblee [105-2]; Evidentiary Hearing (Vol. 2) [155] 109 of 196; Evidentiary Hearing (Vol. 3) [156] 18 of 201, 34 of 201, 70 of 201; Evidentiary Hearing (Vol. 7) [160] 60-61 of 171; Evidentiary Hearing (Vol. 8) [161] 143-144 of 232; Evidentiary Hearing (Vol. 9) [162] 21-22 of 184, 74-75 of 184, 117-118 of 184, 140 of 184; Evidentiary Hearing (Vol. 10) [163] 31-35 of 224, 163 of 224, 84-85 of 224; Status Report [167] 58 of 144; Final Jail Master Plan [183-28] 1-119 of 120.

[21] Op. at 32.

(2) "the scope of all [those] powers" must be subject to a sufficient needs-narrowness-intrusiveness analysis[22] by the Court that is **both** "sufficiently specific as to the different powers given to the receiver"[23] **and** conducted "in light of the receiver's loss of control over the budget and salaries[,]"[24] and

(3) the Court must "discuss whether it would be feasible to institute a receivership with more limited powers that cover only the scope of the constitutional violations."[25]

As these steps make clear, an order providing for generic duties designed to improve the RDC's conditions as a whole will not suffice.[26] Rather, the duties to be developed must be narrowly drawn to remedy the federal rights violations found by the Court and be the least intrusive means necessary to remedy those violations.

Dated: April 4, 2025.

---

[22] *Id*. at 31
[23] *Id*. at 29.
[24] *Id*. at 32.
[25] *Id*.
[26] *See id*. (observing that "remedial orders that unnecessarily reach out to improve prison conditions other than those that violate the Constitution" have been rejected by the Supreme Court) (quoting *Brown*, 563 U.S. at 531).

Respectfully submitted,

**PHELPS DUNBAR, LLP**

BY: /s/ *Nicholas F. Morisani*
W. Thomas Siler, Jr., MB #6791
Nicholas F. Morisani, MB #104970
Loden P. Walker, MB#105996
1905 Community Bank Way, Suite 200
Flowood, Mississippi 39232
Telephone: 601-352-2300
Facsimile: 601-360-9777
Email: Tommy.Siler@phelps.com
Nick.Morisani@phelps.com
Loden.Walker@phelps.com

**ATTORNEYS FOR DEFENDANTS**