IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**UNITED STATES OF AMERICA**                                         **PLAINTIFF**

**VS.**                                                          **NO. 3:16-CV-489-CWR-BWR**

**HINDS COUNTY, ET AL.**                                            **DEFENDANTS**

### DEFENDANTS' COMMENTS AND OBJECTIONS TO THE 19TH MONITORING REPORT

Defendants provide the following comments and objections to the 19th Monitoring Report. The comments and objections set out below address the draft of the 19th Monitoring Report provided to the County on June 2, 2022.[1]

### Objection to Introduction

As an initial matter, the County objects to the proposed Nineteenth Monitoring Report to the extent it was prepared before the monitor's document requests could be completely fulfilled by the County. The monitor requested 6 categories of documents prior to her visit and she was provided with those documents by the morning of the first day of the site inspection. On May 5, the monitor forwarded a list of 25 additional document requests. By June 17, 2025, Defendants had provided the majority of documents responsive to those additional document requests, totaling 2,579 pages of documents responsive to the monitor's various requests, both prior to and after the site inspection. Against this backdrop, Defendants object to the report on the basis that the monitor could not have provided a reasonable, fair, and impartial report without having the very documents

---

[1] Defendants hereby incorporate and adopt the Global Objection set forth on pages 1-4 of their Comments and Objection to the 18th Monitoring Report [239-1] as if fully set forth here. The reasoning and relevance of that Global Objection apply with near equal force to the proposed Nineteenth Report.

1

she believed she needed so much so that she put Hinds County to the expense of gathering and producing those documents.

In addition to these requests, the monitor requested for the first time on June 17, 2025, an additional 1,892 pages of documents that had been previously requested by the Government. Defendants were surprised to see this new request but provided the documents to the monitor in good faith that same day.  It remains to be seen how these documents can be included or otherwise reflected in the Nineteenth Monitoring Report when they were never requested prior to the proposed Nineteenth Monitoring Report being provided to the parties on June 2, 2025.

### Objection to Executive Summary

Defendants object to the claim that The RDC as a whole now has the look of A-Pod. This sort of comment is objectionable for numerous reasons: it outright ignores the individual units in B-Pod and C-Pod, it ignores the remainder of the facility aside from those two pods, it displays an absolute lack of any memory of A-Pod's appearance, condition, and feel. The monitor's opinion in this regard seems more like an attempt to generalize the facility in a negative way than anything else.

The monitor's comments related to staffing similarly betray the reality of staffing as a nationwide crisis in our jails and correctional facilities. While Defendants do not suggest that they believe their staffing situation is not a problem, one would never know from the monitor's proposed Nineteenth Report that staffing is at crisis levels nationwide. Put simply, Defendants are not the only detention professionals dealing with severe staffing shortages and the monitor gives them zero meaningful credit for the efforts they are undertaking to address the staffing shortage.

### Comment regarding Compliance Overview

For the first time, the Compliance Overview no longer refers to as-yet-undefined "Sustained Compliance" rating. While this is a positive development, it is troubling that the

"sustained compliance" rating was ever included in the monitor's compliance review and that it took more than eight (8) years for the monitor to remove this rating given there is no (and has never been any) such category of compliance rating in the New Injunction or its overboard, unwieldy predecessor.

**Substantive Provisions**[2]

**1. Protection from Harm**

¶39.    **Comment**. The County notes that the monitor's document requests, both before and after the April 29-May 1 site inspection, do not include a request for "personnel files of the supervisors promoted since the last visit and still employed."[3] It is unclear how the County can be faulted for the monitor's having not reviewed those documents.

¶41.    **Objection**. The monitor continues to interpret this paragraph as requiring "implementation" to rate the County as non-compliant with this paragraph despite admitting the County has complied with the very requirements spelled out in this paragraph. Critically, the words "implement" or "implementation" are not found in this paragraph of the New Injunction.

As a result, the County reiterates its previous objection to the monitor's finding of non-compliance. Specifically, this paragraph requires the County to "ensure that Jail policies and procedures provide for the 'direct supervision' of all Jail housing units." The monitor admits the County has done that. However, the monitor adds that the County failed to implement the practice. ¶41 <u>does not</u> require implementation, it merely requires the County to ensure that policies and practices "<u>provide</u> for the direct supervision of all Jail housing units."

---

[2] Unlike prior objections, Defendants omit the Paragraphs to which they do not have any comment or objection and only note the paragraphs, by paragraph number, to which they have a comment or objection.

[3] *See* Composite of Document Requests, attached as **Exhibit** "**A**."

3

Moreover, the County adds that the monitor's interpretation of this paragraph provides a textbook example of why relying on monitors to assess compliance with provisions is bad business for corrections and detention professionals. The monitor may subjectively believe that ¶41 requires implementation, but it does not. Yet, the monitor's own subjective interpretations and judgment are imposed despite the fact those subjective interpretations and judgments are not include in the New Injunction's text and were never been contemplated or negotiated by the parties related to the New Injunction's predecessor.

¶42.    **Objection**. The County objects to the finding of non-compliance. The monitor wholly ignores the fact the staffing is a nationwide crisis in our detention and correctional facilities, and it has not been reasonably possible to hire sufficient staff to implement direct supervision, which is a reality the Monitor continues to ignore. The monitor's citation to assaults and contraband are, once again, void of any comparison or other means by which one could reasonably determine whether either incident is significant, and the monitor continues to avoid defining what the monitoring team defines as an "assault." The monitor acknowledges that Sheriff Tyree Jones and the County are engaged in efforts to address the staffing at Raymond Detention Center but apparently gives them no credit for these efforts.

¶44.    **Objection**. The monitor's non-compliance rating related to this paragraph presents another example as to why monitoring is so problematic here. This paragraph requires: the County to "[d]evelop and implement policies and procedures to ensure that detention officers are conducting rounds as appropriate." The monitor concludes the County is non-compliant with this paragraph "even though policies and procedures have been developed; [because] the failure to implement them in practice does not meet the requirement of this paragraph." The County objects

to the notion that it can be held fully non-compliant with a paragraph, one-half of which no one disputes the County has complied with (*i.e.* the requirement to "***develop*** policies and procedures").

¶45. **Objection**. The County objects to the finding of non-compliance here given the monitor admits that training is occurring. The monitor's finding appears to be based almist exclusively on her complaint that both the current lack of a Field Training Officer (FTO) program and lack of direct supervision training. In making this complaint, the monitor once again completely ignores the operational realities of a short-staffed facility, acknowledges 96-hour-long pre-service training classes are being held at least three times a year by the County, but gives the County no credit for conducting this pre-service training and does nothing to assess the adequacy of that pre-service training, yet somehow concludes the County is fully non-compliant.

¶46. **Objection**. The County strenuously objects to this finding and the wholly irrelevant discussion included within it. First, the County objects to what is another example of the monitor finding the County fully non-compliant while admitting in the same breadth that the County has complied with a portion of the very paragraph it is being found completely non-compliant with. Second, the County objects to the monitor's criticism of the County's officers at RDC reveals (again) a complete lack of any sense of operational awareness in a short-staffed facility where officers of various ranks must assist one another on a daily basis to operate the facility. Third, the County objects to the monitor's wholly unrelated discussion of facility maintenance spanning pages 14-16 as providing support for the fully non-compliant finding related to this paragraph.

### 2. Use of Force Standards

\* \* \* \*

### 3. Use of Force Training

¶55. **Objection**. After finally admitting that repeated discussions of the use of force policy (which had been updated to include use of tasers and the update approved by the monitor) were not relevant with respect to this paragraph, the monitor fails to explain why this paragraph is rated as "not applicable" as opposed to substantially compliant. The monitor does not dispute that officers carrying tasers since the use of force policy was updated have received training on the use of those tasers, so this paragraph should be rated as substantial compliance.

### 4. Use of Force Reporting

\* \* \* \*

### 5. Incident Reporting and Review

\* \* \* \*

### 7. Investigations[4]

\* \* \* \*

### 8. Grievance and Prisoner Information Systems

¶72. **Objection**. The County objects to the non-compliant finding related to this paragraph insofar it is based on purported obstacles faced by detainees with "cognitive" barriers to using the kiosk to submit a grievance. During the monitor's visit with the RDC's grievance officer, the monitor heard how the kiosks through which detainees can submit grievances have been improved, Spanish-speaking detainees can submit grievances in Spanish, and that detainees who have trouble understanding the kiosks system can submit a paper grievance.

### 9. Restrictions on the Use of Segregation

¶74. **Objection**. The monitor insists on refusing to give the men and women that make up County's staff at RDC the credit they are due for maintaining operations while short staffed.

---

[4] The former paragraph "6. Sexual Misconduct" was terminated by the Fifth Circuit Court of Appeals.

Instead, the monitor repeatedly points out the obvious (that some department or class of employees are less than what is optimal by the monitor's standards) and finds the County non-compliant ostensibly because of a lack of staff. Regardless, the monitor acknowledges that the classification forms she reviewed were error-free but that scores were not being used in a way the monitor considered "normal." Again, however, this seems to reveal more of the monitor's subjective preferences being substituted in place of fair and reasonable assessment of compliance. Lastly, the County also objects to the monitor's focus for nearly two pages on attacking what the monitor considers are maintenance and structural facility problems that seem largely irrelevant to the compliance metric at issue in this paragraph.

¶77. **Objection**. The County objects to the non-compliant finding here given it appears based on the fact the County has not taken certain actions the monitor deems are necessary but that are not required by the terms of the New Injunction. The monitor believes that to comply with tis paragraph the County needs "to develop a housing and treatment unit for such acutely ill SMI prisoners (i.e. a mental health unit) or at least develop a more aggressive mental health treatment program on segregation units." Nothing in the New Injunction requires the County develop a new housing unit of any particular nature. And, as the monitor's discussion here indicates, the County is already engaged in efforts to provide programs for SMI detainees in segregation through the weekly Interdisciplinary Team Meetings. Although the monitor believes the County could be doing more to restrict the use of segregation of SMI detainees, nothing about the monitor's discussion related to his paragraph suggests the County is doing nothing to address SMI detainees who are living in segregation, and the non-compliant rating is unjustified.

* * * *

## 11. Lawful Basis for Detention

7

\* \* \* \*

## 14. Implementation, Timing, and General Provisions

\* \* \* \*

## 15. Policy and Procedure Review

\* \* \* \*

## 16. Monitoring

\* \* \* \*

## 18. Emergent Conditions

\* \* \* \*

Nick Morisani (3351)

---

| | |
|---|---|
| **From:** | Elizabeth Simpson <elizabeth.simpson@comcast.net> |
| **Sent:** | Tuesday, April 8, 2025 9:05 AM |
| **To:** | Nick Morisani (3351); Tommy Siler (3357); jhall@halllawgrp.com; Tony Gaylor; rchambers@cglawpartners.com |
| **Cc:** | Parrish; Richard Dudley |
| **Subject:** | documents for site visit |

Hello Counsel, We are not doing our usual document request before this site visit in order to schedule the site visit as quickly as possible. However, we would like to get several documents ahead of time to make the visit as efficient as possible. We think the items requested are readily available. Let me know if that is not the case. The documents are:

1. Current org chart with persons in major positions (for security and medical)
2. Incident report spreadsheet for January 1 through March 31, 2025 (as previously programmed)
3. Active inmate list
4. Current housing plan
5. Current policies, procedures and post orders
6. Current grievance spreadsheet

Thank you,
Elizabeth (Lisa) Simpson

Nick Morisani (3351)

| | |
|---|---|
| **From:** | Lisa Simpson <elizabeth.simpson@comcast.net> |
| **Sent:** | Monday, May 5, 2025 10:34 AM |
| **To:** | Nick Morisani (3351); Tommy Siler (3357); jhall@halllawgrp.com; 'Tony Gaylor'; rchambers@cglawpartners.com |
| **Cc:** | Cheng, Christopher (CRT); 'Vera, Helen (CRT)'; 'Russell, Cecilia (CRT)'; 'WENDELL FRANCE SR'; 'Paige, Mitzi (USAMSS)' |
| **Subject:** | Documents requested |
| **Attachments:** | Documents requested at site visit.docx |

Hello Nick, I'm attaching the list of documents that were requested during the site visit. If you have notes of something requested that I missed please include it. Also, if there are updates on any issues we discussed, please let me know. I am particularly interested in any updates on the grievance system as it seems like some of the issues were IT issues that could be resolved.

Thank you,
Lisa Simpson

Documents requested

1. Grievance Spreadsheet with Response (Y/N) and date of response
2. Any information on existence of Medical Grievances and other Grievances listed as Unassigned but not pulling up on the computer
3. I don't need the Grievance Policy unless it's been updated
4. Segregation Report (log) kept by Sgt. Dotson from 1/1/25 to present
5. Disciplinary Report (log) kept by Sgt. Dotson from 1/1/25 to present
6. Updated Classification Policy (There are actually 4 Classification Policies, 7-100 through 7-400. I would like any of those that Sgt. Dotson has updated).
7. Probation Violation log from 1/1/25 to present
8. First Appearance Log maintained by Officer Spann from 1/1/25 to present
9. Chart Audits from 1/1/25 to present
10. Current camera audit
11. Rapid Notifications from 1/1/25 to present
12. IAD investigations    2025-001
	2025-005
	2025-007
	2025-012
	2025-019
	2025-025
13. Any additional IAD investigations related to the incident reports raised during the site visit:    25000048
	25000078 (noticed after the site visit)
	25000084
	25000153
	25000157
	25000172
	25000172
	25000208
	25000281
14. CID investigations:    25-0056
	250072
	25-0128
	25-0154
	25-0162
	25-0207
	25-0247

1

      25-0365
      25-0413
      25-447
      25-0507
      25-0662
      25—0672
      25-0683
      25-0687
      25-0715
      25-0716
      25-0717

15. Hospital Transport Logs, 1/1/25 to present
16. Missing Incident Reports except if they relate to the Work Center or JCA's
   Report Numbers:  25000091
           25000276
           25000290-293
           25000299-308
           25000311
           25000312
17. All incident reports related to the death of the detainee on 4/22/25
18. All incident reports related to the death of a detainee on 2/12/25 referenced in CID report number 25-0365
19. Last State Fire Inspection report
20. Fire Extinguisher Monthly Inspection forms from 1/1/25 to present
21. Schedule of Training from 1/1/25 to present
22. Current Packet as previously provided from Doris Coleman
23. Sgt. Winter's spreadsheet of repairs and requested repairs from November 1, 2024 to present
24. Benchmark's spreadsheet of repairs from November 1, 2024 to present
25. Incident reports in a size that is legible when printed out