

_____

No. 3:16-CV-489-CWR-RHWR

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

HINDS COUNTY, ET AL.

*Defendants*.

_____

THE 2025 INJUNCTION

_____

Before CARLTON W. REEVES, *District Judge*.

For the reasons explained in earlier Orders issued by this Court and the U.S. Court of Appeals for the Fifth Circuit, Hinds County is ordered to implement the following provisions at its Raymond Detention Center ("the Jail"). These remaining provisions are "narrowly drawn, extend[] no further than necessary to correct the violation of the Federal right, and the least intrusive means necessary to correct the violation of the Federal right" and will not have an

"adverse impact on public safety or the operation of a criminal justice system." 18 U.S.C. § 3626(a).

### 1. Protection from Harm

38. Ensure that the Jail is overseen by a qualified Jail Administrator and a leadership team with substantial education, training and experience in the management of a large jail.

39. Ensure that all Jail supervisors have the education, experience, training, credentialing, and licensing needed to effectively supervise both prisoners and other staff members.

41. Ensure that Jail policies and procedures provide for the "direct supervision" of all Jail housing units.

42. Ensure that the Jail has sufficient staffing to adequately supervise prisoners, fulfill the terms of this Injunction, and allow for the safe operation of the Jail.

44. Develop and implement policies and procedures to ensure that detention officers are conducting rounds as appropriate.

45. Ensure that all correctional officers receive adequate pre- and post-service training to provide for reasonably safe conditions in the Jail.

> c. "Direct supervision" training. Detention officers must receive specific pre- and post-service training on "direct supervision." Such training must include instruction on how to supervise prisoners in a "direct supervision" facility, including instruction in effective communication skills and verbal de-escalation. Supervisors must receive training on how to monitor and ensure that staff are providing effective "direct supervision."

46. Develop and implement policies and procedures for adequate supervisory oversight for the Jail.

### 2. Use of Force Standards

50. Develop and implement policies and procedures to regulate the use of force, including policies and procedures to ensure timely notification, documentation, and communication with supervisors and medical staff (including mental health staff) prior to and after any use of force.

### 3. Use of Force Training

52. The County must develop and implement a use of force training program.

53. Topics covered by use of force training must include:

   a. Instruction on what constitutes excessive force;

   b. De-escalation tactics;

   c. Methods of managing prisoners with mental illness to avoid the use of force;

   d. Defensive tactics;

   e. All Jail use of force policies and procedures, including those related to documentation and review of use of force.

55. The County must update any use of force training after any revision to a use of force policy or procedure.

### 4. Use of Force Reporting

56. Develop and implement use of force reporting policies and procedures that ensure that Jail supervisors have sufficient information to analyze and respond appropriately to use of force.

57. Require each staff member who used or observed a use of force to complete a Use of Force Report as promptly as possible. Staff members must accurately complete all fields on a Use of Force Report.

58. Ensure that Jail use of force reports include an accurate and detailed account of the events.

59. The County must ensure that Jail supervisors review, analyze, and respond appropriately to use of force.

61. All uses of force must be reviewed by supervisors who were neither involved in nor approved the use of force by the end of the supervisor's shift. All level 1 uses of force must also be reviewed by a supervisor who was neither involved in nor approved the use of force. The purposes of supervisor review are to determine whether the use of force violated Jail policies and procedures, whether the prisoner's rights may have been violated, and whether further investigation or disciplinary action is required.

### 5.     Incident Reporting and Review

63. Develop and implement incident reporting policies and procedures that ensure that Jail supervisors have sufficient information to respond appropriately to reportable incidents.

64. Ensure that Incident Reports include an accurate and detailed account of the events.

66. Ensure that Jail supervisors review and respond appropriately to incidents.

### 6.     Sexual Misconduct

### 7.     Investigations

68. The County shall ensure that it identifies, investigates, and corrects misconduct that has or may lead to a violation of the Constitution.

    a. Develop and implement comprehensive policies, procedures, and practices for the thorough and timely investigation of alleged staff misconduct, sexual assaults, and physical assaults of prisoners resulting in serious injury.

    f. Provide the Monitor and United States a periodic report of investigations conducted at the Jail every four months. The report will include the following information:

        i. a brief summary of all completed investigations, by type and date;

        ii. a listing of investigations referred for administrative investigation;

        iii. a listing of all investigations referred to an appropriate law enforcement agency and the name of the agency; and

        iv. a listing of all staff suspended, terminated, arrested or reassigned because of misconduct or violations of policy and procedures. This list must also contain the specific misconduct and/or violation.

        v. a description of any corrective actions or changes in policies, procedures, or practices made as a result of investigations over the reporting period.

**8. Grievance and Prisoner Information Systems**

69. The grievance system must permit prisoners to confidentially report grievances without requiring the intervention of a detention officer.

71. All grievances must receive appropriate follow-up.

72. The grievance system must accommodate prisoners who have physical or cognitive disabilities, are illiterate, or have LEP, so that these prisoners have meaningful access to the grievance system.

### 9. Restrictions on the Use of Segregation

74. Within 8 hours of intake, prisoners in the booking cells must be classified and housed in more appropriate long-term housing where staff will provide access to exercise, meals, and other services.

75. The County must document the placement and removal of all prisoners to and from segregation.

76. Qualified Mental Health Professionals must conduct mental health rounds at least once a week (in a private setting if necessary, to elicit accurate information), to assess the mental health status of all prisoners in segregation and the effect of segregation on each prisoner's mental health, in order to determine whether continued placement in segregation is appropriate. These mental health rounds must not be a substitute for treatment.

77. The County must develop and implement restrictions on the segregation of prisoners with serious mental illness.

### 10. Youthful Prisoners

78. Develop and implement a screening, assessment and treatment program to ensure that youth with serious mental illness and disabilities, including developmental disabilities,

receive appropriate programs, supports, education, and services.

81. Ensure that the Jail's classification and housing assignment system does not merely place all youth in the same housing unit, without adequate separation based on classification standards. Instead, the system must take into account classification factors that differ even within the youth sub-class of prisoners. These factors include differences in age, dangerousness, likelihood of victimization, and sex/gender.

82. Train staff members assigned to supervise youth on the Jail's youth-specific policies and procedures, as well as on age-appropriate supervision and treatment strategies.

83. Specifically prohibit the use of segregation as a disciplinary sanction for youth. Segregation may be used on a youth only when the individual's behavior threatens imminent harm to the youth or others.

### 11. Lawful Basis for Detention

85. The County will not accept or continue to house prisoners in the Jail without appropriate, completed paperwork such as an affidavit, arrest warrant, detention hold, or judge's written detention order.

86. No person shall be incarcerated in the Jail for failure to pay fines or fees in contravention of the protections of the United States Constitution as set forth and discussed in *Bearden v. Georgia*, 461 U.S. 660 (1983) and *Cassibry v. State*, 453 So. 2d 1298 (Miss. 1984).

92. The County must ensure that the Jail timely releases from custody all individuals entitled to release. At minimum:

    a.    Prisoners are entitled to release if there is no legal basis for their continued detention. Such release must occur no later than 11:59 PM on the day that a prisoner is entitled to be released.

    b.    Prisoners must be presumed entitled to release from detention if there is a court order that specifies an applicable release date, or Jail records document no reasonable legal basis for the continued detention of a prisoner.

    c.    Examples of prisoners presumptively entitled to release include:

        i.    Individuals who have completed their sentences;

        ii.    Individuals who have been acquitted of all charges after trial;

        iii.    Individuals whose charges have been dismissed;

        iv.    Individuals who are ordered released by a court order; and

        v.    Individuals detained by a law enforcement agency that then fails to promptly provide constitutionally adequate, documented justification for an individual's continued detention.

**12.    Continuous Improvement and Quality Assurance**

    **13.    Criminal Justice Coordinating Committee**

**14.    Implementation, Timing, and General Provisions**

121. Within 30 days of the Effective Date of this Injunction, the County must distribute copies of the Injunction to all prisoners and Jail staff, including all medical and security staff, with appropriate explanation as to the staff members' obligations under the Injunction. At minimum:

    a.    A copy of the Injunction must be posted in each unit (including booking/intake and medical areas), and program rooms (e.g., classrooms and any library).

    b.    Individual copies of the Injunction must be provided to prisoners upon reasonable request.

### 15. Policy and Procedure Review

130. The County must review all existing policies and procedures to ensure their compliance with the constitutional violations addressed in this Injunction. Where RDC does not have a policy or procedure in place that complies with this Injunction, the County must revise or draft such a policy or procedure.

### 16. Monitoring

This Injunction must be monitored by an individual approved by the Court. Accordingly, paragraphs 136 through 158 of the Order Amending Consent Decree, and their subparagraphs, are hereby incorporated and remain in force.

### 17. County Assessment and Compliance Coordinator

### 18. Emergent Conditions

161. The County must notify the Monitor and United States of any prisoner death, riot, escape, injury requiring hospitalization, or over-detention of a prisoner (i.e. failure to

release a prisoner before 11:59 PM on the day she or he was entitled to be released), within 24 hours of learning of the event.

**SO ORDERED**, this the 27th day of June, 2025.

s/ CARLTON W. REEVES
*United States District Judge*

10