

_____

No. 3:16-CV-489-CWR-BWR

UNITED STATES OF AMERICA,

*Plaintiff,*

*v.*

HINDS COUNTY, ET AL.,

*Defendants.*

_____

PLRA ANALYSIS

_____

Before CARLTON W. REEVES, *District Judge.*

This memorandum provides the Court's need-narrowness-intrusiveness analysis on the scope of the Receiver's duties. *See* Docket No. 282-2.

"The PLRA instructs that any prospective relief must be 'narrowly drawn,' 'extend[ ] no further than necessary to correct the violation of the Federal right,' and serve as 'the least intrusive means necessary to correct the violation of the Federal right." *United States v. Hinds Cnty. Bd. of Supervisors,*

128 F.4th 616, 637 (5th Cir. 2025) (quoting 18 U.S.C. § 3626(a)(1)(A))). For the reasons provided below, the Court finds that each of the Receiver's powers and duties satisfies the PLRA's need-narrowness-intrusiveness standard.

## I.

### General Powers & Duties

The scope of the receivership is to bring RDC into compliance with constitutional standards and the Court's Orders. Despite repeated opportunities, the County has failed to implement the Court's remedial orders, *id.* at 14–15, 60–61; properly manage RDC operations and protect detainees from harm, *id.* at 48–53; and provide adequate staffing and supervision at RDC, *id.* at 43–47, 164 n.21.

The Receiver's authority extends no further than necessary to ensure compliance with constitutional standards and the Court's Orders. Day-to-day control is limited to operations at RDC and personnel who perform services related to the operation of the facility. Further, as explained below, the Receiver will work collaboratively with the Defendants in determining the budget for RDC and other financial-related matters (such as contract negotiations and staffing decisions).

The Court considered alternative measures, such as granting the Receiver partial control over RDC. It ultimately determined, however, that limited authority over the facility would be ineffective given the County's repeated inability or unwillingness "to exhibit the leadership necessary to protect the lives of [detainees]." Docket No. 204 at 23 (quotation

marks omitted); *see also* Docket No. 249-1 at 14–17 (failure of less intrusive means).

Given "the severity and immediacy of the current and ongoing constitutional violations at RDC, the failure of less extreme measures to ensure inmate safety, the need for compliance with the court's orders, and the lack of leadership at RDC necessary to ensure compliance," the Court believes that the Receiver's general powers and duties satisfy the PLRA's need-narrowness-intrusiveness standard. *Hinds Cnty. Bd. of Supervisors*, 128 F.4th at 637.

## II.

### Duty to File Plan of Action, Budget, and Reporting

The Receiver's duties to plan, budget, and report are necessary to ensure compliance with constitutional standards and the Court's Orders.

The planning provisions are designed to ensure efficiency, progress, and accountability in achieving constitutional compliance. The Plan of Action will provide the Receiver with direction in executing their duties and will help support and justify the Receiver's proposed budget for RDC. The planning process is also collaborative as it provides the parties with an opportunity to submit proposals for the Receiver's consideration.

The budget provisions are particularly necessary, given the County's failure to allocate resources appropriately and efficiently. *See* Docket No. 249-1 at 19–21. While granting the Receiver unilateral authority over RDC's annual budget would go too far, completely excluding the Receiver from the

3

budgeting process would hinder the Receiver's ability to remedy the constitutional violations. Though the Receiver's authority over the budget and other financial-related matters is limited, the Court believes that the Receiver's input will help ensure that the necessary funds are allocated to address constitutional deficiencies at RDC.

To create an informed budget, the Receiver must have access to relevant County financial and accounting records. This access is explicitly limited to what is necessary to develop RDC's annual budget and does not extend beyond the scope of the Court's remedial Orders.

The Court included the reporting provision in light of the County's history of inadequate reporting and documentation. *See* Docket No. 168 at 51. To ensure transparency and accountability, the Receiver must regularly report on the status of the budget and operational progress.

In conclusion, the Court finds that the provisions in Section II are narrowly drawn, extend no further than necessary, and are the least intrusive means of providing transparency and accountability.

### III.

### Access, Immunity, and Interference

The County has repeatedly obstructed compliance efforts at RDC by undermining jail leadership, withholding information, and providing misleading reports to the Court. *See* Docket No. 168 at 18–19 (bypassing the Administrator's authority); Docket No. 165 at 10–17 (underreporting serious incidents and misrepresenting repairs); Docket No. 168 at 14–

4

19 (lack of institutional support led to resignation of Jail Administrator).

As such, the Receiver must have independent access to RDC to assess the conditions at the facility and implement corrective measures. This includes the ability to enter RDC without notice. The Court considered alternative measures, such as requiring the County to facilitate access or requiring the Receiver to provide notice before site visits, but concluded that these options would be inefficient and ineffective. Limiting the Receiver's access or requiring the Receiver to seek permission each time they need to enter the facility would create unnecessary delays and hinder progress.

The Receiver's authority to conduct confidential interviews with detainees, staff, and contractors, as well as communicate ex parte with the parties and the Court, is critical to obtaining candid and unbiased assessments of the conditions and day-to-day operations at RDC.

Additionally, designating the Receiver and their staff as agents of the Court with judicial immunity is necessary in order to protect against retaliatory litigation and political interference.

For these reasons, the Court concludes the measures in Section III are narrowly drawn, extend no further than necessary, and are the least restrictive means to ensure that the Receiver can achieve compliance with constitutional standards.

## IV.

### Term & Compensation

The provisions in Section IV also satisfy the PLRA's need-narrowness-intrusiveness requirement. The term and compensation provisions are necessary, given the County's failures to adhere to financial obligations. *See e.g.*, Docket No. 249-1 at 18 ("Forcing the Monitor to shoulder the burden of financing and spearheading essential initiatives").

The Court has acted within its authority to order a reasonable compensation for the Receiver's services. *See* Docket No. 215 at 3 n.3. Further, the provisions in Section IV specify that the Receivership will remain in place no longer than necessary to remedy the unconstitutional conditions that led to the appointment of the Receiver. The Receivership will conclude once the Court determines that the Defendants have corrected RDC's unconstitutional conditions and made substantial progress in complying with the Court's Orders.

## V.

### Modification

Lastly, Section V complies with the PLRA by providing the parties and the Receiver the opportunity to request modifications of this Order as necessary to comply with laws and Court's Orders. It ensures that the Receivership is maintained only to the extent necessary to bring RDC into compliance with constitutional standards.

**SO ORDERED**, this the 27th day of June, 2025.

s/ CARLTON W. REEVES

6

_United States District Judge_