IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF MISSISSIPPI

NORTHERN DIVISION

UNITED STATES OF AMERICA,　　　　)
　　　　　　　　　　　　　　　　)
　　　　PLAINTIFF,　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　v.　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　　Case No.: 3:16-cv-00489-CWR-BWR
　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
HINDS COUNTY, ET AL.,　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　DEFENDANTS.　　　　　　　)
_____)

**MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION TO COMPEL ACCESS**

The United States moves the Court for an order compelling the Defendants to: (1) permit representatives of the United States to interview youth held at Henley-Young-Patton Juvenile Justice Center (Henley-Young) in a confidential setting, without Henley-Young staff or other county representatives present and without requiring the presence of defense counsel; and (2) provide Henley-Young records requested by the United States, specifically those outstanding from our February 28 and May 16, 2025 document requests. Exh. 1, 2.

### I.   BACKGROUND.

The United States seeks witness interviews and documents to assess whether the Defendants have made any progress towards implementing the 2025 Injunction's youthful prisoner protections. 2025 Injunction, Doc. 282-1 Sec. 10 at 6-7 (June 27, 2025) (2025 Injunction); *see* Order, Doc. 250 at 13 (Jan. 30, 2023) (discussing conditions in Henley-Young and re-integrating PLRA-compliant juvenile protections into New Injunction); Judgment/Mandate, Doc. 262 at 24

(Feb. 20, 2025) ("The County does not challenge the provisions relating to the youth prisoner center" on appeal); *see, also,* Order, Doc. 249 at 5 (Jan. 30, 2023) (consolidating Receivership Orders Docs. 204, 215, and 216 into single amended order prior to appellate review).

Upon remand, this Court issued a new 2025 Injunction and receivership orders which complied with the appellate the mandate. Order, Doc. 282 (June 27, 2025). The 2025 Injunction protects the rights of youth charged as adults and who are in the Defendants' custody. 2025 Injunction, Doc. 282-1 at 6-7 (June 27, 2025).

Serious allegations have been made about conditions in Henley-Young during the pendency of the appeal to the present. *See, e.g.,* Teens Overpower Guard, Start Fight at Hinds Co. Youth Detention Center, WLBT, May 8, 2023, https://www.wlbt.com/2023/05/08/teens-overpower-guard-start-fight-hinds-co-youth-detention-center/; Teen injured during 'skirmish' at Henley-Young-Patton Juvenile Justice Center, WLBT, Aug. 29, 2022, https://www.wlbt.com/2022/08/29/teen-injured-during-skirmish-henley-young-patton-juvenile-justice-center/. After the Court of Appeals largely upheld the receivership and injunctive relief, the United States asked Defendants to produce records. Exh. 1, 2. On April 8, 2026, the United States notified the County that its representatives would be inspecting Henley-Young on May 5, 2026, and that the inspection would include private interviews with youth. Exh. 4. The County, through their counsel or the Receiver, provided many of the records requested about adults held in the Raymond Detention Center.

The County has not, however, been as forthcoming with access to records or witnesses associated with Henley-Young. More specifically, the County has not provided records related to several serious incidents that occurred during the pendency of the appeal, including an escape

and a mass disturbance.  Exh. 1, 2.[1]  Initially, the County asserted that the Court Monitor's subject matter expert lacked authority to review the materials, but the United States has also asserted its authority as a party to review such records.

On April 13, 2026, the County informed the United States that the County would not allow youth interviews unless County attorneys were in attendance.  Exh. 3.  The United States conferred with County officials and raised this matter with the Receiver.  The United States was not able to negotiate a resolution.

The County has not cited any specific legal basis for their failure to cooperate with the United States' discovery requests or their demand to be present for interviews by the United States with youth detained at Henley-Young.  When the United States cited this Court's orders in support of its right of unimpeded access to information and witnesses, including youthful detainees charged as adults at Henley-Young, County counsel responded that they disagreed with the United States' interpretation.  Exh. 1; *compare*, Order, Doc. 250 (Jan. 30, 2023) (granting U.S. motion for reconsideration and restoring jurisdiction over Henley-Young).

## II. ARGUMENT.

The Court should grant the United States' Motion, because:  (1) the United States is entitled to access under the Injunctions and rules of discovery; (2) the United States is entitled to direct access under the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997 (CRIPA); and (3) the United States' access is necessary, in this instance, to permit the inmates to exercise their constitutional right to petition for redress of grievances.

---

[1] On May 1, 2026, shortly before the United States filed this Motion and after missing a production deadline, defense counsel e-mailed the United States to indicate that the County was going to produce some documents.  Counsel for the United States tried to reach defense counsel to determine what documents would be included in the production and could not confirm that the production would cover the materials covered by this Motion to Compel.

The United States is entitled to access to youth held at Henley-Young and their records under the Court's orders. *See* 2025 Injunction, Doc. 282-1, Sec. 10, 16 (June 27, 2025). The 2025 Injunction incorporates elements of the original Monitorship and the United States' right of access from the earlier Consent Decree. 2025 Injunction, Doc. 282-1, sec. 16, *incorporating* Consent Decree, Doc. 8-1, par. 142 ("The Monitor and the United States shall have full and complete access to the Jail, Jail documents and records, prisoner medical and mental health records, staff members, and prisoners."); *see also* Doc. 8-1 par. 16 (defining Jail to include any "replacement facility"), Sec. K (transitioning youthful offenders from to Henley-Young or other "new or replacement youthful prisoner housing facility"). The United States can thus justify its need to conduct discovery about youthful offenders pursuant to the 2025 Injunction's general access and youthful offender-specific provisions.

Even without a right to carry out our obligations under the 2025 Injunction, the United States would have a right to discovery under normal discovery rules. Fed. R. Civ. P. Rule 26(b) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ..."); Fed. R. Civ. P. 37; Fed. R. Evid. 402. The United States needs access to the youth and their records to determine if the County is complying with the Court's orders. Yet, the County's response to legitimate requests for access to information and witnesses has been passive resistance and active interference.

Allowing the County to continue with its obstruction threatens both the United States' rights of access and the detainees' constitutional rights. "As a general proposition, however, no party to litigation has anything resembling a proprietary right to any witness's evidence. Absent a privilege no party is entitled to restrict an opponent's access to a witness, however partial or important to him, by insisting upon some notion of allegiance." *Doe v. Eli Lilly and Co.*, 99 F.R.D.

126, 128 (D.D.C. 1983) (citations omitted). County counsel can interview third party witnesses on their own. County counsel would frustrate normal discovery by insisting on observing the United States' legal representatives when they are engaged in protected, work-product activities. Fed. R. Civ. P. Rule 26(b)(3).

When—as here—CRIPA applies, Courts generally do not permit county officials to unilaterally determine if the United States' representatives may review facility documents or speak in private to witnesses or victims. *See United States v. County of Los Angeles*, 635 F.Supp. 588 (C.D. Cal. 1986) (CRIPA preempts state confidentiality law and county ordered to provide juvenile interviews without county officials present); *United States v. State of Illinois*, 148 F.R.D. 587, 588 (N.D. Ill. 1993) (discovery order requiring access to records of a mental health facility); *United States v. County of San Diego*, No. 91-0764-R(m), 1991 WL 642768 (S.D. Cal. 1991) (unreported) (CRIPA preempts state confidentiality law and county ordered to provide access to county jails); *see also United States v. Ward*, 667 F.Supp.3d 1150 (N.D. Georgia 2023) (discussing scope of CRIPA pre-complaint investigative authority); *United States v. Hale*, 261 F.Supp.3d 1169 (N.D. Ala. 2017) (holding that sheriff could not withhold mental health records of juvenile detainees in pre-complaint CRIPA investigation in part because records are not being used against the inmates).[2] Allowing the county to impose unreasonable restrictions on access would undermine CRIPA's legislative purpose and the search for truth. *U.S. v. Illinois*, 148 F.R.D. at 588; *see also U.S. v. Los Angeles County,* 635 F.Supp. at 592-594 (CRIPA preempts state juvenile records laws).

---

[2] A few courts have held that CRIPA does not authorize pre-suit access, but Congress amended CRIPA, so those decisions have been superseded. *See, e.g.,* U.S. v. Michigan, 868 F.Supp. 890 (W.D. Mi. 1994); compare 42 U.S.C. § 1997a-1. Based on the case law and Congress' intent, the 2025 Injunction's access protections should be interpreted to be at least as expansive as CRIPA itself regarding the United States' rights of access to records, witnesses, and institutionalized persons.

County counsel's attempt to delay confidential interviews may be, itself, a violation of the youthful detainees' constitutional rights.  United States Constitution First Amendment ("Congress shall make no law … abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, <u>and to petition the Government for a redress of grievances.</u>") (underlining added); s*ee National Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415 (1963) (First Amendment protects litigation and "vigorous advocacy," not just "abstract discussion"); *United States v. Hylton*, 710 F.2d 1106, 1111 (5th Cir. 1983) (right to petition for redress of grievances is among the "most precious" of constitutional liberties); *Brewer v. Wilkinson*, 3 F.3d 816, 820-821 (1993) (prisoner right of access to courts is clearly established and is an aspect of the First Amendment right to petition for redress of grievances); *Morales v. Turman*, 326 F.Supp. 677, 679 (E.D. Tex. 1971) ("[H]eavy burden is placed upon state to justify infringement of First Amendment right to petition for redress of grievances by writing government officials . . ..").  The County's demand to be present for interviews by the United States. with youthful detainees at Henley-Young who have been charged as adults jeopardizes such detainees' right to redress grievances.   Making such a demand without a legal basis is a serious, additional violation of the youths' federal rights.  *See, e.g., Lamar v. Kern*, 349 F.Supp. 222 (S.D. Tex. 1972)  (Sheriff's violation of First Amendment right to petition government warranted relief requiring sheriff to let prisoners contact government agencies);  c*ompare U.S. v. County of San Diego*, 1991 WL 642768 at *1 (1991) ("Congress has specifically recognized that the states and particularly state attorneys general themselves are neither willing nor able to become the advocates for the institutionalized.").

The Constitution, framework of CRIPA, the federal rules, and the 2025 Injunction all support the United States' right of access.

## III. CONCLUSION

The United States access is necessary for the plaintiff to determine whether the County is meeting the requirements of the 2025 Injunction's Youthful Offender provisions, including standards for youth treatment, programs, classification, housing, security, and training. Accordingly, the United States asks the Court to approve the proposed order and compel the County to grant requested access to Henley-Young youth and records.

**FOR THE UNITED STATES:**

J. E. BAXTER KRUGER
United States Attorney

HARMEET K. DHILLON
Assistant Attorney General

PATRICK MCCARTHY
Acting Chief
Civil Rights Division
Special Litigation Section

/s/Christopher N. Cheng
CHRISTOPHER N. CHENG (PA #69066)
Trial Attorney
U.S. Department of Justice
Special Litigation Section
Civil Rights Division
4 Constitution Square
150 M. Street N.E. – Room 10.1138
Washington, D.C. 20530
christopher.cheng@usdoj.gov
(202) 514-8892

MITZI DEASE PAIGE (MS #6014)
Assistant U.S. Attorney
U.S. Attorney's Office
Southern District of Mississippi
501 E. Court Street – Ste. 4.430
Jackson, MS 39201
mitzi.paige@usdoj.gov
(601) 973-2840
(601) 965-4409 (fax)

DATED: May 1, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2026, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.


s/ Christopher N. Cheng

CHRISTOPHER N. CHENG (PA #69066)
Trial Attorney
U.S. Department of Justice
Special Litigation Section
Civil Rights Division
4 Constitution Square
150 M. Street N.E. – Room 10.1138
Washington, D.C. 20530
christopher.cheng@usdoj.gov
(202) 514-8892